No. 25-2162

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

MAHMOUD KHALIL,

Petitioner-Appellee,

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY
GENERAL UNITED STATES OF AMERICA,

Respondents-Appellants.

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

## MOTION TO STAY THE DISTRICT COURT'S ORDER PENDING
## APPEAL

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
  General

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel for Immigration
  Litigation

SARAH S. WILSON
Assistant Director

DHRUMAN Y. SAMPAT
Senior Litigation Counsel

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND.................................................................................................3

ARGUMENT .....................................................................................................5

   I.   The Government Is Likely To Succeed on the Merits. ...........................................6

     A.   The INA deprives the district court of authority to conduct a bail hearing and order release......................................................................................6

     B.   The district court lacks habeas jurisdiction over the petition because it was never filed in Petitioner's place of confinement....................................................8

     C.   The INA further bars the district court's review of Petitioner's claims. ........12

     D. Jurisdiction aside, the district court erred in ordering relief. ..............................16

   II.   The Equities and Public Interest Favor Staying the Release Order. ...................18

CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al-Siddiqi v. Achim,*
   531 F.3d 490 (7th Cir. 2008) ..........................................................................8

*Anariba v. Director Hudson Cnty. Corr. Ctr.,*
   17 F.4th 434 (3d Cir. 2021) ..........................................................................11

*Bonhometre v. Gonzales,*
   414 F.3d 442 (3d Cir. 2005)..........................................................................14

*Borbot v. Warden, Hudson County Correctional Facility,*
   906 F.3d 274 (3d Cir. 2018)............................................................................8

*Campbell v. OPM,*
   694 F.2d 305 (3d Cir. 1982) ..........................................................................10

*Castillo v. Att'y Gen.,*
   109 F.4th 127 (3d Cir. 2024) .........................................................................10

*Daley v. Fed. Bureau of Prisons,*
   199 F. App'x 119 (3d Cir. 2006) ....................................................................11

*De Ping Wang v. DHS,*
   484 F.3d 615 (2d Cir. 2007)...........................................................................10

*Demjanjuk v. Meese,*
   784 F.2d 1114 (D.C. Cir. 1986)......................................................................12

*E.F.L. v. Prim,*
   986 F.3d 595 (7th Cir. 2021) .........................................................................13

*E.O.H.C. v. Sec. DHS*,
  950 F.3d 177 (3d Cir. 2020) .......................................................... 14, 15

*Elkimya v. Dep't of Homeland Sec.*,
  484 F.3d 151 (2d Cir. 2007) ............................................................ 17, 18

*Garrett v. Murphy*,
  17 F.4th 419 (3d Cir. 2021) ..................................................................11

*Griffin v. United States*,
  621 F.3d 1363 (Fed. Cir. 2010) ...........................................................10

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ................................................................................6

*Ingram v. PBPP*,
  No. 23-cv-565, 2023 WL 6129539 (W.D. Pa. Sept. 19, 2023) ....................16

*INS v. Chadha*,
  462 U.S. 919 (1983) ..............................................................................16

*J.E.F.M. v. Lynch*,
  837 F.3d 1026 (9th Cir. 2016) ..............................................................14

*Jennings v. Rodriguez*,
  583 U.S. 281 (2018) ................................................................................8

*Landano v. Rafferty*,
  970 F.2d 1230 (3d Cir. 1992) ................................................................16

*Liriano v. United States*,
  95 F.3d 119 (2d Cir. 1996) ...................................................................10

*Lucas v. Hadden*,
  790 F.2d 365 (3d Cir. 1986) ...........................................................1, 5, 8

*Maryland v. King*,
  567 U.S. 1301 (2012) ............................................................................18

*Massieu v. Reno*,
  91 F.3d 416 (3d Cir. 1996) ..............................................................15, 16

*Monsalvo v. Bondi,*
  145 S. Ct. 1232 (2025) ................................................................................15

