No. 25-2162

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

Mahmoud KHALIL,

*Petitioner–Appellee,*

Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Todd LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General of the Department of Justice,

*Respondents–Appellants.*

---

## OPPOSITION TO RESPONDENTS' MOTION TO STAY
## THE DISTRICT COURT'S ORDER PENDING APPEAL

---

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner–Appellee*

## **INTRODUCTION**

Until the district court issued its bail order, Respondents had detained Petitioner Mahmoud Khalil, a lawful permanent resident, for more than 100 days based purely on his constitutionally protected political speech supporting Palestinian rights. Within hours of his arrest—the first in a series of unprecedented government actions taken against non-citizen students in retaliation for campus dissent—Petitioner challenged his detention as unconstitutional under the First and Fifth Amendments. Over the next three months, as the parties engaged in energetic litigation, Respondents held Petitioner thousands of miles from home, preventing him from experiencing the birth and first months of his first child. Then, on June 20, the district court ordered Petitioner's release on bail pending the litigation of his habeas petition.

There is absolutely no basis for a stay of that order.

First, Respondents dismiss the order as "hastily" issued, Mot. 19 n.1., but it came after the district court oversaw the creation of a voluminous factual record and carefully determined in lengthy opinions that it has both habeas and subject-matter jurisdiction. Those rulings were correct, as multiple other courts have recently concluded.

1

Second, in ordering release, the district court correctly found Petitioner's detention claim is substantial and bail is justified by multiple extraordinary circumstances, including the highly unusual nature of his punitive detention, its chilling effect, and that despite multiple opportunities to do so, Respondents had failed to develop *anything* in the record to counter the extensive evidence that Petitioner is not a flight risk or danger to the community—"Period. Full stop." Add.056.

And third, Respondents cannot show any legitimate irreparable harm, the equities weigh decisively against their attempt to re-arrest and re-detain Petitioner, and a stay would work a manifest injustice by furthering the very unconstitutional censorship he challenges through his habeas petition.

## FACTUAL BACKGROUND

On March 8, after attending an Iftar dinner, Petitioner and his then-pregnant U.S. citizen wife were followed into their university housing by several plainclothes federal agents who—seemingly unaware of Petitioner's permanent resident status—arrested him.[1] Third Am. Pet. ¶¶ 45-47 (ECF

---

[1] Petitioner's wife captured the latter part of the arrest on video. ACLU (@aclu_nationwide), Instagram (Mar. 14, 2025), https://www.instagram.com/reel/DHMYHAxRsK1.

236).[2] The agents brought him to 26 Federal Plaza in New York City, the location of the Immigration and Customs Enforcement ("ICE") New York Field Office. *Id.* ¶ 51, 58.

While Petitioner was being held in New York, White House officials were in contact with the ICE agents processing him. *Id.* ¶ 58. The agents presented him with a Notice to Appear indicating a future immigration court date in Louisiana. *Id.* ¶¶ 59-60. And they refused his request to speak with his attorney. *Id.* ¶ 59. At some point overnight, the agents transported Petitioner to Elizabeth Detention Center ("EDC") in New Jersey. *Id.* ¶ 61. While there, Petitioner again requested to speak with his lawyer and was twice refused. *Id.* ¶ 62; Khalil Decl. ¶¶ 9, 12 (ECF 73-1).

Immediately recognizing that Petitioner's arrest, detention, and threatened deportation were unlawful, his lawyers raced to draft a habeas petition on his behalf. One of them checked ICE's online detainee locator multiple times to confirm his location in New York City, including just before filing. Third Am. Pet. ¶¶ 54-55. At 4:40 a.m. on March 9, Petitioner's attorneys filed a habeas petition on his behalf in the S.D.N.Y. ¶ 54; *see* Pet. (ECF 2).

---

[2] ECF numbers reference the district court docket, 25-cv-1963 (D.N.J.).

