Nos. 25-2162 & 25-2357

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

MAHMOUD KHALIL,

Petitioner-Appellee,

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT; WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY; SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondents-Appellants.

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

## REPLY IN SUPPORT OF THE
## EMERGENCY MOTION TO STAY THE DISTRICT COURT'S
## JULY 17, 2025 ORDER PENDING APPEAL
### (Relief requested by July 31, 2025)

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
 General

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel for Immigration
 Litigation

ALANNA T. DUONG
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

# INTRODUCTION

Petitioner's opposition ("Opp.") does not undercut any of the Government's arguments for a stay of the district court's unprecedented July 17 Order. That order violates fundamental limits on habeas relief and multiple provisions of the Immigration and Nationality Act ("INA") stripping district courts of jurisdiction over claims arising from removal proceedings. Petitioner makes no persuasive argument for why these limits on the district court's jurisdiction do not apply.

Regarding habeas jurisdiction, Petitioner concedes that he is not detained and that he already cannot be removed under the foreign-policy determination, in light of earlier orders. He makes no attempt to explain how the new order's micromanagement of the removal proceedings has any impact on that status quo, such that it could possibly be conceived as a permissible remedy under habeas.

Nor does Petitioner meaningfully explain why the district court's July 17 Order is not barred by the INA's jurisdiction-stripping provisions. He says he must be allowed to bring his claim in federal district court to avoid a "chill" on his speech. But Congress made a deliberate choice to funnel *all* such claims through the petition for review process, and Petitioner cannot bypass that carefully calibrated scheme because he believes his claims are too important. Nor does he explain why letting the Government press its claims in immigration proceedings, with judicial review upon culmination of that process, creates a "chill." Indeed, Petitioner has been out of custody for well over a month and has been speaking freely (and abundantly) that entire time.

Finally, the equitable factors favor a stay pending appeal. Petitioner says the Government will suffer no harm if the immigration judge's reliance on the foreign-policy determination is enjoined, but his self-serving assurances are small comfort and the Government is plainly irreparably harmed by a district court injunction interfering in ongoing administrative proceedings. By contrast, Petitioner identifies no meaningful harm to himself in the event of a stay. He is no longer detained and he offers no theory for how the harm to his reputation and occupation he postulates are attributable to the mere existence of the ongoing immigration proceedings.

This Court should stay the July 17 Order pending appeal.

## ARGUMENT

**1.** The July 17 Order far exceeds the permissible relief a federal court sitting in habeas is authorized to award. *See* Stay Mot. at 6-8. Petitioner acknowledges that release from "unlawful physical confinement" is at the core of habeas, Opp. 10, and that (1) he is not in custody and (2) cannot be removed from the United States based on the foreign-policy ground. Stay Mot. 3. Nonetheless, Petitioner claims "his ultimate freedom is still on the line" because he has only secured "*conditional* release pending the final adjudication of his habeas petition." Opp. 12. That is true but irrelevant, because the July 17 Order has no impact on whether Petitioner will be detained—conditionally or otherwise—at the *end* of these proceedings. By definition, the preliminary injunctive relief ordered by the district court will expire once these proceedings against him come to an end—hence the "preliminary" styling.

Nor does the July 17 Order address any "collateral consequences" of detention. The cases Petitioner has cited addressed the collateral consequences of a criminal conviction, such as loss of the right to vote or to serve as a juror, or use of the conviction for impeachment at a trial. *See* Opp. 11 n.6 (citing *Evitts v. Lucey*, 469 U.S. 387, 391 n.4 (1985); *Sibron v. New York*, 392 U.S. 40, 55 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968)). The July 17 Order is not directed at any comparable "collateral consequence" of Petitioner's (past) detention. It has nothing to do with detention; it instead controls the adjudication and operation of the removal proceedings, including dictating the grounds on which the immigration judge may rely. Petitioner has cited *no authority* for the notion that a federal court sitting in habeas may order such relief. Without any actual interference to a corpus, habeas has no relief to provide.

