# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

———————————

MAHMOUD KHALIL,

*Petitioner-Appellee,*

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY
GENERAL UNITED STATES OF AMERICA,

*Respondents-Appellants.*

———————————

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

———————————

## APPELLANTS' OPENING BRIEF

———————————

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
    General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Special Counsel to the Assistant
    Attorney General

ALANNA T. DUONG
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

JOHN F. STANTON
RACHEL L. BROWNING
Trial Attorneys

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ...................................................................4

STATEMENT OF THE ISSUES.........................................................................5

STATEMENT OF THE CASE.............................................................................5

   I.  Petitioner's Background and Initial Immigration Proceedings ...............5
     A.  Petitioner Engages in Disruptive and Anti-Semitic Activities at Columbia University.....................................................................................................5
     B.  Petitioner is Detained and Charged as Removable.................................6

   II.  Petitioner Initiates Habeas Proceedings in New York while En Route to Louisiana ..........................................................................................................7
     A.  Petitioner's Transfer from New York to Louisiana................................7
     B.  Petitioner Files a Habeas Petition in New York ...................................7
     C.  The Habeas Petition is Transferred to the District of New Jersey ...................8

   III.  The Immigration Judge Sustains Both Charges of Removability and Orders that Petitioner be Removed...................................................................................8

   IV.  The District of New Jersey Exercises Jurisdiction over the Habeas Petition, Enjoins Petitioner's Removal, and Orders His Release...................................9
     A.  The Court Holds That it has Habeas Jurisdiction ...............................10
     B.  The District Court Holds that the INA does not Divest Jurisdiction..............10
     C.  The Court Enjoins the Government from Detaining or Removing Petitioner Based on the Foreign Policy Determination.................................................11
     D.  The Court Orders Petitioner's Release ...............................................12
     E.  The Court Orders the Immigration Judge to Vacate Her Decision ................13

SUMMARY OF THE ARGUMENT ................................................................14

STANDARD OF REVIEW ...............................................................................16

ARGUMENT......................................................................................................17

   I.  The District Court Exceeded its Habeas Authority................................17
     A.  The District Court Lacked Habeas Jurisdiction..................................17
       1.  Habeas Jurisdiction Lies in the District of Confinement.................17
       2.  No Exception to the District of Confinement Rule Applies ........19
       3.  The Transfer Statute does not Cure the Jurisdictional Defects ....................21

  4. Petitioner's Filing of an Amended Petition in Louisiana Confirms the Absence of Habeas Jurisdiction ..............................................................25

 B. The District Court's June 11 and July 17 Orders Exceed the Scope of Relief Available in Habeas..................................................................................26

II. The INA Divests the District Court of Jurisdiction .............................................27

 A. 8 U.S.C. §1252(g)...............................................................................................27

 B. 8 U.S.C. §1252(b)(9) .........................................................................................32

  1. Section 1252(b)(9) Bars Review of Petitioner's Claims ...................................32

  2. The District Court's Reasons for Ignoring §1252(b)(9) Fail .........................34

  3. At a Minimum, §1252(b)(9) Bars the July 17 Order .......................................39

III. The District Court Erred in Granting a Preliminary Injunction on Petitioner's Vagueness Claim ................................................................................................................39

 A. The District Court Erred in Finding Likelihood of Success on Petitioner's Vagueness Claim.................................................................................................40

  1. The Void-For-Vagueness Doctrine does not Apply........................................40

  2. The Statute is not Unconstitutionally Vague ....................................................43

  3. The First Amendment does not Make the Statute Unconstitutionally Vague 50

 B. The District Court Erred in Finding Irreparable Harm.....................................51

IV. The District Court Erred in Ordering Petitioner's Release................................53

CONCLUSION ..........................................................................................................................57

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

STATEMENT REGARDING ORAL ARGUMENT

ANTI-VIRUS CERTIFICATION

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*Adorers of the Blood of Christ v. FERC,*
  897 F.3d 187 (3d Cir. 2018)................................................................38

*Al-Siddiqi v. Achim,*
  531 F.3d 490 (7th Cir. 2008) .............................................................54

*Anariba v. Director Hudson Cnty. Corr. Ctr.,*
  17 F.4th 434 (3d Cir. 2021)................................................................19

*Axon Enterprise Inc. v. FTC,*
  598 U.S. 175 (2023) ..........................................................................38

*Bolante v. Keisler,*
  506 F.3d 618 (7th Cir. 2007) .............................................................53

*Bonhometre v. Gonzales,*
  414 F.3d 442 (3d Cir. 2005)...............................................................33

*Borbot v. Warden, Hudson Co. Correctional Facility,*
  906 F.3d 274 (3d Cir. 2018)...............................................................53

*Calzone v. Summers,*
  942 F.3d 415 (8th Cir. 2019) .............................................................47

*Cardoso v. Reno,*
  216 F.3d 512 (5th Cir. 2000) ........................................................30, 31

*Castillo v. Att'y Gen. of United States,*
  109 F.4th 127 (3d Cir. 2024)..............................................................22

*Chehazeh v. Att'y Gen.,*
  666 F.3d 118 (3d Cir. 2012)...............................................................34

*Daley v. Fed. Bureau of Prisons,*
  199 F. App'x 119 (3d Cir. 2006) ........................................................24

*Delaware Strong Families v. A.G. of the State of Delaware,*
  793 F.3d 304 (3d Cir. 2015)...............................................................16

*Demanjuk v. Meese,*
    784 F.2d 1114 (D.C. Cir. 1986) ................................................................ 20, 21

*Demore v. Kim,*
    538 U.S. 510 (2003) ................................................................................ 53, 54

*Duarte v. Mayorkas,*
    27 F.4th 1044 (5th Cir. 2022) ...................................................................... 30

*E.F.L. v. Prim,*
    986 F.3d 959 (7th Cir. 2021) ....................................................................... 30

*E.O.H.C. v. DHS,*
    950 F.3d 177 (3d Cir. 2020) ..................................................... 33, 35, 36, 39

*Eddine v. Chertoff,*
    Civ. Act. No. 07-6117, 2008 WL 630043 (D.N.J. Mar. 5, 2008) ................. 18

*Ex Parte Endo,*
    323 U.S. 283 (1944) .................................................................................... 19

*Garrett v. Murphy,*
    17 F.4th 419 (3d Cir. 2021) ......................................................................... 24

*Griffin v. United States,*
    621 F.3d 1363 (Fed. Cir. 2010) ................................................................... 22

*Grimm v. Johnson,*
    No. 3:10-cv-593, 2011 WL 3321474 (E.D. Va. Aug. 2, 2011) .................... 42

*Gundy v. United States,*
    588 U.S. 128 (2019) .................................................................................... 42

*Harris v. Nelson,*
    394 U.S. 286 (1969) .................................................................................... 23

*Herndon v. Lowry,*
    301 U.S. 242 (1937) .................................................................................... 48

*Holder v. Humanitarian L. Project,*
    561 U.S. 1 (2010) ........................................................................... 47, 49, 50

*Hope v. Warden York Cty. Prison,*
    972 F.3d 310 (3d Cir. 2020) ................................................................. 16, 54

*Ingram v. PBPP*,
No. 23-cv-565, 2023 WL 6129539 (W.D. Pa. Sept. 19, 2023) ......................................55

*INS v. Chadha*,
462 U.S. 919 (1983) ...........................................................................36

*International Harvester Co. of America v. Kentucky*,
234 U.S. 216 (1914) ...........................................................................48

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ...........................................................33

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ......................................................................35, 53

*Jimenez-Angeles v. Ashcroft*,
291 F.3d 594 (9th Cir. 2002) ..............................................................28

*Johnson v. United States*,
576 U.S. 591 (2015) ......................................................................40, 48

*Jordan v. De George*,
341 U.S. 223 (1951) ......................................................................47, 49

*Kolender v. Lawson*,
461 U.S. 352 (1983) ...........................................................................40

*Landano v. Rafferty*,
970 F.2d 1230 (3d Cir. 1992)..................................................54, 55, 56

*Li v. Agagan*,
2006 WL 637903 (5th Cir. Mar. 14, 2006) .......................................31

*Liriano v. United States*,
95 F.3d 119 (2d Cir. 1996) ..................................................................22

*Lucas v. Hadden*,
790 F.2d 365 (3d Cir. 1986).........................................................53, 55

*Magee v. Clinton*,
2005 WL 613248 (D.C. Cir. 2005) ....................................................23

*Martinez-Nieto v. Att'y Gen. of United States*,
805 F. App'x 131 (3d Cir. 2020) ........................................................22

*Massieu v. Reno,*
   91 F.3d 416 (3d Cir. 1996) ............................................36, 38, 39

*Matter of M-P-,*
   20 I. & N. Dec. 786 (BIA 1994) ................................................37

*Matter of S-H-,*
   23 I. & N. Dec. 462 (BIA 2002) ................................................37

*McNary v. Haitian Refugee Ctr., Inc.,*
   498 U.S. 479 (1991) .........................................................37, 38

*Monteiro v. Att'y Gen. of U.S.,*
   261 F. App'x 368 (3d Cir. 2008) ...............................................22

*Munaf v. Geren,*
   553 U.S. 674 (2008) .........................................................26, 56

*Najera v. United States,*
   926 F.3d 140 (5th Cir. 2019) ...................................................54

*Nat'l Broadcasting Co. v. United States,*
   319 U.S. 190 (1943) ............................................................43

*North Hanover Township,*
   2023 WL 7986408 (D.N.J. 2023) ..............................................52

*Nyeholt v. Sec'y Of Veterans,*
   *Affs.,* 298 F.3d 1350 (Fed. Cir. 2002) ......................................40, 41

*Palestine Information Office v. Shultz,*
   853 F.2d 932 (D.C. Cir. 1988) ...........................................43, 45, 47

*Preiser v. Rodriguez,*
   411 U.S. 475 (1973) ............................................................26

*Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.,*
   123 F.3d 111 (3d Cir. 1997) ....................................................22

*Rauda v. Jennings,*
   55 F.4th 773 (9th Cir. 2022) ...................................................28

*Reno v. Am.-Arab Anti-Discrim. Comm.,*
   525 U.S. 471 (1999) ......................................................3, passim

*Royal Canin U.S.A., Inc. v. Wullschleger,*
604 U.S. 22 (2025)......................................................................25

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004) ........................................................ 2, passim

*Santana v. United States,*
98 F.3d 752 (3d Cir. 1996)..........................................................24

*Schlanger v. Seamans,*
401 U.S. 487 (1971) .............................................................. 18, 24

*Stafford v. Briggs,*
444 U.S. 527 (1980) ....................................................................24

*Tazu v. Att'y Gen.,*
975 F.3d 292 (3d Cir. 2020)............................................. 2, passim

*Thuraissigiam,*
591 U.S. 103 (2020) .........................................................26, 27, 56

*Toure v. Att'y Gen.,*
443 F.3d 310 (3d Cir. 2006).........................................................37

*Trump v. J.G.G.,*
145 S. Ct. 1003 (2025) .......................................................... 17, 18

*United States v. L. Cohen Grocery Co.,*
255 U.S. 81 (1921)......................................................................48

*United States v. Little,*
392 F.3d 671 (4th Cir. 2004) ......................................................23

*United States v. Matchett,*
837 F.3d 1118 (11th Cir. 2016) ...................................................41

*United States v. Means,*
572 F. App'x 793 (11th Cir. 2014)...............................................23

*Vasquez v. Aviles,*
639 F. App'x 898 (3d Cir. 2016) .................................................33

*Velasco Lopez v. Decker,*
978 F.3d 842 (2d Cir. 2020).........................................................53

*Verde-Rodriguez v. Att'y Gen. U.S.,*
734 F.3d 198 (3d Cir. 2013) ........................................................33

