# United States Court of Appeals

*for the*

# Third Circuit

Case Nos. 25-2162, 25-2357

MAHMOUD KHALIL,

*Petitioner-Appellee,*

— v. —

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND
SECURITY; SECRETARY UNITED STATES DEPARTMENT OF STATE
and ATTORNEY GENERAL UNITED STATES OF AMERICA,

*Respondents-Appellants.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

## BRIEF FOR *AMICUS CURIAE* PROFESSOR KELLEN R. FUNK
## IN SUPPORT OF PETITIONER-APPELLEE

KELLEN R. FUNK
Michael E. Patterson Professor of Law
COLUMBIA LAW SCHOOL
Jerome Greene Hall
435 West 116th Street, Room 901
New York, New York 10027
(212) 854-2640

DAVID N. CINOTTI
CJ GRIFFIN
PASHMAN STEIN WALDER HAYDEN
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 488-8200

*Attorneys for Amicus Curiae*

CP COUNSEL PRESS   (800) 4-APPEAL • (385407)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF AMICUS CURIAE ......................................................... 1

STATEMENT OF COMPLIANCE WITH FED. R. APP. P. 29(a)(4)(E) ................ 1

SUMMARY OF THE ARGUMENT ........................................................ 1

INTRODUCTION ................................................................................. 2

ARGUMENT ........................................................................................ 6

   I.   The stringent standards of admission to bail in post-conviction habeas proceedings are inapplicable to executive-detention cases. ........................... 6

   II.  Historically, federal common law admitted a petitioner to bail based only on a reasonable assurance of the petitioner's return to trial. ............................ 12

CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. May*,
   85 S. Ct. 3 (1964).................................................................8

*Bolante v. Keisler*,
   506 F.3d 618 (7th Cir. 2007) .............................................3, 4

*Boumediene v. Bush*,
   553 U.S. 723 (2008) .........................................................9, 18

*Budget Blinds, Inc. v. White*,
   536 F.3d 244 (3d Cir. 2008) ...............................................10

*Burford v. United States*,
   7 U.S. (3 Cranch) 448 (1806) .............................................16

*Carmen R. v. Decker*,
   No. 20-CV-3875, 2020 WL 2029337(D.N.J. Apr. 28, 2020) .............................11

*Cherek v. United States*,
   767 F.2d 335 (7th Cir. 1985) ...............................................3

*Dotson v. Clark*,
   900 F.2d 77 (6th Cir. 1990).................................................3

*Durel B. v. Decker*,
   455 F. Supp. 3d 99 (D.N.J. 2020)........................................11

*Elkimya v. DHS*,
   484 F.3d 151 (2d Cir. 2007) ................................................4

*Emerson O. C.-S. v. Anderson*,
   No. 20-CV-3774, 2020 WL 1933992 (D.N.J. Apr. 22, 2020) .............................11

*Ex parte McCardle*,
   74 U.S. (7 Wall.) 506 (1869) ...................................................................9

*Ex parte Yerger*,
   75 U.S. (8 Wall.) 85 (1869) .....................................................................9

*Fassler v. United States*,
   858 F.2d 1016 (5th Cir. 1988) ................................................................9

*Gonzalez v. Crosby*,
   545 U.S. 524 (2005) .............................................................................10

*Grune v. Coughlin*,
   913 F.2d 41 (2d Cir. 1990) ...................................................................11

*In re Wainwright*,
   518 F.2d 173 (5th Cir. 1975) ..................................................................3

*Johnston v. Marsh*,
   227 F.2d 528 (3d Cir. 1955) ................................................................3, 7

*Jose B.R. v. Tsoukaris*,
   No. 20-CV-3347, 2020 WL 2744586 (D.N.J. May 27, 2020) ............11

*Khalil v. Joyce*,
   780 F. Supp. 3d 476 (D.N.J. 2025).........................................................9

*Laing v. Ashcroft*,
   370 F.3d 994 (9th Cir. 2004) ..................................................................7

*Landano v. Rafferty*,
   970 F.2d 1230 (3d Cir. 1992) ........................................................ 6, 7, 8

*Leslie v. Holder*,
   865 F. Supp. 2d 627 (M.D. Pa. 2012) ...................................................18

*Lucas v. Hadden*,
   790 F.2d 365 (3d Cir. 1986) ...................................................................6

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001) ...................................................... 3, 4, 11

*Martin v. Solem*,
801 F.2d 324 (8th Cir. 1986) ...................................................3

*Ostrer v. United States*,
584 F.2d 594 (2d Cir. 1978) ...................................................11

*Pfaff v. Wells*,
648 F.2d 689 (10th Cir. 1981) ...................................................3

*Rasul v. Bush*,
542 U.S. 466 (2004) ...................................................5

