# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

MAHMOUD KHALIL,

*Petitioner-Appellee,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States; WILLIAM P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; YOLANDA PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; and PAMELA BONDI, in her official capacity as Attorney General of the Department of Justice,

*Respondents-Appellants,*

On Appeal from the United States District Court for the District of New Jersey, No. 25-1963 (MEF) (MAH)

**Brief Amici Curiae of Habeas Scholars Marc D. Falkoff, Eric M. Freedman, Paul Halliday, Randy A. Hertz, Aziz Z. Huq, Joseph Margulies, Stephen I. Vladeck, and Larry Yackle in Support of Petitioner-Appellee**

Seton Hall University School of Law
Center for Social Justice
833 McCarter Highway
Newark, New Jersey 07102
(973) 642-8700
*Counsel for Amici Curiae*
Jon Romberg, Esq.
Jonathan Hafetz, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................i

INTEREST OF AMICI CURIAE ............................................................ 1

PRELIMINARY STATEMENT ............................................................. 3

LEGAL ARGUMENT ........................................................................... 5

I.   The History of Habeas Corpus Demonstrates the Writ Cannot Be Made Unavailable by an Executive Branch Decision to Keep Secret the District of Confinement or Immediate Custodian While Transporting a Detainee to its Favored Forum ................... 5

II.  The District of New Jersey Was the Present District of Confinement when Khalil's Habeas Petition Was Filed, and the Government's Intent to Later Move Khalil to Louisiana Did Not Make Louisiana the District of Confinement ............................... 14

III. Khalil's Habeas Claim Is Not Barred in the District of New Jersey for Failing to Name His Uknown Custodian in His Original Petition ............................................................................. 21

IV.  Khalil's Habeas Petition Was Properly Transferred to New Jersey Under 28 U.S.C. § 1631, Which Permits Transfer of an Action to a District Where Jurisdiction Would Have Been Proper When the Action Was Filed ......................................................... 25

     A.   Section 1631 Authorizes Transfer of Habeas Actions .......... 26

     B.   If Khalil's Habeas Petition Was Deficient for Not Naming His Unknown Custodian, that Failure Was Technical, Not Substantive, thus Does Not Preclude Transfer Under § 1631 ................................................................................. 27

V.   Khalil's Amendment of His Habeas Petition After Being Transferred to Louisiana Does Not Divest New Jersey of Jurisdiction, as *Ex Parte Endo* Holds .............................................. 29

CONCLUSION ................................................................................ 33

ADDENDUM A (LIST OF AMICI CURIAE HABEAS SCHOLARS) .................................................................... 34

CERTIFICATIONS OF COMPLIANCE ................................................ 36

CERTIFICATION OF SERVICE .......................................................... 37

# TABLE OF AUTHORITIES

**Cases**

*Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434 (3d Cir. 2021) ........................................................................ 18

*Boumediene v. Bush*, 553 U.S. 723 (2008) ................................. 5-8, 17, 25

*Castillo v. Attorney General of the United States*, 109 F.4th 127 (3d Cir. 2024) ........................................................................ 28

*Cruz-Aguilera v. INS*, 245 F.3d 1070 (9th Cir. 2001) ............................. 26

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568 (1988) ...................... 13

*Eisel v. Sec'y of Army*, 477 F.2d 1251 (D.C. Cir. 1973) .......................... 20

*Ex parte Bollman*, 8 U.S. (4 Cranch) 75 (1807) ............................ 6, 16, 20

*Ex parte Catanzaro*, 138 F.2d 100 (3d Cir. 1943) .................................. 30

*Ex parte Endo*, 323 U.S. 283 (1944) .................................................. 29-30

*Ex parte Watkins*, 28 U.S. (3 Pet.) 193 (1830) ......................................... 7

*Hensley v. Municipal Court*, 411 U.S. 345 (1973) .................................. 28

*INS v. St. Cyr*, 533 U.S. 289 (2001) ..................................................... 6, 9

*Jones v. Cunningham*, 371 U.S. 236 (1963) .............................................. 6

*Liriano v. United States*, 95 F.3d 119 (2d Cir. 1996) .............................. 26

*Öztürk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) .................................... 3, 23

*Rasul v. Bush*, 542 U.S. 466 (2004) ...................................................... 7-8

*Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002) ................................ 26

*Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025) .............. 29

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ...................................... *passim*

*Secretary of State for Home Affairs v. O'Brien* (1923) A. C. 603 ............. 8

*Vasquez v. Reno*, 233 F.3d 688 (1st Cir. 2000) ...................................... 18

*Williams v. Kaiser*, 323 U.S. 471 (1945) ...................................... 8

*Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 WL 2476524, 2025
U.S. Dist. LEXIS 167666 (D.N.J. Aug. 28, 2025) .................... 19-20

## Statutes and Rules

16 Car. I, c.10, § 8 ...................................................................... 8

28 U.S.C. § 1631 ........................................................... *passim*

28 U.S.C. § 2241 ........................................................... *passim*

28 U.S.C. § 2242 ........................................................... *passim*

31 Cha. 2. c. 2 (Habeas Corpus Act of 1679) ..................................... 10-11

Judiciary Act of 1789 .................................................................. 9

