

**U.S. Department of Justice**
Civil Division

October 22, 2025

**VIA CM/ECF**

Patricia S. Dodszuweit, Clerk of Court
U.S. Court of Appeals for the Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106-1790

Re: *Khalil v. President of the United States, et al.*, Nos. 25-2162 & 25-2357
Supplemental Submission after Oral Argument

Dear Ms. Dodszuweit:

In response to the Court's requests during oral argument and under Rule 28(j), the Government submits the following authorities:

> **Exhibit A:** Executive Office for Immigration Review, *Consideration of Constitutional Arguments in Agency Adjudications* (PM 25-45, Sept. 5, 2025).
>
> **Exhibit B:** The Immigration Judge's September 12, 2025 decision.

1.  The recent EOIR Policy Memorandum provides that "EOIR adjudicator may generally consider arguments arising out of constitutional law, as they have done for many years." Exhibit A at 3. The Policy Memorandum reflects two exceptions. First, "EOIR adjudicators cannot consider structural constitutional challenge to their own existence." *Id*. at 3 n.5. Second, the BIA has "expressed that issues concerning the general constitutionality of statutes are beyond their purview." *Id*. at 3. Nonetheless, the BIA "can address constitutional challenges to the application of statutes," and "nothing in [the Policy Memorandum] affects EOIR's precedent that adjudicators may consider constitutional issues related to the application of a statute in a particular case." *Id*. at 2, 4.

To the Government's knowledge, the Fifth Circuit has not considered EOIR's recent Policy Memorandum, which was issued last month.

2.  The Immigration and Nationality Act does not preclude a court of appeals from obtaining additional fact-finding if the agency record is inadequate. The

Government has previously explained that 8 U.S.C. § 1252(b)(4)(A) "does not prescribe a special rule for immigration cases, but simply restates a generally applicable rule of administrative law" that does not preclude supplemental fact-finding. Reply Brief for Petitioners, No. 97-1252, *Reno v. AADC*, 1998 WL 727540, at *13 (S. Ct. Oct. 14, 1998) ("*AADC* Reply Br."). In certain circumstances the Hobbs Act authorizes remand to a district court for additional fact-finding. 28 U.S.C. § 2347(b)(3); *see AADC* Reply Br., at *12-14. Other avenues for resolving material factual issues also exist. *See* Fed. R. App. P. 48 (special masters); *see AADC* Reply Br., at *12 (citing same). Finally, "upon a finding of constitutional necessity, a court of appeals may 'fashion an appropriate mechanism.'" *Reno v. AADC*, 525 U.S. 471, 496, n.2 (1999) (Ginsburg, J., concurring) (quoting *AADC* Reply Br., at *13).

        Sincerely,

        BRETT A. SHUMATE
        Assistant Attorney General

        YAAKOV M. ROTH
        Principal Deputy Assistant Attorney General

        */s/ Drew C. Ensign*
        DREW C. ENSIGN
        Deputy Assistant Attorney General
        Civil Division
        U.S. Department of Justice
        950 Pennsylvania Ave., N.W.
        Washington, DC 20530
        Tel: (202) 514-2000
        Drew.C.Ensign@usdoj.gov

        BENJAMIN HAYES
        Senior Counsel to the Assistant Attorney General

        ALANNA T. DUONG
        Senior Litigation Counsel

        ERIKA ARCE-ROMERO
        RACHEL L. BROWNING
        ANIELLO DESIMONE
        JOSHUA C. MCCROSKEY
        JOHN F. STANTON
        Trial Attorneys

CC:    Petitioner's Counsel

**Exhibit A**

Executive Office for Immigration Review
*Consideration of Constitutional Arguments in Agency Adjudications*
(PM 25-45, Sept. 5, 2025)



To:     All of EOIR
From: Sirce E. Owen, Acting Director
Date:  September 5, 2025



Digitally signed by SIRCE OWEN
Date: 2025.09.05 10:41:10 -04'00'

## CONSIDERATION OF CONSTITUTIONAL ARGUMENTS IN AGENCY ADJUDICATIONS

| | |
|---|---|
| PURPOSE: | Provide guidance regarding EOIR's consideration of constitutional arguments in the course of its adjudications |
| OWNER: | Office of the Director |
| AUTHORITY: | 8 C.F.R. § 1003.0(b) |
| CANCELLATION: | None |

### I.    Introduction

Historically, as an administrative agency, EOIR has only infrequently had to consider claims or arguments sounding in constitutional law.  In recent years, however, constitutional arguments related to administrative adjudications have proliferated and now occur with some regularity in EOIR proceedings in a variety of contexts.  This Policy Memorandum (PM) provides guidance to adjudicators confronted with constitutional issues, though it does not direct any particular mode of analysis or outcome when considering constitutional arguments.

