**Nos. 25-2162 & 25-2357**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

Mahmoud KHALIL,

*Petitioner–Appellee*,

Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Todd LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; Markwayne MULLIN, in his official capacity as Secretary of the Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General of the Department of Justice,

*Respondents–Appellants*.

---

### PETITIONER–APPELLEE'S MOTION TO RECUSE HON. JUDGE EMIL BOVE FROM CONSIDERATION OF PETITIONER-APPELLEE'S PETITION FOR REHEARING EN BANC

---

Petitioner–Appellee Mahmoud Khalil respectfully requests that, pursuant to 28 U.S.C. § 455, Hon. Judge Emil Bove recuse himself from voting on and participating in Mr. Khalil's recently filed Petition for Rehearing En Banc. Dkt. No.

1

138.[1] Public reporting demonstrates the existence, or at least the appearance of, a conflict of interest due to Judge Bove's prior positions at the U.S. Department of Justice ("DOJ") and involvement in the investigation of student protestors, including at Columbia University where Respondents perceived Mr. Khalil to be a leader. Judge Bove held high-level leadership and supervisory positions at DOJ from the initiation of Mr. Khalil's detention and the subsequent filing of his habeas challenge through the filing of the Respondents' appeal in this case. He supervised departments and personnel that the public is likely to believe were responsible for substantive decisions regarding Mr. Khalil's high-profile case, which raises novel issues of law.

Moreover, public reporting indicates that while at DOJ, Judge Bove wrote memoranda about and directed immigration enforcement investigations and decisions against student protestors on college campuses—particularly at Columbia University, where Mr. Khalil was enrolled and, soon after, was the first to be arrested pursuant to a retaliatory policy that is at the core of Mr. Khalil's habeas challenge.

Consistent with recusal standards and Judge Bove's statements to the Senate Judiciary Committee, Petitioner's counsel understands that he would himself decide to recuse in matters that could give rise to either an actual conflict of interest or a potential or apparent conflict of interest of which he was aware. Nevertheless,

---

[1] "Dkt." citations refer to filings in this Court. "ECF" citations reference entries on the district court docket, No. 25-cv-1963 (D.N.J.), that are not included in the JA.

respectfully and in an abundance of caution, counsel are compelled to bring this motion because the facts, set forth more fully below, could reasonably give rise to an appearance of partiality in this high-profile and important case. Judge Bove's recusal is thus warranted, even absent any actual conflict, because his "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The government's position on this motion is that it "sees no basis for recusal but defers to Judge Bove."

## ARGUMENT

### I.   JUDICIAL RECUSAL IS REQUIRED UNDER SECTION 455(a)

**A.   Judicial Recusal is Required Where a Reasonable Person Might Question the Impartiality of a Judge, Particularly in a High-Profile Case Like This One.**

The federal disqualification statute, 28 U.S.C. § 455, requires federal judges to recuse themselves "in any proceeding in which [their] impartiality might reasonably be questioned." *Id*. § 455(a). The Supreme Court has explained that "the goal of section 455(a) is to avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988) (quotation omitted). Section 455(a) seeks to protect not just fairness to the parties, but also "the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted." *In re Sch. Asbestos Litig.*, 977 F.2d 764, 776 (3d Cir. 1992). Thus, the relevant question is not whether a judge subjectively believes—even honestly or accurately—that they can judge fairly, but

3

whether "a reasonable [person], were he to know all the circumstances, would harbor doubts about the judge's impartiality." *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 343 (3d Cir. 1998) (quotation omitted); *see also Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (whether "an objective observer reasonably might question the judge's impartiality"); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004) (accord).

It is a "stringent rule," which may disqualify judges "who have no actual bias and who would do their best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, justice must satisfy the appearance of justice." *Sch. Asbestos Litig.*, 977 F.2d at 782 (internal quotations and citations omitted); *Liljeberg*, 486 U.S. at 864–65 (Congress enacted subsection 455(a) especially because "people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges."). Section 455(a) thus mandates disqualification even if factors under Section 455(b) for recusal based on an actual conflict of interest or actual partiality are not met. *Sch. Asbestos Litig.*, 977 F.2d at 781.

Special vigilance is required in high profile cases such as this to avoid the appearance of impartiality. *Id*. at 782 (explaining that § 455 was enacted to ensure a positive perception of the judiciary by avoiding harm to public confidence that would result from the appearance of bias, and that "[i]n high profile cases . . . such

4

suspicions are especially likely and untoward"); *see also Planned Parenthood of S.E. Pa. v. Casey*, 812 F. Supp. 541, 543 (E.D. Pa. 1993).