*Nken v. Holder,*
  556 U.S. 418 (2009) ............................................................................. 6, 19

*Padilla v. Rumsfeld,*
  542 U.S. 426 (2004) ............................................................. 9, 10, 11, 12

*Reno v. American-Arab Anti-Discrimination Comm.,*
  525 U.S. 471 (1999) ......................................................................13, 14, 19

*Santana v. United States,*
  98 F.3d 752 (3d Cir. 1996) ...................................................................11

*Schlanger v. Seamans,*
  401 U.S. 487 (1971) ...............................................................................12

*Singleton v. Piazza,*
  No. 05-cv-6685, 2006 WL 2520581 (E.D. Pa. Aug. 25, 2006) ............ 16, 17

*Tazu v. Att'y Gen.,*
  975 F.3d 292 (3d Cir. 2020) ...........................................................13, 16

*Trump v. J.G.G.,*
  145 S. Ct. 1003 (2025) .............................................................................9

*United States ex rel. Knauff v. Shaughnessy,*
  338 U.S. 537 (1950) ...............................................................................18

*United States v. Martinez-Fuerte,*
  428 U.S. 543 (1976) ...............................................................................19

*Vasquez v. Aviles,*
  639 F. App'x 898 (3d Cir. 2016) ...........................................................14

*Velasco Lopez v. Decker,*
  978 F.3d 842 (2d Cir. 2020) .....................................................................8

*Verde-Rodriguez v. Att'y Gen.,*
  734 F.3d 198 (3d Cir. 2013) ...................................................................14

*Winter v. NRDC,*
  555 U.S. 7 (2008) ............................................................................ 2, 17

## Statutes

8 U.S.C. §1252(a)(2)(D) ........................................................................13

8 U.S.C. § 1182(a)(6)(C) ...............................................................1, 3, 4, 7

8 U.S.C. § 1226(a) ..................................................................................7

8 U.S.C. § 1226(e) .............................................................................. 5, 7

8 U.S.C. § 1227(a)(4)(C) .........................................................................1

8 U.S.C. § 1229a(c)(5) ...........................................................................15

8 U.S.C. § 1252(a)(5) .......................................................................14, 15

8 U.S.C. § 1252(b)(9) .....................................................................13, 14, 15

8 U.S.C. § 1252(g) ................................................................................12

28 U.S.C. §1406(a) ................................................................................4

28 U.S.C. §2241 ...........................................................................3, 6, 13

28 U.S.C. § 1631 ....................................................................................9

## **INTRODUCTION**

Nearly four months after Petitioner Mahmoud Khalil filed his habeas petition challenging the decision to initiate removal proceedings—and without first making *any* finding regarding the likelihood he would succeed on his challenge to his detention— the district court ordered the government to release Petitioner from immigration custody. That was a gross abuse of the court's authority under *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), and warrants a stay pending appeal.

The district court's order came days after the court entered preliminary injunctive relief on Petitioner's challenge to the constitutionality of his removal and detention pursuant to 8 U.S.C. § 1227(a)(4)(C) and the Secretary of State's determination that his presence or activities would have potentially serious foreign policy consequences and compromise a compelling U.S. foreign policy interest. The government will challenge that flawed constitutional ruling in due course on appeal. But, as the district court itself initially recognized, Petitioner was lawfully detained on a *second*, independent basis: a removal charge for document fraud, 8 U.S.C. § 1182(a)(6)(C). Nonetheless, without waiting for the administrative process to run its course (through a bond hearing before an immigration judge) or making any of the necessary findings to justify awarding preliminary injunctive relief, the district court assumed the role of the immigration judge and ordered Petitioner released without any monitoring or reporting requirements. *See* Add.066; Add.076–77. The Court should now stay that order.