3

Unbeknownst to his lawyers, at the time the petition was filed, Petitioner had already been at EDC for roughly 80 minutes. Add.352 n.7. And by the time, later that morning, the ICE locator finally updated to reflect Petitioner's presence in New Jersey, he was already gone—shackled, in a van, on his way to JFK Airport. Third Am. Pet. ¶¶ 55, 63; Khalil Decl. ¶¶ 20-21. The following morning, almost 40 hours after his arrest, Petitioner arrived at an ICE detention facility in Jena, Louisiana, almost 1500 miles away, where he remained until the district court's bail order freed him. Third Am. Pet. ¶¶ 56, 67, 70, 99; *see* Add.076-77.

## PROCEDURAL HISTORY

The initial habeas petition filed in the S.D.N.Y. was assigned to Judge Jesse M. Furman. Over the next week, the parties filed various motions—most relevant here, Respondents filed a motion to dismiss the petition for lack of habeas jurisdiction or to transfer it to Louisiana, ECF 30; and Petitioner filed a motion for release on bail during the pendency of his habeas action, ECF 53. On March 19, Judge Furman denied Respondents' motion to dismiss but granted their motion to transfer—"albeit to the District of New Jersey, not to the Western District of Louisiana"—and transferred all other pending motions

4

to the new district court. *Khalil v. Joyce*, 771 F. Supp. 3d 268, 291 (S.D.N.Y. 2025).

After transfer to the D.N.J., the case was assigned to Judge Michael E. Farbiarz. Over the next three months, the district court methodically determined, in multiple opinions, that it has habeas and subject-matter jurisdiction over the petition. Add.349-415 (habeas jurisdiction);[3] Add.191-298 (subject-matter jurisdiction notwithstanding jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA")). And four weeks ago, the court issued a preliminary injunction that prohibited Respondents from seeking to detain or remove Petitioner based on the government's primary immigration charge—the "foreign policy ground" in 8 U.S.C. § 1227(a)(4)(C), under which the Secretary of State had determined that Petitioner's speech in support of Palestinian rights meant that his presence and activities in the United States interfered with U.S. foreign policy. ECF 272 (use of foreign policy ground against Petitioner likely unconstitutionally vague); Add.333-48 (granting preliminary injunction).[4]

---

[3] This Court denied Respondents' petition to certify the habeas opinion for interlocutory review. Order, No. 25-8019 (3d Cir. May 6, 2025).

[4] Respondents appealed, but do not seek to stay, the injunction.

5

From the start, Respondents relied on the foreign policy ground to justify Petitioner's detention, but after the entry of the preliminary injunction, they informed the court that they were "now" detaining Petitioner based on a second immigration charge. ECF 304. Respondents had lodged this charge, involving alleged inaccuracies on Petitioner's lawful permanent resident application, one week after he filed the habeas petition. Third Am. Pet. ¶ 88. Renewing his motion for release on bail, ECF 53, 93, 308, 312, Petitioner pointed to undisputed record evidence that he posed no flight risk or danger and that detention based on the second, post-hoc charge was extraordinarily rare, and he argued that his continued detention on the second charge was both (1) further evidence of the substantial constitutional claims in his petition alleging First Amendment retaliation and punitive detention in violation of due process, and (2) an extraordinary circumstance justifying release pending litigation of the petition. ECF 308, 312.

At a June 20 bail hearing, the district court ordered Petitioner's immediate release. ECF 316; *see* Add.001-74. Ruling from the bench, the court cited to extensive record evidence to which Respondents had "opted to say nothing in response." Add.055; *see* Add.022, Add.037, Add.056, Add.073. And the court explained at length why Respondents' legal arguments against

6

release were wrong and why the court's justifications for immediate release satisfied not only the standard for release under this Court's precedents, but a higher standard as well. Add.023-63. It also denied as entirely without merit Respondents' request for a seven-day stay of the release order. Add.068-71. Almost a week later, Respondents sought a stay in this Court.