Finally, Petitioner is wrong that the court's orders "did not require the IJ to take any affirmative action" but only "*prohibited* [the Government] from detaining or 'seeking to remove' Petitioner based on the [foreign-policy determination]." Opp. 12. That is just wordplay. By forbidding the IJ from relying on the foreign-policy determination, the June 11 injunction and the July 17 Order exercised direct interlocutory control over how the IJ conducts Petitioner's removal proceedings, arrogating to itself appellate authority that Congress vested with the Board of Immigration Appeals, subject to further appellate review by federal circuit courts. The district court's habeas jurisdiction

3

supplies no license to upend Congress's carefully designed system. The district court's contrary conclusion is both unprecedented and deeply destabilizing.

**2.** Even if the July 17 Order were within the bounds of habeas, the INA forecloses the district court's extraordinary intrusion into Petitioner's ongoing removal proceedings. *See* Stay Mot. 8-12.

*First*, the July 17 Order is barred by 8 U.S.C. § 1252(g), which strips district courts of jurisdiction to adjudicate claims "arising from the decision or action by the Attorney General to … adjudicate cases … against any alien." The July 17 Order does exactly what Section 1252(g) forbids: It controls prosecutorial acts (*e.g.*, deciding on the charge of removability and making the arguments in immigration court) and quasi-judicial acts (*e.g.*, accepting the arguments and adjudicating the case after considering the arguments). Petitioner is thus wrong to say his claim does not implicate the Attorney General's "decision or action … to adjudicate cases." Opp. 14. The Order literally prevents her from adjudicating a charge against Petitioner in immigration court.

Nor is Petitioner's challenge to the "very authority" to remove him. *Cf.* Opp. 15. Instead, he is attempting to terminate his removal proceedings by eliminating the charges of removability one by one through collateral litigation. That is unlike the cases Petitioner cites, where aliens challenged the underlying legal authority to commerce proceedings at all. *See Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 726 (3d Cir. 2009) (holding that § 1252(g) did not bar alien's challenge that five-year limitation in 8 U.S.C. § 1256(a) barred DHS from commencing removal proceedings against her based on her

4

fraudulent 1996 application); *United States v. Hovsepian*, 359 F.3d 1144, 1157 (9th Cir. 2004) (holding that § 1252(g) did not bar considering whether 8 U.S.C. § 1227 was impermissibly retroactive such that the agency was barred from deporting the alien on any ground not in existence at the time of his original sentencing); *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1363 (11th Cir. 2006) (holding that § 1252(g) did not bar consideration of whether an alien's challenge to his detention on the ground that there was no removal order against him was distinct from a challenge to a removal order for the purposes of the REAL ID Act of 2005).

*Second*, the July 17 Order is barred by 8 U.S.C. § 1252(a)(5) and (b)(9), which channel judicial review over orders of removal to the courts of appeals through a petition for review. Petitioner insists that Sections 1252(a)(5) and (b)(9) apply only "to final orders of removal." Opp. 17 (citing *Chehazeh v. Att'y Gen. of the U.S.*, 666 F.3d 118, 131-33 (3d Cir. 2012)). Not so. As a matter of text, subsection (a)(5) establishes the "exclusive" means of judicial review for *any* "order of removal." It is *not* limited only to "final" orders of removal—a word that is conspicuously absent from the provision. As a matter of precedent, this Court (after *Chehazeh*) has applied § 1252(b)(9) in the absence of a final order of removal. *E.O.H.C. v. Sec. of DHS*, 950 F.3d 177, 187-88 (3d Cir. 2020). And as a matter of policy and common sense, the purpose of Sections 1252(a)(5) and (b)(9) is to channel judicial review of all decisions and actions relating to removal proceedings to the courts of appeals. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999) (*"AADC"*). That can only be done if the

5

immigration proceedings are allowed to run their course without interference by federal district courts.

Regardless, Petitioner *did have* an order of removal. He says that it did not become "final," *see* Opp. 17, but that is only because the district court interfered in the immigration proceedings by issuing the July 17 Order. Far from supporting Petitioner, that only showcases the extent to which the district court's meddling in the immigration proceedings has upended the carefully calibrated review scheme that Congress instituted through Sections 1252(a)(5) and (b)(9).