*Washer v. Bullitt County,*
110 U.S. 558 (1884) ......................................................................25

*Whitman v. Am. Trucking Associations,*
531 U.S. 457 (2001) ...............................................................43, 50

*Williams v. Johnson,*
No. 1:10-cv-823, 2011 WL 4101505 (E.D. Va. Sept. 12, 2011) ...................................42

*Winter v. NRDC,*
555 U.S. 7 (2008) ..............................................................4, 55, 56

*Wong Wing v. United States,*
163 U.S. 228 (1896) ......................................................................54

*Woodhull Freedom Found. v. United States,*
72 F.4th 1286 (D.C. Cir. 2023) .....................................................47

*Woodruff v. U.S. Dep't of Lab., Off. of Workers Comp. Program,*
954 F.2d 634 (11th Cir. 1992) .......................................................41

*Yakus v. United States,*
321 U.S. 414 (1944) ......................................................................43

*Yi v. Maugans,*
24 F.3d 500 (3d Cir. 1994) ...........................................................18

**Statutes**

6 U.S.C. §202(3) ...............................................................................27

8 U.S.C. §1226(a) .............................................................................29

8 U.S.C. §1226(e) ......................................................................13, 53

8 U.S.C. §1227(a)(4)(C) ..................................................................51

8 U.S.C. §1252(a)(5) .............................................................2, 32, 33

8 U.S.C. §1229a(b)(1) ......................................................................36

8 U.S.C. §1252(b)(9) ...........................................................32, 33, 39

8 U.S.C. §1252(g) ........................................................10, 27, 29

28 U.S.C. §1292(a)(1) ................................................. 4, 7, 9

28 U.S.C. §1331 ...............................................................4

28 U.S.C. §1391(e) ........................................................24

28 U.S.C. §1631 .........................................................10, 21

28 U.S.C. §2241 ...............................................................4

28 U.S.C. §2241(a) ........................................................18

28 U.S.C. §2242 ...............................................................17

28 U.S.C. §2347(b)(3) ...................................................37

**Rules**

Fed. R. Civ. P. 81(a)(4) ................................................24

**Regulations**

8 C.F.R. §1240.1(b) .......................................................37

8 C.F.R. §1240.10(a)(4) .................................................37

8 C.F.R. §1240.11(c)(3)(ii) ............................................37

8 C.F.R. §1003.19(b) .....................................................37

**Other Authorities**

Executive Order 14188 ..................................................49

# INTRODUCTION

This appeal involves the district court's multiple unprecedented intrusions into Respondents' ("the Government") efforts to detain and remove Petitioner Mahmoud Khalil ("Petitioner") from the United States, following his participation in the violent and anti-Semitic riots and protests that occurred at Columbia University during the spring and summer of 2024. During those protests, Jewish students were the victims of repeated acts of violence and blocked from access to classroom and other campus facilities by pro-Hamas protestors. Petitioner was not an innocent bystander; he was the lead negotiator between the campus invaders and the University administration.

In light of Petitioner's leadership role in orchestrating these violent and anti-Semitic protests, the Secretary of State determined that Petitioner's continued presence in the United States "would compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii). Petitioner was therefore detained, and removal proceedings were commenced before an immigration judge based on the Secretary of State's determination and a separate charge for fraudulent statements made on his green card application. The immigration judge later sustained both charges of removability, denied relief, and ordered that Petitioner be removed.

Rather than adhere to the administrative process set by the Immigration and Nationality Act, Petitioner filed this habeas action in the Southern District of New York—though he was detained in New Jersey at the time and en-route to Louisiana— challenging his detention and removal as violations of the First Amendment and the

federal Due Process Clause.  In a series of decisions, the district court determined that it had jurisdiction over the habeas petition, held that Petitioner was likely to succeed on his void-for-vagueness challenge against the Secretary of State's determination, directed that Petitioner be released from detention, and ordered the immigration judge to vacate her determination that Petitioner is removable based on the Secretary of State's determination.

The district court's decisions are littered with reversible errors.  To begin, the district court never had jurisdiction over the habeas petition.  It was filed in New York when Petitioner was in New Jersey.  And it was transferred to New Jersey when Petitioner was already in Louisiana—always his ultimate destination.  Longstanding principles of habeas jurisdiction dictate that jurisdiction lies in the place of confinement—Louisiana.  *See Rumsfeld v. Padilla*, 542 U.S. 426 (2004).

Even if the court had jurisdiction over the petition, it had no power to *adjudicate* the claims in the petition.  Multiple provisions of the INA foreclose district court review of claims challenging the commencement or adjudication of removal proceedings—the exact targets of Petitioner's claims.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9), (g).  And for good reason.  The INA allows aliens to assert those challenges in immigration proceedings, with review in the courts of appeals, to avoid fragmented removal proceedings.  *Tazu v. Att'y Gen.*, 975 F.3d 292, 297 (3d Cir. 2020).  The district court's insistence on parallel proceedings had this exact effect.  Worse still, the court went further and effectively exercised *direct appellate control* over the immigration judge—ordering her to vacate the

decision finding Petitioner removable on the foreign policy determination. That is an unprecedented intrusion into the operations of the immigration proceedings.

The district court also erred in holding that the statutory basis for the foreign policy charge—8 U.S.C. §1182(a)(3)(C)(iii)—is unconstitutionally vague. The vagueness doctrine does not even apply to the statute because it is not a regulation of primary conduct, but instead a delegation of authority. But Petitioner did not bring such a claim, and the statute would easily survive a non-delegation challenge under Supreme Court precedent. In any event, the statute is not unconstitutionally vague even if the doctrine applied. The court thought it vague on the theory that the Secretary of State did not actually decide that Petitioner's conduct would "compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii). That, too, is not a vagueness claim; it is a challenge that the Secretary's determination did not comply with the statute—another claim Petitioner *did not bring*. Besides, the Secretary of State clearly *did* determine that Petitioner's conduct would "compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii). Although the district court thought the concept of "foreign policy interests" too ill-defined, a law is not vague just because it is broad, and the statutory context mitigates any vagueness concerns. Ultimately, the court struggled to formulate a coherent theory of vagueness because Petitioner's objection really is not about vagueness; it is a First Amendment claim, but the Supreme Court has conclusively held that aliens cannot assert such claims to contest their removal. *See Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 485 (1999).

Finally, the district court's decision directing that Petitioner be released from detention is independently unlawful. In the immigration context, release on bail is tantamount to a preliminary injunction, which requires the movant to show a likelihood of success on the merits. *See Winter v. NRDC*, 555 U.S. 7, 20 (2008). Yet the district court ordered Petitioner released *without* finding likelihood of success on *any* claim.

Accordingly, the Court should direct that the petition be dismissed for lack of jurisdiction, or reverse the preliminary injunction and the order compelling Petitioner's release from custody.

## STATEMENT OF JURISDICTION

Respondents-Appellants ("the Government") dispute that the district court had subject-matter and habeas jurisdiction. *See infra* at pp.17-27. The district court purported to exercise jurisdiction under 28 U.S.C. §1331 and 28 U.S.C. §2241.

Three orders are on appeal: (1) the district court's June 11 order granting Petitioner's motion for a preliminary injunction, JA.8–21; (2) the district court's June 20 order directing that Petitioner be released from detention, JA.22–23; and (3) the district court's July 17 order requiring the immigration judge to reopen the immigration proceedings and vacate her merits decision, JA.24–33. The Government timely appealed. JA.1–7. This Court has jurisdiction under 28 U.S.C. §1292(a)(1).

# STATEMENT OF THE ISSUES

1. Whether the district court had jurisdiction over Petitioner's habeas petition.

2. Whether the Immigration and Nationality Act divested the district court of jurisdiction over Petitioner's claims.

3. Whether 8 U.S.C. §1182(a)(3)(C)(iii) is unconstitutionally vague as applied to Petitioner.

4. Whether the district court erred in ordering Petitioner's release.

# STATEMENT OF THE CASE

## I. Petitioner's Background and Initial Immigration Proceedings

### A. Petitioner Engages in Disruptive and Anti-Semitic Activities at Columbia University

Petitioner, a native of Syria and citizen of Algeria, entered the United States on a student visa in December 2022 and enrolled at Columbia University. JA.421; JA.527; JA.429–32. He adjusted to lawful permanent resident status. JA.421; JA.527.

While at Columbia, Petitioner was a primary organizer of protests related to the current Israel-Palestinian conflict. By his own admission, Petitioner was the lead negotiator and facilitator between the protestors and groups participating in the protests, including Columbia University Apartheid Divest ("CUAD"), and the university administrators. JA.1104–05. CUAD included members who said "Zionists don't deserve to live," and it hosted a speaker who stated "there is nothing wrong with being a fighter in Hamas." Georgett Roberts, *These are the extremist student leaders of the*

*anti-Israel protest camp bringing Columbia to its knees*, NY POST, Apr. 26, 2024.[1]  Petitioner

faced disciplinary charges from Columbia for his involvement in CUAD, as well as

"sanctions for potentially helping to organize an 'unauthorized marching event' in

which participants glorified Hamas' Oct. 7, 2023, attack [on Israel] and [for] playing a

'substantial role' in the circulation of social media posts criticizing Zionism, among

other acts of alleged discrimination."  Jake Offenhartz, *Immigration Agents arrest*

*Palestinian Activist who helped lead Columbia University protests*, U.S. News (Mar. 9, 2025).[2]

### B.  Petitioner is Detained and Charged as Removable

On March 8, 2025, agents from ICE Homeland Security Investigations detained

Petitioner pending removal proceedings.  JA.421; JA.527.  While being processed in

New York, Petitioner was served with a Notice to Appear ("NTA") charging him as

removable under 8 U.S.C. §1227(a)(4)(C)(i)-(ii)—the "foreign policy charge."  JA.532.

Under that provision, an alien is deportable based on his "beliefs, statements, or

associations" if "the Secretary of State personally determines that the alien's admission

would compromise a compelling United States foreign policy interest."  8 U.S.C.

§1182(a)(3)(C)(iii).  The Secretary determined that Petitioner engaged in "antisemitic

protests and disruptive activities which foster[ed] a hostile environment for Jewish

students in the United States."  JA.1024.  The Secretary further determined that these

---

[1]    https://nypost.com/2024/04/26/us-news/the-extremist-student-leaders-leading-
columbias-anti-israel-camp/ (last visited August 15, 2025)
[2] https://perma.cc/HPH9-T2SV.

activities "undermine U.S. policy to combat anti-Semitism around the world and in the United States" and that "condoning anti-Semitic conduct and disruptive protests in the United States would severely undermine that significant foreign policy objective." *Id.*

DHS subsequently charged Petitioner as removable on the additional ground that he failed to disclose material information on his application for permanent residence—the "fraud charge." Specifically, Petitioner failed to disclose that: (1) he was a member of the United Nations Relief and Works Agency for Palestine Refugees; (2) he continued to be employed as the Syrian Office in the British Embassy in Beirut; and (3) he was a member of CUAD. JA.591.

## II. Petitioner Initiates Habeas Proceedings in New York while En Route to Louisiana

### A. Petitioner's Transfer from New York to Louisiana

On the morning of March 9, Petitioner was transferred to an immigration detention center in New Jersey, JA.529, but could not be housed there long-term because of a bedbug issue. *Id.* Petitioner remained at the New Jersey facility for only a few hours before being taken to an airport to be transported to the Central Louisiana ICE Processing Facility in Jena, Louisiana. *Id.*; JA.422. Petitioner was booked into the Louisiana facility at 12:33 a.m. on March 10. JA.529.

### B. Petitioner Files a Habeas Petition in New York

Also on the morning of March 9, while Petitioner was still detained in New Jersey, his counsel filed a habeas petition in the Southern District of New York. JA.390.

That petition—and an amended petition filed days after Petitioner's transfer to Louisiana—asserted, *inter alia*, claims under the First Amendment and the Fifth Amendment's Due Process Clause. JA.448–51. In particular, Petitioner alleged that his detention was retaliation for his role in the protests at Columbia University in violation of the First Amendment. JA.448–49. In addition, he alleged that the statute underlying the foreign policy charge—8 U.S.C. §1182(a)(3)(C)(iii)—is unconstitutionally vague as applied in violation of the Due Process Clause. JA.449–51. Finally, Petitioner requested release on bail. JA.451–52.

## C. The Habeas Petition is Transferred to the District of New Jersey

On March 12, the Government moved to dismiss or alternatively transfer the habeas petition to the Western District of Louisiana—the district in which Petitioner had been detained since March 10. JA.417–19. The Southern District transferred the petition to the District of New Jersey instead, reasoning that the petition *could have been filed* in that district during the few hours Petitioner had been detained at the New Jersey facility. JA.566. In ordering transfer, the Southern District rejected Petitioner's contention that he had been transferred to Louisiana in bad faith. JA.556–57.

## III. The Immigration Judge Sustains Both Charges of Removability and Orders that Petitioner be Removed

While Petitioner was pursuing his habeas petition in the District of New Jersey, DHS moved forward with removal proceedings. At an April 11 removability hearing, the immigration judge ("IJ") sustained the foreign policy charge and held the fraud

charge in abeyance. JA.1852. Subsequently, the IJ held a merits hearing on Petitioner's removability and his applications for relief and protection from removal. JA.1853–54.

The IJ issued her merits decision on June 20. JA.1854; JA.1883. In that decision, the IJ reiterated her decision to sustain the foreign policy charge. JA.1854–55. Applying Board of Immigration Appeals precedent, the IJ held that the Secretary of State's determination of potentially serious adverse foreign policy consequences is sufficient evidence that an alien is deportable under the foreign policy charge. *Id.* The IJ also sustained removability based on the fraud charge. JA.1855–49. Finally, the IJ denied Petitioner's applications for relief and protection from removal, and ordered him removed. JA.1883.

## IV. The District of New Jersey Exercises Jurisdiction over the Habeas Petition, Enjoins Petitioner's Removal, and Orders His Release

Litigation in the District of New Jersey proceeded in parallel with the removal proceedings. In a series of decisions, the district court: (1) held that it had habeas jurisdiction; (2) held the INA does not divest it of jurisdiction to adjudicate Petitioner's claims; (3) entered a preliminary injunction prohibiting Petitioner's detention or removal based on the foreign policy charge; (4) ordered that Petitioner be released on bail; and (5) ordered the IJ to vacate her June 20 decision finding Petitioner removable based on the foreign policy charge, and consider his request for a Section 237(a)(1)(H) waiver without regard to the foreign policy charge.

## A.	The Court Holds That it has Habeas Jurisdiction

The district court held that it had jurisdiction over the habeas petition.  JA.34–35.  A federal court has habeas jurisdiction only if the petition is filed in the district of confinement and names the immediate custodian.  *Padilla*, 542 U.S. at 426.  Although Petitioner was detained in Louisiana, the district court relied on 28 U.S.C. §1631, which authorizes the transfer of a "civil action" to a court in which the action "could have been brought at the time it was filed," to find jurisdiction.  JA.57–69.  The court reasoned that it had jurisdiction because Petitioner was located in New Jersey when the petition was filed in New York.  JA.68.  The district court also rejected the Government's argument that Petitioner's failure to name his immediate custodian defeated habeas jurisdiction, relying in part on the so-called "unknown custodian" exception.  JA.75–95.

## B.	The District Court Holds that the INA does not Divest Jurisdiction

In a separate opinion issued on April 29, the district court rejected the Government's arguments that two provisions of the INA—8 U.S.C. §1252(g) and §1252(b)(9)—stripped it of jurisdiction.  JA.103.

Section §1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The court reasoned that Petitioner was not challenging any decision to "commence proceedings, adjudicate cases, or execute removal orders,"

*id.*, but instead was challenging the Secretary of State's determination under 8 U.S.C. §1182(a)(3)(C)(iii) that Petitioner's presence in the United States compromised a compelling U.S. foreign policy interest.  JA.200–04.

The district court also rejected the Government's reliance on §1252(b)(9), which provides that "[j]udicial review of all questions of law and fact … arising from any action taken or proceeding brought to remove an alien … shall be available only in judicial review of a final order under this section."  The court found this provision inapplicable, principally on the theory that it applies only when there is a final order of removal.  JA.112; JA.124–39.  Alternatively, the court held that §1252(b)(9) does not apply to Petitioner's claims because judicial review after a final order of removal would not afford Petitioner "meaningful review" of his constitutional claims.  JA.139–200.

## C.    The Court Enjoins the Government from Detaining or Removing Petitioner Based on the Foreign Policy Determination

The district court entered a preliminary injunction based on two separate opinions—the first on May 28, addressing Petitioner's likelihood of success on the merits of his vagueness claim; and the second on June 11, addressing the remaining preliminary injunction factors.

First, the district court held that the statute underlying the foreign policy charge—8 U.S.C. §1182(a)(3)(C)(iii)—is likely unconstitutionally vague as applied.  JA.210–11.  The court read the statute to require that the alien's activities interfere with the United States' relations with a foreign state but concluded that the Secretary never

made that determination for Petitioner. JA.234. Alternatively, the court recognized that the statute's reference to "foreign policy interest" could be read more broadly but thought it too expansive to provide fair notice. JA.235–36. However, the court held that Petitioner was *not* likely to succeed on his challenge to the document fraud charge. JA.303–07.

Second, the court found that the Government's effort to remove and detain Petitioner based on the foreign policy charge was irreparably harming Petitioner in the form of lost employment, reputational harm, and chilled speech. JA.12–13. The court acknowledged its holding that Petitioner was unlikely to succeed in his challenge to the fraud charge, but it concluded that Petitioner still was being irreparably harmed by his detention on the belief that the Government would not have detained Petitioner solely on the fraud charge. JA.14–18.

Accordingly, the court enjoined the Government from detaining or removing Petitioner from the United States based on the foreign policy charge. JA.19–20. The court made clear, however, that its holding "ha[d] no impact on efforts to remove the Petitioner for reasons other than the Secretary of State's determination." JA.20 n.14.

### D. The Court Orders Petitioner's Release

Following the court's preliminary injunction order, the Government continued to detain Petitioner on the fraud charge. Petitioner then filed a motion for release. JA.1443–46. On June 20, the court ordered that Petitioner be released on bail, without determining that he was likely to prevail in his challenge to the fraud charge. JA.22–23;

JA.376–77. The court rejected the Government's arguments that 8 U.S.C. §1226(e)—providing that "[n]o court may set aside any action or decision by the Attorney General … regarding the detention of an alien"—barred the court from ordering that Petitioner be released on bond, and its separate argument that ordering release without finding a likelihood of success would violate precedent. JA.332; JA.337–45.

### E. The Court Orders the Immigration Judge to Vacate Her Decision

After his release, Petitioner filed a motion asking the court to read its preliminary injunction to require the IJ to vacate her April 11 and June 20 decisions finding Petitioner removable on the foreign policy charge and prohibit the IJ from relying on that charge in any way. JA.1527–28; JA.1536–37; JA.1539. The court granted that motion and ordered the IJ to (1) vacate or amend her June 20 decision to the extent it found Petitioner removable based on the foreign policy charge; and (2) evaluate Petitioner's eligibility for a Section 237(a)(1)(H) waiver of removability without reference to the foreign policy charge. JA.24–33.

On July 31, the IJ complied with the order and vacated her April 11 decision, which sustained the foreign policy charge. JA.1718. The IJ did not vacate her June 20 decision because that order simply reiterated her original April 11 ruling. JA.1718 n.1.

# SUMMARY OF THE ARGUMENT

The district court's orders are infected with multiple legal errors that require that this case be dismissed for lack of jurisdiction, or that the preliminary injunction and detention order be reversed.

**I.** In reviewing a habeas petition, the lower court erred in exercising habeas jurisdiction and ordering relief that falls outside the scope of the Great Writ. The court is entertaining a habeas petition that was never filed in the District while Petitioner was detained there. Instead, the court proceeds on a legal fiction that a transfer statute permits the court to ignore substantive statutory jurisdictional requirements; that cannot withstand precedent, which explicitly recognizes that a court only has jurisdiction if the petitioner has satisfied the district-of-confinement and the immediate-custodian rules. Neither is met here, and no exception justifies the district court's deviation from these well-established principles. The court compounded on its errors when it issued two orders that provided relief that had nothing to do with custody. That exceeded the permissible bounds of habeas relief.

**II.** The district court was also stripped of subject-matter jurisdiction over a habeas petition challenging removal. As this Court has recognized, the INA explicitly divests the district court of jurisdiction over removal-related claims. Specifically, §1252(g) bars judicial review of actions or claims that arise out of the decision to commence proceedings. Petitioner's entire gripe stems from the Secretary of State's removability determination. That Executive action is a necessary predicate for

Petitioner's entire challenge, which started with his detention pending removal proceedings. Moreover, Petitioner cannot obtain district court review over questions about his removability. Yet, the district court blatantly misread this Court's precedent, created jurisdiction, and unduly interfered with Petitioner's ongoing removal proceedings. It then deepened its jurisdictional mistakes on July 17 by operating as an appellate body for the IJ's decision ordering Petitioner removed. That order upsets the congressionally-created scheme, which is the *exclusive* mechanism by which aliens can challenge removal in federal courts.

      **III.**    Turning to the merits, the court wrongly ruled that the foreign policy charge is unconstitutionally vague. The void-for-vagueness doctrine cannot apply to the foreign policy charge because it does not regulate conduct. Even if the doctrine did apply, 8 U.S.C. §1182(a)(3)(C)(iii) and the Secretary's determination sufficiently satisfy the lower court's proffered reading of what is required. Congress appropriately delegated broad authority to the Executive to make foreign policy determinations, and the Secretary executed his authority as required. Petitioner cannot circumvent that by alleging a First Amendment violation, which he, as an alien, cannot raise in the first place.

      Even assuming that the lower court is correct on the jurisdictional concerns and that the foreign policy charge is likely unconstitutionally vague as-applied to Petitioner, the June 11 order wrongly concluded that Petitioner would suffer irreparable harm. For one, the injunction does nothing to repair his alleged harms because the foreign policy

removability charge remains untouched by the injunction. Moreover, the injunction did nothing to affect the Government from continuing to pursue removal on the fraud charge; meaning, his harm of being considered removable remains untouched.

**IV.** Finally, the court's release order violates multiple jurisdictional bars, including §1226(e). The district court's defiance of binding precedent by itself warrants reversal. But the court made another egregious error: it granted a preliminary injunction without finding Petitioner likely to succeed on the merits of his challenge to the fraud ground. A court cannot grant injunctive relief that amounts to ultimate relief as a preliminary matter without some finding of likelihood of success.

## STANDARD OF REVIEW

This Court reviews the grant of a preliminary injunction for an abuse of discretion. *Delaware Strong Families v. A.G. of the State of Delaware*, 793 F.3d 304, 308 (3d Cir. 2015). Findings of fact are reviewed for clear error and legal conclusions are reviewed *de novo. Id.* A district court abuses its discretion when its decision rests on "an erroneous view of the law," "a clearly erroneous assessment of the evidence," or "an improper application of the correct law to the facts." *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

**ARGUMENT**

## I.     The District Court Exceeded its Habeas Authority

The district court exceeded its habeas authority in two fundamental respects. First, the court awarded relief without ever acquiring jurisdiction over the habeas petition. Second, the court entered relief not available in habeas.

### A.     The District Court Lacked Habeas Jurisdiction

For claims that "fall within the 'core' of the writ of habeas corpus," "jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005-06 (2025); *see also Padilla v. Rumsfeld*, 542 U.S. 426, 434-35 (2004). For Petitioner, that is the Western District of Louisiana. The District of New Jersey had no authority to adjudicate the habeas petition.

#### 1.     Habeas Jurisdiction Lies in the District of Confinement

The habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. §2242. "The consistent use [in the habeas statute] of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition"—the person "who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge[.]" *Padilla*, 542 U.S. at 434, 435 (emphasis in original). Consequently, for core habeas petitions challenging present physical confinement, "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or

some other remote supervisory official." *Id*; *see also id.* at 444; *accord J.G.G.*, 145 S. Ct. at 1005-06. And because district courts may grant writs of habeas corpus only "within their respective jurisdictions," 28 U.S.C. §2241(a), only the court with jurisdiction over the place of confinement has habeas jurisdiction.

*Padilla*'s "bright-light rule" contains no exceptions except those carved out in §§2241(d) and 2255, which are not applicable here. 542 U.S. at 449-50. Notably, *Padilla* could not identify "a single case in which [it] deviated from the longstanding rule" and "allowed a habeas petitioner challenging his present physical custody within the United States to name as respondent someone other than the immediate custodian and to file somewhere other than the district of confinement." *Id.* at 449-50; *see also, e.g., J.G.G.*, 145 S. Ct. at 1005; *Schlanger v. Seamans*, 401 U.S. 487, 489-91 (1971) (noting that failure to comply with district of confinement rule is "fatal" to court's jurisdiction). Nor has this Court endorsed a departure from the rule. *See, e.g., Yi v. Maugans,* 24 F.3d 500, 507 (3d Cir. 1994). This approach makes sense, because the immediate custodian rule is grounded in principles of personal jurisdiction. For a district court to grant habeas relief, it "must be able to exercise personal jurisdiction over the custodian of the petitioner." *Eddine v. Chertoff*, Civ. Act. No. 07-6117, 2008 WL 630043, at *2 (D.N.J. Mar. 5, 2008).

Here, the district court never acquired jurisdiction over the habeas petition. Petitioner filed his initial petition in the Southern District of New York while he was detained in New Jersey. JA.421. And neither the original petition nor the amended

petition named Petitioner's then-immediate custodian. JA.390; JA.423. These failures are dispositive of the district court's habeas jurisdiction.

### 2. No Exception to the District of Confinement Rule Applies

The district court relied on two purported exceptions to the district of confinement rule that it believed allowed it to exercise jurisdiction over the petition even though Petitioner was detained in Louisiana.

*First*, the district court thought the Supreme Court's decision in *Ex parte Endo*, 323 U.S. 283 (1944), allowed it to retain jurisdiction even though Petitioner was transferred from New Jersey. JA.69–75. In *Endo*, a Japanese-American filed a habeas petition in the Northern District of California, naming her immediate custodian. *Padilla*, 542 U.S. at 440. After filing, the petitioner was moved to Utah. *Id.* The Supreme Court held that "the Northern District '*acquired* jurisdiction in this case and that Endo's removal … did not cause it to lose jurisdiction where a person in whose custody she remains is within the district.'" *Padilla*, 542 U.S. at 440 (quoting *Endo*, 323 U.S. at 306). *Endo* thus stands for an "important but *limited* proposition[:] when the Government moves a habeas petitioner after she *properly* files a petition naming her immediate custodian, the District Court retains jurisdiction." *Padilla*, 542 U.S. at 441 (emphases added); *see also Anariba v. Director Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 446 (3d Cir. 2021) (*Endo* applies when a district court "already had acquired jurisdiction over [the petitioner's] *properly* filed habeas petition that named his *then-immediate custodian*").

That narrow exception does not apply here. Petitioner never filed a proper habeas petition in the District of New Jersey during the brief period he was detained there. Therefore, that court never acquired jurisdiction. Because jurisdiction never vested, there was no jurisdiction to retain under the *Endo* exception.

*Second*, the district court invoked the so-called "unknown custodian" exception to excuse Petitioner's failure to name the proper respondent. JA.83–99. To the extent that the exception exists,[3] it allows a district court to relax the immediate-custodian rule (as well as the district of confinement rule) if the custodian is *unknowable*—*e.g.*, if the identity of the custodian is something that the Government refuses to reveal and the petitioner's counsel cannot feasibly obtain. For example, *Padilla* noted in dicta that the "unknown custodian" may apply when "a prisoner is held in an undisclosed location by an unknown custodian" because "it is impossible to apply the immediate custodian and district of confinement rules." 542 U.S. at 450 n.18; *see Demanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (applying "unknown custodian" exception because petitioner was held "in a confidential location").

The exception has no application here. Petitioner's counsel was informed of the place of his confinement. The NTA identified Jena, Louisiana as the location of Petitioner's detention. JA.532. And the Government told Petitioner's counsel within

---

[3] The Supreme Court acknowledged the *possibility* of such an exception. *Padilla*, 542 U.S. at 450 nn. 17-18; *see also id.* at 454 (Kennedy, J., concurring). However, it has never adopted such an exception. Nor has this Court.

hours exactly where he was being held. JA.543–44. This is far from the very narrow circumstances in which the "unknown custodian" has been thought to apply. It makes no difference that Petitioner's counsel may have been unaware of his exact location at the precise minute they wished to file the habeas petition; such an expansive version of the exception has no support in law and would invite habeas counsel to engage in willful blindness to circumvent the district of confinement rule and secure jurisdiction in a favorable district.

Besides, even if the "unknown custodian" exception allowed Petitioner's counsel to file in the District of New Jersey for the brief period when his precise location was unknown, once it *did* "become known that petitioner is held in a jurisdiction other than this one," the district court was "divested of jurisdiction" and it was incumbent on the court to transfer the case to Louisiana—the district of confinement. *Demanjuk*, 784 F.2d at 1116.

### 3. The Transfer Statute does not Cure the Jurisdictional Defects

*Padilla* dictates that the district court lacked habeas jurisdiction because no petition was properly filed in New Jersey. The district court tried to paper-over this defect by relying on 28 U.S.C. §1631, which authorizes a court to transfer a "civil action" to another court "in which the action … could have been brought at the time it was filed or noticed," and provides that "the action … shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred." The court said

this authorized it to treat the petition as having been properly filed in that district during the brief period Petitioner was held there. JA.58–68. That misreads the statute.

a. Section 1631 allows transferee courts to exercise their *existing authority* over a case notwithstanding "technical obstacles" that would otherwise prevent them from hearing the case. *Griffin v. United States*, 621 F.3d 1363, 1365 (Fed. Cir. 2010); *see also Castillo v. Att'y Gen. of United States*, 109 F.4th 127, 135 (3d Cir. 2024) (§1631 was drafted "to rescue cases mistakenly filed in the wrong court, and to allow transfer to reach a just result"). For instance, §1631 can allow a transferee court to excuse what would otherwise be a violation of a statute of limitations (in the event the case needed to be refiled). *Griffin*, 621 F.3d at 1365; *see also Martinez-Nieto v. Att'y Gen. of United State*s, 805 F. App'x 131, 135 (3d Cir. 2020) (similar); *Liriano v. United States,* 95 F.3d 119, 122 (2d Cir. 1996) (similar). In such cases, the transferee court's *existing* authority gives it jurisdiction over the case.

This case is different in kind. Here, the district court used §1631 not to correct some threshold technical or procedural defect, but to instead *acquire substantive authority* that it otherwise lacked. Nothing in §1631 authorizes a district court to bypass prerequisites to jurisdiction. *See Monteiro v. Att'y Gen. of U.S.*, 261 F. App'x 368, 369 (3d Cir. 2008) (district court "lacked authority" under §1631 to transfer a petition for review when doing so would have required this Court to improperly exercise jurisdiction); *Pub. Int. Rsch. Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 119 (3d Cir. 1997) (courts have an "*unyielding* obligation to uphold statutory and constitutional

limitations on jurisdiction," which is not superseded by "less important prudential notions" (emphasis added)); *cf. Padilla*, 542 U.S. at 452 (Kennedy, J., concurring) (recognizing that although "the immediate-custodian and territorial-jurisdiction rules are *like* personal-jurisdiction or venue rules," that does not "mean that habeas petitions are governed by venue rules and venue considerations that apply to other sorts of civil lawsuits.").

In short, §1631 cannot be used to vest the transferee court with a substantive power it otherwise would lack. That is why, in cases like this one, the federal courts traditionally *dismiss* a case without prejudice, rather than attempt to shoehorn it into a transfer statute. *See, e.g., Padilla*, 542 U.S. at 451; *see also, e.g., United States v. Means*, 572 F. App'x 793, 794 (11th Cir. 2014); *Magee v. Clinton*, 2005 WL 613248, at *1 (D.C. Cir. 2005); *United States v. Little*, 392 F.3d 671, 680 (4th Cir. 2004). And that is the proper course here. As filed in the Southern District of New York, the petition was not in the district of confinement; those defects persisted when it was transferred to the court below.

**b.** The district court's reliance on §1631 is defective for another reason: a habeas proceeding is not a "civil action." JA.61. Although convenient, labeling habeas proceedings as "civil actions" "is gross and inexact," because habeas actions are "unique." *Harris v. Nelson*, 394 U.S. 286, 293-94 (1969). The issues presented in habeas proceedings "are materially different from those dealt within the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure," which is why rules

23

promulgated for civil cases are not applied wholesale to habeas petitions." *Id.* at 296, 300 n.7; *see* Fed. R. Civ. P. 81(a)(4) and (a)(4)(B) (providing that civil rules apply in habeas proceedings only "to the extent that the practice in those proceedings … has previously conformed to the practice in civil actions").

The Supreme Court has repeatedly refused to construe the phrase "civil action" to encompass habeas proceedings. For example, in *Schlanger* the Court considered the scope of 28 U.S.C. §1391(e), which "provided for nationwide service of process in a 'civil action in which each defendant is an officer or employee of the United States.'" 401 U.S. at 490 (quoting 28 U.S.C. §1391(e) (1964 ed., Supp. V.)). The Court noted that "[t]hough habeas corpus is technically 'civil,' it is not automatically subject to all the rules governing ordinary civil actions." *Id.* *Schlanger* thus rejected an "overbroad interpretation" of "the phrase 'civil action'" that would have encompassed habeas proceedings. *Stafford v. Briggs*, 444 U.S. 527, 542-43 (1980).

This Court likewise has recognized that habeas proceedings are "hybrid" in nature and "are often determined to be outside the reach of the phrase 'civil action." *Santana v. United States*, 98 F.3d 752, 754-55 (3d Cir. 1996); *see also Garrett v. Murphy*, 17 F.4th 419, 431 (3d Cir. 2021). Indeed, this Court declined to extend the "civil actions" definition to habeas petitions for purposes of the Prison Litigation Reform Act and the Equal Access to Justice Act. *See Santana*, 98 F.3d at 754-55; *Daley v. Fed. Bureau of Prisons*, 199 F. App'x 119, 121 (3d Cir. 2006).

Section 1631 should not be treated any differently.

### 4. Petitioner's Filing of an Amended Petition in Louisiana Confirms the Absence of Habeas Jurisdiction

Finally, even if the district court had habeas jurisdiction, the district court lost that jurisdiction when Petitioner filed an amended petition while he was detained in Louisiana.

"The plaintiff is the master of the complaint and therefore controls much about [his] suit." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (cleaned up). "If a plaintiff amends [his] complaint, the new pleading 'supersedes' the old one: The original pleading no longer performs any function in the case." *Id.* Those same principles apply in the habeas context. "When a petition is amended," the "cause proceeds on the amended petition." *Washer v. Bullitt County*, 110 U.S. 558, 562 (1884). And an amended petition, just like an amended complaint, must satisfy the requirements of jurisdiction. *Cf. Royal Canin*, 604 U.S. at 39.

At the time Petitioner amended his petition, he was detained in the Western District of Louisiana, which is also the same location as his immediate custodian. JA.400; JA.421–22; JA.423; JA.453. Putting aside whether the District of New Jersey ever acquired jurisdiction over the original habeas petition, it certainly lacked jurisdiction over the amended petition—at the time Petitioner voluntarily amended his petition, his counsel knew *exactly* where he was detained.

## B. The District Court's June 11 and July 17 Orders Exceed the Scope of Relief Available in Habeas

The preceding discussion establishes that the district court never acquired *jurisdiction* over the habeas petition. The court's June 11 and July 17 Orders exacerbated that error by ordering *relief* a federal court sitting in habeas may not award.

"Habeas is at its core a remedy for unlawful executive detention," and so the traditional function of habeas is to secure the habeas petitioner's release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he traditional function of the writ is to secure release from illegal custody"). Thus, relief other than "simple release" is not available in a habeas action. *See DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020).

Portions of the June 11 Order and the entire July 17 Order award relief far afield of release from custody. The June 11 Order not only enjoined the Government from *detaining* Petitioner, but also from *removing him* based on the foreign policy charge. And the July 17 Order went further still—requiring the IJ to vacate her June 20 decision and dictating what grounds she could rely on to adjudicate Petitioner's request for relief from removal on the fraud charge.[4] *Supra*, p.13. Habeas is not meant for such relief— it is not, in other words, some ersatz §1292(a) analog permitting district courts to

---

[4] The July 17 Order explicitly mentions the June 20 decision. But the district court ignored its prior recognition that the IJ had already found Petitioner "deportable" under the foreign policy charge. *See* JA.104. Therefore, the July 17 Order requiring the IJ to vacate her finding Petitioner removable on the foreign policy charge must be read backward looking to the April 11 finding.

exercise interlocutory appellate review of immigration judge's orders. *See Thuraissigiam*, 591 U.S. at 118 (finding that the alien's requested relief of "vacatur of his removal order and an order directing the Department to provide him with a new opportunity to apply for asylum and other relief from removal falls outside the scope of the common-law habeas writ") (cleaned up); *id.* at 119-20 ("the opportunity to remain lawfully in the United States" falls outside the scope of habeas relief). Ultimately, the constitutional right to habeas guarantees Petitioner "no more than the relief he hope[d] to avoid—release into the cabin of a plane bound for [the country named in the removal order]." *Tazu v. Att'y Gen.*, 975 F.3d 292, 300 (3d Cir. 2020) (cleaned up).

## II. The INA Divests the District Court of Jurisdiction

Even if the district court's exercise of jurisdiction were consistent with the habeas statute, its orders run headlong into multiple provisions of the INA that strip district courts of jurisdiction to review challenges arising from removal proceedings.

### A. 8 U.S.C. §1252(g)

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g).[5] That bar applies "notwithstanding any other provision of law, including [the habeas statute.]" *Id.* This provision stripped

_____

[5] Reference to the "Attorney General" includes the Secretary of Homeland Security. 6 U.S.C. §202(3).

the district court of jurisdiction to adjudicate Petitioner's claims challenging his detention and removal.

1. Section 1252(g) was "'directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion'" and "similar discretionary decisions." *Tazu*, 975 F.3d at 297 (quoting *AADC*, 525 U.S. at 485). Through §1252(g) and other provisions of the INA, Congress "aimed to prevent removal proceedings from becoming 'fragment[ed], and hence prolong[ed].'" *Id.* at 296 (alterations in original) (quoting *AADC*, 525 U.S. at 487); *see Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022) (Congress' intent was to "streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review").

To achieve these ends, §1252(g) prohibits district courts from adjudicating any and all challenges related to the commencement of removal proceedings—not only *whether* to commence proceedings, but also *when* to commence a proceeding. *See Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002). Likewise, the statute bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings—including whether to detain an alien pending removal proceedings. *See Tazu*, 975 F.3d at 298-99 (holding that §1252(g) bars review of Government's decision to "re-detain[] him for prompt removal").

Here, the petition alleged that the Government has violated various provisions of the U.S. Constitution by detaining him and seeking to remove him based on the foreign policy charge and the fraud charge. *Supra*, pp.7-8. Those challenges fall squarely

within Section 1252(g)'s bar on judicial review of "any cause or claim … arising from the decision or action … to commence proceedings … against any alien."  8 U.S.C. §1252(g).

**2.**     The district court did not dispute any of these principles.  Instead, it reasoned that §1252(g) does not apply on the theory that Petitioner is not challenging the commencement of his removal proceedings by the Secretary of Homeland Security but is rather challenging the foreign policy determination by the Secretary of State. JA.201–04.

That makes no sense.  The entire point of the Secretary's foreign policy determination is to render an alien "deportable" and to trigger removal proceedings. 8 U.S.C. §1227(a)(4)(C)(i)-(ii).  And it is the Secretary of Homeland Security—one of the officials covered by §1252(g)—that files the charging document with the immigration court to initiate those removal proceedings and trigger the authority to detain.  *See* 8 U.S.C. §1226(a).  The foreign policy determination is necessary to, and inextricably intertwined with, removal and detention.  And Petitioner challenges both.

The district court's own injunction bears this out.  Although the court insisted that Petitioner is only challenging the foreign policy determination, the injunction does not enjoin the foreign policy determination; it enjoins the Government from "remov[ing]" and "detaining" Petitioner, *see* JA.19–20—both actions taken by DHS. The lower court cannot have it both ways.

Adopting the district court's artificial distinction would enable aliens to freely circumvent §1252(g)'s jurisdictional bar simply by recharacterizing their challenges to be against another Executive Branch official, rather than the Secretary of Homeland Security. But this Court has made clear that §1252(g)'s prohibition applies regardless of whether an alien "restyle[s]" his challenge as being directed "to the *Executive's* general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law." *Tazu*, 975 F.3d at 298; *see also E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021) (reading §1252(g) as divesting courts over challenges to "*executive branch decisions or actions*"); *Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000) (recognizing that aliens may not "make an end-run around the terms of [§1252(g)] by simply characterizing their complaint"). "If a plaintiff is, at bottom, challenging [an action covered by §1252(g)], then regardless of how she technically pleads her claim, it's a challenge to [such action]. And district courts lack jurisdiction over such claims." *Duarte v. Mayorkas*, 27 F.4th 1044, 1063 (5th Cir. 2022) (Willett, J, concurring in part and dissenting in part). That is the case here.

It makes no difference that Petitioner is raising a constitutional challenge. *AADC* held that §1252(g) unequivocally closed the door to aliens raising a First Amendment challenge to the commencement of proceedings. 525 U.S. at 487-92 (holding that §1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment); *Tazu*, 975 F.3d at 298, 300 (reading §1252(g) to cover constitutional challenges to the

execution of a removal order). Indeed, in *AADC* the government admitted that "the alleged First Amendment activity was the basis for selecting the individuals for adverse action." 525 U.S. at 488 n.10. Nonetheless, the Supreme Court found that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within §1252(g)[.]" *Id.* at 487.

**3.** Whether or not §1252(g) stripped the district court of jurisdiction over Petitioner's claims, the court's *extension* of its preliminary injunction in its July 17 Order plainly flouts §1252(g). Petitioner challenged how the IJ was conducting the removal proceedings—specifically, the IJ's reliance on the Secretary of State's foreign policy determination. The July 17 Order resolved that challenge by dictating how the IJ must "adjudicate" Petitioner's removal proceeding—it compels the IJ to vacate her June 20 decision finding Petitioner removable, it delineates the grounds the IJ may consider for removal, it directs the IJ to adjudicate Petitioner's Section 237 waiver application, and it dictates what grounds the IJ may rely on when considering the waiver application. JA.25–28; *supra*, p.13. On its face, the July 17 Order falls within the heartland of §1252(g)'s prohibition on federal courts deciding claims "arising from the decision or action by the Attorney General to … adjudicate" an alien's case. *See, e.g.*, *Cardoso*, 216 F.3d at 517 (holding that §1252(g) precluded entering "injunction commanding the Attorney General to adjust her immigration status and precluding the Attorney General from executing pending removal orders"); *Li v. Agagan*, 2006 WL 637903, at *1, *3 (5th

Cir. Mar. 14, 2006) (refusing request that district court "either adjudicate [alien's] application for adjustment or to order the [DHS] to adjust his status").

The district court had no answer to this point; instead, it rejected the Government's invocation of §1252(g) in a cursory footnote that merely cross-referenced its prior jurisdictional decision. JA.1544 n.7. But whether §1252(g) permits a district court to adjudicate a challenge to the foreign policy determination has no bearing on whether a court may exercise what is effectively direct appellate review of immigration proceedings, as the July 17 Order does. Not only that, the July 17 Order's intrusion into the management of the immigration proceedings confirms that Petitioner's challenge is *not* solely against the Secretary of State's foreign policy determination but extends to how the IJ is adjudicating the removal proceedings. That is squarely covered by §1252(g).

## B.    8 U.S.C. §1252(b)(9)

Separately, any challenge to Petitioner's removal proceedings must be pursued through a petition for review in the appropriate court of appeals after a final order of removal. *See* 8 U.S.C. §1252(a)(5), (b)(9). Petitioner cannot short-circuit that process by seeking collateral review in the district court while immigration proceedings proceed.

### 1.    Section 1252(b)(9) Bars Review of Petitioner's Claims

The INA provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United

States under this subchapter shall be available only in judicial review of a final order under this section." 8 U.S.C. §1252(b)(9). And Congress has prescribed a single path for judicial review of orders of removal: "a petition for review filed with an appropriate court of appeals." 8 U.S.C. §1252(a)(5); *see also Verde-Rodriguez v. Att'y Gen. U.S.*, 734 F.3d 198, 201 (3d Cir. 2013). Read together, these provisions express Congress's intent to channel judicial review of every aspect of removal proceedings into the petition-for-review process in the courts of appeals. *See Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005) (highlighting Congress's "clear intent to have all challenges to removal orders heard in a single forum (the courts of appeals)"). Therefore, "most claims that even relate to removal" are improper if brought before the district court. *E.O.H.C. v. DHS*, 950 F.3d 177, 184 (3d Cir. 2020); *see also AADC*, 525 U.S. at 483 (labeling §1252(b)(9) an "unmistakable zipper clause," and defining a zipper clause as "[a] clause that says 'no judicial review in deportation cases unless this section provides judicial review.'"); *Vasquez v. Aviles*, 639 F. App'x 898, 900-01 (3d Cir. 2016); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, §1252(a)(5) and §1252(b)(9) mean that any issue – whether legal or factual – arising from any removal-related activity can be reviewed only through the [petition-for-review] process.").

Here, Petitioner's claims undeniably request "[j]udicial review" of "questions of law and fact … arising from a[] … proceeding brought to remove [him]." 8 U.S.C. §1252(b)(9). Therefore, the district court had no authority to adjudicate them.

## 2.    The District Court's Reasons for Ignoring §1252(b)(9) Fail

The district court disagreed on two theories.  First, it misread §1252(b)(9) to apply only when the alien has a final order of removal.  JA.112; JA.124–39.  Second, it concluded that §1252(b)(9) does not apply because Petitioner could not receive meaningful review of his claims through the normal administrative proceedings.  JA.139–200.  Both are wrong.

**a.**    First, §1252(b)(9)'s channeling function does not apply only after there is a final order of removal.  The statute is clear: it channels "[j]udicial review of all questions of law and fact" arising from a removal proceeding to "judicial review of a final order."  And §1252(a)(5) says that such judicial review happens in the court of appeals through the petition for review process.  Nothing in that language suggests that district courts may nonetheless adjudicate issues "arising from any action taken or proceeding brought to remove an alien" while removal proceedings are ongoing and up until a final order of removal is entered.  And that rule would make no sense:  it would mean a district court could lose jurisdiction midway through a case once the parallel immigration proceedings produced a final order.  Such chaos is precisely what Congress intended to prevent.  *See Tazu*, 975 F.3d at 296 (noting that the additions of §§1252(b)(9) and (g) were meant to "prevent removal proceedings from becoming fragmented, and hence prolonged") (cleaned up).

The district court relied on *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 133 (3d Cir. 2012), which read §1252(b)(9) to apply only when there is a final order of removal.

JA.130–39. But *Chehazeh* is no longer good law. This Court applied §1252(b)(9) prior to the issuance of a final order of removal in a published decision issued after *Chehazeh*. *See E.O.H.C.*, 950 F.3d at 183, 187-88 (applying provision to aliens who had their proceedings reopened and argued that their statutory right-to-counsel was being infringed upon).

Moreover, a majority of the Justices in *Jennings v. Rodriguez*, recognized that §1252(b)(9) applies before a final order is issued. Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, concluded that §1252(b)(9) did not apply to aliens challenging their prolonged detention because they were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined"—steps that precede a final order. *See* 583 U.S. 281, 294-95 (2018) (plurality opinion). Meanwhile, Justice Thomas and Justice Gorsuch thought that §1252(b)(9) should apply to a challenge to prolonged pre-final-order detention. *Id.* at 314-23 (Thomas, J., concurring). So while the Justices did not necessarily agree on the *precise* scope of §1252(b)(9), five Justices understood that §1252(b)(9) is operational *during* the removal proceedings—not just at the end.

**b.** Alternatively, the district court reasoned that §1252(b)(9) does not apply to Petitioner's claims on the theory that he cannot get "meaningful review" through normal immigration proceedings, with review in the federal courts of appeals. JA.140–200. To be sure, §1252(b)(9) does not strip district courts of jurisdiction if an alien cannot obtain meaningful review alongside a final order of removal, because such

"now-or-never" claims do not "arise from detention or removal proceedings." *E.O.H.C.*, 950 F.3d at 185, 186. But only a small subset of claims fit into that category—those "claims that are independent of, or wholly collateral to, the removal process," like "claims that cannot effectively be handled through the available administrative process." *Id.* at 186 (internal quotations omitted).

Petitioner's claims do not fit the bill. Indeed, this Court has *already* held that challenges to removal due to the Secretary of State's foreign policy determination are subject to §1252(b)(9). In *Massieu v. Reno*, an alien argued that the predecessor to the current foreign-policy ground (8 U.S.C. § 1251(a)(4)(C)(i)) was unconstitutionally vague. 91 F.3d 416, 417 (3d Cir. 1996) (Alito, J.). This Court reversed the lower court's injunction of the removal proceedings, holding that "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance" must seek review through the petition for review process, and the court of appeals can review the final removal order and "'all matters on which the validity of the final order is contingent.'" *Id.* at 421, 422 (quoting *INS v. Chadha*, 462 U.S. 919, 937-39 (1983)); *see also id.* at 423 (reaffirming that review is not meaningfully precluded when "the challenge by the aliens is neither procedural nor collateral to the merits").

*Massieu* thus resolves the district court's concerns about the administrative process being unable to address Petitioner's constitutional claims. JA.156–80. The court also postulated that the IJ could not sufficiently develop a factual record. JA.163–69. Not so: the IJ *is* empowered to develop a record. *See* 8 U.S.C. §1229a(b)(1); *see also*

8 C.F.R. §§1003.19(b); 8 C.F.R. §1240.1(b); 1240.10(a)(4); 1240.11(c)(3)(ii).  Indeed, it has a duty to do so.  *See, e.g.*, *Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006).  While IJs may not adjudicate constitutional challenges to statutory authority, they must still develop the record for such challenges to be heard by the court of appeals.  *See Matter of M-P-*, 20 I. & N. Dec. 786, 787-88 (BIA 1994)*; see Matter of S-H-*, 23 I. & N. Dec. 462, 465 (BIA 2002).  And through the district court's *ex parte* orders requiring production of the immigration proceedings record, it is now undisputed that the IJ was developing that record.  *See, e.g.*, JA.161–62.[6]

The district court relied on *McNary v. Haitian Refugee Ctr., Inc.*, JA.167, which involved a constitutional pattern-and-practice challenge to the INS's administration of a temporary residence program for special agricultural workers ("SAW").  498 U.S. 479, 483 (1991).  The statute contained a judicial review provision which channeled review "of a determination respecting an application" for SAW status into the courts of appeal, but it did not refer to a "group of decisions or a practice or procedure employed in making decisions."  *Id.* at 492.  Because the plaintiffs' constitutional pattern-and-practice claims required "factfinding and record-developing capabilities" that the statute would have barred if applied, the Court concluded that Congress had not intended to

---

[6] If this case turned out to be one of those incredibly rare cases in which there is an insufficient record, the court of appeals could "transfer the proceedings to a district court" for limited fact finding if a petitioner can establish that a hearing is required on that issue.  28 U.S.C. §2347(b)(3); *see AADC*, 525 U.S. at 496-97 & n. 3 (Ginsburg, J., concurring).

bar district court review of such claims. *Id.* at 492, 496-97. In particular, the Court reasoned that Congress "easily could have used broader statutory language" if it had "intended the limited review provisions [at issue] to encompass challenges to INS procedures and practices." 498 U.S. at 494. And the Court provided two examples of what might constitute language "expansive" enough to remove jurisdiction over SAW status claims: language channeling (1) "all causes … arising under any of the provisions" of the SAW program, or (2) "all questions of law and fact" arising from the program. *Id.* at 494 (emphasis added).

Section 1252(b)(9) employs the exact kind of clear language that *McNary* said *would be* sufficient to strip jurisdiction. More fundamentally, *Massieu* expressly acknowledged *McNary* and still held that the immigration proceedings would provide meaningful review of Massieu's claims. 91 F.3d at 423, 424.

Finally, the district court thought that §1252(b)(9) should not apply because the IJ lacks expertise to address Petitioner's challenge. JA.170–80. But Petitioner's claims are inextricably "intertwined with or embedded in matters on which" the immigration officials are expert; therefore, he must pursue his challenges through the scheme created by Congress. *See Axon Enterprise Inc. v. FTC*, 598 U.S. 175, 195 (2023). Moreover, the availability of review of constitutional questions in the court of appeals is all that is needed to require an alien to follow the administrative process. *See Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 195-96 (3d Cir. 2018) ("Finally, although the constitutional claims may be outside of FERC's expertise, this is tempered by the court

of appeals' review, which regularly resolves constitutional issues.") (citing *Massieu*, 91 F.3d at 420 n.4).

### 3.    At a Minimum, §1252(b)(9) Bars the July 17 Order

At a bare minimum, §1252(b)(9) barred the district court from entering the July 17 Order. Whether the IJ may rely on the foreign-policy determination—either as a ground for removal or as part of its consideration of his eligibility for a Section 237 waiver—is plainly a "question[] of law … arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. §1252(b)(9). Indeed, it goes to the very heart of the process by which Petitioner's removability is being decided. *See E.O.H.C.*, 950 F.3d at 186. Section 1252(b)(9) precludes this unprecedented intrusion into the operations of the removal proceedings. JA.1718.

## III.  The District Court Erred in Granting a Preliminary Injunction on Petitioner's Vagueness Claim

The preceding discussion establishes that the district court had no authority to exercise jurisdiction over Petitioner's habeas petition or to enter any relief. That is enough to reverse across the board. Even if it were otherwise, the Court still should reverse the preliminary injunction prohibiting the Government from removing Petitioner pursuant to the foreign policy determination. The district court held that Petitioner was likely to succeed *solely* on his claim that the statute—8 U.S.C. §1182(a)(3)(C)(iii)—is unconstitutionally vague as-applied to him. JA.300–01; JA.307 n.87. That holding cannot be reconciled with key limitations on the vagueness doctrine

and is premised on a fundamentally flawed reading of the statute. In reality, the district court's endorsement of Petitioner's vagueness claim is an unsubtle backdoor effort to assert a First Amendment retaliation in violation of the Supreme Court's *AADC* decision. And the court also erred in finding that Petitioner would be irreparably harmed absent an injunction.

## A. The District Court Erred in Finding Likelihood of Success on Petitioner's Vagueness Claim

An alien is deportable based on "the alien's past, current, or expected beliefs, statements, or associations" if "the Secretary of State personally determines that the alien's admission would compromise a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii). The district court held that the Secretary's determination that Petitioner is removable under this provision likely violates the Due Process Clause's bar on laws that are "so vague" that they "fail[] to give ordinary people fair notice of the conduct it punishes, or so standardless that [they] invite[] arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983)). That holding should be reversed for multiple reasons.

### 1. The Void-For-Vagueness Doctrine does not Apply

First and foremost, the lower court's preliminary injunction must be reversed because the vagueness doctrine does not apply to Section 1182(a)(3)(C)(iii). The Supreme Court "has steadfastly applied the void-for-vagueness doctrine only to statutes or regulations that purport to define the *lawfulness* of conduct or speech," *Nyeholt v. Sec'y*

*Of Veterans Affs.*, 298 F.3d 1350, 1356 (Fed. Cir. 2002) (collecting cases), including "laws that define crimes … laws that fix sentences … laws that restrict speech … and laws that regulate businesses." *United States v. Matchett*, 837 F.3d 1118, 1122 (11th Cir. 2016) (collecting cases) (Pryor, J., and Carnes, J., respecting the denial of rehearing en banc). As a result, courts have consistently rejected vagueness challenges to laws that do not regulate primary conduct. *See Nyeholt*, 298 F.3d at 1351, 1355-57 (rejecting vagueness challenge to regulatory amendment to veterans' compensation schedule); *Woodruff v. U.S. Dep't of Lab., Off. of Workers Comp. Program*, 954 F.2d 634, 642 (11th Cir. 1992) (rejecting application of vagueness doctrine to interpretive rule because "[i]t is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined").

Section 1182(a)(3)(C)(iii) does not regulate primary conduct or "purport to define the lawfulness of conduct or speech." *Nyeholt*, 298 F.3d at 1356. Rather, the law *delegates authority* to the Secretary of State to render an alien deportable because his "presence or activities" "would compromise a compelling United States foreign policy interest." 8 U.S.C. §§1182(a)(3)(C)(iii), 1227(a)(4)(C)(i). To be sure, the alien's "activities" are relevant to the Secretary's determination, but the statute itself does not purport to control the alien's conduct or make it unlawful. In fact, the statute applies only to conduct that is "lawful within the United States." 8 U.S.C. §1182(a)(3)(C)(iii). That delegation is not a regulation of primary conduct.

In this way, Section 1182(a)(3)(C)(iii) is like the parole statutes that the court in *Williams v. Johnson* held were not susceptible to a vagueness challenge. Those statutes granted the Board authority to grant parole, but provided that

> No person shall be released on parole by the Board until a thorough investigation has been made into the prisoner's history, physical and mental condition and character and his conduct, employment and attitude while in prison. The Board shall also determine that his release on parole will not be incompatible with the interests of society or of the prisoner.

*Williams v. Johnson*, No. 1:10-cv-823, 2011 WL 4101505, at *4 (E.D. Va. Sept. 12, 2011). The court held that the vagueness doctrine did not apply—even though the inmate's actions were relevant to the parole decision—because the statute did not regulate the inmate's conduct, but "merely prescribe[s] the general process and criteria for granting parole in Virginia." *Id.*; *see also Grimm v. Johnson*, No. 3:10-cv-593, 2011 WL 3321474, at *1 (E.D. Va. Aug. 2, 2011) (same). Similarly, although §1182(a)(3)(C)(iii) references the alien's activities, it does not regulate those activities but merely makes them relevant to the discretionary authority delegated to the Secretary.

In reality, Petitioner's challenge is not a vagueness challenge to the clarity of the statute, but a *non-delegation* challenge to the breadth of authority given to the Secretary. But that only confirms that Petitioner's challenge must fail. The Supreme Court has consistently held that "very broad delegations" provide the "intelligible principle" necessary to avoid a non-delegation violation. *Gundy v. United States*, 588 U.S. 128, 135, 146 (2019) (plurality opinion). Those include delegations that are equally (if not far more) expansive than §1182(a)(3)(C)(iii), including delegations to regulate "in the public

interest," *Nat'l Broadcasting Co. v. United States*, 319 U.S. 190, 216 (1943) (upholding delegation to regulate in the "public interest"), to set "fair and equitable" rates, *Yakus v. United States*, 321 U.S. 414, 422, 427 (1944), or to set air quality standards that are "requisite to protect the public health," *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 472 (2001). And the standard is even more relaxed when applied to statutes implicating issues of foreign policy. *See Palestine Information Office v. Shultz*, 853 F.2d 932, 944 (D.C. Cir. 1988). Petitioner cannot repackage a doomed-to-fail non-delegation claim into a vagueness claim.

### 2.    The Statute is not Unconstitutionally Vague

Even if the vagueness doctrine applied to §1182(a)(3)(C)(iii), the district court's holding is fundamentally flawed. The court's primary rationale for finding vagueness did not turn on a determination that the *language* of §1182(a)(3)(C)(iii) is vague. Instead, it reasoned that Petitioner has been deprived of fair notice because the Secretary never determined that Petitioner's conduct "compromise[d] a compelling United States foreign policy interest." 8 U.S.C. §1182(a)(3)(C)(iii). Specifically, the court read the statutory term "foreign policy" to refer only to "the United States' relations with other countries," and concluded that "the Secretary did not affirmatively determine that the Petitioner's alleged conduct has impacted U.S. relations with other countries." JA.234. This, the court thought, deprived Petitioner of notice and invited arbitrary enforcement. JA.234–35. That conclusion is flawed for three reasons.

43

**a.** To begin, the court's argument that the Secretary did not make the findings required by Section 1182(a)(3)(C)(iii) is really just an argument that the Secretary did not comply with the statute. But that is not a vagueness claim. If it were, then even the clearest of statutes is unconstitutionally vague if the government is found to have applied it beyond its (clear) terms. That cannot be right. Petitioner chose not to assert an *ultra vires* or APA challenge to the Secretary's determination specifically; the district court had no business repackaging petitioner's vagueness claim into such conventional administrative law claims.

In any event, the district court's cramped interpretation of the statute is fundamentally flawed. The court focused exclusively on the term "foreign policy," but the statute does not say that an alien is deportable if he "compromises … United States foreign policy"—it applies if the alien's conduct "compromises a United States *foreign policy interest*." 8 U.S.C. §1182(a)(3)(C)(iii) (emphasis added). That language has a substantially broader scope. It is not limited to "the course of action [the United States] takes as to other countries," JA.233, but encompasses all subjects in which the United States has a "concern" that relates to its foreign policy. *E.g.*, The Random House Dictionary of the English Language 741 (1979) (defining "interest" as "a business, cause, or the like in which a person has a share, concern, or responsibility"). For example, a natural disaster that stops the transport of oil from Russia to Germany may not affect the United States' diplomatic relations with another country, but it certainly

affects "a United States *foreign policy interest*." 8 U.S.C. §1182(a)(3)(C)(iii) (emphasis added).

The Secretary clearly concluded that Petitioner's activities "compromised … a United States foreign policy interest," as correctly interpreted. The United States' interest in suppressing anti-Semitism "around the world" undeniably counts as a "foreign policy interest," and the Secretary of State expressly determined that Petitioner's conduct "severely undermine[s]" that interest. JA.1024.[7] No more is needed.

Even if the district court's cramped interpretation of the term "foreign policy" were correct, the Secretary *did* determine that Petitioner's conduct affected "the United States' relations with other countries." As to Petitioner specifically, the Secretary determined that he engaged in "antisemitic protests and disruptive activities" that "fosters a hostile environment for Jewish students in the United States" and that "condoning anti-Semitic conduct and disruptive protests in the United States" would "undermine[] U.S. policy to combat anti-Semitism around the world and in the United States." JA.1024. That easily fits the district court's reading. Take the obvious example: the United States' "relations" with Israel would undoubtedly be affected if the United States tolerated or "condoned" anti-Semitic activities in the United States. *Id.*

---

[7] The district court suggested that the foreign policy interest the Secretary invoked was really the "champion[ing] … of American citizens." JA.297. The Secretary's memorandum refutes that reading.

The reality that actions within a country may affect that country's relations with another is hardly lost on Petitioner: he strikingly has sought to justify Hamas' October 7 terrorist attacks—occurring solely within Israel's *domestic* borders—as being necessary to prevent the normalization of *foreign* relations between Israel and Saudi Arabia. *See* Carl Campanile, et al., *Mahmoud Khalil ripped over attempt to 'justify' Oct. 7 attack in Ezra Klein, NYT interview: 'Must be immediately deported'*, N.Y. Post (Aug. 7, 2025).[8] That explicit endorsement of Hamas's October 7 murders, rapes, and acts of torture inside Israel confirms the district court's elementary error here: actions that occur within domestic borders easily and readily can have foreign policy effects. Petitioner plainly understands this. The district court should have too (or at least deferred to the Secretary of State's expert judgment on it).

The Secretary's determination need not say anything "about any country other than America" nor "mention a region of the world that encompasses particular countries." JA.234. Many foreign policy concerns are not country or region specific, and the Secretary's memorandum makes clear that the United States' "policy to combat anti-Semitism" applies "around the world." JA.1024. That is enough. And because the Secretary *did* determine that Petitioner's conduct falls with the statutory terms, the central premise of the district court's void-for-vagueness rationale falls away.

---

[8] https://nypost.com/2025/08/07/us-news/mahmoud-khalil-ripped-over-attempt-to-justify-oct-7-attack-in-ezra-klein-nyt-interview-he-hates-america/.

**b.**  The district court acknowledged that §1182(a)(3)(C)(iii) can be fairly read not just to concern "state-to-state relations," but also to "encompass a wider concern – the United States' relations with the external world as a whole."  JA.289.  And the court also conceded that under this broader reading, the Secretary's articulated foreign-policy interest in "fighting the social and religious scourge of global anti-Semitism could well fit under it."  *Id.*; *see also* JA.290 ("on that interpretation, the statute's words ('foreign policy') would now better fit the Secretary's determination"); JA.291 (acknowledging that "'foreign policy'" on this reading "can apply to efforts to take on a social or religious issue, like combatting global anti-Semitism").

Despite those concessions, the district court still thought the statute was unconstitutionally vague based on the unremarkable fact that the United States has a multitude of foreign policy interests.  JA.292 (listing 33 examples).  But that only shows that the law is broad—not vague.  That a "law is broad does not mean that it is ambiguous, much less unconstitutionally vague."  *Calzone v. Summers*, 942 F.3d 415, 426 (8th Cir. 2019); *Woodhull Freedom Found. v. United States*, 72 F.4th 1286, 1304 (D.C. Cir. 2023) ("breadth" of law "does not make it vague").  And due process does "not requir[e]" "[i]mpossible standards of specificity," but only that "the language convey[] sufficient definite warning as to the proscribed conduct when measured by common understanding and practices."  *Jordan v. De George*, 341 U.S. 223, 231 (1951).

Besides, whether the phrase "foreign policy interest" is vague must be judged in light of the surrounding text.  *Holder v. Humanitarian L. Project*, 561 U.S. 1, 24 (2010).

And here, the requirements that the alien's activities "compromise" a foreign policy interest that is "compelling" mitigate any lingering vagueness concerns. As the district court acknowledged, the term "compromise" requires that the alien's activities have "a serious impairment" on a foreign policy interest, "not a slight one." JA.235; *see also* JA.233 (defining "compromise" to mean "a severe negative impact"). That limitation significantly narrows the scope of conduct covered by the statute and dispenses with the district court's worry that aliens' innocuous actions with a distant effect on a foreign policy interest will be swept into the statute. *Cf.* JA.283. That is reinforced by the statute's additional requirement that the foreign policy interest be "compelling"—*i.e.*, that it be "especially important," and "not a minor one or a mid-sized one." JA.233–36. The district court stated that this term "does not meaningfully clear things up," but it conceded that applying that term eliminated *two-thirds* of the example foreign-policy interests it listed. JA.296. Combined, these statutory terms significantly narrow the statute's scope and mitigate any vagueness concern.[9]

---

[9] These additional terms distinguish this case from those on which the district court relied. This case does not require "complex" or "counterfactual economic analysis," JA.277, that would "vex 'the acutest commercial mind," as was true in *International Harvester Co. of America v. Kentucky*, 234 U.S. 216, 223 (1914). It does not "leave[] open … the widest conceivable inquiry" whose scope "no one can foresee" and result "no one can foreshadow or adequately guard against." JA.279 (quoting *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921)). It does not involve the unique features of the residual clause in *Johnson v. United States*, 576 U.S. 591, 597-98 (2015), which "combine[d] indeterminacy about how to measure [] risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify." And it does not require a person to predict what might happen "in the distant future." *Herndon v. Lowry*, 301 U.S. 242, 262

More fundamentally, however, the district court's lengthy recitation of possible foreign policy interests might be relevant to a *facial* challenge to §1182(a)(3)(C)(iii)—but it is ill-suited to Petitioner's *as-applied* challenge, which asks "whether a statute is vague as applied to the particular facts at issue." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010). *Petitioner's* conduct plainly compromises the United States' well-known foreign policy interest in combatting anti-Semitism. *See, e.g.*, Executive Order 14188 (90 Fed. Reg. 8847) (directing executive agencies to use ""all available and appropriate legal tools, to prosecute, remove, or otherwise hold to account the perpetrators of unlawful anti-Semitic harassment and violence"). As the district court acknowledged, "efforts to take on a social or religious issue, like combatting global anti-Semitism" can naturally be understood to constitute a foreign policy interest. JA.291. And the Secretary specifically determined that this foreign policy interest is compelling and is "severely undermine[d]" by Petitioner's activities. JA.1024. It thus makes no difference if there is "doubt as to the adequacy of the standard in less obvious cases," *De George*, 341 U.S. at 232, because "a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Holder*, 561 U.S. at 18-19 (faulting court of appeals for "consider[ing] the statute's application to facts not before it" "in spite of its own statement that it was not addressing a 'facial vagueness challenge'").

---

(1937). As to the other cases the district court cited (at 48-50), it acknowledged that those cases are distinguishable and *do not* "compel[] the outcome in this case." JA.258.

### 3. The First Amendment does not Make the Statute Unconstitutionally Vague

Finally, the district court sought to buttress its vagueness holding on the theory that a stricter vagueness standard applies when the First Amendment is implicated. That is true, but it does not move the district court's analysis across the line. "[P]erfect clarity and precise guidance have never been required even of regulations" that implicate "expressive activity." *Holder*, 561 U.S. at 19 (quotation marks omitted). Thus, "even to the extent a heightened vagueness standard applies," a plaintiff whose speech clearly falls within the statute "cannot raise a successful vagueness claim." *Id.* (rejecting as-applied vagueness challenge in First Amendment case because "the statutory terms are not vague as applied to plaintiffs"). That is exactly the case here. *Supra*, p.8.

The district court's reliance on the First Amendment is especially unavailing in this context of the Executive's authority to detain and remove illegal aliens from the country. The Supreme Court has expressly held that aliens are categorically prohibited from raising First Amendment retaliation claims to challenge their detention and removal. *AADC*, 525 U.S. at 488 ("[A]n alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation"). This is true, even if the government *admits* that removal is in retaliation for protected speech. *See id.* at 473-74, 488. So even if a heightened vagueness standard normally would apply where First Amendment interests are involved, that cannot be true in this context. Any other ruling would allow aliens to bypass the limits of *AADC*

simply by repackaging a barred First Amendment retaliation claim as a vagueness claim. *See, e.g.*, JA.1742-43 (referring to First Amendment principles).

### B.     The District Court Erred in Finding Irreparable Harm

The district court's erroneous merits analysis was accompanied by an equally flawed assessment of irreparable harm.  *See* JA.8.  The court held that Petitioner would suffer irreparable harm in the form of (1) "damaged … career prospects"; (2) "harm [to] his reputation"; and (3) "deter[ring] him from engaging in speech-related activities." JA.12–13.

The first two purported harms are not attributable to the Government's efforts to remove or detain Petitioner based on the foreign-policy charge; if anything, they derive from the Secretary's public and still-in-place determination that Petitioner is removable under 8 U.S.C. §1227(a)(4)(C).  Indeed, Petitioner himself attributes these harms to "the Rubio determination."  JA.1099; JA.1102–04.  Because the preliminary injunction would not repair those injuries, they cannot support injunctive relief.  The purported speech-related harm also is not remedied by the injunction; the fraud charge is an independent ground for Petitioner's removal *and* detention, so any "chill" from being detained would persist, even with an injunction preventing detention on the foreign-policy ground.

The district court disagreed on the theory that "it is the Secretary of State's [foreign policy] determination that drives the Petitioner's ongoing detention—not the [fraud] charge."  JA.15.  Even if that is true, there is no contention that the Government

would not seek to *remove* Petitioner based on the fraud charge, so an injunction on the foreign policy charge would not eliminate any speech chill Petitioner attributes to removal. Besides, Petitioner's activities belie any notion that the threat of removal is chilling his speech. Ever since he was released from custody, Petitioner has engaged in extensive speech—publicly meeting with multiple members of Congress and conducting a media blitz[10] with several news organizations. *See, e.g.*, JA.1749-70; *Reading v. North Hanover Township*, 2023 WL 7986408, at *6 (D.N.J. 2023) (holding that plaintiff's fear of censorship was "unfounded" where she continued to post publicly on her blog without continued monitoring or engagement from defendants). Such extensive publicity seeking belies Petitioner's contention that his speech is somehow being chilled.

At a minimum, the district court failed to identify any irreparable harm that could justify enjoining the Government from seeking to remove Petitioner based on the foreign policy charge given that Petitioner is removable on the fraud charge. And as explained next, the district court erred in barring the Government from detaining Petitioner on that charge.

---

[10] Hira Humayun & Ross Adkin, *'I knew I would prevail': Palestinian activist Mahmoud Khalil talks to CNN about his months in ICE detention*, CNN (July 11, 2025), https://www.cnn.com/2025/07/11/world/mahmoud-khalil-ice-detention-amanpour-interview-intl-hnk; Julianne McShane, *"Mahmoud Khalil, Finally Free, Speaks Out"*, Mother Jones (June 22, 2025), https://www.motherjones.com/politics/2025/06/mahmoud-khalil-finally-free-speaks-out/; Ezra Klein, "The Trump Administration Tried to Silence Mahmoud Khalil, So I Asked Him to Talk", New York Times (Aug. 5, 2025), https://www.nytimes.com/2025/08/05/opinion/ezra-klein-podcast-mahmoud-khalil.html.

## IV.    The District Court Erred in Ordering Petitioner's Release

Finally, the district court erred in ordering Petitioner's release.  First, the district court had no jurisdiction to set aside the Attorney General's detention decision. Second, even if it had that authority, it misapplied the relevant legal standard.

**A.**  Section 1226(e) prohibits courts from setting aside "any action or decision by [immigration officials] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  8 U.S.C. §1226(e).  The provision bars challenges to the Executive's "discretionary judgment or a decision" "made regarding his detention or release."  *Demore v. Kim*, 538 U.S. 510, 516 (2003). Courts—including this Court—have consistently applied this provision to bar review of discretionary decisions whether to detain aliens placed in removal proceedings.  *See, e.g.*, *Jennings*, 583 U.S. at 295 (plurality opinion) (explaining that §1226(e) "precludes an alien from challenging … a decision that the Attorney General has made regarding [an alien's] detention or release"); *Borbot v. Warden, Hudson Co. Correctional Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).

Section 1226(e) prohibited the district court from ordering Petitioner's release. JA.22: JA.328–32.  The district court relied on *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), which recognized that a court may grant bail to a petitioner pending habeas review.  JA.331.  But *Lucas* did not involve immigration proceedings, and Congress acted well within its prerogative when enacting §1226(e) to insulate detention decisions from judicial review.  *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007).  Besides,

*Lucas* predates the enactment of § 1226(e) by a decade, so it cannot possibly have overridden the specific statutory limitations on this form of relief.

The district court read §1226(e) to not preclude habeas review of constitutional challenges. JA.329–30 (citing *Al-Siddiqi v. Achim*, 531 F.3d 490, 494 (7th Cir. 2008), and *Najera v. United States*, 926 F.3d 140 (5th Cir. 2019)). But the district court did *not* order Petitioner released based on its review of any statutory or constitutional challenge; it ordered release *without* making any determination regarding the legality of Petitioner's continued detention on the fraud charge. *Infra*, pp.12-13. In fact, the court explicitly noted that Petitioner is *not* likely to succeed on the merits of any challenge to the fraud charge. JA.307. The court provided no basis (1) to reverse a decision that Congress delegated to the Executive and (2) to do so without finding that the detention itself violated (or even likely violated) any laws or constitutional provisions. That squarely conflicts with this Court's recognition that immigration detention is constitutional. *See Hope*, 972 F.3d at 328–29 (citing *Demore*, 538 U.S. at 531, and *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

**B.** Even if the court had jurisdiction to set aside the Attorney General's detention decision, the requirements for release were not met. "[A] preliminary grant of bail [is] an exceptional form of relief in a habeas corpus proceeding," *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992), which is appropriate only where: (1) the petitioner has raised "substantial constitutional claims upon which he has a high probability of success"; *and* (2) "extraordinary or exceptional circumstances exist which

make the grant of bail necessary to make the habeas remedy effective." *Id.* (cleaned up). And courts in this Circuit have applied the standard in the conjunctive. *See, e.g.*, *Ingram v. PBPP*, No. 23-cv-565, 2023 WL 6129539, at *1 (W.D. Pa. Sept. 19, 2023). That is as it must be. The Supreme Court has made clear that preliminary injunctive relief requires the movant to "establish that he is likely to succeed on the merits," *Winter v. NRDC*, 555 U.S. 7, 20 (2008), and requests for release on bail pending removal proceedings are no exception.

Between *Landano* and *Winter*, the release order cannot stand on extraordinary circumstances alone. The court below instead relied on *Lucas v. Hadden*, 790 F.2d 365 (3d Cir. 1986), a non-immigration habeas case, to hold that a finding of extraordinary circumstances is all that is necessary. JA.343–44. It further read *Landano* to reinforce *Lucas*'s holding. *See* JA.346 ("*Landano*—has explicitly said no to that, has explicitly said we don't think likelihood of success on the merits as the key issue"). But that was error. The lower court ignored this Court's explicit mention: "As we noted in *Lucas*, [w]e doubt that it is appropriate to grant bail prior to ruling on a state habeas petition solely on the ground that there is a high likelihood of success on the merits…." *Landano*, 970 F.2d at 1241. *Lucas* recognizes that likely success is not *sufficient* but remains *necessary*, as *Landano* later confirmed. This alignment therefore required the lower court to conclude that Petitioner was likely to succeed on the merits of his challenge to continued detention. Because the court failed to do that, its merits-agnostic injunctive order is facially contrary to *Winter* and this Court's precedent.

To the extent that *Lucas* and *Landano* are read to be in tension, *Landano* sets forth the appropriate test, and *Lucas* is no longer good law. The release order amounts effectively to merits relief as a preliminary matter. *See Thuraissigiam*, 591 U.S. at 119 (recognizing release as the cognizable relief in habeas). Petitioner is therefore seeking "an extraordinary remedy[, which] may only be awarded upon a clear showing that [he] is entitled to such relief" and is "never awarded as of right." *Winter*, 555 U.S. at 22, 24; *see also Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (applying principle in habeas context). To meet this high bar, Petitioner must show that he is likely to succeed on the merits.

Here, Petitioner failed to show "substantial constitutional claims upon which he has a high probability of success." *Landano*, 970 F.2d at 1239. The district court's order of release on bail was therefore unlawful. First, Petitioner cannot show a high probability of success considering the multiple jurisdictional bars precluding adjudication of this habeas petition. *Supra*, pp.17-39. Second, Petitioner has not even obtained a preliminary injunction with respect to the fraud charge on which the IJ found him removable. *Supra*, pp.8-9, 39-52.[11] Because that is an independent and sufficient basis for removal, there is no relevant probability of success that could have justified release.

The district court did not conclude otherwise. Instead, it candidly acknowledged that "Petitioner has failed to develop any likely to succeed argument on anything other

---

[11] The district court denied Petitioner's recent attempt to seek an injunction on the fraud ground. *See* Dist. Ct. ECF No. 374.

than the vagueness ground as to the Secretary of State's determination." JA.363. To be sure, the district court's bail decision concluded that "there is at least something to" Petitioner's allegation that his detention on the fraud charge was an unconstitutional effort to use the civil immigration laws to inflict punishment based on "disapproval of certain things [Petitioner] has said and done in the past." JA.374–76. There are two problems with this. First, the district court's reliance on a "due process retaliation" claim is really just an effort to circumvent the Supreme Court's explicit holding in *AADC* that aliens cannot contest removal by alleging that the Government is retaliating against them, *including because of their speech. AADC*, 525 U.S. at 488. Second, whatever the merits of that at-least-merely-colorable conclusion, it does not satisfy the "high probability of success" that this Court requires, and it certainly does not satisfy *Winter*'s demand for likelihood of success.

## CONCLUSION

For these reasons, this Court should reverse the district court and remand with instructions to dismiss this habeas action for lack of jurisdiction. Alternatively, the Court should reverse the preliminary injunction on the merits.

Dated: August 20, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Special Counsel to the Assistant Attorney
General

ALANNA T. DUONG
Senior Litigation Counsel

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
Office of Immigration Litigation
General Litigation and Appeals Section
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
dhruman.y.sampat@usdoj.gov

JOHN F. STANTON
RACHEL L. BROWNING
Trial Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32 and Third Circuit Rule 32.1, as modified by the Court's minute order of August 19, 2025, because it contains 14,365 words. This brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 32 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

## STATEMENT REGARDING ORAL ARGUMENT

The Government believes that oral argument will materially assist the Court in adjudicating the issues raised in this appeal.

s/ Dhruman Y. Sampat
DHRUMAN Y. SAMPAT
Senior Litigation Counsel

## <u>ANTI-VIRUS CERTIFICATION</u>

This is to certify that the foregoing Brief is free of viruses.

*s/ Dhruman Y. Sampat*
DHRUMAN Y. SAMPAT
Senior Litigation Counsel