*Reese v. Warden Phila. FDC*,
904 F.3d 244 (3d Cir. 2018) ........................................... 8, 10

*Shaughnessy v. United States ex rel. Mezei*,
345 U.S. 206 (1953) ...................................................4

*Stern v. Marshall*,
564 U.S. 462 (2011) ...................................................9

*United States ex rel. Slough v. Yeager*,
449 F.2d 755 (3d Cir. 1971) ...................................................3, 7

*United States v. Feely*,
25 F. Cas. 1055 (C.C.D. Va. 1813) ........................................... 14, 15

*United States v. Hamilton*,
3 U.S. (3 Dall.) 17 (1795) ........................................... 14, 16

*United States v. Jones*,
26 F. Cas. 658 (C.C.D. Pa. 1800) ...................................................16

*United States v. Pipito*,
861 F.2d 1006 (7th Cir. 1987) ...................................................9

*United States v. Salerno,*
 481 U.S. 739 (1987) ...................................................................12

*United States v. Tapia,*
 924 F. Supp. 2d 1093 (D.S.D. 2013) ..........................................18

*United States v. Vellatoro-Ventura,*
 330 F. Supp. 3d 1118 (N.D. Iowa 2018) ....................................18

*Winter v. NRDC,*
 555 U.S. 7 (2008) ..........................................................................8

*Woodall v. Fed. Bureau of Prisons,*
 432 F.3d 235 (3d Cir. 2005) ..........................................................7

*Woodcock v. Donnelly,*
 470 F.2d 93 (1st Cir. 1972) ...........................................................3

*Zadvydas v. Davis,*
 533 U.S. 678 (2001) .......................................................... 4, 10, 18

**Statutes**

18 U.S.C. § 3142 ................................................................................18

18 U.S.C §§ 3141–3152 .....................................................................12

28 U.S.C. § 2241 ................................................................ 5, 7, 10, 11

28 U.S.C. § 2254 ......................................................................... 4, 6, 7

28 U.S.C. § 2254(b)(1) & (c) ...............................................................7

28 U.S.C. § 2254(b)(3) .........................................................................7

28 U.S.C. § 2254(c) (1982) ..................................................................7

28 U.S.C. § 2255 ......................................................................... 4, 6, 7

Bail Reform Act of 1966,
80 Stat. 214 ...................................................................................12

Bail Reform Act of 1984,
98 Stat. 1976 .................................................................................12

Judiciary Act of 1789,
1 Stat. 73 ........................................................................... 5, 12, 13

**Rules**

Fed. R. App. P. 29(a)(4)(E)................................................................1

Fed. R. App. P. 29(a)(5)......................................................................1

Fed. R. App. P. 32(a)(5)......................................................................1

Fed. R. App. P. 32(a)(6)......................................................................1

Fed. R. App. P. 32(f).........................................................................1

Fed. R. App. P. 32(g)(1)......................................................................1

Fed. R. Civ. P. 60...........................................................................10

**Regulations**

8 C.F.R. § 1003.10 ....................................................................... 9, 10

**Other Authorities**

Cynthia Nicoletti, Secession on Trial: The Treason Prosecution of Jefferson Davis
299–300 (2017) ..............................................................................15

Daniel J. Freed & Patricia M. Wald, *Bail in the United States: 1964*,
National Conference on Bail and Criminal Justice (May 1964)..........................16

Federal Bureau of Investigations, *Atom Spy Case: Rosenbergs*,
https://www.fbi.gov/history/famous-cases/atom-spy-caserosenbergs..................15

John Scalia, Bureau of Justice Statistics, NCJ, 189430, *Prisoner Petitions Filed in U.S. District Courts, 2000, with Trends 1980-2009* (Jan. 2002) ..........................4

Kellen R. Funk, *Bail at the Second Founding,* (unpublished manuscript, 2025), https://ssrn.com/abstract=5383498 .................15

Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding,* 137 Harv. L. Rev. 1816 (2024)................................................................... passim

Matthew Hegreness, *America's Fundamental and Vanishing Right to Bail,* 55 Ariz. L. Rev. 909 (2013)................................................................................13

Patricia M. Wald & Daniel J. Freed, *The Bail Reform Act of 1966: A Practitioner's Primer*,  52 ABA J. 940 (1966) ..........................................................................16

Ronald L. Goldfarb, Ransom: A Critique of the American Bail System (1967) ....16

# INTEREST OF AMICUS CURIAE

Amicus is a professor of federal jurisdiction and a legal historian of bail law and practice in the United States. He has written extensively on Founding Era practices of bail and detention, the jurisdictional interplay of equity and the prerogative writs (like habeas corpus), and the administration of bail in federal courts across all eras of American history. He writes to assist the court in clarifying the standard for admission to bail in federal habeas cases. This brief is submitted under Federal Rule of Appellate Procedure 29(a) with the consent of all parties.

# STATEMENT OF COMPLIANCE WITH FED. R. APP. P. 29(a)(4)(E)

No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money that was intended to fund the preparation or submission of this brief. No person or entity except amicus or his counsel contributed money to fund the preparation or submission of this brief.

# SUMMARY OF THE ARGUMENT

The district court reached a sound result admitting Petitioner to bail, though it applied an overly stringent standard for bail in habeas proceedings challenging executive detention. The Government insists that an even more stringent standard should apply based on authorities from cases of post-conviction review. But that is an elementary category mistake of habeas jurisdiction. Because post-conviction review necessarily re-opens a final judgment entered after the full array of criminal

procedures before a neutral judge, its stringent standards are drawn from statutory law and judicial norms that strongly favor repose of settled court orders. Habeas jurisdiction over pretrial executive-detention cases, on the other hand, was historically designed to give skeptical courts a first-instance review of the Executive's proffered bases for detention along with discretion over the custody of habeas petitioners in the meanwhile. This common-law discretion is even more expansive than the district court felt at liberty to apply, and it is more than adequate to sustain the decision the district court reached. Rather than "extraordinary circumstances" or "likelihood of success" tests, history and tradition counsels that the standard for admission to bail in these cases should be the same that courts use for determining the amount of the bail: a reasonable assurance that the petitioner will attend further proceedings of the court.

Alternatively, the strong likelihood of a petitioner's return to court should itself count as an extraordinary circumstance justifying admission to bail in executive-detention cases.

## INTRODUCTION

Petitioner Mahmoud Khalil has raised substantial arguments about the constitutionality of his detention and removal proceedings. Recognizing that the resolution of those arguments may take significant time, the district court below invoked its inherent power as a habeas court to admit the petitioner to bail pending

the resolution of his petition. JA330–31, 355. This brief takes no position on Petitioner's arguments concerning exclusive jurisdiction under the immigration statutes or the substance of the constitutional challenge. Assuming this Court considers the Government's challenge to Petitioner's release on bail, the argument below supports affirmance of the district court's decision, albeit on a more discretionary basis than the district court used.

Federal courts including the Third Circuit have long recognized the inherent power of habeas courts to admit petitioners to bail during the pendency of their habeas proceedings. *See United States ex rel. Slough v. Yeager*, 449 F.2d 755, 756 (3d Cir. 1971); *Johnston v. Marsh*, 227 F.2d 528, 531 (3d Cir. 1955); *see also Mapp v. Reno*, 241 F.3d 221, 231 (2d Cir. 2001); *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990); *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986); *Cherek v. United States*, 767 F.2d 335, 337 (7th Cir. 1985); *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981); *In re Wainwright*, 518 F.2d 173, 174 (5th Cir. 1975) (per curiam); *Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972). "Inherent judicial authority to grant bail to persons who have asked for relief in an application for habeas corpus is a natural incident of habeas corpus, the vehicle by which a person questions the government's right to detain him." *Bolante v. Keisler*, 506 F.3d 618,

620 (7th Cir. 2007) (Posner, J.).[1] As the district court noted, this power is well

supported by the history and tradition of federal habeas practice. *See* JA330 ("The

Second Circuit's *Mapp v. Reno* case collects decisions way back to the 19th

century.").

The standard for admission to bail in a habeas court varies with the nature of

the proceeding, however. Habeas proceedings against executive detention before

trial or without trial are on a fundamentally different footing from those seeking to

unwind a final judgment of conviction. The vast majority of habeas filings in

federal court concern the latter category and are governed by stringent statutory

standards in 28 U.S.C. §§ 2254, 2255 (collectively, the Antiterrorism and Effective

Death Penalty Act, or "AEDPA"), as well as the Federal Rules of Civil Procedure

("FRCP"), which safeguard the finality of federal court orders. *See* John Scalia,

---

[1] Since inherent habeas power arises from federal common law, it is, like all common law, subject to statutory override. *See Bolante v. Keisler*, 506 F.3d 618, 620 (7th Cir. 2007). The Seventh and Second Circuits have reached opposite conclusions about whether Congress has abrogated common-law bail provisions in narrow circumstances when noncitizens seek bail pending review of an order of removal. *See id.* (favoring abrogation); *Elkimya v. DHS*, 484 F.3d 151, 154 (2d Cir. 2007) (Sotomayor, J.) (denying abrogation). But even the proponents of abrogation recognize that lawful permanent residents already present in the United States, like Petitioner here, are in a different statutory and constitutional position. *See Bolante*, 506 F.3d at 620 (citing *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953); *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Nothing in the Immigration and Nationality Act, which focuses on the petition-for-review process at issue in *Elkimya* and *Bolante*, speaks with sufficient clarity to restrict habeas authority to bail in executive-detention cases.

Bureau of Justice Statistics, NCJ 189430, *Prisoner Petitions Filed in U.S. District Courts, 2000, with Trends 1980–2000* (Jan. 2002) (around 25,000 post-conviction habeas filings in federal district courts per year).

But Petitioner Khalil's case is one of the comparatively rarer ones challenging executive detention and governed by the largely common-law standards of 28 U.S.C. § 2241, the successor statute to the original Judiciary Act's provision for habeas writs in the federal courts. *Compare* Judiciary Act of 1789, §14 ch 20, 1 Stat. 73, 81 (1789), *with* 28 U.S.C. § 2241. *See also Rasul v. Bush*, 542 U.S. 466, 473–75 (2004) (reviewing the history of federal common law under § 2241 in executive-detention cases). The Third Circuit has not yet articulated the standard for admission to bail in such cases. This Court should clarify that the common-law standard is the one that federal courts have historically used: a reasonable assurance that the petitioner will attend further proceedings as required by the court.

Should the Court adopt a heightened standard for bail in habeas courts, it should nevertheless ensure that the historic purpose of habeas review in executive-detention cases is not undermined. Consequently, a strong showing of the petitioner's likelihood to appear and abide the judgment of the federal habeas court should itself be treated as an extraordinary circumstance justifying bail in cases of this kind. Under either the historical common law or a properly defined

extraordinary-circumstances test, Petitioner Khalil's admission to bail is amply supported by the record in this case and well within the lawful discretion of the district court.

## ARGUMENT

### I. The stringent standards of admission to bail in post-conviction habeas proceedings are inapplicable to executive-detention cases.

Relying on *Lucas v. Hadden*, 790 F.2d 365, 367 (3d Cir. 1986), the district court applied an "extraordinary circumstances" standard for admission to bail. JA343. The Government insists that *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992), imposes an even more stringent standard, requiring a showing of likelihood of success on the merits *and* extraordinary circumstances to justify admission to bail. Brief of Respondents-Appellants at 55. The problem is that *Lucas* and *Landano* were both post-conviction review cases, and their standards for admission to bail were expressly tethered to statutes and rules restricting the re-opening of final judgments. Applying them to pretrial detention is a category mistake with inadequate support in law, policy, or historical tradition, especially when pretrial detention has been ordered and reviewed by Executive Branch officials only.

In *Lucas*, a "preliminary grant of bail" was treated as "an exceptional form of relief in a habeas corpus proceeding" where the petitioner challenged his state revocation of parole under § 2254. *Lucas*, 790 F.2d at 367. The *Lucas* court

rejected a likelihood-of-success standard and opted for a "narrower 'extraordinary circumstances' test," wholly relying on the strictures of § 2254 for guidance.[2] *Id*. The court found 2254's strict exhaustion requirement especially instructive, since a likelihood-of-success test might too readily re-open the final decisions of the state courts.[3] *Id*. Further, "extraordinary circumstances" made sense in light of circuit precedent in *Johnston* and *Yeager*, which were themselves post-conviction review cases that proceeded cautiously in deploying inherent habeas power against state judgments of conviction. *See id.; Johnston*, 227 F.2d at 531; *Yeager*, 449 F.2d at 756.

    *Landano*'s dependence on the strictures of post-conviction review is even more explicit. In a case challenging a state conviction on *Brady*-violation grounds, the *Landano* court recognized that "the standard for bail is, of course, more stringent" when "bail is sought by a prisoner *who has been convicted*." *Landano*,

---

[2] While Congress made § 2254's standards even more stringent in 1996, the 1982 version of the statute required exhaustion of state remedies when a petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c) (1982).

[3] Although courts apply a common-law exhaustion requirement in § 2241 proceedings, its standards are considerably more relaxed than under § 2254. Failure to exhaust may be excused as futile or constructively waived under § 2241, *see, e.g.*, *Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 239 n.2 (3d Cir. 2005); *Laing v. Ashcroft*, 370 F.3d 994 (9th Cir. 2004); while neither is possible under § 2254, *see* 28 U.S.C. § 2254(b)(1) & (c) (eliminating futility as an excuse to exhaustion), § 2254(b)(3) (requiring express waiver on the record).

970 F.2d at 1238 (emphasis added). The Court quoted with approval the reasoning of Justice William O. Douglas on this point:

> [When an] applicant is incarcerated because he has been tried, convicted, and sentenced by a court of law, [i]t is obvious that a greater showing of special reasons for admission to bail pending review should be required . . . than . . . in a case where applicant sought to attack by writ of habeas corpus an incarceration *not resulting from a judicial determination of guilt.*

*Id*. (quoting *Aronson v. May*, 85 S. Ct. 3, 5 (1964) (chambers opinion)) (cleaned up; emphasis added). In discussing the "likelihood of success" test the Government seeks to apply here, the *Landano* court surveyed cases from other circuits that applied it, yet again, only in cases of post-conviction review.[4] *Id*. at 1238–41.

That is not to say that an extraordinary-circumstances test would never be appropriate to pretrial detention. In the ordinary course of state and federal criminal prosecutions, habeas courts typically insist that defendants first avail themselves of procedures accessible in the criminal trial, including the appellate process, before making the extraordinary resort to an inherent habeas power to bail. *See Reese v. Warden Phila. FDC*, 904 F.3d 244 (3d Cir. 2018); *see also*

---

[4] As *Landano* recognized, a likelihood-of-success test would at most go to the merits of issuing the writ, not to the determination of bail. *Landano*, 970 F.2d at 1241. The Government's attempt to import an equitable injunction test, *see* Brief of Respondents-Appellants at 55–56 (*citing Winter v. NRDC*, 555 U.S. 7, 20 (2008)), runs far afield of the habeas context.

*Fassler v. United States*, 858 F.2d 1016 (5th Cir. 1988); *United States v. Pipito*, 861 F.2d 1006 (7th Cir. 1987). But that is because independent *courts of record* in our state and federal system are overseeing the criminal proceedings, and "it can be assumed that, in the usual course, a court of record provides defendants with a fair, adversary proceeding." *Boumediene v. Bush*, 553 U.S. 723, 782 (2008). "Accordingly, where relief is sought . . . from the judgment of a court of record, [as it is] in most federal habeas cases, considerable deference is owed to the court that ordered confinement." *Id.* (citing Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 Colum. L. Rev. 961, 982–83 (1998)).

Immigration judges, however, are not courts of record in this sense.[5] They are "roughly akin to other administrative judges," *Khalil v. Joyce*, 780 F. Supp. 3d 476, 510 (D.N.J. 2025), and are appointed wholly within the Executive Branch,

---

[5] To the extent the Government argues that the detention or removal decisions in the case at bar are themselves "judgments" of a court entitled to repose, this argument must be flatly rejected. All executive-detention cases, including military detention, are premised on an order the Executive would deem to be final and might be supported by processes and reasoning that is arguably judicial. But that character has never led courts to deem orders of military detention and the like with anything more than prima facie deference. *See*, *e.g.*, *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1869); *Ex parte Yerger*, 75 U.S. (8 Wall.) 85 (1869); *Boumediene*, 553 U.S. at 783. Nor can Article III courts give conclusive effect to the orders even of Article I courts within areas of their traditional common-law jurisdiction (like habeas jurisdiction and bail). *See Stern v. Marshall*, 564 U.S. 462, 503 (2011). Immigration judges do not rise even to the level of Article I courts, as they are constituted entirely by the Executive. *See* 8 C.F.R. § 1003.10. Even the military commissions reviewed in *McCardle*, *Yerger*, and *Boumediene*, had more of Congress's imprimatur than immigration judges do today.

lacking the independence and protections of Article III appointments. *See* 8 C.F.R. § 1003.10 (immigration judges are "attorneys whom the Attorney General appoints as administrative judges"). As the Supreme Court has long recognized, detentions ordered by such Executive Branch actors are precisely the kind that the constitutional framers intended federal habeas courts to scrutinize most closely. *See Boumediene*, 533 U.S. at 783 ("Where a person is detained by executive order, rather than, say, after being tried and convicted in a court, the need for collateral review is most pressing."); *id.* at 742–45 (surveying evidence of the constitutional framers' intent, especially *Federalist* No. 84).

All together, the standard for bail in § 2241 habeas proceedings against executive detention remains a blank slate in this Circuit. This Court should take the opportunity to clarify that a heightened standard is appropriate to post-conviction review, where it mirrors the standard for re-opening judgments. *See* Fed. R. Civ. P. 60; *Budget Blinds, Inc. v. White*, 536 F.3d 244 (3d Cir. 2008) (explaining the use of an "extraordinary circumstances" test for re-opening judgments under FRCP 60(b)(6), citing *Gonzalez v. Crosby*, 545 U.S. 524 (2005)). And it may be appropriate to ordinary criminal prosecutions in the courts of record. *See Reese*, 904 F.3d 244. But by definition, a post-conviction case has received (or may be presumed to have received) the full panoply of judicial process and deliberate consideration of the defendant's arguments by a neutral, judicial decisionmaker

after a robust adversary process. Executive-detention cases, on the other hand, have not proceeded through the judicial process, and the very purpose of habeas review is to provide courts a first-instance check against potentially abusive arrest or detention practices by the Executive Branch.[6]

The Government argued below that under a more discretionary standard, "anyone would be able to just file a habeas petition and just say their case is different, it's special enough, there's extraordinary circumstances, and that standard is met." JA345. But that is exactly as it ought to be in a society where

---

[6] To be fair, the district court astutely recognized the significant differences between post-conviction review and pretrial executive-detention contexts. *See* JA343–47. Other district courts in this circuit have reflexively applied an extraordinary-circumstances or likelihood-of-success test in § 2241 cases without noting or appreciating that the logic of post-conviction review does not apply in pretrial executive-detention cases. *See, e.g., Durel B. v. Decker*, 455 F. Supp. 3d 99, 106–07 (D.N.J. 2020); *Jose B.R. v. Tsoukaris*, No. 20-CV-3347, 2020 WL 2744586, at \*8 (D.N.J. May 27, 2020); *Jose Matias P.C. v. DHS*, No. 20-CV-5683, 2020 WL 2744585, at \*4 (D.N.J. May 27, 2020); *Carmen R. v. Decker*, No. 20-CV-3875, 2020 WL 2029337, at \*6(D.N.J. Apr. 28, 2020); *Emerson O. C.-S. v. Anderson*, No. 20-CV-3774, 2020 WL 1933992, at \*5 (D.N.J. Apr. 22, 2020). Similarly, the Second Circuit's *Mapp v. Reno* decision applied the strict standards of post-conviction review to a § 2241 petition without addressing whether a less stringent standard should apply in the fundamentally different context of pretrial executive detention. *See* 241 F.3d at 226–27 (relying on post-conviction cases *Ostrer v. United States*, 584 F.2d 594 (2d Cir. 1978), and *Grune v. Coughlin*, 913 F.2d 41 (2d Cir. 1990)). Nevertheless, while appropriately recognizing the important distinctions between these contexts, the district court below treated these distinctions as an "a fortiori" argument buttressing a "broad" application of the "extraordinary circumstances" test. JA343. The better view is that an extraordinary-circumstances test is inapplicable to executive-detention cases in the first place.

11

"liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). In criminal prosecutions before judicial tribunals, incarceration after conviction and temporary custody pending trial may ordinarily be challenged in the proceedings themselves, but in executive-detention cases, unreviewable custody is what requires extraordinary justification, and it is the role of a habeas court to scrutinize that justification and to decide on the custody of petitioners in the meanwhile.

## II.   Historically, federal common law admitted a petitioner to bail based only on a reasonable assurance of the petitioner's return to trial.

For most of American history, the federal courts have used (uncodified) common-law standards to admit federal detainees to bail. *See* Judiciary Act of 1789, 1 Stat. 73, 91 § 33 (referring judges to the "usages of the law" in admitting to bail). In 1966 and again in 1984, Congress abrogated much of this common law and set out specific standards for judges to assess when admitting federal criminal defendants to bail. *See* Bail Reform Act of 1966, 80 Stat. 214 (codified as amended at 18 U.S.C §§ 3141–3152); Bail Reform Act of 1984, 98 Stat. 1976 (codified as amended at 18 U.S.C §§ 3141–3156). But habeas petitioners in executive-detention cases are not subject to the Bail Reform Acts, *see* 18 U.S.C. § 3141 (applying to crimes and criminal procedure), and the federal common law of bail continues to apply under the inherent habeas jurisdiction to bail.

The First Judiciary Act provided that "upon all arrests in criminal cases, bail shall be admitted, except where the punishment may be death, in which cases it shall not be admitted but by . . . a judge of a district court, who shall exercise their discretion therein, regarding the nature and circumstances of the offence, and of the evidence, and the usages of the law." Judiciary Act of 1789 § 33, 1 Stat. at 91. This text was derived from William Penn's 1682 Charter for Pennsylvania, which abolished English common-law categories for mandatory detention and aimed to severely limit the discretion and power of magistrates to detain people before trial. *See* Kellen R. Funk & Sandra G. Mayson, *Bail at the Founding*, 137 Harv. L. Rev. 1816, 1840–42 (2024). The Penn clause, which one commentator calls the "consensus text" of American bail practice, Matthew Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 912 (2013), created two categories of cases. In capital cases, bail could be granted or denied at the federal judge's discretion, guided by the severity of the allegations, the evidence adduced so far, and the common-law precedents. Funk & Mayson, *supra*, at 1840–42. In all other cases, the defendant had an absolute right to bail, and the judge's discretion was limited to announcing the amount of the bond sureties would undertake. *Id*.

In practice, federal standards for admission to bail hardly differed between the two types of cases. That is, after a federal judge had determined—usually with

the aid of party presentation—that a defendant could present sureties who would reasonably assure the defendant's return to court, the defendant was released upon executing the bond with his sureties, capital charges notwithstanding. *See, e.g.*, *United States v. Hamilton*, 3 U.S. (3 Dall.) 17, 17-18 (1795); *see also United States v. Feely*, 25 F. Cas. 1055, 1056 (C.C.D. Va. 1813) (No. 15,082) (Marshall, Circuit Justice) (explaining that "[t]he object of a recognizance [bail bond] is, not to enrich the treasury, but to combine the administration of criminal justice with the convenience of a person accused, but not proved to be guilty" and that "by appearing at the succeeding term [of the court], and submitting himself to the law, the real intention and object of [a defendant's] recognizance are effected").

In the famous treason prosecution of Aaron Burr, for example, Burr was admitted to bail *five* separate times on the unsecured pledges of sureties, the courts making little distinction between their discretion to deny bail on the treason charge and their duty to admit to bail on Burr's misdemeanor conspiracy charge. *See* Funk & Mayson, *supra*, at 1873–75. Once the trial court (Chief Justice John Marshall presiding) decided that a non-excessive bail would assure Burr's appearance, he was released upon his word and that of his sureties.[7] *Id.* at 1874–75.

---

[7] This argument uses the modern term "unsecured bond" to capture the historical practice. Nominally, a money amount appeared on every bond executed for bail, but in practice, federal courts never required the posting of money upfront (until the mid-twentieth century), and almost never levied the money after a forfeiture either. *See* Funk & Mayson, *supra*, at 1823, 1880–83. Burr did return to federal

Federal courts maintained this approach long after the Founding Era. Despite an acclaimed propensity for disguised flight, Jefferson Davis was admitted to bail in his post-Civil War treason trial with the assistance of celebrity sureties (who staked their names but not their fortunes on Davis's return to court). Cynthia Nicoletti, Secession on Trial: The Treason Prosecution of Jefferson Davis 299–300 (2017); Kellen R. Funk, *Bail at the Second Founding* 17–18 (unpublished manuscript, 2025), available at https://ssrn.com/abstract=5383498. In Davis's case, the court made no finding on special circumstances entitling Davis to bail—it was enough that sureties would speak for him. *See* Funk, *supra*, at 13–14. A century later, Julius and Ethel Rosenberg had bail set in their treason cases. *See* Federal Bureau of Investigations, *Atom Spy Case: Rosenbergs*, https://www.fbi.gov/history/famous-cases/atom-spy-caserosenbergs (last visited September 15, 2025). They, however, could not meet the demand for security in an era when bail had become largely monetized (each was held on a $100,000 bond). Though allowed to post bail, the Rosenbergs remained detained pending their trial. *Id.*

---

custody for two months during his trial after the grand jury returned an indictment on the treason charge. *See id.* at 1881. Whether federal judges maintained discretion to bail after indictment was an open question at the time, and to avoid the delays of answering it, Burr voluntarily surrendered himself to custody. *Id*. at 1875–76.

As the Rosenberg example shows, not every federal defendant was released on bail historically. But if a defendant remained confined, it was usually because they failed the standard of giving a reasonable assurance of their return—that is, they could not find sureties to speak for them or post the bond required by the court based on the circumstances and evidence in the record. *See Burford v. United States*, 7 U.S. (3 Cranch) 448, 449–50 (1806); Funk & Mayson, *supra*, at 1884–86 (collecting cases).[8] When the federal bail system was significantly reformed by statute in 1966, it was largely because Congress and the Kennedy Administration had become concerned about the latter practice. Defendants were not being *denied* bail, but Congress concluded they were being held to too high an assurance in the bond amounts the federal courts routinely set. *See* Ronald L. Goldfarb, Ransom: A Critique of the American Bail System (1967); Daniel J. Freed & Patricia M. Wald, *Bail in the United States: 1964*, National Conference on Bail and Criminal Justice (May 1964). Since the 1966 reforms, federal bail conditions have been largely demonetized. *See* Patricia M. Wald & Daniel J. Freed, *The Bail Reform Act of 1966: A Practitioner's Primer*, 52 ABA J. 940, 944 (1966).

---

[8] In two early cases of piracy, the Supreme Court was more cautious in its discretion to admit to bail. *See Hamilton*, 3 U.S. (3 Dall.) at 17; *United States v. Jones*, 26 F. Cas. 658 (C.C.D. Pa. 1800). The brief opinions do not elaborate on their reasoning and at most seem to indicate that when the Court was especially concerned about imminent violence, it might deny bail or require a showing of extraordinary circumstances (like ill health) to justify release.

This argument has highlighted treason cases because they made up the bulk of the relatively few cases that triggered judicial discretion over bail under the First Judiciary Act, and because they illustrate the stark difference between the federal common law of bail and the stricter standards of post-conviction review that emerged in the twentieth century. Treason, of course, is the most serious crime chargeable under federal law, yet even at their most stringent, federal courts admitted defendants to bail upon a reasonable assurance of their return to court. Federal courts today may employ different standards in the radically different context of post-conviction review. But this Court should recognize that such heightened standards are the direct product of the post-conviction-review context and are often anchored to express standards in AEDPA or the FRCP that emphasize respect for settled, final judgments rendered by the courts of record. When federal courts exercise a common-law jurisdiction—like district courts' inherent habeas power—they continue to operate under the historic standards of the common law. Historically, those standards collapsed judicial discretion over admission to bail and discretion over the amount of bail into one inquiry: Where federal detainees could reasonably assure the court of their appearance by posting the requisite bond, they were admitted to bail.

In practice today, federal district courts are well-accustomed to applying a reasonable-assurance test for admission to bail, including in immigration cases that

end up on their criminal dockets. *See, e.g.*, *United States v. Vellatoro-Ventura*, 330 F. Supp. 3d 1118, 1125 (N.D. Iowa 2018); *United States v. Tapia*, 924 F. Supp. 2d 1093, 1097 (D.S.D. 2013); *Leslie v. Holder*, 865 F. Supp. 2d 627, 641 (M.D. Pa. 2012). That is because 18 U.S.C. § 3142 makes reasonable assurance of appearance that standard for admission to bail on different types of conditions for most federal criminal charges. By announcing this standard for bail in executive-detention cases under a court's inherent habeas power, this Court will not be breaking new ground or leading trial judges in unfamiliar directions. Rather, it will clarify which of the standards already in use by the district courts is appropriate to executive-detention cases and why.

Should the Court instead adopt a heightened standard such as an extraordinary-circumstances test for bail in habeas courts, it should ensure that the historic purpose of habeas review in executive-detention cases is not undermined. *See Boumediene*, 533 U.S. at 783. Consequently, a strong showing of the petitioner's likelihood to appear and abide the judgment of the federal habeas court should itself be treated as an extraordinary circumstance justifying bail in cases of this kind. Again, that was all that was required even in the treason prosecutions discussed above.

Under either the historical common law or a properly defined extraordinary-circumstances test, Petitioner Khalil's admission to bail is amply supported by the

record in this case. *See* JA366–73 (noting Petitioner's marriage to a U.S. citizen employed in the United States, Petitioner's strong ties to the local community and uncontroverted affidavits of Petitioner's intention to proceed in federal court, and Petitioner's lack of a criminal record). The district court did not abuse its discretion in properly weighing these factors to admit Petitioner Khalil to bail, and the judgment below should be affirmed.

## CONCLUSION

The district court had ample reason to believe that Petitioner Khalil's return to court could be reasonably assured by the bond conditions it set. That is all the federal common law requires when courts exercise their inherent habeas jurisdiction in cases of executive detention. While this Court could affirm that Petitioner's case meets even the heightened standards of "extraordinary circumstances" tests derived from cases of post-conviction review, for the foregoing reasons it should clarify that the standard is a reasonable assurance of appearance, and it should affirm the district court's admission of the Petitioner to bail on that basis.

Dated: September 17, 2025

s/ David N. Cinotti

Kellen R. Funk
Michael E. Patterson Professor of Law
**COLUMBIA LAW SCHOOL**
Jerome Greene Hall
435 West 116th Street, Room 901
New York, New York 10027
(212) 854-2640

David N. Cinotti
CJ Griffin
**PASHMAN STEIN WALDER HAYDEN**
Court Plaza South, East Wing
21 Main Street, Suite 200
Hackensack, New Jersey 07601
(201) 488-8200

*Attorneys for Amicus Curiae*
*Professor Kellen R. Funk*

# CERTIFICATION OF COMPLIANCE WITH FED. R. APP. P. 32(g)(1)

I, David N. Cinotti, of Pashman Stein Walder Hayden, P.C., attorneys of record for amicus curiae Kellen R. Funk, hereby certifies as follows:

1. I am a member of the bar of this court.

2. This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 4,887 words.

3. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365, in 14-point, Times New Roman font.

Dated: September 17, 2025

s/ David N. Cinotti
David N. Cinotti

**ANTI-VIRUS CERTIFICATION**

Under Third Circuit Rule 31.1(c), I certify that this brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and the Vipre Virus Protection, version 3.1 has been run on the file containing the electronic version of this brief and no viruses have been detected.

Dated: September 17, 2025

<u>s/ David N. Cinotti</u>
David N. Cinotti

**CERTIFICATE OF SERVICE**

On this date, seven hard copies of the foregoing brief were sent to the Clerk's Office.  Pursuant to Local Appellate Rules 31.1(d) and 113.4(a), I caused the foregoing to be served on all counsel via the Notice of Docket Activity generated by the Court's electronic filing system (i.e., CM/ECF) and via electronic mail.

Dated: September 17, 2025

<u>s/ David N. Cinotti</u>
David N. Cinotti