## Constitutional Provisions

U.S. Const. art. I, § 9, cl. 2 (Suspension Clause) ..................................... 12

## Other Authorities

3 W. Blackstone, Commentaries ............................................. 7-9

Lee Kovarsky, *Citizenship, National Security Detention and the Habeas Remedy*, 107 Calif. L. Rev. 867 (2019) .......................................... 10

Paul D. *Halliday*, *Habeas Corpus: From England to  Empire* (2010) ....................................................................... 10-11

## INTEREST OF AMICI CURIAE[1]

Amici curiae (listed in Addendum A to this brief) are professors of law and related disciplines who have expertise in the history and law of habeas corpus. We have a professional interest in ensuring the fair and lawful application of the Great Writ consistent with historical practice and constitutional and statutory mandate. We write to share with the Court our understanding that—unless lawfully suspended by Congress—habeas is always available to challenge assertedly unlawful executive detention such as that alleged by Petitioner-Appellee Mahmoud Khalil.

The District of New Jersey has jurisdiction over Khalil's habeas petition. The government's arguments otherwise, if accepted, would effectively suspend the writ while the executive branch keeps the detainee's district of confinement and immediate custodian secret. Under the government's suggested approach, it would be entitled to detain an immigrant—or, for that matter, an American citizen—and transport him to the government's favored forum. By keeping secret the district of confinement or immediate custodian, the government would thereby:

[1] Counsel for amici certify that no person other than amici and their counsel helped draft this brief or contributed any funds to its preparation or submission. All parties have consented to its filing.

(1) bar habeas jurisdiction in *any* district—including the actual district of confinement when the petition is filed—until the government reveals the eventual district of confinement and immediate custodian in its favored forum, and (2) once it does disclose that information, limit jurisdiction to the government's favored forum. *See* Respondents-Appellants' Brief (3d Cir. Dkt. 46) (No. 25-2357) ("Gov. Br.") at 16-25. That is not and has never been the law of habeas.

The District of New Jersey has jurisdiction to address Khalil's habeas petition filed in this case while Khalil was confined in New Jersey and while his immediate custodian was unknown. The government's arguments otherwise are not supported by the centuries-long common law history of the writ or its statutory implementation.

## PRELIMINARY STATEMENT

As detailed in Points I-V, below, the District of New Jersey has habeas jurisdiction over Khalil's petition. The history of the Great Writ demonstrates that the executive branch is not empowered to suspend the availability of the writ by keeping secret the petitioner's district of confinement and immediate custodian. *See* Point I.

Moreover, as a matter of precedent and statutory construction, Khalil was not able—and thus not obligated—to comply with the "two traditional requirements" of habeas jurisdiction: filing his petition in the "district of confinement" and naming his "immediate custodian." *Öztürk v. Hyde*, 136 F.4th 382, 390, 392 (2d Cir. 2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 438, 447, 450 n.18 (2004)).[2]

*Padilla* explains the "default rule" applicable to habeas jurisdiction: "Whenever a § 2241 habeas petitioner seeks to challenge his present

_____

[2] Though the district of confinement and immediate custodian rules are often described as "jurisdictional," the word is "not [used] in the sense of subject-matter jurisdiction." *Padilla*, 542 U.S. at 463 n.7. Indeed, six members of the *Padilla* Court endorsed the view that "the question of the proper location for a habeas petition is best understood as a question of personal jurisdiction or venue." *Padilla*, 452 U.S. at 451 (Kennedy, J., concurring); *id.* at 463 n.6 (Stevens, J., dissenting) ("venue principles, not rigid jurisdictional rules, govern the forum determination").

physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Padilla*, 542 U.S. at 435, 447. The "rule [is] derived from the terms of the habeas statute," *id.*, which requires in part that the petitioner "allege . . . the name of the person who has custody over him . . . *if known,*" 28 U.S.C. § 2242 (emphasis added).

The District of New Jersey has jurisdiction over Khalil's petition: The petition need not be *filed* in, but is properly *considered* in, the actual district of confinement at the time the petition was filed—here, New Jersey. *See* Point II. And that petition need not name an unknown custodian. *See* Point III.

Moreover, Khalil's petition was properly transferred pursuant to 28 U.S.C. § 1631 by the Southern District of New York, where Khalil was seized and where the petition was filed, to the District of New Jersey, the district of confinement that would have had jurisdiction had the petition been filed there. *See* Point IV. Finally, Khalil's amendment of his petition, after the government had moved him from New Jersey to Louisiana, did not divest the District of New Jersey of jurisdiction. *See* Point V.

## LEGAL ARGUMENT

I. THE HISTORY OF HABEAS CORPUS DEMONSTRATES THE WRIT CANNOT BE MADE UNAVAILABLE BY AN EXECUTIVE BRANCH DECISION TO KEEP SECRET THE DISTRICT OF CONFINEMENT OR IMMEDIATE CUSTODIAN WHILE TRANSPORTING A DETAINEE TO ITS FAVORED FORUM.

The government's position dictates that habeas jurisdiction is unavailable in the district of confinement—or in any other district—when a petition is filed so long as the government has kept secret the detainee's district of confinement and immediate custodian until it has moved the detainee to its preferred forum. This proposition is fundamentally at odds with the writ's common law history and development.

Over the course of centuries in England and the colonies, habeas developed, crystallizing into a fundamental guarantee that detention must be lawful, ensuring both the legality of the government's conduct and the liberty of the individual. *See Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."). The common law writ's baseline protections are enshrined in the Constitution's Suspension Clause, *id.* at 746 ("'at the absolute minimum' the Clause

protects the writ as it existed when the Constitution was drafted and ratified") (quoting *INS v. St. Cyr*, 553 U.S. 289, 301 (2001)), and inform the writ's meaning and usage under statute, *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 93 (1807).

Time and again, courts have underscored that the writ must be exercised with the equity and flexibility necessary to achieve its underlying purpose of ensuring that confinement is lawful. *See, e.g.*, *Jones v. Cunningham*, 371 U.S. 236, 243 (1963) (habeas is not "a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose"); Paul D. Halliday, *Habeas Corpus: From England to Empire* 102 (2010) ("Habeas corpus was an equitable device in all but name, enabling action in response to the particulars of a given circumstance rather than imposing obedience to a set of rules inscribed in precedents."); *id.* at 59-60 (describing "the equitable flexibility" that common law judges employed in habeas cases). "[C]ommon-law habeas corpus was, above all, an adaptable remedy. Its precise application and scope changed depending upon the circumstances." *Boumediene*, 553 U.S. at 779-80; *id.* at 780 (observing that Blackstone described "habeas as 'the

great and efficacious writ, in all manner of illegal confinement'") (quoting 3 W. Blackstone, Commentaries *131).

The writ's protections are at their zenith, as here, when a petition challenges executive detention rather than incarceration duly following criminal conviction. "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474 (2004) (cleaned up).

The writ is available—unless properly suspended by Congress— whenever a petition has been filed and detention challenged as unlawful. The traditional district of confinement and immediate custodian rules must be satisfied or excused, but those rules provide no basis for the writ to be made unavailable. While ultimate judicial resolution of the merits of the petition is by necessity not immediate, the right of a detained individual to file a petition, and the power of the court to consider that petition, has never been questioned.

"The writ of habeas corpus is a high prerogative writ, known to the common law, the great object of which is the liberation of those who may be imprisoned without sufficient cause." *Ex parte Watkins*, 28 U.S. (3

Pet.) 193, 202 (1830) (Marshall, C.J.); *Boumediene*, 553 U.S. at 779 (holding that "the habeas court must have the power to order the conditional release of an individual unlawfully detained").

Delay in availability of the writ was historically impermissible. Habeas is "a writ antecedent to statute, . . . throwing its root deep into the genius of our common law." *Rasul*, 542 U.S. at 473 (quoting *Williams v. Kaiser*, 323 U.S. 471, 484 n.2 (1945) (Frankfurter, J., dissenting)). Habeas "is perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Williams*, 323 U.S. at 484 n.2 (quoting *Secretary of State for Home Affairs v. O'Brien* (1923) A. C. 603, 609); 3 W. Blackstone, Commentaries *131 ("[T]he sovereign is *at all times* entitled to have an account, why the liberty of any of her subjects is restrained," "not only in term-time, but also during the vacation") (emphasis added); *id.* at *135 (describing the English habeas statute, 16 Car. I, c.10, § 8, "whereby it is enacted, that if any person be committed by the king [or privy council] he shall have granted unto him, *without any delay upon any pretence whatsoever*, a writ of *habeas corpus*") (emphasis added); *id.* at *137 (explain that "even upon writs at the

common law it is now expected by the court, agreeable to ancient precedents and the spirit of the act of parliament, that the writ should be *immediately obeyed, without waiting*") (emphasis added).

Federal courts have been authorized to issue writs of habeas corpus since the Judiciary Act of 1789, and 28 U.S.C. § 2241 provides that federal judges may grant the writ on the application of *any* prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." *St. Cyr*, 533 U.S. at 305 (quoting 28 U.S.C. § 2241). The executive branch has no power to circumvent the right of a district court judge to consider the writ filed by a petitioner in custody in that district when the writ was filed, whether the petition was filed in that district or transferred there under 28 U.S.C. § 1631.

The writ's history is directly at odds with the government's position that it can make the writ unavailable in the district of confinement— indeed, in any district—by not disclosing the district or custodian. The government's argument is particularly problematic given its contention that a petitioner's amendment to name the person who was the custodian at the time of the original petition, once that person becomes known, is ineffectual if the petitioner has been moved to a different district.

In contrast to the government's stance, the writ's history demonstrates a deeply rooted commitment to preventing loopholes, inconveniences, and other obstacles that could frustrate or delay its *immediate* availability to enable judicial determination whether detention complies with law. For example, English judges employed devices to issue habeas writs during vacation time (when the King's Bench was not in session) to avoid gaps in coverage. *See* Halliday, *Habeas Corpus: From England to Empire* at 239-40. Judges also increasingly demanded "'sufficiency' and 'certainty' in the statement of wrongs" in a jailer's return to a habeas petition so the court could resist vague returns and thus enable the court to determine whether the prisoner's detention was lawful. *Id.* at 102-03.

These protections against gaps in the availability and efficacy of the writ were later strengthened in the celebrated Habeas Corpus Act of 1679. *See* 31 Cha. 2. c. 2 (Eng.) (1679 Act); Lee Kovarsky, *Citizenship, National Security Detention and the Habeas Remedy*, 107 Calif. L. Rev. 867, 878 (2019). Fundamental to the history of the common law writ, and to its statutory counterparts, was the understanding that—unless properly suspended—the writ was always available to the detainee, and

always appropriately addressed by the court, whether convenient to the jailer or otherwise.

Judges sent the common law writ to jailers even if a prisoner was detained in a location that was not only distant, but possessed special territorial status, such as Berwick and the palatinates, Marches of Wales, and Channel Isles. *See* Halliday, *Habeas Corpus: From England to Empire* at 240-41. Though there may have been delays in *enforcing* the common law writ, delays the 1679 Act protected against by strengthening sanctions on custodians for noncompliance with or evasion of the writ, 1679 Act, 31 Cha. 2, c. 2, § 12, those enforcement delays did not undermine the *availability* of the writ. Moreover, delays in judicial enforcement of the writ resulted from practical obstacles rooted in communication and travel limitations of centuries ago that do not exist today, and those impediments did not and do not raise any suggestion that there is any period in which a petition for habeas corpus could not immediately be filed.

Indeed, *amici* are unaware of any instance in which a common law court accepted the proposition that there could be some period of time in which a prisoner was unable to file a habeas petition absent a proper

suspension of the writ (in the United States, under the Suspension Clause, a power reserved to Congress, and only "when in Cases of Rebellion or Invasion the public Safety may require it," U.S. Const. art. I, § 9, cl. 2). The government's suggestion that it may make the writ unavailable in the district of confinement, or indeed in any district, because the executive branch is secretly moving the prisoner between undisclosed locations, under the custody of undisclosed custodians, is fundamentally at odds with the writ's common law history.

Whatever security justification might exist for refusing to identify a district and some responsible custodian while a detainee is being transported cannot possibly justify denying the writ's immediate availability. If a writ is filed in what turns out to have been the district of confinement, even if the district and custodian were unknown, jurisdiction is plain. And Congress, in 28 U.S.C. § 1631, has authorized transfer to a district that would have had jurisdiction if a petition was filed elsewhere. History does not demonstrate—and the government has not cited to—any instance in which a habeas petition could not be filed because the confined person's custodian intended to move him to some other district before a prolonged period had passed.

The government's argument that the writ is unavailable before the government discloses the detainee's district of confinement and custodian is tantamount to a suspension of the writ, in violation of the Suspension Clause. At the very least, the government's argument—that the district of confinement is not the district of confinement if the government intends to move the petitioner elsewhere, and that an unknown immediate custodian must be named even though § 2242 requires the custodian's name only "if known"—raises a serious constitutional question about compliance with the Suspension Clause.

In short, if there were any doubt that the District of New Jersey has jurisdiction under §§ 2241, 2242 and 1631 to consider Khalil's habeas petition, the writ's common law history provides further compelling reason to conclude that jurisdiction was proper, and this Court should interpret those statutes to avoid the serious constitutional question that would otherwise arise. *See, e.g., Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute

to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

II. THE DISTRICT OF NEW JERSEY WAS THE PRESENT DISTRICT OF CONFINEMENT WHEN KHALIL'S HABEAS PETITION WAS FILED, AND THE GOVERNMENT'S INTENT TO LATER MOVE KHALIL TO LOUISIANA DID NOT MAKE LOUISIANA THE DISTRICT OF CONFINEMENT.

The first traditional requirement for a district to have habeas jurisdiction, that it have been the district of confinement when the petition was filed, is plainly satisfied here: The District of New Jersey was the district confining Khalil when his petition was filed.[3]

The government appears to argue (in the course of discussing the unknown custodian exception) that when Khalil filed his petition and was confined in New Jersey, either there was no confining district, or that district was Louisiana where the government later intended to confine him. New Jersey was not the district of confinement, and the unknown custodian exception does not apply, the government argues, because

---

[3] The petition was filed in the Southern District of New York. Khalil does not argue on appeal that the Southern District would have been entitled to retain jurisdiction if it had decided not to transfer the petition. *Cf. Padilla*, 452 U.S. at 454 (Kennedy, J., concurring) (explaining that if "the Government was not forthcoming with respect to the identity of the custodian and the place of detention," jurisdiction would be proper in the last-known district of confinement).

"Petitioner's counsel was informed of the place of his confinement. The NTA [Notice to Appear] identified Jena, Louisiana as the location of Petitioner's detention. And the Government told Petitioner's counsel within hours exactly where he was being held." Gov. Br. 20-21.

This argument is misplaced for two reasons. First, no exception is necessary to satisfy the district of confinement rule because New Jersey was the district of confinement. And the government's intent (even if it had been timely communicated) to later move Khalil to Louisiana cannot preclude habeas jurisdiction in New Jersey, where Khalil was actually confined when the petition was filed.

Second, the factual basis for the argument (that "Petitioner's counsel was informed of the place of his confinement," and "the Government told Petitioner's counsel within hours exactly where he was being held," Gov. Br. 20-21), is contradicted by the record insofar as those facts are suggested to have existed when Khalil filed his petition, which is the only relevant time. *See* JA 80-83; JA 543-44; JA 1043; ECF 61, Appellees' Br. at 24 n.12.

But the even more fundamental problem with the government's argument is its next contention:

It makes no difference that Petitioner's counsel may have been unaware of his exact location at the precise minute they wished to file the habeas petition; such an expansive version of the [unknown custodian] exception has no support in law and would invite habeas counsel to engage in willful blindness to circumvent the district of confinement rule and secure jurisdiction in a favorable district.

Gov. Br. 21.

In reality, it makes a fundamental difference that Khalil's "counsel [was] unaware of his exact location at the precise minute they wished to file the habeas petition." *Id.* The government argues that Khalil's counsel, because unaware of his location, could not file the writ in any district, including the district of confinement. But that cannot be: The executive branch cannot suspend the writ, making habeas unavailable at the moment a petitioner wishes to file—indeed, actually files—a petition. This is not an "expansive view"; it is the centuries-long history of the Great Writ and the bedrock principles governing its suspension. *See Ex parte Bollman*, 8 U.S. (4 Cranch) at 101 (reiterating the long-understood rule that if habeas is to be suspended, "it is for the legislature to say so").

Moreover, the rule Khalil advances would not in any way "invite habeas counsel to engage in willful blindness to circumvent the district of confinement rule and secure jurisdiction in a favorable district." Gov.

Br. 21. Habeas counsel could not, through willful blindness or otherwise, change the actual district of confinement when filing a petition.[4]

Rather, it is the government's proposed approach that would enable it to secure jurisdiction in its favored forum. If no district has jurisdiction until the government reveals the confining district and custodian, the government would be empowered to unilaterally choose its favored forum—on its own timeline—by transporting the detainee to that district and only then revealing the district and custodian. The government thereby creates jurisdiction in its favored forum once the veil is lifted, and a legal black hole in the interim. *See Boumediene*, 553 U.S. at 765-66 ("The test for determining the scope of [the writ of habeas corpus] must not be subject to manipulation by those whose power it is designed to restrain.").

---

[4] And willful blindness as to the district of confinement would be tantamount to knowledge, preventing filing in the last-known district from which the petitioner was taken, a question not at issue in this appeal. Moreover, there is not even a hint of willful blindness or gamesmanship on Khalil's part here, when Khalil repeatedly sought but was refused opportunity to speak with his counsel until he arrived in the government's favored forum, JA 80-83, and counsel repeatedly tried to determine where Khalil was confined, JA 1041-42, ¶¶ 54-56, filing a habeas petition in the Southern District, where Khalil was arrested, shortly after that arrest, *id*., and without knowing the district of confinement or custodian.

And that is precisely what the government's rule would enable here. This Court need not find that the government acted with an eye toward forum shopping by moving Khalil to Louisiana without disclosing his location or custodian until he arrived, and need not find that open ICE beds seem to appear with statistically surprising regularity within the Fifth Circuit when the government wishes to remove immigrants from the country on grounds the legality of which judges might reach differing conclusions.[5] What matters is that the government's proposed rule would *enable* it to engage in (difficult-to-prove) secrecy and forum shopping, whereas Khalil's proposed approach does not empower either party to do so and leaves no gap in coverage of the Great Writ.

*Padilla* recognized that if a proposed approach to habeas jurisdiction would enable forum shopping, that possibility counsels against such a rule. *See Padilla*, 542 U.S. at 447 (explaining that the district of confinement rule "prevent[s] rampant forum shopping by habeas petitioners").

---

[5] *Cf. Vasquez v. Reno*, 233 F.3d 688, 694 (1st Cir. 2000) ("The petitioner's decision to seek habeas relief in Massachusetts likely was motivated by the fact that the law of the Fifth Circuit is markedly less favorable to alien habeas petitioners than the law of the First Circuit.")

As this Court has recognized, the concern against habeas forum shopping is not limited to petitioners but also extends to "forum-shopping concerns, not on the part of the petitioner but instead the Government." *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 447 (3d Cir. 2021). Indeed, "[t]hese forum-shopping concerns intensify when the § 2241 petitioner is an ICE detainee" because in the context of ICE detention "the Government has the machinery already in place to permit extensive forum shopping." *Id.* at 447-48.

As this Court observed, "the Government could willingly transfer an ICE detainee seeking habeas relief from continued detention to a jurisdiction that is more amenable to the Government's position," *id.* at 447, and it could keep secret the district and custodian until the detainee arrived in that jurisdiction.

Habeas jurisdiction rules should thus be construed not only to minimize forum shopping by petitioners, but also to "minimize incentives for Government abuse of the already turbulent ICE transfer process" by rejecting a rule enabling conscious or even unconscious forum shopping. *Id.* at 448. *See also Zumba v. Bondi*, No. 25-cv-14626 (KSH), 2025 WL 2476524, 2025 U.S. Dist. LEXIS 167666, at *17-18 (D.N.J. Aug. 28, 2025)

(recognizing the relevance of *Anariba*'s governmental forum shopping concerns to the court's construction of the unknown custodian exception); *Eisel v. Sec'y of Army*, 477 F.2d 1251, 1254, 1257-58 (D.C. Cir. 1973) (expressing concern that "the Government might engage in a form of inverse forum shopping" to shape habeas jurisdiction).

As Chief Justice Marshall observed in *Ex parte Bollman*, 8 U.S. (4 Cranch) at 136, in the course of applying a broad and equitable understanding of habeas jurisdiction, "[i]t would . . . be extremely dangerous to say, that [the government] could be given by law a right to try . . . persons in any place which the general might select, and to which he might direct them to be carried."

Regardless of any proven forum shopping in this or any other case, the rules governing habeas jurisdiction should not be construed to incentivize either party to dictate jurisdiction in its favored forum. The District of New Jersey, as the district of confinement, satisfies the traditional rules for habeas jurisdiction. And the government's suggestion that Khalil's district of confinement lacks jurisdiction because the government kept secret Khalil's district of confinement and custodian until he arrived in Louisiana is not, and should not be, the law.

III. KHALIL'S HABEAS CLAIM IS NOT BARRED IN THE DISTRICT OF NEW JERSEY FOR FAILING TO NAME HIS UKNOWN CUSTODIAN IN HIS ORIGINAL PETITION.

The government's primary contention appears to be that New Jersey lacks habeas jurisdiction because Khalil did not "properly" name his *then*-immediate custodian at the moment he filed either his original or amended petitions. In other words, there was no moment when the stars perfectly aligned such that Khalil filed a habeas petition, in the district of confinement, naming the person who was at that moment his then-custodian: "Petitioner filed his initial petition in the Southern District of New York while he was detained in New Jersey. And neither the original petition nor the amended petition named Petitioner's then-immediate custodian." Gov. Br. 18-19.

First, as explained in Point II, above, New Jersey was Khalil's district of confinement, so no exception to the district of confinement rule is relevant or necessary. And as to the immediate custodian rule, the government slips a crucial but non-obvious assertion into its contention that Khalil failed to name his "then-immediate custodian," *id.*, an assertion that falls apart when unpacked.

Khalil's counsel did not know his immediate custodian at the time the original petition was filed; once that custodian was known, Khalil amended his petition to name that custodian, i.e., the person who was his immediate New Jersey custodian at the time he filed his original petition. The government argues, however, that because that amendment was filed after Khalil had been moved to Louisiana, the amended petition did not name his *then*-immediate custodian *in Louisiana*, thus precluding habeas jurisdiction in New Jersey.

But this does not follow. Khalil was not obligated to name his unknown custodian in his original petition, and he was empowered to amend his petition to later name that custodian once known. First, he was not required to name his unknown custodian under the express statutory language of § 2242, which does not mandate that a habeas petitioner name the custodian if that custodian is unknown: "Application for a writ of habeas corpus shall . . . allege . . . the name of the person who has custody over him . . . *if known*." 28 U.S.C. § 2242 (emphasis added). Moreover, the petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions," *id.*, plainly authorizing

Khalil's timely amendment to name the custodian once that custodian became known.

Habeas jurisdiction in New Jersey is thus entirely straightforward under both the district of confinement rule (because New Jersey was the district of confinement) and the immediate custodian rule (because § 2242 provides that Khalil was not obligated to name his custodian when unknown, and because Khalil amended his petition to name that custodian once known). There is thus no need to explore the existence or scope of the unknown custodian exception to rules of habeas jurisdiction because those rules were satisfied.

Second, even if Khalil might somehow have been required to name an unknown custodian despite the plain statutory language of § 2242, the unknown custodian exception provides a recognized exception to that obligation. *See Öztürk*, 136 F.4th at 390 (explaining that the unknown custodian exception excuses noncompliance with the immediate custodian rule).

The unknown custodian exception has been recognized as legally viable by every member of the Supreme Court (albeit thought factually

inapplicable by the *Padilla* majority).[6] Though the Supreme Court has not *applied* the unknown custodian exception, no court has meaningfully questioned its viability.

The government attempts to evade applicability of the unknown custodian exception to the immediate custodian rule by arguing that the exception only applies "if the custodian is *unknowable*—e.g., if the identity of the custodian is something that the Government refuses to reveal and the petitioner's counsel cannot feasibly obtain." Gov. Br. 20. But that is precisely what happened here—until the government had transported Khalil to its favored district.

The government's argument otherwise turns on two implicit but logically necessary contentions when the government does not disclose a detainee's custodian: (1) jurisdiction could never vest anywhere but the government's preferred district if the government does not disclose the custodian until the detainee has arrived in that district, and (2) *no* district has habeas jurisdiction until the detainee arrives in the government's preferred district. Under this approach, Khalil could not

---

6 *See Padilla*, 542 U.S. at 447 n.16, 450 n.18; *see also id.* at 458 (Stevens, J., dissenting).

have filed a viable habeas petition in *any* district until the government broke its silence and named his Louisiana custodian. The government's rule suspends the writ's availability, in violation of not only tradition but of the Suspension Clause. *See Boumediene*, 553 U.S. at 765 (the executive lacks the "power to switch the Constitution on or off at will").

If this were the law, the executive could preclude filing of the Great Writ by keeping secret the identity of the custodian until the government has transported the petitioner to its favored forum—indeed, until it has removed the petitioner from United States airspace and disclaimed the power to seek his return, regardless of the lawfulness of his removal or the viability of the habeas petition he filed but that no district had the power to entertain. Whether the government has done or would do so is immaterial; no sound interpretation of the habeas statute or Suspension Clause—no construction faithful to the Great Writ's history and venerated place in American law—would allow for that possibility.

IV.    KHALIL'S HABEAS PETITION WAS PROPERLY TRANSFERRED TO NEW JERSEY UNDER 28 U.S.C. § 1631, WHICH PERMITS TRANSFER OF AN ACTION TO A DISTRICT WHERE JURISDICTION WOULD HAVE BEEN PROPER WHEN THE ACTION WAS FILED.

The Southern District of New York, where Khalil's petition was filed, transferred that petition to the District of New Jersey and, as the

district court properly found, had the power to do so under 28 U.S.C. § 1631. Section 1631 authorizes, "in the interest of justice," the transfer of a "civil action" where "there is a want of jurisdiction" to "any other . . . court . . . in which the action or appeal could have been brought at the time it was filed or noticed and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631.

A.    <u>Section 1631 Authorizes Transfer of Habeas Actions.</u>

The government argues that habeas petitions are not civil actions that can be transferred under § 1631. But this Court has concluded otherwise, holding that "the district court[ may] transfer [a habeas petition] to the court of appeals pursuant to 28 U.S.C. § 1631." *Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002); *accord Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996); *Cruz-Aguilera v. INS*, 245 F.3d

1070, 1074 (9th Cir. 2001) ("The federal transfer statute [§ 1631] is applicable in habeas proceedings.").

B.      If Khalil's Habeas Petition Was Deficient for Not Naming His Unknown Custodian, that Failure Was Technical, Not Substantive, thus Does Not Preclude Transfer Under § 1631.

The government contends that "the district court used §1631 not to correct some threshold technical or procedural defect, but to instead acquire substantive authority that it otherwise lacked. . . . As filed in the Southern District of New York, the petition was not in the district of confinement; those defects persisted when it was transferred to the court below." Gov. Br. 22.

But § 1631 expressly operates to authorize just such a transfer to a district in which the "action or appeal could have been brought at the time it was filed." 28 U.S.C. § 1631. New Jersey was Khalil's (unknown) district of confinement at the time his petition was filed, therefore the action could then have been brought in New Jersey. And Khalil's failure to name an unknown custodian in the original petition was not required by § 2242, or at the least was excused by the unknown custodian exception, not § 1631, thus did not require correction, technical or

otherwise, by § 1631. Transfer to the District of New Jersey under § 1631 was therefore proper.

The government argues that Khalil's failure to name his custodian—even though that custodian was unknown—is a substantive failure that cannot be "cured" by transfer under § 1631 when the petition was not filed in the district of confinement. The government attempts to stack two potential hurdles to habeas jurisdiction—the rules concerning the district of confinement and the immediate custodian—to argue that even if each individually is surmountable, when both are present they collectively preclude habeas jurisdiction.

No court has ever so suggested, and this makes no logical sense. "[W]e have consistently rejected interpretations of the habeas corpus statute that would suffocate the writ in stifling formalisms or hobble its effectiveness with the manacles of arcane and scholastic procedural requirements." *Hensley v. Municipal Court*, 411 U.S. 345, 350 (1973). Jurisdiction would have been proper in New Jersey when the petition was filed; transfer under § 1631 is therefore permissible.[7]

_____

[7] And even if § 1631 was for some reason unavailable, transfer was permissible under the court's inherent power. *Castillo v. Attorney General of the United States*, 109 F.4th 127, 134-35 (3d Cir. 2024).

V. KHALIL'S AMENDMENT OF HIS HABEAS PETITION AFTER BEING TRANSFERRED TO LOUISIANA DOES NOT DIVEST NEW JERSEY OF JURISDICTION, AS *EX PARTE ENDO* HOLDS.

Finally, the government argues in the alternative that "even if the district [of New Jersey] had habeas jurisdiction, the district court lost that jurisdiction when Petitioner filed an amended petition while he was detained in Louisiana." Gov. Br. 25.

To support this novel proposition, the government cites *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), which holds that federal question, subject matter jurisdiction turns on the scope of an amended complaint that drops the federal claims asserted in the original complaint. *Royal Canin* is irrelevant to habeas jurisdiction here.

Instead, the effect of Khalil's amending his habeas petition while in Louisiana is controlled by *Ex Parte Endo*, 323 U.S. 283 (1944). *Endo* holds that a district does not lose habeas jurisdiction when the government moves the detainee from that district. "Th[e] objective [of habeas relief] may be in no way impaired or defeated by the removal of the prisoner

29

from the territorial jurisdiction of the District Court." *Padilla*, 542 U.S. at 441 (quoting *Endo*, 323 U.S. at 307).

In this case, as in *Endo*—but not in *Padilla*—Khalil's habeas petition was filed while he was still confined in the district where habeas jurisdiction is at issue (here, New Jersey). As this Court held, even before *Endo*, "we do not believe that passing about of the body of a prisoner from one custodian to another after a writ of habeas corpus has been applied for can defeat the jurisdiction of the Court to grant or refuse the writ on the merits of the application." *Ex parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943).

The government attempts to distinguish *Endo* by arguing that "Petitioner never filed a proper habeas petition in the District of New Jersey during the brief period he was detained there. Therefore, that court never acquired jurisdiction. Because jurisdiction never vested, there was no jurisdiction to retain under the *Endo* exception." Gov. Br. 20.

But the government ignores the arguments set forth above demonstrating that New Jersey had jurisdiction over Khalil's original petition at the time that petition was filed, thus that jurisdiction cannot

be defeated by the government's subsequent removal of Khalil to Louisiana. That is because: New Jersey was the district of confinement at the time of the original petition; Khalil was not obligated to name his unknown immediate custodian in that original petition; Khalil's original petition, filed in the Southern District, could have been brought in New Jersey, thus was properly transferred to New Jersey under § 1631.

Vitally, under § 1631, that petition, once transferred to New Jersey, "shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631. In other words, jurisdiction properly vested in New Jersey, *as of the time the original petition was filed*, as if the petition had then been filed in New Jersey— *before* Khalil was moved to Louisiana.[8]

Furthermore, it would make no sense for *Endo* to preclude the government from defeating habeas jurisdiction by moving a petitioner out of a district that has jurisdiction, but for the government to be thereby

_____

[8] Indeed, in *Padilla*, as here, the petitioner amended his habeas petition after he had been moved from one district (New York) to a second district (South Carolina). *Id.* at 432, 457-58. But neither the government nor the Court so much as mentioned the possibility that the amendment might have any relevance to the propriety of habeas jurisdiction in New York.

entitled to lock the petitioner into the petition as originally filed. The government-procured move from New Jersey to Louisiana cannot put Khalil to the choice of either amending his petition or accepting the government's preferred forum.

In sum, the government's arguments against jurisdiction in New Jersey—or in any district—when it does not disclose the district of confinement or immediate custodian are misdirected, misconstruing both Supreme Court precedent and the history of the Great Writ. The government's arguments are barred by the constitutional prohibition against executive suspension of the writ and by the writ's common law history, the plain statutory language of §§ 2242 and 1631, and precedent.

## CONCLUSION

For the foregoing reasons, this Court should recognize that New Jersey has jurisdiction over Khalil's habeas petition.

Respectfully submitted,

/s/ Jon Romberg

Jon Romberg, Esq.
Jonathan Hafetz, Esq.
Seton Hall University Law School
Center for Social Justice
833 McCarter Highway
Newark, NJ 07102
(973) 642-8700
*Counsel for Amici Curiae
    Habeas Scholars*

Dated: September 17, 2025

# ADDENDUM A

## <u>List of Amici Curiae Habeas Scholars</u>[*]

Marc D. Falkoff
Professor of Law
Northern Illinois University College of Law

Eric M. Freedman
Siggi B. Wilzig Distinguished Professor of Constitutional Rights
Maurice A. Deane School of Law at Hofstra University

Paul Halliday
Julian Bishko Professor of History and Professor of Law
University of Virginia

Randy A. Hertz
Fiorello LaGuardia Professor of Law
NYU School of Law

Aziz Z. Huq
Frank and Bernice J. Greenberg Professor of Law
University of Chicago Law School

Joseph Margulies
Professor of the Practice of Government
Cornell University

Stephen I. Vladeck
Agnes Williams Sesquicentennial Professor of Federal Courts
Georgetown University Law Center

---

[*] Institutional affiliations are listed for identification purposes only. Signatories are participating and expressing views in their individual capacity, not on behalf of their institutions.

Larry Yackle
Professor of Law Emeritus
Basil Yanakakis Faculty Research Scholar
Boston University School of Law

## CERTIFICATIONS OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitations stated in Fed. R. App. P. 32(a)(7)(B). Using the word count feature of Microsoft Word, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and L.A.R. 29.1(b), this brief contains no more than 6,403 words. The brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a) because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Century Schoolbook typeface.

I certify that the text of the electronic and hard copies of this brief are identical.

I certify that Jon Romberg and Jonathan Hafetz are members of the bar of this Court.

I certify that the electronic copy of this brief was scanned using MetaDefender Cloud Community 4.19.2 and is virus-free.

/s/ Jon Romberg
Jon Romberg, Esq.

**Dated: September 17, 2025**

**CERTIFICATION OF SERVICE**

I hereby certify that on September 17, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. All counsel of record in this case are registered CM/ECF users.

/s/ Jon Romberg
Jon Romberg, Esq.

Dated: September 17, 2025