### II.    Background

Federal courts, including the Supreme Court, have sent mixed messages on the appropriateness of administrative agencies deciding constitutional questions in the first instance.  *Compare Califano v. Sanders*, 430 U.S. 99, 109 (1977) ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures . . . .") *with Elgin v. Dep't of Treasury*, 567 U.S. 1, 23 (2012) (acknowledging that there may be "constitutional claims that [an agency] routinely considers, in addition to a constitutional challenge to a federal statute") *and Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (observing that a rule that agency consideration of constitutional questions is generally beyond the agency's jurisdiction is not "mandatory"); *compare Meredith Corp. v. FCC*, 809 F.2d 863, 874 (D.C. Cir. 1987) (noting both that "we are aware of no precedent that permits a federal agency to ignore a constitutional challenge to the application of its own policy merely because the resolution would be politically awkward" and that the failure of an agency to consider a constitutional argument raised by a respondent in an enforcement action "seems to us the very paradigm of arbitrary and capricious administrative action") *with Plaquemines Port, Harbor & Terminal Dist. v. Fed. Mar. Comm'n*, 838 F.2d 536, 544 (D.C. Cir.

1988) (holding that "[i]t was entirely correct for the [administrative agency] to decline to decide the [constitutional] issue . . . on the ground that the federal courts provide more appropriate forums for constitutional claims").

Notwithstanding this somewhat muddled case law, EOIR as a whole has generally taken the position that, as an administrative agency, it can adjudicate most arguments sounding in constitutional law, albeit with a couple of notable exceptions. For instance, EOIR's Office of the Chief Administrative Hearing Officer (OCAHO) has frequently considered constitutional arguments in its proceedings—including arguments related to the Commerce Clause, the Eleventh Amendment, and other constitutional provisions—with little controversy. *See U. S. v. ABS Staffing Solutions, LLC*, 21 OCAHO no. 1632 at 13 (2025) ("Historically, OCAHO's general view has been that, except for arguments regarding the constitutionality of a statute itself, OCAHO adjudicators can and should decide constitutional questions that come before them, including questions related to the constitutional application of statutory provisions."). Further, the one historic exception to this general rule in OCAHO jurisprudence—*i.e.* arguments related to the constitutionality of a statute—has been called into doubt by subsequent Supreme Court caselaw. *See Elgin v. Dep't of Treasury*, 567 U.S. at 16 n.5 (2012) (describing an administrative agency's view that it can consider constitutional challenges to the manner in which an agency acts but not constitutional challenges to the statute itself as both "dubious at best" and "curious").[1] Currently, the only clearly-established exception in recent OCAHO jurisprudence is that its adjudicators may not consider "a constitutional challenge to an [Administrative Law Judge's] appointment which an [Administrative Law Judge] cannot remedy and which an agency head could not directly remedy in the course of an adjudication." *ABS Staffing*, 21 OCAHO no. 1632 at 11-12 (citing *Carr v. Saul*, 593 U.S. 83, 94 (2021)).[2]

The Board of Immigration Appeals (the Board) has taken a similar view of its authority to hear constitutional arguments. Since at least the 1940s, the Board has held that while it cannot adjudicate broad challenges to the constitutionality of statutes,[3] it can address constitutional

---

[1] Older OCAHO caselaw prior to *Elgin* had also adopted this distinction, but the applicability of that caselaw after *Elgin* is in significant doubt, though OCAHO has not had a recent occasion to expressly revisit the issue. *See ABS Staffing*, 21 OCAHO no. 1632 at 13 n.10.

[2] Even this exception may have limits, though, as "once a constitutional issue has been decided in a precedential decision by an appropriate circuit court of appeals or the Supreme Court, OCAHO is obligated to faithfully apply that precedent." *ABS Staffing*, 21 OCAHO no. 1632 at 14. Thus, even if OCAHO could not address the issue in the first instance, it would nevertheless be bound to apply precedent from a federal court that had addressed the issue.

[3] The provenance of the Board's view that its jurisdiction precludes assessing the constitutionality of statutes is both unclear and in tension with other authorities. For instance, the Attorney General unquestionably has the authority to assess the constitutionality of a statute, and well-established statutory authority contemplates that either the Attorney General, from whom the Board has delegated authority, or "any officer of the Department of Justice," which would include the Board, can determine that any provision of a statute or regulation within the Attorney General or officer's responsibility is unconstitutional. *See* 28 U.S.C. § 530D(a)(1)(A)(i) ("The Attorney General shall submit to the Congress a report of any instance in which the Attorney General or any officer of the Department of Justice establishes or implements a formal or informal policy to refrain from enforcing, applying, or administering any provision of any Federal statute, rule, regulation, program, policy, or other law whose enforcement, application, or administration is within the responsibility of the Attorney General or such officer on the grounds that such provision is unconstitutional." (cleaned up)). Further, the Department of Justice's Office of Legal Counsel, which typically advises the Attorney General in reviews of Board decisions, *see* 28 C.F.R. § 0.25(f)—and, thus, could aid in the assessment of the Board's determination regarding the constitutionality of a statute—also opines on the constitutionality of statutes. *See, e.g.*, *Constitutionality of Statute Governing Appointment of U.S. Trade Representative*, 20 Op. O.L.C.

challenges to the application of statutes.[4] *See, e.g., Matter of O-*, 3 I&N Dec. 736, 738 (1949) ("It is not within the province of this Board to pass upon the constitutionality of statutes enacted by Congress. We shall, however, comment on the constitutional aspects of the statute's application to the instant proceedings.") (citations omitted). However, as discussed, *supra*, this distinction no longer appears viable after *Elgin* and may be subject to reconsideration by the Board. Otherwise, Immigration Judges, the Board, and other administrative immigration adjudicators have routinely considered constitutional arguments related to, for example, the First, Fourth, and Fifth Amendments with no suggestion that such considerations are inappropriate. *See*, *e.g.*, *Matter of Mariscal-Hernandez*, 28 I&N Dec. 666, 669-74 (BIA 2022) (discussing the Fourth Amendment and rejecting an argument that an alien had established a prima facie claim of a Fourth Amendment violation entitling him to a suppression hearing); *Matter of Church Scientology Int'l*, 19 I&N Dec. 593, 603 (Comm'r 1988) (finding no violation of the Establishment Clause of the First Amendment in review of a visa petition filed by a religious organization); *Matter of Koden*, 15 I&N Dec. 739, 742 (Dep. A.G. 1976) ("Respondent, who was represented by counsel, raised a number of objections, some relating to the Board's constitutional and statutory authority to conduct the proceedings, others of a procedural nature, and still others of an evidentiary nature. The Board, in a comprehensive opinion, rejected the constitutional, statutory, and procedural objections, and I conclude that it acted correctly."), *aff'd by Koden v. DOJ*, 564 F.2d 228 (7th Cir. 1977).

### III.  Consideration of Constitutional Arguments

In short, with one established exception[5]—and arguably a second one discussed in more detail below—EOIR adjudicators may generally consider arguments arising out of constitutional law, as they have done for many years. In doing so, however, adjudicators should be careful to faithfully apply established relevant precedent, just as they do regarding any other issue raised in a particular case. To that end, all EOIR adjudicators should maintain familiarity with established jurisprudence on constitutional law issues likely to arise in proceedings before them, particularly issues related to the First, Fourth, Fifth, and Seventh Amendments, the Appointments Clause, and the major questions and nondelegation doctrines.

Additionally, as noted, *supra*, both OCAHO and the Board traditionally expressed that issues concerning the general constitutionality of statutes are beyond their purview. However, the underlying basis for that assertion is questionable, and the distinction between constitutional challenges to a statute itself and challenges to the application of a statute appears untenable after

---

279 (1996) (concluding that 19 U.S.C. § 2171(b)(3) [now 19 U.S.C. § 2171(b)(4)] is unconstitutional). Whether the Board's view of its own authority on this point is correct is beyond the scope of this PM; however, at the least, the issue may not be as clear-cut as the Board has opined.

[4] To be sure, the Board has not always been consistent in adhering to this distinction. Thus, even if it has not been superseded by *Elgin*, the Board may be well-served to clarify its views on both facial and as-applied challenges to a statute.

[5] It is clear that EOIR adjudicators cannot consider structural constitutional challenges to their own existence, which they cannot remedy. *See generally Carr*, 593 U.S. at 94. However, unlike the situation in *Carr*, there are no obvious structural constitutional challenges applicable to EOIR at the present time that an EOIR adjudicator or the Attorney General acting under 8 C.F.R. § 1003.1(h) or 28 C.F.R. § 68.55 could not remedy. Moreover, even if EOIR could not consider such a structural constitutional challenge in the first instance, it would nevertheless be bound to apply any circuit court or Supreme Court precedent that had addressed such a challenge. In such cases, EOIR would not be deciding the constitutional challenge *per se*; rather, it would simply be applying established precedent, just as it does in all other cases.

*Elgin*. Moreover, there is no obvious rationale as to why EOIR can decide issues involving the application of the First, Fourth, Fifth, or Eleventh Amendments (or other constitutional provisions), but cannot decide issues when those provisions apply to statutes.[6] Indeed, debate over this question has percolated for many years, but has failed to persuasively support EOIR's position:

> Is there anything about decisions on the validity of statutory provisions which requires that they may not be consigned initially to an agency even though questions of law generally may be so consigned? An affirmative answer seems difficult to justify for a number of reasons. Certainly nothing in the text supports such a distinction. And, from both a functional and a constitutional perspective, it is difficult to distinguish between the myriad legal questions with substantial constitutional components that agencies already decide and the kinds of decisions on the validity of statutes urged here. It is, for example, quite clear that legislative courts can decide the constitutionality of statutes. The Tax Court, while it was "an agency in the executive branch," frequently did so. And many agencies decide due process claims, consider constitutional objections to proposed rules and other administrative actions, rule on whether state statutes are preempted by federal legislation, determine whether a provision may constitutionally be applied to a particular set of facts, and construe statutes to avoid constitutional questions. If the availability of judicial review is adequate to meet constitutional objections to these kinds of agency decisions, there is no reason that it would not be equally adequate for decisions on the validity of statutes.

*The Authority of Administrative Agencies to Consider the Constitutionality of Statutes*, 90 HARV. L. REV. 1682, 1687-88 (1977).

To be clear, this PM cannot—and does not purport to—alter any precedent issued by an EOIR adjudicator. Moreover, nothing in this PM affects EOIR's precedent that adjudicators may consider constitutional issues related to the application of a statute in a particular case. *See*, *e.g.*, *Church Scientology Int'l*, 19 I&N Dec. at 603 ("Of course, the Service cannot pass upon the constitutionality of the statute it administers. Nevertheless, we can address questions relating to the constitutionality of its application."). Further, adjudicators should always be mindful of situations in which Supreme Court precedent may have superseded EOIR precedent, as the former clearly controls when there is a conflict. Thus, adjudicators should continue to adhere to EOIR precedents, unless there is a legal basis for not doing so (*e.g.*, distinguishability or inapplicability to the case, superseded or abrogated by binding circuit court or Supreme Court authority, or unconstitutionality).

## IV.     Conclusion

EOIR adjudicators are fully competent to decide most constitutional issues arising in EOIR proceedings and have done so for decades. As such issues become more common in EOIR proceedings, and the proliferation of such issues generates more case law, adjudicators should

---

[6] These same considerations would also apply to constitutional or lawfulness questions regarding EOIR regulations. *Cf*. PM 25-29, Cancellation of Director's Memorandum 22-03 (Apr. 18, 2025) (raising serious questions regarding the constitutionality or lawful basis of a recent EOIR rulemaking).

ensure they are applying and adhering to the most appropriate interpretations in all cases that come before them.

This PM is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person. Nothing herein should be construed as mandating a particular outcome in any specific case. Nothing in this PM limits an adjudicator's independent judgment and discretion in adjudicating cases or an adjudicator's authority under applicable law.

Please contact your supervisor if you have any questions.

**Exhibit B**

The Immigration Judge's September 12, 2025, decision

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**JENA, LOUSIANA**

| | | |
|---|---|---|
| IN THE MATTER OF | ) | IN REMOVAL PROCEEDINGS |
| | ) | |
| Mahmoud KHALIL | ) | File No.: ▮▮▮▮▮▮▮▮ |
| | ) | |
| Respondent | ) | |
| | ) | |

**CHARGES:** Section 237(a)(4)(C)(i) of the Immigration and Nationality Act
Section 237(a)(1)(A) of the Immigration and Nationality Act

**APPLICATIONS:** Asylum, pursuant to INA § 208; Withholding of Removal, pursuant to INA § 241(b)(3); Withholding of Removal under the Convention Against Torture, pursuant to 8 C.F.R. § 208.16(c); Waiver, pursuant to INA § 237(a)(1)(H)

**ON BEHALF OF THE RESPONDENT:**
Marc Van Der Hout, Esq.
Van Der Hout, LLP
360 Post Street, Suite 800
San Francisco, California 94108

**ON BEHALF OF THE DEPARTMENT:**
Numa Metoyer, Deputy Chief Counsel
DHS/ICE/Litigation Unit
830 Pinehill Road
Jena, Louisiana 71342

## AMENDED DECISION AND ORDER OF THE IMMIGRATION JUDGE

### I. Procedural & Factual History

On June 20, 2025, the Court issued a written decision, denying the Respondent's application for asylum, withholding of removal under the Act, and relief under the Convention Against Torture, and ordering the Respondent removed to Algeria, and Syria, in the alternative. The Court's June 20th decision and its findings, in its entirety, are hereby incorporated by reference.

On July 3, 2025, the Respondent's counsel filed a second Motion to Reconsider. The Department filed an Opposition to Respondent's Second Motion to Reconsider on July 14, 2025. The Respondent's counsel filed a Reply to the Department's Opposition to the Motion to Reconsider. The Court denied this motion on July 16, 2025.

On July 17, 2025, the District Court for New Jersey (District Court), issued an order clarifying the meaning of its June 11, 2025 preliminary injunction order.[1] The District Court found portions of this Court's June 20th decision at odds with the District Court's June 11th preliminary injunction and ordered

---

[1] On June 11, 2025, the District Court preliminarily enjoined the federal government "from seeking to remove the Petitioner from the United States based on the Secretary of State's determination." *Khalil v. Trump*, 2025 WL 1649197, at *6 (D.N.J. June 11, 2025).

the respondent to cause this Court to vacate or amend its June 20th decision. *Khalil v. Trump*, No. 25-CV-01963 (MEF)(MAH), 2025 WL 1983755 (D.N.J. July 17, 2025). The District Court ordered this Court to consider in an appropriately full and thorough manner, and then determine: (i) whether the Respondent should be granted a waiver of removability pursuant to INA § 237(a)(1)(H), in connection with the charge of removability pursuant to INA § 237(a)(1)(A) and (ii) whether the Respondent should be afforded an evidentiary hearing on the waiver. *Khalil v. Trump*, No. 25-CV-01963 (MEF)(MAH), 2025 WL 1983755, at *3 (D.N.J. July 17, 2025).

In compliance with the District Court's order, this Court reopened the removal proceedings on July 18, 2025. Exh. 45. On that same day, the Respondent, through counsel, filed a Motion to Change Venue. Exh. 46. On July 28, 2025, the Department filed an Opposition to the Respondent's Motion to Change Venue. The Respondent's counsel filed a Reply to the Department's Opposition to the Motion to Change Venue on July 29, 2025. Exh. 49.

On July 30, 2025, this Court issued a scheduling order, requiring evidence regarding the Respondent's request for a waiver pursuant to INA § 237(a)(1)(H), to be filed by the parties no later than August 11, 2025. Exh. 50. On July 31, 2025, pursuant to the District Court's order, this Court issued an order vacating its decision of April 11, 2025 finding the Respondent removable as charged pursuant to INA § 237(a)(4)(C)(i). Exh. 51. This Court's Order dated July 31, 2025, is hereby incorporated by reference into this Order in its entirety.

The Respondent submitted additional evidence on August 11, 2025 in support of his request for a waiver pursuant to INA § 237(a)(1)(H). Exh. 54-56.

The Court now issues this written decision addressing the Respondent's eligibility for the waiver pursuant to INA § 237(a)(1)(H). As an initial matter, this Court finds that based on the voluminous evidentiary record, which includes evidence submissions specifically in support of the waiver request, an evidentiary hearing is not required for reasons set forth below.[2, 3]

---

[2] As the Respondent is seeking discretionary relief, in the form of a waiver pursuant to INA § 237(a)(1)(H), the Court has the discretion to determine whether an evidentiary hearing is required based on the record. Unlike, an asylum claim, which requires the opportunity to be heard at a meaningful time and in a meaningful manner, discretionary relief has no such requirement due to the nature of the relief as created by Congress. *Matter of Andrade*, 27 I&N 557, 559 (BIA 2019*), citing Mendez-Garcia v. Lynch*, 840 F.3d 655, 666 (9th Cir. 2016) (No statute or regulation requires the government to take action on [the petitioners] applications within a set period, nor does cancellation of removal give rise to a substantive interest protected by the Due Process Clause. (citations omitted)). *See also Munoz v. Ashcroft*, 339 F.3d 950, 954 (9th Cir. 2003); *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004).

[3] An Immigration Judge may decline to hear testimony from any witness if the Immigration Judge determines that the testimony is, among other things, duplicative or unnecessary. *See Matter of J-G-T-*, 28 I&N Dec. 97, 102 (BIA 2020); *see also H-A-A-V-*, 29 I&N Dec. 233 (BIA 2025).

## II.    EVIDENCE PRESENTED

The record now contains additional exhibits numbered thirty-six through fifty-six. This Court has familiarized itself with the entire record of proceedings and considered all submitted evidence regardless of whether mentioned in this decision. *See* 8 C.F.R. § 1240.1(b).

| | |
|---|---|
| Exhibit 36: | IJ's Written Decision (issued June 20, 2025) |
| Exhibit 37: | EOIR-33 (filed June 22, 2025) |
| Exhibit 38: | DHS's Opposition to Respondent's Motion to Reconsider (filed June 27, 2025) |
| Exhibit 39: | Court's Order Denying Respondent's Motion to Reconsider (issued June 30, 2025) |
| Exhibit 40: | Respondent's Motion to Reconsider the Court's June 20, 2025 Order (filed July 3, 2025) |
| Exhibit 41: | Rejection Notice (filed July 8, 2025) |
| Exhibit 42: | DHS's Opposition to Respondent's Second Motion to Reconsider (filed July 14, 2025) |
| Exhibit 43: | Respondent's Reply in Support of Motion to Reconsider Filed on July 3, 2025 (filed July 15, 2025) |
| Exhibit 44: | Court's Order Denying Respondent's Second Motion to Reconsider (issued July 16, 2025) |
| Exhibit 45: | Court's Order Reopening Proceedings Pursuant to the District Court Order of July 17, 2025, (issued July 18, 2025) |
| Exhibit 46: | Respondent's Motion to Change Venue (filed July 18, 2025) |
| Exhibit 47: | Respondent's Supplemental Preliminary Statement of Eligibility and Documents in Support of His Application for A Waiver Under Immigration and Nationality Act § 237(A)(1)(H) (filed July 18, 2025) |
| Exhibit 48: | DHS's Opposition to Respondent's Motion to Change Venue (filed July 28, 2025) |
| Exhibit 49: | Respondent's Reply in Support of Motion to Change Venue (filed July 29, 2025) |
| Exhibit 50: | Court's Scheduling Order (issued July 30, 2025) |
| Exhibit 51: | Court's Order Vacating its June 20, 2025 decision (July 31, 2025) |
| Exhibit 52: | EOIR-33 (filed August 4, 2025) |
| Exhibit 53: | Respondent's Motion for Thirty-Day Extension of Time of Submission Deadline for Additional Evidence on 237(A)(1)(H) Waiver (August 5, 2025) |
| Exhibit 54: | Respondent's Document List and Additional Documentary Evidence in Support of Mr. Khalil's Request for a Waiver Under INA § 237(A)(1)(H) and Renewed Motion for 30 Day Extension of Time to Submit Preliminary Evidence in Support of INA § 237(A)(1)(H) Waiver, Tabs A-Q (455 pages) (filed August 11, 2025) |
| Exhibit 55: | Respondent's Document List and Additional Documentary Evidence in Support of Mr. Khalil's Request for a Waiver Under INA § 237(A)(1)(H) Part 2, Tabs R-X (274 pages) (filed August 11, 2025) |

Exhibit 56:     Respondent's Document List and Additional Documentary Evidence in Support of Mr. Khalil's Request for a Waiver Under INA § 237(A)(1)(H) Part 3, Tabs Z-CC (333 pages) (filed August 11, 2025)

### III. WAIVER PURSUANT TO INA § 237(a)(1)(H)

#### A. Eligibility

Section 237(a)(1)(H) is a discretionary waiver of removability under INA § 237(a)(1)(A) based on charges of inadmissibility at the time of admission under INA § 212(a)(6)(C)(i), for fraud or willful misrepresentation of a material fact. *See Matter of Fu*, 23 I&N Dec. 985, 988 (BIA 2006). An applicant bears the burden of establishing that he is statutorily eligible for relief and that he merits a favorable exercise of the court's discretion. *See* INA § 240(c)(4)(A); 8 C.F.R. 1240.8(d).

In order for an applicant to demonstrate that he merits a waiver under INA § 237(a)(1)(H), he must first establish that he is statutorily eligible. *See Matter of Tijam*, 22 I&N Dec. 408, 412 (BIA 1998). To establish statutory eligibility, an applicant must: (1) be the spouse, parent, son, or daughter of a living USC or LPR; (2) have been in possession of an immigrant visa or "equivalent document" at the time of admission; and (3) have been otherwise admissible at the time of such admission except for those grounds of inadmissibility specified under INA §§ 212(a)(5)(A), (7)(A). *See* INA §§ 237(a)(1)(H); 240(c)(4)(A)(i). If found eligible, the applicant must then demonstrate that he merits a favorable exercise of discretion. *See Alhuay v. U.S. Att'y Gen.*, 661 F.3d 524, 549 (11th Cir. 2011); *see Tijam*, 22 I&N Dec. at 412.

The Court identifies two issues concerning the Respondent's eligibility for the INA § 237(a)(1)(H) waiver. The Court will address each issue below.

First, the Respondent would not be eligible for the waiver based on his removability pursuant to INA § 237(a)(4)(C), as this charge is not waivable. As such, Respondent's removability under INA § 237(a)(4)(C), would render the request for a waiver on the INA § 237(a)(1)(A) charge moot. *See, Exhibit 36*. However, the New Jersey District Court directed this Court not to consider the charge of removability pursuant to INA § 237(a)(4)(C), in assessing the Respondent's eligibility for the INA § 237(a)(1)(H) waiver. This Court would deny the Respondent's waiver but for the Order issued by the New Jersey District Court. Therefore, the Court is compelled to make alternative findings consistent with the Order issued by the New Jersey District Court.

Second, this Court finds a conflict in the case law as it relates to the Respondent's statutory eligibility for the waiver. At its inception, INA § 237(a)(1)(H) namely, former section 241(f) of the Act, 8 U.S.C. § 1251(f) (1964), did not allow a waiver for fraud committed during adjustment of status but only applied to fraud at the time of entry. *E.g., Khadjenouri v. INS,* 460 F.2d 461 (9th Cir. 1972); *Pereira-Barbeira v. U.S. Dep't of Justice, INS*, 523 F.2d 503 (2d Cir. 1975); *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984). Notably, in 2015, in *Matter of Agour*, 26 I&N Dec. 566 (BIA 2015), the Board deviated from the caselaw that followed Congress's original intent for the waiver to apply only to those who commit fraud at the time of entry to also include those who commit fraud at the time of admission, and held that a post entry adjustment of status counted as an admission for purposes of the waiver. This Court notes that the Board in *Agour* did not expressly overrule *Connelly* but rather sought to distinguish its holding

based on the definition of admission under the current statutory framework. This Court further notes *Agour* was not a unanimous panel decision.[4]

When contending with the definition of admission or what constitutes admission, the ambiguity is apparent, and the Board, as well as circuit courts, have wrestled with the definitions. Prior to *Agour*, **nine** of the Circuit Courts issued precedential decisions holding the definition of admission, for purposes of eligibility for a similar waiver under INA § 212(h), does not include post-entry adjustment of status; and all discuss in detail the statutory language in varying sections of the INA. *See Medina-Rosales v. Holder*, 778 F.3d 1140 (10th Cir. 2015); *Husic v. Holder*, 776 F.3d 59 (2d Cir. 2015); *Stanovsek v. Holder*, 768 F.3d 515 (6th Cir. 2014); *Negrete-Ramirez v. Holder*, 741 F.3d 1047 (9th Cir. 2014); *Papazoglou v. Holder*, 725 F.3d 790 (7th Cir. 2013); *Leiba v. Holder*, 699 F.3d 346 (4th Cir. 2012); *Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479 (3d Cir. 2012); *Lanier v. U.S. Att'y Gen.*, 631 F.3d 1363 (11th Cir. 2011); *Martinez v. Mukasey*, 519 F.3d 532 (5th Cir. 2008).

Each of these Circuit Court cases considered Congressional intent for the language used in the specific sections of the INA. The Fifth Circuit, **where this Court sits**, determined that plain statutory language is the most instructive and reliable indicator of Congressional intent. *Martinez v. Mukasey*, 519 F.3d 532, 543 (5th Cir. 2008). The Fifth Circuit further stated in *Marques v. Lynch*, ""[W]e 'generally presume' that, '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, . . . Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"" *Marques v. Lynch*, 834 F.3d 549, 561 (5th Cir. 2016). Moreover, " . . . the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Kaluom v. Stolt Offshore, Inc.*, 504 F.3d 511, 515 (5th Cir. 2007) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania*, Inc., 447 U.S. 102, 108 (1980)).

Following this line of reasoning, the omission of adjustment of status within the language of section INA § 237(a)(1)(H) supports a finding that Congress never intended the waiver to apply to aliens seeking post entry adjustment of status, because the plain language limits the waiver to those who are inadmissible at the time of admission. If Congress had intended the waiver to apply to those seeking adjustment of status, it could have included adjustment of status in the statutory construction but did not. Therefore, this Court following *Matter of Connelly*, 19 I&N Dec. 156 (BIA 1984), and Fifth Circuit precedent *supra*, finds the Respondent's post entry adjustment of status would not be considered an admission under the plain language of the INA. The Court finds the Respondent is statutorily ineligible for the waiver, as the willful misrepresentation or fraud he committed occurred after his entry into the United States. Nevertheless, the Court will continue its analysis and make additional alternative findings in the event a higher Court finds the Respondent is statutorily eligible to seek a waiver under section 237(a)(1)(H).

### B.  Discretion

Assuming, *arguendo,* the Respondent is statutorily eligible for the wavier, the Respondent must also demonstrate that he warrants a waiver under INA § 237(a)(1)(H) as a matter of discretion. The Court

---

[4] The decision in *Agour* was 2-1 in a 3-member panel of the Board and included a dissenting opinion.

must balance an applicant's undesirability as an LPR with the social and humane considerations present. *See Matter of Tijam*, 22 I&N Dec. 408, 412 (BIA 1998); *Matter of Mendez-Moralez,* 21 I&N Dec. 296, 300 (BIA 1996) (citing *Matter of Marin,* 16 I&N Dec. 581 (BIA 1978)). Favorable considerations include family ties in the United States; residence of a long duration in this country, particularly where it commenced when the applicant was young; evidence of hardship to the applicant or his family if deportation occurs; a stable employment history; the existence of property or business ties; evidence of value and service to the community; and other evidence of the applicant's good character. *See id*. at 412–13. Adverse factors include the nature and underlying circumstances of the fraud or misrepresentation involved; the nature, seriousness, and recency of any criminal record; and any other additional evidence of the applicant's bad character or undesirability as an LPR. *See Tijam*, 22 I&N Dec. at 412; *see also Matter of Cervantes*, 22 I&N Dec. 560, 569 (BIA 1999).

The Court acknowledges the positive equities in the Respondent's case. The Respondent has established family ties during his relatively short tenure in the United States, including his United States citizen wife, and United States citizen infant son. Exh. 54, Tabs B-D. Although not the exclusive factor, the Court may consider the degree of hardship an applicant's family member may suffer if the applicant is removed. The Court considers that the Respondent's wife is gainfully employed. Exh. 54, Tabs F and G. The Court considered the evidence in the record, in the form of declarations from immediate family and friends proffered to support the Respondent's position of the mental and emotional hardship the Respondent's wife may suffer if the Respondent is removed. The Court finds the hardship here is consistent with that which would ordinarily be expected to result from a family member's removal. The Court has also considered the evidence submitted in support of his character and value to the community. Exh. 55, Tabs X and Y. The Court also considered the evidence submitted in support of the Respondent's lack of criminal history.

The most obvious negative factor here is the letter from the United States (U.S.) Secretary of State finding that the Respondent's presence in the United States has potentially serious adverse foreign policy consequences for the United States. As previously found by this Court, the Immigration Judge lacks authority to question foreign policy determinations made by the U.S. Secretary of State. The Court finds this factor alone outweighs the positive equities in the Respondent's case, and the Court denies the waiver as a matter of discretion on that basis. However, this Court will make alternative findings as to discretion independent and apart from the assessment of the U.S. Secretary of State pursuant to the order issued by the New Jersey District Court.

Wholly independent from consideration of the foreign policy determination by the U.S. Secretary of State, the Court considers other negative equities in the Respondent's case. The Respondent lacks long-time residence in this country and has only been in the United States since December 2022, just shy of three years. The Respondent entered as a student to complete his graduate studies at an Ivy League University, which he completed in May 2025. Exh. 54, Tab E. The Respondent's employment is limited to internships through the university while enrolled in school and he has not presented any evidence he was employed in any other capacity. Exh. 54, Tab F. There is no evidence of property or business ties. More importantly, the Respondent is a <u>*conditional*</u> lawful permanent resident and has not yet reached the pivotal point of adjusting status permanently.

The Court also takes into consideration, as a negative factor, the Respondent's underlying fraud in the course of applying for adjustment of status. The Respondent failed to disclose his involvement, association and participation with United Nations Relief and Works Agency for Palestinian Refugees (UNRWA) and Columbia University Apartheid Divest (CUAD), on his Form I-485. Candid disclosures by the Respondent may have triggered the need for additional information and further processing, involving some degree of discretionary decision-making on the part of the USCIS adjudicator. The evidence shows the Respondent knew of the potential immigration consequences for his involvement in protests organized by varying organizations on campus, including CUAD. The Respondent was quoted in the news stating that he did not participate in the protests during this time because he was worried about the immigration consequences of his participation, specifically that he would lose his student visa. Exh. 7a, Tab E. The Court finds the Respondent's lack of candor and purposeful failure to disclose complete information on the Form I-485 to be significant negative factors. His involvement, association, and participation with CUAD and UNRWA were such that the truth would predictably have disclosed other facts relevant to his qualifications.

Finally, there is no indication Congress ever intended an applicant to benefit from a waiver when the applicant willfully and intentionally fails to accurately report information in the post entry process of adjustment of status. Rather, Congress intended the waiver to benefit applicants who, due to no fault of their own, find themselves removable from the United States. For example, respondents who entered the United States as children and later become removable because of the misrepresentations of their parents, or those intending to be reunited with their family after being abroad. The waiver was not designed to reward a lack of candor by applicants admitted as immigrant visa holders who then intentionally engage in dishonesty by misrepresenting facts in the application process to adjust status, post entry. A waiver under these conditions would render the application process meaningless and improperly shift the burden to demonstrate integrity of the information provided by the alien onto the United States government.

This Court finds that the Respondent is an intelligent, ivy-league educated individual that understood the bold, capitalized letters at part 8, page 9 on the I-485 required the disclosure of his affiliations with UNRWA and CUAD. This Court further finds that the Respondent understood the consequences and that the candid disclosure of his affiliations might lead to an additional line of questioning and the ultimate denial of his application for conditional permanent residency. This Court finds that Respondent's lack of candor on his I-485 was not an oversight by an uninformed, uneducated applicant. This Court finds that the Respondent's purposeful, non-disclosure was not a misrepresentation by another which imputed consequences to the Respondent. Rather, this Court finds that Respondent willfully misrepresented material fact(s) for the sole purpose of circumventing the immigration process and reducing the likelihood his application would be denied. This Court cannot and will not condone such an action by granting a discretionary waiver. To do so, would encourage future applicants to take the gamble of materially misrepresenting facts and then seeking a waiver if it is somehow discovered by the U.S. government.

In balancing the equities of the Respondent's case, including limited family ties, relatively brief time in the United States, the gravity of his conduct, and the interests of this country, the Court finds that he has not shown the existence of truly compelling countervailing equities that merit a favorable exercise of discretion. As such, the Court denies the Respondent's request for a waiver under INA § 237(a)(1)(H) as a matter of discretion.

## IV.   CONCLUSION

The Respondent has failed to meet his burden of proof to establish he is eligible for the waiver, and in the alternative, the Respondent failed to meet his burden of proof to establish that he warrants a favorable exercise of discretion for a waiver under INA § 237(a)(1)(H).  Therefore, the request for relief will be denied.  Based upon the above and foregoing, the Court re-enters its previous orders, in addition to its finding today:

**ORDERS:**   **IT IS HEREBY ORDERED that Respondent's application for asylum regarding Algeria is DENIED.**

**IT IS FURTHER ORDERED that Respondent's applications for asylum regarding Syria is DENIED.**

**IT IS FURTHER ORDERED that Respondent's application for withholding of removal pursuant to INA § 241(b)(3) regarding Algeria is DENIED.**

**IT IS FURTHER ORDERED that Respondent's application for withholding of removal pursuant to INA § 241(b)(3) regarding Syria is DENIED.**

**IT IS FURTHER ORDERED that Respondent's application for relief pursuant to the Convention Against Torture regarding Algeria is DENIED.**

**IT IS FURTHER ORDERED that Respondent's application for relief pursuant to the Convention Against Torture regarding Syria is DENIED.**

**IT IS FURTHER ORDERED that Respondent's application for a waiver under INA § 237(a)(1)(H) is DENIED.**

**IT IS HEREBY FURTHER ORDERED that Respondent be REMOVED from the United States to Algeria, or in the alternative to Syria.**

JAMEE COMANS
Digitally signed by JAMEE COMANS
Date: 2025.09.12 10:09:59 -05'00'

Date: September 12, 2025            Jamee E. Comans
United States Immigration Judge

## Order of the Immigration Judge

Immigration Judge: COMANS, JAMEE  09/12/2025

## Certificate of Service

This document was served:
Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service
To: [  ] Noncitizen | [  ] Noncitizen c/o custodial officer | [ E ] Noncitizen atty/rep. | [ E ] DHS
Respondent Name : KHALIL, MAHMOUD | A-Number :
Riders:

Date:  09/12/2025  By:  KESSLER, BRYAN, Court Staff