The government's targeting of Mr. Khalil for arrest and detention because of his pro-Palestinian advocacy was among the most heavily reported and controversial legal cases of the past year, garnering worldwide attention.[2] The White House issued multiple public statements specifically about Mr. Khalil's arrest and detention for his protest activity (including during the time Judge Bove worked at DOJ).[3] Nearly every major national news source continues to report on each significant update in Mr. Khalil's case, reflecting the high level of public engagement with and attention to these particular and controversial legal proceedings.[4] Therefore, in a case like this,

---

[2]    *See, e.g.*, Phil McCausland, *Who is Mahmoud Khalil, Palestinian student activist facing US deportation?*, BBC (June 20, 2025), https://www.bbc.com/news/articles/cgj5nlxz44yo; Nik Popli, *What To Know About Mahmoud Khalil, and Why His Green Card Was Revoked*, TIME (Mar. 13, 2025), https://time.com/7266683/mahmoud-khalil-columbia-green-card/.

[3]    JA1046 ¶ 74; *see also* The White House (@WhiteHouse), X (Mar. 10, 2025, 1:34 PM), https://x.com/WhiteHouse/status/1899151926777749618 [https://perma.cc/T9JS-AR4W] (White House statement that, "ICE proudly apprehended and detained Mahmoud Khalil, a Radical Foreign Pro-Hamas Student on the Campus of Columbia University. This is the first arrest of many to come." Tweet features picture of Mr. Khalil and accuses him of being "aligned to Hamas."); The White House (@WhiteHouse), X (Mar. 10, 2025, 1:50 PM) https://x.com/WhiteHouse/status/1899155922842161597 [https://perma.cc/FX6K-TZUM] (quoting President Trump regarding "terrorist sympathizers" with a photo of Mahmoud Khalil).

[4]    *See, e.g.*, Armando Garcia & James Hill, *Mahmoud Khalil released from ICE custody in Louisiana*, ABC News (June 20, 2025), https://abcnews.com/US/mahmoud-khalil-ordered-released-federal-

Congress's concern in Section 455(a) about avoiding the appearance of impartiality and preserving public confidence in the courts is at its zenith.

**B.      Judge Bove's DOJ Roles and Direct Involvement in Investigations into Columbia University Student Protestors Would Cause a Reasonable Person to Question Judicial Impartiality in Adjudicating Mr. Khalil's Case**

**1.      Respondents' Targeting of Mr. Khalil**

As relevant to this motion,[5] Mr. Khalil is a lawful permanent resident who, while a master's student at Columbia University's School of International and Public Affairs, became a prominent figure in campus activism opposing Israel's military attacks on Gaza and in support of Palestinian human rights. JA1033 ¶¶ 20–23. On March 8, 2025, Mr. Khalil was apprehended at his Columbia University residence by federal immigration officers and counsel filed a habeas petition on his behalf on March 9, 2025; thereafter, there was extensive litigation on numerous, significant legal questions. On June 11, 2025, the district court enjoined the federal government Respondents from removing or detaining Mr. Khalil based on Secretary of State

---

judge/story?id=123049717; Emma Bussey, *Immigration judge orders deportation of Mahmoud Khalil to Syria or Algeria*, Fox News (Sept. 17, 2025), https://www.foxnews.com/politics/immigration-judge-orders-mahmoud-khalil-deported-syria-algeria; Jake Offenhartz & Michael R. Sisak, *Court ruling jeopardizes freedom for pro-Palestinian activist Mahmoud Khalil*, Associated Press (Jan. 15, 2026), https://apnews.com/article/mahmoud-khalil-protester-immigration-appeals-court-deportation-2b6d321d5157632412a82fba14eb3bd4.

[5]      The facts are fully set forth in Petitioners' accompanying Petition for Rehearing En Banc, Dkt. No. 138, and Appellee's Brief on the merits, Dkt. No. 61.

Marco Rubio's determination that he is removable under the Foreign Policy Ground of the Immigration and Nationality Act (the "Rubio Determination"). JA8–9.

Mr. Khalil alleges in his habeas case, and a federal district court in Massachusetts in a separate case has largely substantiated, that his targeting and arrest was a part of a coordinated inter-agency policy to target non-citizen students who protested Israel's actions in Gaza for retaliatory immigration detention and removal. JA1045–46 ¶¶ 73–77; Pet'r's Am. Mem. of Law in Supp. of Mot. for Prelim. Inj. Relief, ECF No. 124 at 4–10.[6]

### 2. Judge Bove's High-Level Positions at the Justice Department and the Likely Involvement in Mr. Khalil's High-Profile Immigration and Habeas Cases

Judge Bove held high-level positions at DOJ from January 20, 2025 through September 2, 2025. This includes his service as Acting Deputy Attorney General ("DAG") from January 20, 2025 to March 6, 2025 (a period including the investigation and decision to target and arrest Mr. Khalil, ending just two days before his arrest) and his concurrent service as Principal Associate Deputy Attorney

---

[6]    *See Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 172–73 (D. Mass. 2025) (after a bench trial, finding that the government pursued a policy to "target a few for speaking out and then use the full rigor of the Immigration and Nationality Act (in ways that it had never been used before) to have them publicly deported with the goal of tamping down pro-Palestinian student protests"), *judgment entered*, No. 25-10685-WGY, 2026 WL 524753 (Jan. 22, 2026), *appeal filed*, No. 26-1195 (1st Cir. Feb. 24, 2026), *stay granted*, No. 25-10685-WGY, 2026 WL 686418 (D. Mass. Mar. 11, 2026).

General ("PADAG") from January 20, 2025 through September 2, 2025 (a period including the investigation, arrest and continued detention of Mr. Khalil as well as his habeas litigation and the DOJ's August 20 appeal, Appellants' Br., Dkt. No. 46).[7]

As the Acting Deputy Attorney General, Judge Bove's responsibilities included "advis[ing] and assist[ing] the Attorney General in formulating and implementing department policies and programs and in providing overall supervision and direction to all organizational units of the department"; "[p]rovid[ing] advice and guidance to Department and government officials on a wide range of national security matters"; and, "coordinat[ing] policy, litigating positions, and Department programs, in particular those involving more than one Department component."[8] The DAG also serves as the Departmental liaison with White House Staff and the Executive Office of the President. 28 C.F.R. § 0.15(b)(3). In addition, several offices that were likely involved in the actions taken against Mr.

---

[7]    S. Comm. on the Judiciary, 119th Cong., Questionnaire for Judicial Nominees (Submission of Emil Bove) 1–2 (2025), filed herewith as attachment to Decl. of Baher Azmy, dated Apr. 1, 2026 ("Azmy Decl."), Ex. 1; Devlin Barrett, *Emil Bove Continued to Work at Justice Dept. After Judicial Confirmation*, N.Y. Times (Aug. 29, 2025), https://www.nytimes.com/2025/08/29/us/politics/emil-bove-justice-department.html.

[8]    *Federal Position Descriptions: Deputy Attorney General*, Ctr. for Presidential Transition, https://presidentialtransition.org/position_description/deputy-attorney-general-2/ (last visited Mar. 23, 2026); *Organization, Mission and Functions Manual: Office of the Deputy Attorney General*, U.S. Dep't of Justice, https://www.justice.gov/doj/office-deputy-attorney-general (last visited Apr. 1, 2026).

Khalil report directly to the DAG, including DOJ's Executive Office for Immigration Review, which houses the Board of Immigration Appeals and the Immigration Courts, and United States Attorneys.[9]

The PADAG—the office Judge Bove occupied until September 2, 2025—serves as the principal counselor to the DAG[10] and would likely have been in regular communication with the DAG and U.S. Attorneys on high-profile immigration and habeas corpus cases such as Mr. Khalil's. The PADAG is also considered a key figure in the relationship between U.S. Attorneys around the country and DOJ headquarters.[11]

Given his high-level positions at the Justice Department, Judge Bove explained how he would address possible conflicts of interest during his judicial confirmation process:

> My current position at the United States Department of Justice could give rise to actual or potential conflicts arising from the fact that I am overseeing criminal and civil matters across the country, including in the Third Circuit. . . . I would

---

[9]   *Agencies*, U.S. Dep't of Justice, https://www.justice.gov/agencies/chart/map (last visited Mar. 26, 2026).

[10]   *Marshall L. Miller Biography*, SIFMA, https://www.sifma.org/people/marshall-l-miller (last visited Mar. 26, 2026).

[11]   *See id.*; Betsy Woodruff Swan, *Brooklyn U.S. attorney heads to top DOJ role*, Politico (July 2, 2020), https://www.politico.com/news/2020/07/02/richard-donoghue-heads-to-doj-34823.

recuse myself in cases that I was personally involved in should any such matter come before the court."[12]

Mr. Khalil's case presents the kind of actual or potential conflict to which Judge Bove referred in his Judiciary Committee proceedings. Judge Bove held two of the highest positions in the Justice Department during the very period in which high-level federal government officials took the retaliatory actions at issue in this case. He also held those positions during the period in which the DOJ defended the legality of those contested actions in this litigation, including up to the filing of an appeal with this Court.

### 3. Judge Bove's Apparently Direct Involvement in Justice Department Investigations of Columbia Student Protestors

Moreover, based on public reporting, it would appear that Judge Bove personally took some part in the implementation of the policy at the heart of this case. For example, on February 5, 2025, just one month before Mr. Khalil's arrest, the Attorney General issued a memorandum co-authored by Judge Bove[13] addressing the creation of a "Joint Task Force October 7," which would prioritize, under the supervision of the DAG, "Investigating and prosecuting acts of terrorism,

---

[12]    Questionnaire for Judicial Nominees (Submission of Emil Bove) 28, Ex. 1 to Azmy Decl.

[13]    The Memorandum comes from the Office of the Attorney General, but Judge Bove stated in his responses to a Senate Judiciary Committee Questionnaire that he co-authored the Memorandum. *Id*. at 7.

antisemitic civil rights violations, and other federal crimes committed by Hamas supporters in the United States, including on college campuses."[14] On March 13, 2025, DAG Todd Blanche, Judge Bove's then-direct supervisor, stated that DOJ "worked with the Department of Homeland Security to execute search warrants from an investigation into Columbia University for harboring and concealing illegal aliens on its campus."[15] The application for these warrants was supported by the same

---

[14]    Memorandum from the Att'y Gen. to All Department Employees, Establishment of Joint Task Force October 7 (Feb. 5, 2025), https://www.justice.gov/ag/media/1388516/dl?inline.

[15]    Larry Neumeister, *Justice Department investigates Columbia University amid growing deportation crackdown*, PBS News (Mar. 14, 2025), https://www.pbs.org/newshour/politics/justice-department-investigates-columbia-university-amid-growing-deportation-crackdown.

The DOJ investigations appear to carry out the President's Executive Order, Additional Measures to Combat Anti-Semitism, which states that the Trump Administration would target for investigation "post-October 7, 2023, campus anti-Semitism." Exec. Order No. 14,188, 90 Fed. Reg. 8847 (Feb. 3, 2025). The accompanying fact sheet states that, pursuant to the EO, "[i]mmediate action will be taken by the Department of Justice to protect law and order, quell pro-Hamas vandalism and intimidation, and investigate and punish anti-Jewish racism in leftist, anti-American colleges and universities," and includes a "promise" to "Deport Hamas Sympathizers and Revoke Student Visas," sending a clear message to all "resident aliens who joined in the pro-jihadist protests" that the federal government "will find you, and . . . deport you." *Fact Sheet: President Donald J. Trump Takes Forceful and Unprecedented Steps to Combat Anti-Semitism*, The White House (Jan. 30, 3025), https://www.whitehouse.gov/fact-sheets/2025/01/fact-sheet-president-donald-j-trump-takes-forceful-and-unprecedented-steps-to-combat-anti-semitism/. *See also* JA1046 ¶ 76 (confirming that Mr. Khalil's detention was carried out pursuant to the aforementioned Executive Order and a previous one, Combating Anti-Semitism, Exec. Order No. 13,899, 84 Fed. Reg. 68779 (Dec. 16, 2019)).

Rubio Determination regarding Mr. Khalil and one other Columbia student that is at issue in this case.[16]

Judge Bove's responses to the Senate Judiciary Committee Questionnaire further suggest that he was in a supervisory position during the DOJ's opening of an investigation into pro-Palestine protests occurring around February 26 and March 5 on Barnard College campus, which included an investigation of a student coalition group called Columbia University Apartheid Divestment (CUAD).[17] Public reporting further reveals that, during the investigations into the February and March Columbia campus protests, Judge Bove allegedly pushed prosecutors to obtain a membership list of CUAD "so the information could be shared with immigration agents."[18] It was further reported that, "Mr. Bove instructed F.B.I. agents on the joint

---

[16]    Memorandum from Marco Rubio to the Sec'y for Homeland Sec., (SBU) Notification of Removability Determinations Under Section 237(a)(4)(C) of the Immigration and Nationality Act (INA) (n.d.), Exhibit to Order on Motion for Discovery at 20, *Chung v. Trump*, No. 1:25-cv-02412 (NRB) (S.D.N.Y. May 13, 2025), ECF No. 49.

[17]    *See* S. Comm. on the Judiciary, 119th Cong., Nomination of Emil J. Bove, III: Questions for the Record (Answers to Written Questions for Emil Bove from Sen. Peter Welch) 3–4 (2025), Ex. 2 to Azmy Decl.; *see also* Affidavit in Support of an Application for a Search Warrant for Stored Electronic Communications ¶¶ 8, 11–14, *In re Application of N.Y. Times Co. in Matter of Columbia Univ. Apartheid Divest*, No. 1:25-mc-00218-JMF (S.D.N.Y June 16, 2025), ECF No. 17-1.

[18]    Devlin Barrett, *Orders to Investigate Columbia Protesters Raised Alarms in Justice Dept.*, N.Y. Times (May 1, 2025), https://www.nytimes.com/2025/05/01/us/politics/columbia-protests-justice-department.html; *see also id.* ("Mr. Bove, a senior Justice Department official, ordered an immediate investigation, primarily of one particular student group,

terrorism task force in New York to put on their raid jackets, go to Columbia's campus and stand in a phalanx near any protesters,"[19] and that Civil Rights Division prosecutors under his supervision "came to fear that their criminal investigation was a pretext to facilitate an intimidation and deportation campaign by the Trump administration against student protesters."[20] A mere three days after the second protest on March 5, 2026—the subject of the investigation reportedly directed by Judge Bove—Mr. Khalil was arrested by immigration agents.

Judge Bove's work on the Columbia student CUAD investigation also raises an actual or potential conflict, because the government's accusation that Mr. Khalil was a leader of CUAD is a key disputed fact in this case. JA1049–50 ¶¶ 88–89; JA1104–05 ¶¶ 25-29; JA1119-24 ¶¶ 3, 14(c), 20, 23–25; JA1622 45:11–20; JA1638 61:13-20. Mr. Khalil contends, as a defense in his immigration proceedings, that this accusation is false, but also contends in the instant habeas case that this false accusation is evidence of the government's retaliatory and pretextual motive to detain and remove him. JA1050 ¶ 89.

---

Columbia University Apartheid Divest, according to three people with knowledge of the matter").

[19]  *Id.*

[20]  *Id.*

Regardless of the veracity of each of these allegations, the public reporting on Judge Bove's involvement in investigating Columbia student protestors makes it difficult to imagine that a member of the public would *not* perceive that Judge Bove was involved in decision-making around Mr. Khalil's case, the first and very high-profile government action against a Columbia student protestor. Because a reasonable observer would question Judge Bove's impartiality in this case which challenges the legality of such actions, his recusal is required under Section 455(a).

## II.   JUDGE BOVE SHOULD ASSESS WHETHER RECUSAL IS REQUIRED UNDER SECTION 455(b)(3)

Section 455(b)(3) independently requires disqualification if a judge "served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). Any such information is specifically known only to Judge Bove, who Mr. Khalil is confident will, consistent with his ethical standards and testimony to the Judiciary Committee, make this assessment based on his personal knowledge.

In any event, given Judge Bove's high level position, portfolio, and reported involvement in investigating Columbia student protestors in contemplation of immigration enforcement so close in time to Mr. Khalil's arrest, a reasonable member of the public could fairly infer that Judge Bove did work on Mr. Khalil's

case. And ultimately, regardless of the 455(b)(3) inquiry, the reasonableness of that inference independently supports recusal under Section 455(a).

## CONCLUSION

For the foregoing reasons, Petitioner-Appellee respectfully requests that Hon. Judge Emil Bove recuse himself from voting upon or participating in adjudicating Petitioner-Appellee's recently filed Petition for Rehearing En Banc.

Dated: April 1, 2026                    /s/ Baher Azmy

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Michael K.T. Tan

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Kyle Barron
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

Sidra Mahfooz
Brian Hauss
Esha Bhandari
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner–Appellee*

## **CERTIFICATE OF SERVICE**

I certify that on April 1, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I further certify that all participants in this case, including Petitioner's counsel, are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Baher Azmy*
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,302 words, and it complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) and 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word's 14-point Times New Roman typeface.

*/s/ Baher Azmy*

Baher Azmy

CENTER FOR CONSTITUTIONAL RIGHTS

666 Broadway, 7th Floor

New York, NY 10012

Tel: (212) 614-6464