1

Respondents are likely to succeed on the merits for at least four reasons (again, even setting aside the district court's constitutional ruling). *First*, the Immigration and Nationality Act (INA) bars the court from usurping the role of the immigration judge and conducting a bond hearing for the Petitioner. *Second,* the government is likely to succeed in invalidating the order because the district court never acquired jurisdiction over the petition in the first place. Petitioner did not file a petition in the District of New Jersey while he was detained there. This habeas action should instead have proceeded in his district of confinement, the Western District of Louisiana. *Third*, the INA eliminates the court's authority over Khalil's claims. *Finally*, the district court badly overreached when it interpreted *Lucas* as giving it the authority to order Petitioner's release without finding Petitioner is likely to succeed on the merits of his release claim. A merits-free injunction flouts the Supreme Court's controlling standard from *Winter v. NRDC*, 555 U.S. 7, 20 (2008).

The balance of the equities also favors a stay pending appeal. The district court's order directly interferes with the immigration court's management of its docket and intrudes on the Executive's authority over immigration detention. To make matters worse, the order forecloses ordinary, commonsense steps to ensure Petitioner's presence for further proceedings and, ultimately, removal.

This Court should therefore grant a stay of the district court's order granting Khalil release pending resolution of his habeas petition.

# BACKGROUND

**Immigration Background.** Mahmoud Khalil, a native of Syria and citizen of Algeria, entered the United States on a student visa in December 2022. *See* Add.079. He adjusted to lawful permanent resident status in November 2024. *Id.* On March 8, 2025, immigration officials arrested Petitioner for the purpose of placing him in removal proceedings. *Id.* HSI served Khalil with a Notice to Appear (NTA) charging him as being removable on two grounds: (1) under 8 U.S.C. §1227(a)(4)(C)(i), which applies where the Secretary of State has reasonable grounds to believe that an alien's presence or activities in the United States would have potentially serious adverse foreign policy consequences, and (2) under 8 U.S.C. §1182(a)(6)(C), which renders "inadmissible" "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter." *Id.*; Add.087–91

**Proceedings in the Southern District of New York**. On March 9, 2025, while Petitioner was detained in New Jersey, Petitioner's attorney filed a habeas petition under 28 U.S.C. § 2241 in the Southern District of New York. Add.126. The operative petition challenges his current immigration detention as unlawful on the basis that the removal charges were improperly motivated by his speech, and he primarily seeks an order terminating his removal proceedings and requiring his immediate release. Add.092–124.

On March 19, 2025, the Southern District of New York found that it lacked jurisdiction over the habeas petition because Khalil was in New Jersey when the petition

was filed. Add.128-60. The court applied the immediate-custodian rule, concluding that the "core" and any potential "non-core" claims should be heard by a court that "has the authority to consider [the] entire Petition" and declined to "infer that the Government's 'purpose' in moving him to New Jersey" constituted gamesmanship. Add.145-45. The Southern District declined to transfer the action to the Western District of Louisiana—where Khalil was by that time detained—finding instead that the district-of-confinement and immediate-custodian rules were not matters of subject-matter jurisdiction. *Id.* Instead, it applied 28 U.S.C. §1406(a), and held that New Jersey was the appropriate jurisdiction because Petitioner could have brought his action there at the time of filing. *See* Add.155–58.

**Proceedings below**. Upon transfer to the District of New Jersey, Petitioner filed a motion for a preliminary injunction, seeking to enjoin the government's reliance on § 1227(a)(4)(C) to remove or detain Petitioner. The district court later concluded that Petitioner is likely to succeed on the merits of his challenge to the constitutionality of his removal under § 1227(a)(4)(C) and entered an order prohibiting Petitioner's detention or removal on that ground. But Petitioner remained in custody on the government's additional, independent removal charge, 8 U.S.C. § 1182(a)(6)(C), and so no immediate appeal or stay motion was necessary.

Petitioner challenged his continued detention in successive filings. He first asserted that the government violated the injunction when it failed to release him. But

the district court properly confirmed that the preliminary injunction did not prohibit detention or removal on alternative grounds. Add.347–48.

Petitioner next sought release under *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), a non-immigration case in which this Court suggested that a court may grant bail pending review of a habeas petition in limited circumstances. The district court interpreted Petitioner's request as a request for bail on the second removal charge, Add.006, and proceeded to order Petitioner released on bond, Add.063, without determining whether he is likely to prevail on the merits of his challenge to his continued detention on the alternative charge, Add.062.

The district court rejected the government's arguments that 8 U.S.C. § 1226(e) prohibits the district court from supplanting the immigration court's role in determining bond eligibility, and that release without finding a likelihood of success on the merits of the claim would run afoul of *Winter*. The district court also did not consider any other jurisdictional bar relevant to Petitioner's claims. Further, the district court rejected the government's request that Petitioner be released on ankle monitoring and required to report at regular ICE check-ins. Add.066;Add.182. The government immediately filed a notice of appeal. Dkt. No.1.

## **ARGUMENT**

In assessing a motion for stay pending appeal, courts consider: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is

granted, and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors "are the most critical[,]" and, when the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 434-35 (2009).

This Court should grant a stay. The INA commits to the Executive's discretion the decision whether to detain an alien who is in removal proceedings. Further, both the INA (which governs federal courts' jurisdiction over immigration-related orders) and the federal habeas statute (which governs federal courts' jurisdiction over habeas petitions) bar jurisdiction here, for multiple reasons. And, jurisdiction aside, the district court seriously erred in finding bond warranted without evaluating the merits.

The balance of the harms also favor a stay, because the district court's order has already interfered with—indeed, conflicted with—parallel immigration proceedings. It is precisely this type of collateral interference that Congress has forbidden.

## I.    The Government Is Likely To Succeed on the Merits.

The district court's order violates multiple jurisdictional bars and is inconsistent with the court's authority to hear claims brought under 28 U.S.C. §2241. Setting aside the jurisdictional bars, the government is likely to succeed in showing the district court misapplied *Lucas* in granting the motion for release.

## A. The INA deprives the district court of authority to conduct a bail hearing and order release.

The district court clearly erred in purporting to exercise authority to override the statutory restrictions on judicial review of detention decisions. The INA confers on the

Executive the discretion to detain aliens pending a final order in removal proceedings. *See* 8 U.S.C. § 1226(a) (authorizing ICE to arrest and detain an alien "pending a decision on whether the alien is to be removed"). Although the preliminary injunction order eliminated § 1227(a)(4)(C) as a basis for Petitioner's detention and removal, Petitioner remained lawfully detained based on a *second* charge, under 8 U.S.C. §1182(a)(6)(C). He is eligible for a bond hearing before an immigration judge consistent with § 1226(a) and its attendant regulations. Rather than allow the administrative bond process to run its course, however, the district court framed Petitioner's motion as a request for bail on that second removal charge, Add.006, and granted it, Add.063.

The court's actions cannot be squared with the plain text of 8 U.S.C. §1226(e) and its prohibition on judicial review of discretionary decisions, including whether to detain aliens who are in removal proceedings. Section 1226(e) provides: "The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e). Courts—including this Court—have consistently applied this provision to bar review of discretionary decisions whether to detain aliens placed in removal proceedings. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018); *Borbot v. Warden, Hudson County Correctional Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

The district court relied on *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), for the proposition that this Court may grant bail pending habeas review in an immigration case. But *Lucas* did not involve immigration proceedings. And, even more important, it predates the enactment of § 1226(e) by a decade, so cannot possibly be construed as overriding the specific statutory limitations on this form of relief.

The district court declined to apply § 1226(e), relying heavily on the reasoning in *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008), in which the Seventh Circuit held that section 1226(e) "strips [courts] of [the] jurisdiction to review [bond] judgments designated as discretionary but does not deprive [courts] of [the] authority to review statutory and constitutional challenges." But the district court did *not* order Petitioner released based on its review of any statutory or constitutional challenge; rather, the district court relied entirely on its equitable power to order release *without* making any determination regarding the legality of Petitioner's continued detention on the fraud charge. In fact, the court explicitly and repeatedly noted that it had not concluded that Petitioner is likely to succeed on the merits of any challenge to the constitutionality of Petitioner's continued detention on § 1182(a)(6)(C) grounds. Dist. Ct. ECF No. 272 at 99. Under these circumstances, there is no way to avoid § 1226(e). That alone compels a stay.

**B. The district court lacks habeas jurisdiction over the petition because it was never filed in Petitioner's place of confinement.**

The release order is doubly unlawful because the district court never had habeas jurisdiction over this case in the first place. The Supreme Court has made clear that for claims that "fall within the 'core' of the writ of habeas corpus," "jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005-06 (2025); *see also Padilla v. Rumsfeld,* 542 U.S. 426, 434-35 (2004). For Petitioner, that is the Western District of Louisiana. The District of New Jersey had no authority to adjudicate the habeas petition.

*Padilla* established two rules for habeas jurisdiction: First, a habeas petition may file that petition only in the district where she is detained; and, second, the petition must name the custodian detaining her in that district. 542 U.S. at 434-35. Neither condition was satisfied here: Petitioner filed his petition in New York, although he was then detained in New Jersey; and by the time the case was transferred to New Jersey, Khalil was already detained in Louisiana. Petitioner's immediate custodian was not located in New Jersey either. Under a straightforward application of *Padilla*, the district court erred at the outset by asserting habeas jurisdiction here.

None of the district court's reasons justified its exercise of habeas jurisdiction. The court held that it had jurisdiction under the transfer statute—28 U.S.C. § 1631— on the ground that when Petitioner filed his original habeas petition, it could have been brought in New Jersey. But a general transfer statute cannot be used to override the specific statutory prerequisites for a particular remedy. Section 1631 serves "to rescue cases mistakenly filed in the wrong court, and to allow transfer to reach a just result."

*Castillo v. Att'y Gen.*, 109 F.4th 127, 135 (3d Cir. 2024); *see also Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996). Specifically, the statute allows transferee courts to excuse "technical obstacles" that would otherwise prevent it from exercising its *existing authority* over a case. *Griffin v. United States*, 621 F.3d 1363, 1365 (Fed. Cir. 2010). The statute thus provides that a court may transfer a case to another court "in which the action or appeal could have been brought at the time it was filed or noticed," and that case "shall proceed as if it had been filed in [that court] to which it is transferred on the date upon which it was actually filed." There is a fundamental difference, however, between using § 1631 to excuse a threshold technical or procedural defect and using it to try to acquire *substantive authority* that the court would otherwise lack. The former is using the statute as intended; the latter is stretching it beyond its bounds. *See, e.g., Castillo*, 109 F.4th at 135; *Liriano*, 95 F.3d at 122-23.

The district court's order falls on the wrong side of that line. Section 2241, at bottom, is a specific federal statute that authorizes the federal courts to issue a specific sort of remedy (habeas), if and only if certain preconditions are satisfied. *See Padilla*, 542 U.S. at 434-35. Nothing in section 1631 allows a district court to cast aside those statutory requirements based on the fiction that the suit was properly before it. Notably, this Court has held that § 1631 does not allow courts to ignore substantive limits on jurisdiction. *See Campbell v. OPM*, 694 F.2d 305, 309 n.6 (3d Cir. 1982); *accord De Ping Wang v. DHS*, 484 F.3d 615, 617-18 (2d Cir. 2007). The same is true here: Nothing in §

10

1631 vests the district court to issue habeas relief, when that court has not—and cannot—satisfied the specific statutory prerequisites that Congress set for doing so.

Section 1631 does not apply for a second reason: it applies only to "civil action[s]" and that category does not include habeas proceedings. *See Santana v. United States*, 98 F.3d 752, 754-55 (3d Cir. 1996) (noting that habeas proceedings are "hybrid" in nature and "are often determined to be outside the reach of the phrase 'civil action.'"); *Garrett v. Murphy*, 17 F.4th 419, 431 (3d Cir. 2021); *Daley v. Fed. Bureau of Prisons*, 199 F. App'x 119, 121 (3d Cir. 2006) (Equal Access to Justice Act).

Nor does *Ex Parte Endo* confer jurisdiction on the court below. The Supreme Court has explained that *Endo* supplies a "limited" exception that applies *only* when a petitioner has "properly file[d]" a habeas petition in the original court. *Padilla*, 542 U.S. at 441. In those circumstances, the original court retains jurisdiction that it had acquired "over [the petitioner's] *properly* filed habeas petition that named his *then-immediate custodian*," notwithstanding a subsequent decision to transfer the petitioner to a different judicial district. *Anariba v. Director Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021) (emphases added). Where habeas jurisdiction never vested, however, there is no jurisdiction for a district court to retain. And that is the case here. Because Petitioner never filed a proper petition in the District of New Jersey when he was detained there, habeas jurisdiction never vested in that court.

The district court also relied on the judge-made "unknown custodian exception" to excuse Petitioner's failure to name a proper respondent. That exception, however,

allows a court to relax the immediate-custodian rule (and the district-of-confinement rule) only in the "limited and special circumstance[]" where the government is refusing to disclose the location of the petitioner (and, therefore, the identity of the custodian) for a prolonged period and the petitioner's counsel cannot feasibly ascertain where the petitioner is being housed. *Demjanjuk v. Meese*, 784 F.2d 1114, 1115-16 (D.C. Cir. 1986); *see also Padilla*, 542 U.S. at 450 n.18 (exception applies when "a prisoner is held in an undisclosed location by an unknown custodian" because "it is impossible to apply the immediate custodian and district of confinement rules"). That exception cannot apply here, where Petitioner's counsel's inability to identify the proper custodian lasted only for a brief period. And because no exception applies, Petitioner's failure to name the proper respondent subject to a district court's jurisdiction is "fatal." *Schlanger v. Seamans*, 401 U.S. 487, 489-91 (1971).

**C. The INA further bars the district court's review of Petitioner's claims**.

The district court's order was also improper because at least two other provisions of the INA divest district courts of jurisdiction over cases like this one.

**8 U.S.C. § 1252(g)**. Petitioner's challenge to his detention is barred by 8 U.S.C. § 1252(g). Congress provided there that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action ... to commence proceedings … against the alien," "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. By its terms, this jurisdiction-stripping provision precludes habeas review

under 28 U.S.C. § 2241 of claims arising from a decision or action to commence removal proceedings. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). The decision as to the method by which removal proceedings are commenced—which is the genesis of Petitioner's detention—is a discretionary one that § 1252(g) renders non-reviewable by a district court. *See id.* at 487.

Nor can a habeas petitioner like Khalil circumvent § 1252(g)'s jurisdictional bar by challenging the determination of another Executive Branch officer or recharacterizing a challenge to "commence[ment]" of proceedings as a challenge to *detention* at the commencement of proceedings. *See Tazu v. Att'y Gen.*, 975 F.3d 292, 298 (3d Cir. 2020) (cautioning against reading § 1252(g) to allow "a challenge to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law" and extending bar to detention claim). A contrary rule would render § 1252(g)'s jurisdictional bar "a paper tiger" or "toothless." *E.F.L. v. Prim*, 986 F.3d 595, 965 (7th Cir. 2021).

**8 U.S.C. § 1252(b)(9)**. Separately, any challenges to actions taken in Petitioner's removal proceedings must be pursued by filing a petition for review in the appropriate court of appeals if (and after) he receives a final order of removal. *Tazu*, 975 F.3d at 294; 8 U.S.C. §1252(a)(2)(D). Petitioner cannot short-circuit that process by seeking collateral review in the district court while the immigration proceedings play out in another forum. Yet that is exactly what the district court allowed.

In the REAL ID Act, Congress prescribed a single path for judicial review of orders of removal: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5); *see also Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 201 (3d Cir. 2013). The Act further provides that, "[j]udicial review of all questions of law and fact … *arising from any action taken or proceeding brought to remove an alien from the United States* … shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9) (emphasis added). Read together, these provisions manifest Congress's intent to channel and consolidate judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals)" as part of a petition for review).

In light of that sweeping purpose, "most claims that even relate to removal" are improper if brought before the district court. *E.O.H.C. v. Sec. DHS,* 950 F.3d 177, 184 (3d Cir. 2020); *see also AADC*, 525 U.S. 483 (labeling § 1252(b)(9) an "unmistakable zipper clause," and defining a zipper clause as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review'"); *Vasquez v. Aviles*, 639 F. App'x 898, 900–01 (3d Cir. 2016); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, §1252(a)(5) and §1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the [petition-for-review] process.").

14

The district court held that § 1252(b)(9) does not apply because there is not yet a final order of removal, and "meaningful review" would otherwise not be available. But this Court has not recognized either exception. To the contrary, it has held that the statute applies to aliens *without* final orders of removal. *See E.O.H.C.*, 950 F.3d at 183, 187–88 (applying bar to petitioners without final removal orders). It has also held that a petition for review provides for meaningful review even though it must follow the immigration proceedings. *See Massieu v. Reno*, 91 F.3d 416, 417 (3d Cir. 1996) (Alito, J.).

Here, an immigration judge has determined that Petitioner is removable. Add.299–332. Petitioner can appeal to the Board of Immigration Appeals. 8 U.S.C. § 1229a(c)(5). If unsuccessful, he can file a petition for review. 8 U.S.C. § 1252(a)(5). During these proceedings, Petitioner will have the ability to press any bases he wishes to raise to contest his removal. *See* 8 U.S.C. § 1252(b)(9); *Monsalvo v. Bondi*, 145 S. Ct. 1232, 1241 (2025).

The district court jumped the gun, and short-circuited the administrative process, by first rejecting one of the charges of removability and then granting release. The removal challenge unquestionably "relate[s] to removal." *E.O.H.C.*, 950 F.3d at 184. The detention challenge is inextricably intertwined with it. The district court's order thus flouts Congress's clear direction that immigration proceedings must proceed first, without district-court interference.

This Court's decision in *Massieu* is directly on point, and confirms that Petitioner must raise his challenges to removability (and thus detention) through the petition for

review process. 91 F.3d at 422 (recognizing that court of appeals could review the final removal order and "'all matters on which the validity of the final order is contingent'") (quoting *INS v. Chadha*, 462 U.S. 919, 937–39 (1983)); *see also Tazu*, 975 F.3d at 300. This is yet another ground sufficient to support a stay.

### D. Jurisdiction aside, the district court erred in ordering relief.

This Court has described "a preliminary grant of bail [as] an exceptional form of relief in a habeas corpus proceeding," *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992), finding it appropriate only where: (1) the petitioner has raised "substantial constitutional claims upon which he has a high probability of success"; and (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Id.* (cleaned up). Courts in this district have repeatedly applied the standard in the conjunctive. *See, e.g.*, *Ingram v. PBPP*, No. 23-cv-565, 2023 WL 6129539, at *1 (W.D. Pa. Sept. 19, 2023). A petitioner seeking bail pending habeas review thus carries a "high burden." *Singleton v. Piazza*, No. 05-cv-6685, 2006 WL 2520581, at *2 (E.D. Pa. Aug. 25, 2006).

Petitioner fails both prongs. Petitioner cannot show either that: (1) he has raised "substantial constitutional claims upon which he has a high probability of success," or (2) "extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Landano*, 970 F.2d at 1239.

On Prong 1, Petitioner runs into the multiple jurisdictional bars precluding adjudication of this habeas petition. *See supra* at I.A-C. Moreover, Petitioner has not

even attempted to seek a preliminary injunction with respect to the document fraud charge on which the immigration judge found him removable. Because that is an independent and fully sufficient basis for removal—which is unchallenged—there is no relevant probability of success that could justify release at this juncture.

The district court did not actually conclude otherwise. Indeed, the court refused to consider the merits of the document fraud charge—unsurprisingly, since Khalil has yet to challenge them. More, the district court candidly acknowledged that "Petitioner has failed to develop any likely to succeed argument on anything other than the vagueness ground as to the Secretary of State's determination," Add.049 Yet the court nonetheless reasoned that the *Lucas* (and *Landano*) standards are disjunctive; the court thus entered relief solely on the court's finding of extraordinary circumstances. That was error. It flouts the Supreme Court's mandate that preliminary injunctive relief requires a plaintiff to "establish that he is likely to *succeed on the merits*," *Winter*, 555 U.S. at 24 (emphasis added). The court's merits-agnostic injunctive order is facially contrary to *Winter* and thus would not survive appellate review.

In all events, the court also erred by finding extraordinary circumstances at Prong 2. Petitioner failed to carry the "high burden" of establishing such circumstances. *Singleton*, 2006 WL 2520581, at *2; *see also Elkimya v. Dep't of Homeland Sec.*, 484 F.3d 151, 154 (2d Cir. 2007). Personal hardships are not the sort that give rise to relief in this context—in no small part, because few are personally unburdened by being placed in immigration detention during their removal proceedings. Given this, an "extraordinary

circumstance" is not an open-ended inquiry into the equities; rather, it is concerned with whether "continued detention" would "affect [a] Court's ultimate consideration of the legal issues presented." *Elkimya*, 484 F.3d at 154. And here, there is no evidence in the record that Petitioner's representation has been compromised by his detention. Nor is this a case where bail is necessary to preserve the efficacy of any later remedy—such as cases where an appeal would last longer than the sentence imposed at trial. And while it is true Petitioner will be separated from his family during detention, that is inherent to detention; it is a ubiquitous occurrence in this context, not an exceptional one.

## II.    The Equities and Public Interest Favor Staying the Release Order.

The government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court form effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). That is particularly true here because rules governing immigration "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).

The balance of the equities also favors a stay pending appeal. The district court's order directly interferes with the immigration court's management of its docket and intrudes on the Executive's authority over immigration detention. Indeed, the conduct of the district court in this case perfectly illustrates why Congress chose to channel all judicial review of removal proceedings to the courts of appeals through the filing of a petition for review, rather than permitting collateral and simultaneous challenges to ongoing removal proceedings. By ignoring the jurisdictional rules Congress put in place,

parallel proceedings progressed in the district court and before the immigration judge, resulting in those bodies issuing conflicting decisions on the exact same issue *on the exact same day*. Within mere hours of each other, an immigration judge determined that Petitioner was removable and could be detained while a district judge ordered his release.[1] Such duplicative proceedings resulting in contradictory orders are clearly not what Congress had in mind. And to make matters worse, the order forecloses ordinary, commonsense steps to ensure Petitioner's presence for further proceedings and, ultimately, removal.

Moreover, it is well settled that the public interest in the enforcement of the United States' immigration laws is significant. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. That principle extends to release orders because "[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'" *Id.* (quoting *AADC*, 525 U.S. at 490).

---

[1] The immigration judge initially denied Petitioner's request for a custody redetermination, citing the foreign policy removal charge, as a basis for his continued detention. Before the immigration judge had an opportunity to revisit the order in light of the preliminary injunction, the district court hastily ordered Petitioner released.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the government's motion

and stay the district court's order pending appeal.

Dated: June 26, 2025                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General
Office of Immigration Litigation

SARAH S. WILSON
Assistant Director

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c) because it contains 4,993\ words. This brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 32 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