## LEGAL STANDARD

Because a stay pending appeal is an "intrusion into the ordinary processes of . . . judicial review," the party seeking a stay bears a heavy burden, and a court must consider (1) whether the applicant makes "a strong showing" of likelihood of success on the merits; (2) whether the applicant will suffer irreparable injury "absent a stay"; (3) whether a stay would "substantially injure the other part[y]"; and (4) "where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426-27 (2009) (cleaned up).

The Court reviews a district court's denial of a stay pending appeal "for abuse of discretion, giving proper regard to the district court's feel of the case," *S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019), and the district court's factual findings must be accepted unless "clearly erroneous," Fed. R. Civ. P. 52(a)(6).

## ARGUMENT

I.    **Respondents are not likely to succeed on the merits.**

    A.    **The district court has habeas jurisdiction.**

The district court correctly concluded that it has habeas jurisdiction over the transferred petition based on the plain text of 28 U.S.C. § 1631 and longstanding Supreme Court precedent. As six courts have concluded since March, none of Respondents' counterarguments work. *See Khan Suri v. Trump*, 2025 WL 1806692, at \*4-6 (4th Cir. July 1, 2025) (denying stay pending appeal of bail order); *Öztürk v. Hyde*, 136 F.4th 382, 392-93 (2d Cir. 2025) (same); *Khan Suri v. Trump*, 2025 WL 1310745, at \*7-14 (E.D. Va. May 6, 2025); *Öztürk v. Trump*, 2025 WL 1145250, at \*5-10 (D. Vt. Apr. 18, 2025); *Öztürk v. Trump*, 2025 WL 1009445, at \*4-11 (D. Mass. Apr. 4, 2025); Add.372-84.

First, section 1631 *requires*, if in the "interest of justice," that a "civil action" for which there is "want of jurisdiction" be transferred to a court where the case "could have been brought at the time it was filed," and specifies that the case shall then "proceed as if it had been filed" in the transferee court at the original time of filing in the transferor court. Because Petitioner was in the D.N.J. at the time of filing, the petition could have been

filed there. Add.358 (citing the default "district of confinement" rule from *Padilla v. Rumsfeld*, 542 U.S. 426, 435 (2004)). And under section 1631, the petition "must be treated as having been filed in New Jersey on March 9 at 4:40am." Add.354; Add.377 (transfer in interest of justice); *see Öztürk*, 136 F.4th at 391-92.

Rather than contest how the statute works, Respondents push back on two grounds. They contend that section 1631 does not apply because habeas actions are not "civil actions," Mot. 11—but whether or not habeas actions are so classified in *other* statutory contexts, they clearly are for the purposes of the transfer statute, Add.376 (citing, *inter alia, Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002)).[5] And Respondents cobble together, from cases that offer them no support, an argument that the transfer here gave the district court "*substantive authority*" that it "otherwise lack[ed]." Mot. 10.[6]

---

[5] *See also, e.g., Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996); *Dragenice v. Ridge*, 389 F.3d 92, 97 (4th Cir. 2004); *Storey v. Lumpkin*, 8 F.4th 382, 390 (5th Cir. 2021); *Christian v. Hawk*, 923 F.2d 200 (D.C. Cir. 1990).

[6] Respondents point to cases that could not have been transferred under section 1631 because (unlike this one) they could not have been brought in other courts. *See Campbell v. Off. of Pers. Mgmt.*, 694 F.2d 305, 306, 309 n.6 (3d Cir. 1982) (claim "not subject to review" by any court); *Öztürk*, 136 F.4th at 391 (distinguishing *De Ping Wang v. DHS*, 484 F.3d 615, 617-18 (2d Cir. 2007) (untimely petition)).

But the "default" district of confinement and immediate custodian rules, *Padilla*, 542 U.S. at 435, are not "statutory prerequisites" for the habeas remedy, Mot. 11—made clear by both the habeas pleading provision's explicit allowance for omitting an unknown custodian in a petition, 28 U.S.C. § 2242, and Respondents' own acknowledgment of multiple "judge-made" exceptions to *Padilla*'s default rules, Mot. 11. Instead, section 1631 "merely remedies [a] procedural defect." *Öztürk*, 136 F.4th at 391.

Third, *Ex parte Endo*, 323 U.S. 283 (1944), did not "confer jurisdiction on the court below," Mot. 11—it prevented Respondents' movement of Petitioner from New Jersey to Louisiana from *depriving* the court below of jurisdiction it already had. Add.387-93. As *Endo* explains, the "objective" of habeas relief "may be in no way impaired or defeated by the removal of the prisoner from" a district court's "territorial jurisdiction." 323 U.S. at 307; *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 447 (3d Cir. 2021) (*Endo* bars "transfer" of a habeas petitioner "to a jurisdiction that is more amenable to the Government's position"); *Ex parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943) (adopting substance of *Endo* rule one year before *Endo*). Respondents argue that *Endo* protects habeas petitioners only where habeas jurisdiction originally "vested" in a particular court. Mot. 11. But "[u]nder

10

§ 1631," jurisdiction *did* vest in the D.N.J., because "the transferee court inherits the filing time of the transferor court." *Öztürk*, 136 F.4th at 392; Add.376-77.

Fourth, Respondents argue that habeas jurisdiction is lacking because the original petition did not name Petitioner's New Jersey custodian (even though Petitioner's lawyers could not have known that he was there when they filed). But the district court granted Petitioner leave to amend his petition to add the EDC warden as a Respondent, Add.404 n.32; *see* Second Am. Pet. (ECF 162), and that amendment "relates back" to the original date of the filing of the petition, Fed. R. Civ. P. 15(c)(1)(C)(1)-(2).

Even without the amendment, the "unknown custodian exception" to *Padilla*'s default rules for habeas jurisdiction applies. Add.398-414. Under the exception, when the government holds someone "in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18; *see id.* at 458 (Stevens, J., dissenting) (noting Court's unanimous acceptance of the exception); *see also Khan Suri*, 2025 WL 1806692, at *4-6; *Öztürk*, 136 F.4th at 392-93; *United States v. Moussaoui*, 382 F.3d 453, 464-65 (4th Cir. 2004); *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986); *Munoz-Saucedo v.*

11

*Pittman*, 2025 WL 1750346, at \*2-4 (D.N.J. June 24, 2025). *Padilla* makes clear that the "unknown custodian exception" is "the law of the land," Add.399, and it fits this case—in which Respondents silently moved Petitioner across state lines, denied Petitioner's requests to call his lawyers, and "affirmatively[]supplied" inaccurate information about his whereabouts, Add.397—to a tee, Add.409-10; *see Khan Suri*, 2025 WL 1806692, at \*6 (rejecting argument that exception applies only to "prolonged" detention); *Öztürk*, 136 F.3d at 392-93; *see also* Add.414 ("there is no gap in the fabric of habeas," but Respondents' argument creates one); *Boumediene v. Bush*, 553 U.S. 723, 765 (2008) (executive lacks "power to switch the Constitution on or off at will").

## B.    The INA does not bar Petitioner's release on bail.

Respondents contend that 8 U.S.C. §§ 1226(e), 1252(b)(9), and 1252(g) strip the district court of jurisdiction to review Petitioner's detention claim and order his release on bail. Mot. 6-8, 12-16. That argument is wrong, and every court that has considered Respondents' argument in recent months has rejected it. *See Mahdawi v. Trump,* 136 F.4th 443, 449-53 (2d Cir. 2025);

*Öztürk*, 136 F.4th at 396-401; *Khan Suri*, 2025 WL 1806692, at *7-9.[7]

The Supreme Court has repeatedly affirmed that, despite the INA's jurisdiction-stripping provisions, district courts have jurisdiction over claims of illegal civil immigration detention. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019); *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion). And this Court and others have reviewed such claims in habeas. *See, e.g., German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *Black v. Decker*, 103 F.4th 133, 138-39 (2d Cir. 2024); *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023); *Miranda v. Garland*, 34 F.4th 338, 352-53 (4th Cir. 2022); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006). None of Respondents' cited provisions bar review or release here.

**Section 1226(e).** "[O]ver and over again," courts have "held that there [is] insufficient clarity in 1226(e) . . . to strip habeas jurisdiction" over constitutional challenges to detention. Add.015-17 (collecting cases); *Öztürk*, 136 F.4th at 401 (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003)); *see Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (reviewing challenge to statutory detention authority).

---

[7] Respondents' motion does not put Petitioner's non-detention habeas claims at issue. *See Mahdawi*, 136 F.4th at 450 n.3.

Respondents' cases actually buttress *Petitioner's* position. Most critically, *Jennings* makes clear that section 1226(e) does not preclude challenges to the "extent of the Government's detention authority." 583 U.S. at 296; *see Borbot v. Warden Hudson Cnty. Corr. Facility,* 906 F.3d 274, 279 (3d Cir. 2018); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). Respondents also contend that *Al-Siddiqi v. Achim*—which held that, under *Demore*, 538 U.S. at 516-17, section 1226(e) does not bar habeas review of "constitutional challenges," 531 F.3d 490, 494 (7th Cir. 2008) (discussed at Add.018)—is inapplicable here because the court did not base its order on review of a constitutional challenge. Mot. 8. That is simply incorrect. Add.060-62 (finding Petitioner raised "substantial" due process claim that Respondents were "unconstitutional[ly]" using post-hoc charge to "punish" him for his speech).

Respondents' argument that *Lucas v. Hadden*, 790 F. 2d 365 (3d Cir. 1986), is limited to the criminal context or superseded by statute, Mot. 8, is flat wrong. A "core incident of habeas jurisdiction is the possibility of admitting somebody into bail," Add.017 (citing Third Circuit cases), and this principle applies to the civil habeas statute under which Petitioner challenges his immigration detention. *See Johnston v. Marsh*, 227 F.2d 528, 530-31 (3d Cir. 1955); *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). Neither section 1226(e)

nor any of the other statutory provisions that Respondents in section 1252 override this inherent authority. Add.015-17; *Elkimya v. DHS*, 484 F.3d 151, 154 (2d Cir. 2007) (discussing *Mapp* and rejecting jurisdiction-stripping argument based on REAL ID Act).

**Section 1252(b)(9).** Respondents claim that section 1252(b)(9) applies even where there is no final order of removal, and regardless of whether the petition for review ("PFR") provides meaningful review. Mot. 15. Both arguments fail.

First, this Court has held that the section 1252(b)(9) bar applies only to review of final orders. *Chehazeh v. Att'y Gen. of the U.S.*, 666 F.3d 118, 131-33 (3d Cir. 2012); Add.216-29.[8] But "[n]o order of removal is at issue here." *Öztürk*, 136 F.4th at 399; *Khan Suri*, 2025 WL 1806692, at *9.

Second, even if 1252(b)(9) applied to pre-order cases such as this one, habeas review is required to provide "meaningful" relief. *Jennings*, 583 U.S. at 293. From *Jennings*, this Court has derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal,

---

[8] The same is true with respect to section 1252(a)(5). *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311, 313 (2001).

§ 1252(b)(9) does not bar consideration by a district court." *E.O.H.C. v. DHS*, 950 F.3d 177, 180 (3d Cir. 2020); *see also* Add.230-39; *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).

And contrary to Respondents' contention, Mot. 15, the PFR process does not provide meaningful review of Petitioner's claims. Add.244-90 (explaining in detail why not). In fact, constitutional challenges to detention cannot even be heard on a PFR—and even if they could, the immigration courts lack jurisdiction to decide constitutional issues and are not empowered to develop a sufficient factual record for appellate review. Add.244-68; *Öztürk*, 136 F.4th at 400-01.

Regardless, Petitioner's "core argument is that his free speech and due process rights are being violated, *now*." *Mahdawi,* 136 F.4th at 452. Every day that the government detains him, it chills his First Amendment–protected speech and that of others who would speak out in support of Palestinian rights and accomplishes the unconstitutional objective of censoring political speech *now*, while it could influence public debate on current events. Waiting until the end of a lengthy PFR process to raise these claims would render them "effectively unreviewable," *Jennings*, 583 U.S. at 293, because "relief [would]

16

come too late to redress" Petitioner's First Amendment injuries, *E.O.H.C.*, 950 F.3d at 186, as to which "the law requires a faster pace," Add.278.

Further, *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996), differs from this case in key respects. Back then, this Court expected that the immigration court "could realistically . . . push things forward" by gathering facts and bringing its expertise to bear. Add.269. But after this Court's *Massieu* decision, the BIA concluded that an IJ cannot look behind the Secretary's determination, Add.265 & n.55 (citing *In re Ruiz-Massieu*, 22 I. & N. Dec. 833 (BIA 1999)); Add.302-03. Additionally, *Massieu* did not involve a First Amendment retaliation claim, which requires "a faster-than-usual timeline" than the PFR process would provide. Add.273.

Finally, Petitioner's detention claims are not "inextricably intertwined" with removal. Mot. 15. Courts must construe 1252(b)(9) narrowly to avoid "extreme" results that would render claims of "excessive detention" "effectively unreviewable." *Jennings*, 583 U.S. at 293; *see Nielsen*, 586 U.S. at 402; *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021). ICE's decision to detain Petitioner under 8 U.S.C. § 1226(a) in its discretion does not ineluctably follow from its decision to pursue his removal. Even if Petitioner's unlawful detention claims have "substantive overlap with challenges he may

bring in his removal proceedings, [they] do not themselves challenge or arise from," and "may be resolved without affecting," those proceedings. *Mahdawi*, 136 F.4th at 452 (cleaned up).

**Section 1252(g).** Section 1252(g) is a "narrow" provision that applies "only to three discrete actions" to "*commence* proceedings*, adjudicate* cases*, or execute* removal orders." *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)); *see Jennings*, 583 U.S. at 294. Respondents "dramatically overstate[]the reach of § 1252(g)," *Mahdawi*, 136 F.4th at 450, when they argue that the provision strips jurisdiction over Petitioner's unlawful detention claim. *See Kong*, 62 F.4th at 609 (no section 1252(g) bar to federal and state unlawful detention claims); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (same for First Amendment detention challenge). And *Tazu v. Att'y Gen. of the U.S.*, which involved a challenge to the execution of a removal order and the "brief door-to-plane detention" required to execute that order, 975 F.3d 292, 298 (3d Cir. 2020), is inapposite here.

18

**C.    The district court did not abuse its discretion in ordering
release on bail.**

First, the district court based its bail decision on extensive evidence of
extraordinary circumstances surrounding Respondents' ongoing detention of
Petitioner, not on hardships that are "ubiquitous" incidents to lawful
detention, Mot. 18. Specifically, the district court based its conclusion on (1)
extensive, uncontested evidence of Petitioner's lack of flight risk and
dangerousness, Add.053-56; (2) the "highly, highly, highly unusual" nature
of his detention, given both the lack of flight risk and dangerousness and the
strong, uncontested evidence that it is "overwhelming[ly] unlikely that a
person would be detained" on the misrepresentation charge, Add.057-58; (3)
the chilling effect on Petitioner's exercise of his First Amendment rights,
Add.058-59; (4) the inability of the immigration judge to consider whether
release is appropriate based on constitutional violations, Add.059; and (5)
the existence of Petitioner's substantial due process claim, Add.060-62.
Respondents point to no error, and numerous courts have recently granted
bail based on similar findings in similar challenges to the government's policy
of retaliation against and punishment of campus dissent. *See, e.g., Öztürk v.
Trump*, 2025 WL 1420540, at *8 (D. Vt. May 16, 2025); *Khan Suri v. Trump*,

2025 WL 1392143, at *1 (E.D. Va. May 14, 2025) (memorializing oral ruling); *Mohammed H. v. Trump*, 2025 WL 1334847, at *7 (D. Minn. May 5, 2025); *Mahdawi v. Trump*, 2025 WL 1243135, at *13 (D. Vt. Apr. 30, 2025).[9]

Second, the district court applied the proper standard for bail. While Respondents seek to limit bail decisions to the likelihood-of-success standard for a preliminary injunction, a federal court's inherent authority to grant bail has its own independent history and standards. *See Johnston*, 227 F.2d at 531; *Mapp*, 241 F.3d at 226. This Court has described the relevant standards as "requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both." *Lucas*, 790 F.2d at 367. The Court adopted the second, "narrower . . . standard" to "reflect[] the recognition that a preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding." *Id.* at 367. The district court properly reviewed Petitioner's motion under *Lucas*, Add.030, and also found a substantial claim under *Mapp*, the leading immigration habeas bail case, Add.062.

---

[9] Numerous courts have held that lack of flight risk and dangerousness is an extraordinary circumstance. *See, e.g., Leslie v. Holder*, 865 F. Supp. 2d 627, 638, 640 (M.D. Pa. 2012); *Moss v. Miniard*, 2024 WL 4326813, at *5 (E.D. Mich. Sept. 27, 2024).

Respondents ignore these precedents in favor of *Landano v. Rafferty*, which applied a stricter standard to post-conviction federal habeas petitioners seeking release on bail. 970 F.2d 1230, 1238-41 (3d Cir. 1992). But as the district court explained, *Landano* is a poor fit for the civil immigration detention context. Add.029. Unlike a post-conviction habeas adjudication in which a court has already tried and sentenced an individual for a crime, here, Petitioner is challenging the constitutionality of his ongoing executive detention, with no prior process, in the only forum that is empowered to consider those claims.

Third, Respondents claim that the district court "did not actually" review the merits of Petitioner's detention claim, Mot. 17, but that is simply wrong. As the court found, there is evidence that Respondents were "detaining and [are] seeking to keep [Petitioner] detained . . . in the face of thick evidence" of lack of flight risk or dangerousness and "strong evidence . . . that this is overwhelming[ly] unlikely in the ordinary course"— all of which amounts to "an effort to use the [post-hoc] immigration charge . . . to punish" Petitioner. Add.061. That makes out a substantial due process claim against detention on the post-hoc charge. Add.063; *see Öztürk,* 2025 WL 1420540, at *7; *Mahdawi*, 2025 WL 1243135, at *11; *Mohammed*

21

*H.*, 2025 WL 1334847, at *6; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (immigration detention is civil and must "bear a reasonable relation to the purpose for which the individual" is detained so that it remains "nonpunitive in purpose and effect" (cleaned up)); *Demore*, 538 U.S. at 532-33 (Kennedy, J., concurring).[10]

## II. Respondents cannot demonstrate any irreparable harm, and the equities decisively favor Petitioner.

First, Respondents have no claim to the kind of non-"speculative," "presently existing actual threat" that constitutes irreparable harm. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85, 487 (3d Cir. 2000). Appellate courts have "made pretty quick work," Add.070, of the only purported harm Respondents identify—the startling claim that the government always suffers

---

[10] This Court may affirm the district court's stay denial on any basis in the record. *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 116 (3d Cir. 2020). And under any bail standard (including *Landano*), Petitioner's First and Fifth Amendment claims justify release. The district court already found that Petitioner was likely to succeed on his void-for-vagueness challenge to the foreign policy ground. Add.333-48. And multiple courts have granted bail after finding substantial First Amendment claims where noncitizens similarly challenged detention based on pro-Palestine speech. *See Mahdawi*, 136 F.4th at 455; *Mahdawi*, 2025 WL 1243135, at *8-10, *Khan Suri v. Trump*, 2025 WL 1806692, at *3-4; *Öztürk*, 2025 WL 1420540, at *6; *Mohammed H.*, 2025 WL 1334847, at *3-5; *cf. Aditya W. H. v. Trump*, 2025 WL 1420131, at *10-14 (D. Minn. May 14, 2025).

irreparable harm when a court enjoins it from doing something it wants to do, Mot. 18. *See Khan Suri*, 2025 WL 1806692, at *9 (bail order neither inhibits Respondents from enforcing immigration laws nor terminates petitioner's immigration case); *Öztürk*, 136 F.4th at 402 (same); *Mahdawi*, 136 F.4th at 454-55 (same). And despite "ample opportunity," Respondents provided "no evidence" that they would be unable to "find and re-detain" Petitioner in the event this Court ultimately reverses the district court's bail order. Add.069-70.[11]

Second, a stay requiring Petitioner's re-detention would cause him severe injuries. It would re-inflict irreparable constitutional harm by further silencing his protected speech, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976), and re-subjecting him to unconstitutional detention, *see Zadvydas*, 533 U.S. at 690. *See* Add.058. It would also immensely harm Petitioner and his family, re-separating him from his wife and infant son, Add.053-62; *see Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (burden on families caused by "unnecessary detention" relevant to equities), and further hindering his job

---

[11] Respondents' delay of almost a week before seeking to stay Petitioner's release would "vitiate[] much of the force of" even a plausible claim of irreparable harm. *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977).

prospects, Add.053. And his re-detention would seriously frustrate his "ability to participate meaningfully in [his] habeas proceedings." *Öztürk*, 136 F.4th at 402; *accord Mahdawi*, 136 F.4th at 455.

Third, the equities and public interest strongly favor Petitioner. Respondents contend that the bail order "interferes with the immigration court's management of its docket" because the immigration court refused to consider release. Mot. 18-19. But that argument only proves the futility of the administrative process here. Add.059 (immigration court lacks power to consider constitutional arguments against Respondents' justifications for detention); Add.021 ("all . . . factors" relevant to "prudential" exhaustion requirement under *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), favor deciding Petitioner's bail motion); Add.043 (same); ECF 332-1 (immigration court's denial of bond hearing based on foreign policy ground charge).[12] As the Fourth Circuit recently explained in denying a similar motion to stay a bail order, "due process is not suspended merely because two courts may be

---

[12] *See also, e.g.*, *Ashley v. Ridge*, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003) (no exhaustion requirement where petitioner raises constitutional claims); *Grant v. Zemski*, 54 F. Supp. 2d 437, 441-42 & n.5 (E.D. Pa. 1999) (prudential exhaustion requirement inapplicable when futile or would cause undue burden).

asked similar questions." *Khan Suri*, 2025 WL 1806692, at *1 n.1.

Finally, there is no public interest in the unconstitutional enforcement of any law, and "the public interest clearly favors the protection of constitutional rights." *Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 884 (3d Cir. 1997). This is particularly true where the unconstitutional enforcement of a law would censor a political debate on matters of public importance. *See Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022); *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012) (citing *Citizens United v. FEC*, 558 U.S. 310, 339 (2010)). Similarly, there is a strong public interest in ensuring that the executive branch acts lawfully, *Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015), particularly with respect to the rights protected by the Great Writ, "itself an indispensable mechanism for monitoring the separation of powers," *Boumediene*, 553 U.S. at 765.

## <u>CONCLUSION</u>

The Court should deny Respondents' motion.

Dated: July 9, 2025

/s/ Brett Max Kaufman

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout

26

Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
*Counsel for Petitioner–Appellee*   Tel: (415) 981-3000

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

Pursuant to Local Rules 28.3(d) and 46.1(e), I certify that I am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,190 words and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Charter typeface.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*