*Finally*, Petitioner says he must be permitted to seek review now because his "free speech rights 'are being violated …. [e]very day that Respondents seek to remove him based on the [foreign-policy ground]." Opp. 18. That is false: Petitioner has been out of detention since the district court's release order on June 20 and has freely engaged in the exact speech he now claims is being chilled. *See* Stay Mot. 15. Moreover, there is no cognizable chilling effect from the Government *litigating an issue*—and it makes no difference whether that litigation occurs first in federal court or first in the immigration court. Indeed, the Government has appealed the preliminary injunction and plans to defend the foreign-policy charge. Presumably even Petitioner does not believe that the appeal of the preliminary injunction order is enjoined. There is no reason advocating

those same arguments regarding the foreign-policy charge before the immigration judge and Board of Immigration Appeals would be any different.[1]

**3.** On the equities, Petitioner continues to be unable to identify how a stay of the July 17 Order would cause him any harm. Again, he has been released from detention and his removal on the foreign-policy ground has been enjoined. After his release, Petitioner has engaged in a media blitz that belies his contentions of purported "chill" to his speech. *See* Stay Mot. 14-15. And his putative "reputational" and "career" harms would not remedied by restricting the arguments that the Government can press before the immigration judge and the Board of Immigration Appeals, or by causing the immigration judge to rewrite her order. Petitioner offers no explanation for how the immigration judge's reliance on the foreign-policy determination adds any incremental harm to his reputation or career. Indeed, Petitioner concedes that his harms are "caused by the Rubio Determination," Opp. 23 n.12—not the removal proceedings.

Meanwhile, the Government will be irreparably harmed absent a stay. *See* Stay Mot. 12-14. Petitioner says the Government should be barred from injunctive relief because it has "unclean hands." Opp. 20. But what he describes as "bad faith" is really just a disagreement between the parties over the scope of the preliminary injunction.

---

[1] Petitioner says the Court can simply disregard the jurisdictional bars whenever the First Amendment is invoked, relying on Justice Ginsburg's concurrence in *AADC*. Opp. 19. That reliance is misguided: The majority in *AADC* rejected Justice Ginsburg's proposed rule. *See* 525 U.S. at 488 & n.10.

7

Petitioner's self-serving assurances that the Government will not be barred from relying on the foreign-policy determination as a ground for removal in the event of reversal do not change the irreparable harm calculus. For example, Petitioner says that the Government can "add or substitute immigration charges any time proceedings remain open," Opp. 21; but proceedings *may close* if the Government moves forward with the removal proceedings, thus preventing the immigration judge from simply pulling its June 20 decision off "the shelf." *Cf.* Opp. 22. And if Petitioner's solution is for the Government to forestall removal proceedings against Petitioner entirely, that just underscores the irreparable sovereign harm to the Government of being prohibited from enforcing the federal immigration laws. *See* Stay Mot. 13-14.

Without a stay, the July 17 Order will interrupt the process Congress designed, delay and interfere with the Executive's ordinary processing of Petitioner's removal proceedings, and open the floodgates for every alien to seek parallel judicial review in district court whenever an immigration judge issues a ruling they do not like. This Court should not permit such disruption in the face of the multiple jurisdictional barriers to the district court's July 17 Order.

## **CONCLUSION**

For these reasons and the reasons provided in the emergency stay motion, the Government respectfully requests that the Court stay the district court's July 17 Order pending appeal, and do so before that Order's 10 a.m. August 1 compliance deadline.

<div style="display: flex;">
<div>

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
 General

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST E. FLENTJE
Special Counsel for Immigration
 Litigation

DHRUMAN Y. SAMPAT
Senior Litigation Counsel

</div>
<div>

Respectfully submitted,

/s/ *Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. Justice
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
alanna.duong@usdoj.gov

July 30, 2025

Attorneys for Respondents-Appellants

</div>
</div>

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and 32(g) because it was prepared using Garamond type, is double-spaced, has 10.5 or fewer characters per inch; and contains 2,058 words, excluding the parts exempted by Fed. R. App. P. 32(f).

/s/ Alanna T. Duong
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

July 30, 2025                                              Attorney for Respondents-Appellants


# CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Alanna T. Duong
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice