IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Mahmoud KHALIL,

Petitioner–*Appellee*,

Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Todd LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; Markwayne MULLIN, in his official capacity as Secretary of the Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in HER official capacity as Attorney General of the Department of Justice,

Respondents–*Appellants*.

Petition for En Banc Review for the Third Circuit Court of Appeals

**BRIEF FOR THE AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE, THE FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION, PEN AMERICA, THE RUTHERFORD INSTITUTE, AND FIRST AMENDMENT LAWYERS ASSOCIATION AS *AMICI CURIAE* IN SUPPORT OF APPELLEE**

AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE
Jenin Younes, National Legal Director*
910 17th Street, Northwest, Suite 400
Washington, DC 20006
(202) 244-2990
*Counsel of Record

FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
FIRST AMENDMENT LAWYERS ASSOCIATION
Ronald G. London
700 Pennsylvania Ave., SE, Ste. 340
Washington, D.C. 20003
(215) 717-3473

PEN AMERICA
Diane Elizabeth Brinkley
120 Broadway, 26th Floor North
New York, NY 10271
(646) 779-4823

THE RUTHERFORD INSTITUTE
John W. Whitehead
William E. Winters
109 Deerwood Road
Charlottesville, VA 22911

*Counsel for* Amici Curiae

# CORPORATE DISCLOSURE STATEMENT

*Amici Curiae* collectively state that they do not have parent corporations and that no publicly held corporations hold 10% or more of their stock.

Dated: April 2, 2026

/s/ *Jenin Younes*
Jenin Younes
AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE
New York Bar # 5020847
910 17th Street Northwest, Suite 400
Washington, DC 20006
jyounes@adc.org

*Counsel of Record for Amici Curiae*

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT..........................................................i

TABLE OF AUTHORITIES........................................................... iii

INTEREST OF *AMICI CURIAE*.................................................................1

SUMMARY OF ARGUMENT...................................................................3

ARGUMENT .........................................................................................5

I.     Retaliatory Detention Inflicts Immediate and Irreparable First Amendment Harm.....................................................................................5

II.    Post-Removal Review Cannot Remedy Past First Amendment Violations........................................................................................7

III.   Immigration Proceedings Cannot Meaningfully Adjudicate First Amendment Retaliation Claims........................................................9

CONCLUSION .....................................................................................12

CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH WORD-COUNT AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK ..............13

CERTIFICATE OF SERVICE.............................................................14

# TABLE OF AUTHORITIES

**Cases**

*Abu-Jamal v. Price,*
  154 F.3d 128 (3d Cir. 1998) ...................................................................................8

*Allah v. Seiverling,*
  229 F.3d 220 (3d Cir. 2000) ...................................................................................9

*Am. Ass'n of Univ. Professors v. Rubio,*
  802 F. Supp. 3d 120 (D. Mass. 2025) .............................................................5, 6, 12

*Am. Ass'n of Univ. Professors v. Rubio,*
  No. 25-10685, 2026 WL 686418 (D. Mass. Mar. 11, 2026) ...............................6

*B.H. ex rel. Hawk v. Easton Area Sch. Dist.,*
  725 F.3d 293 (3d Cir. 2013) ...................................................................................9

*Bistrian v. Levi,*
  696 F.3d 352 (3d Cir. 2012) ...............................................................................8, 9

*Bridges v. Wixon,*
  326 U.S. 135 (1945).................................................................................................5

*Duenas v. Garland,*
  78 F.4th 1069 (9th Cir. 2023) ...............................................................................11

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.,*
  950 F.3d 177 (3d Cir. 2020) ...................................................................................8

*Elrod v. Burns,*
  427 U.S. 347 (1976).............................................................................................7, 8

*Fisher v. Hollingsworth,*
  115 F.4th 197 (3d Cir. 2024) ...................................................................................9

*Fort Wayne Books, Inc. v. Indiana,*
  489 U.S. 46 (1989)...............................................................................................10

*Hartman v. Moore,*
  547 U.S. 250 (2006).................................................................................................5

*Lozman v. City of Riviera Beach*,
    585 U.S. 87 (2018)..................................................................................6

*Mahdawi v. Trump*,
    781 F. Supp. 3d 214 (D. Vt. 2025) ...................................................6, 7

*McNary v. Haitian Refugee Ctr.*,
    498 U.S. 479 (1991)..................................................................................9

*Ne. Pa. Freethought Soc'y v. Cnty. Of Lackawanna Transit Sys.*,
    938 F.3d 424 (3d Cir. 2019) ...................................................................9

*Oestereich v. Selective Service System Local Bd. No. 11, Cheyenne*,
    393 U.S. 233 (1968)..................................................................................8

*Öztürk v. Hyde*,
    136 F.4th 382 (2d Cir. 2025) ...................................................................3

*Öztürk v. Trump*,
    783 F. Supp. 3d 801 (D. Vt. 2025) ...................................................5, 6

*Sanchez v. Attorney General of the United States*,
    997 F.3d 113 (3d Cir. 2021) .................................................................11

*Stanford Daily Publ'g Corp. v. Rubio*,
    No. 5:25-cv-006618-NW, 2026 WL 125241 (N.D. Cal. Jan. 16, 2026) ..............5

*W. Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943)................................................................................12

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)..................................................................................5

**Statutes**

8 U.S.C. § 1252(b)(9)...................................................................................3, 8

**Regulations**

Review of Custody Determinations,
    71 Fed. Reg. 57880 (Oct. 2, 2006) ....................................................18

**Other Authorities**

Sarah Pierce, *Obscure but Powerful: Shaping U.S. Immigration Policy through Attorney General Referral and Review*, MIGRATION POL'Y INST. (Jan. 2021) ....11

The American-Arab Anti-Discrimination Committee (ADC), founded in 1980, is a nonpartisan, nonprofit civil rights organization committed to defending the civil and constitutional rights of Americans, with a focus on issues affecting the Arab-American community. ADC challenges government action that penalizes protected political expression, including in immigration and national security contexts. *See, e.g.*, *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1064 (9th Cir. 1995), *vacated on other grounds*, 525 U.S. 471 (1999).

The Foundation for Individual Rights and Expression (FIRE) is a nonpartisan, nonprofit organization that defends the rights of all Americans to free speech and thought—the essential qualities of liberty. Since 1999, FIRE has successfully defended freedom of expression nationwide without regard to speakers' political views through public advocacy, targeted litigation, and *amicus curiae* filings. *See, e.g.*, *Stanford Daily Publ'g Corp. v. Rubio*, No. 5:25-cv-006618-NW, 2026 WL 125241 (N.D. Cal. Jan. 16, 2026); *Trump v. Selzer*, No. 4:24-cv-00449 (S.D. Iowa dismissed Dec. 2, 2025); *Volokh v. James*, 148 F.4th 71 (2d Cir. 2025); *Novoa v. Diaz*, 641 F. Supp. 3d 1218 (N.D. Fla. 2022), *appeal docketed*, No. 22-13994 (11th

---

[1] All parties consented to the filing of this brief. No person or entity, other than *amici curiae*, their members, or their counsel, made a monetary contribution to the preparation or submission of this brief or authored this brief in whole or in part.

Cir. argued June 14, 2024); *Villarreal v. Alaniz*, 145 S. Ct. 368 (2024). As such, FIRE is deeply concerned by the government's claim of authority to subject resident noncitizens to adverse action for their expressed viewpoints.

PEN American Center, Inc. (PEN America) is a non-partisan, not-for-profit organization that engages in advocacy, research, and public programming related to free expression in the United States and around the world. PEN America has engaged in research and advocacy related to protest rights and the free speech rights of immigrants.

The Rutherford Institute is a nonprofit civil liberties organization headquartered in Charlottesville, Virginia. The Institute works tirelessly, through *pro bono* legal assistance and educational efforts, to resist tyranny and threats to freedom by seeking to ensure that the government abides by the rule of law and is held accountable when it infringes on the rights guaranteed by the Constitution and laws of the United States.

The First Amendment Lawyers Association (FALA) is a nonpartisan, nonprofit bar association of attorneys throughout the United States and elsewhere whose practices emphasize defense of freedom of speech and of the press. Since its founding, FALA's members have been involved in many of the nation's landmark free expression cases, including cases before this Court. *See, e.g.*, *Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) (successful challenge to Child Pornography Prevention Act); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000)

2

(successful challenge to "signal bleed" portion of Telecommunications Act). In addition, FALA has a tradition of submitting *amicus curiae* briefs, including to the Supreme Court, on issues pertaining to the First Amendment. *See, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617 (2018); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *City of Littleton v. Z.J. Gifts D-4, LLC*, 2004 WL 199239 (U.S., Jan. 26, 2004).

## SUMMARY OF ARGUMENT

This case presents a crucially important question: whether 8 U.S.C. § 1252(b)(9) strips federal courts of jurisdiction to review a *habeas* petition arising from a non-citizen's detention—in retaliation for the exercise of his First Amendment rights—prior to a final determination on his immigration case. The Third Circuit, misapprehending the nature of the First Amendment injury, wrongly answered this question in the affirmative.[2] The decision carries grave, sweeping implications for millions of noncitizens residing within United States borders. It gives the federal executive *carte blanche* to deprive those noncitizens of their liberty for months or even years before they are afforded the opportunity to challenge their detention in an independent, Article III court.

---

[2] The Second Circuit found in a similar case that this provision did not strip it of jurisdiction to review the petitioner's case, *see Öztürk v. Hyde*, 136 F.4th 382, 394 (2d Cir. 2025), meaning the majority's decision here, if not vacated, creates a circuit split.

*First*, retaliatory detention equates to a constitutional injury because the government conduct not only prevents the individual himself from engaging in the expression at issue, but has the effect—and as the administration has stated, the intended consequence—of chilling others' protected speech and advocacy.

*Second*, postponing judicial review until a final order of removal has issued cannot remedy the First Amendment harm, because the deprivation of liberty and suppression of speech have already occurred.

*Third*, contrary to the panel's reasoning, this situation is not akin to that of a criminal defendant who must exhaust his state court appeals before availing himself of *habeas* review. In contrast to state criminal courts, immigration courts are part of the executive branch and its judgesd may be removed by the Attorney General. This reality renders it exceedingly unlikely that an immigration judge will find federal government defendants violated an immigration detainee's constitutional rights.

For these reasons, the Court should grant rehearing en banc and vacate the panel's decision.

# ARGUMENT

## I. RETALIATORY DETENTION INFLICTS IMMEDIATE AND IRREPARABLE FIRST AMENDMENT HARM

The First Amendment prohibits government officials from subjecting individuals to adverse action in retaliation for protected expression. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). That protection is not limited to citizens: "[f]reedom of speech and of press is accorded aliens residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945)).[3]

The Supreme Court recognizes that deprivation of physical liberty, including detention in immigration facilities, is among the most severe forms of adverse action that government may take against an individual. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process Clause] protects.").

Consistent with these principles, courts in recent, similar cases—all addressing the current Administration's placement of noncitizens in immigration detention for pro-Palestinian speech—have held this practice raises serious First Amendment problems. *See, e.g., Öztürk v. Trump*, 783 F. Supp. 3d 801, 809 (D. Vt.

---

[3] While courts addressing this issue have acknowledged nuance, they have agreed generally that speech that is protected for citizens is likewise protected for noncitizens. *See, e.g., Stanford Daily*, 2026 WL 125241 at *5; *Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 182–83 (D. Mass. 2025).

2025); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 228–29, 234 (D. Vt. 2025). These concerns are yet more pronounced when retaliation reflects government policy rather than the isolated actions of a single official. *See Lozman v. City of Riviera Beach*, 585 U.S. 87, 100 (2018) (when retaliation against protected speech "is elevated to the level of official policy, there is a compelling need for adequate avenues of redress").

Here, Petitioner's retaliatory detention unquestionably constitutes part of a sweeping strategy designed to curtail expression of a certain viewpoint in the United States: high-ranking executive branch officials have unabashedly and explicitly boasted it is. *See Öztürk*, 783 F. Supp. 3d at 811 (acknowledging that the government's action against petitioner intended "to serve as a warning to other non-citizens who are contemplating public speech"); *Am. Ass'n of Univ. Professors v. Rubio*, No. 25-10685, 2026 WL 686418, at *2 (D. Mass. Mar. 11, 2026) (finding that officials "misuse[d]" immigration authority to target noncitizens "primarily on account of their… protected political speech" and "to strike fear… and "continue[]… to chill freedom of speech") (quoting *Am. Ass'n of Univ. Professors*, 802 F. Supp. 3d at 194); *Am. Ass'n of Univ. Professors*, 802 F. Supp. 3d at 175 (holding that noncitizen plaintiffs had "shown by clear and convincing evidence" that government defendants "intentionally and in concert … [detain[ed] and

deport[ed] Khalil and Öztürk in] a viewpoint-discriminatory way to chill protected speech").

Furthermore, Petitioner's detention produced the harms to him that the First Amendment intended to prevent. Speech addressing matters of public concern, including advocacy regarding foreign policy and war, constitute "core political speech" entitling it to the highest protection under the First Amendment. *Mahdawi*, 781 F. Supp. 3d at 229–30. While in ICE custody, Petitioner was deprived of the ability to continue the political advocacy and organizing that led the government to target him in the first place.

In short, the Government's action in this case was intended to and did strip Petitioner of his First Amendment rights and was intended to and did chill the First Amendment protected expression of countless noncitizens living in the United States.

## II. POST-REMOVAL REVIEW CANNOT REMEDY PAST FIRST AMENDMENT VIOLATIONS

Courts have long recognized that injuries to First Amendment freedoms are uniquely serious because they cannot be adequately remedied after the fact. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

In this vein, the dissent correctly recognized that review only after issuance of a final deportation order cannot remedy the constitutional harm. The majority's

analysis erroneously framed the inquiry in terms of whether Petitioner's legal claims may be *reviewed* later. Maj. Op. 27. The proper inquiry is whether his constitutional harms can be *remedied* later. *See E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (§ 1252(b)(9) "does not strip jurisdiction when aliens seek *relief* that courts *cannot meaningfully provide* alongside review of a final order of removal.") (emphasis added).

They cannot, because vacatur of a removal order months or years after the initial detention cannot redress the First Amendment harm. During his months-long confinement, Khalil was entirely prevented from participating in political discourse and advocacy. Such injuries are irreparable, for "the timeliness of speech is often critical." *Abu-Jamal v. Price*, 154 F.3d 128, 136 (3d Cir. 1998) (citing *Elrod*, 427 U.S. at 374 n.29); *see Oestereich v. Selective Service System Local Bd. No. 11, Cheyenne*, 393 U.S. 233, 237, 239 (1968) (holding that lower courts erroneously withheld *habeas* review of induction into military; because draft was "retaliat[ion]" for "political views[,]" the petitioner was entitled to avail himself of federal court review immediately).

Nor did release cure the violation. Absent an injunction, a person of ordinary firmness would refrain from engaging in the type of expression that led to Khalil's detention; the chilling effect continues because Khalil can be re-detained at any time and his future speech may be used against him. *See Bistrian v. Levi*, 696 F.3d 352,

376 (3d Cir. 2012) ("[R]etaliatory continued placement in administrative confinement" may "deter a person of ordinary firmness from exercising his First Amendment rights.") (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)), *abrogated on other grounds by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

A court reviewing a final removal order cannot restore the advocacy that was silenced or the chilling effect on Petitioner and others. Thus, postponing judicial review until conclusion of removal proceedings permits the government to violate noncitizens' First Amendment rights unchecked and becomes "the practical equivalent of a total denial of judicial review." *McNary v. Haitian Refugee Ctr.*, 498 U.S. 479, 497 (1991). *See B.H. ex rel. Hawk v. Easton Area Sch. Dist.*, 725 F.3d 293, 323 (3d Cir. 2013) (stating "after-the-fact" redress "would hardly make up for" the suppression of expression); *Ne. Pa. Freethought Soc'y v. Cnty. Of Lackawanna Transit Sys.*, 938 F.3d 424, 442 (3d Cir. 2019) ("No remedy at law can cure ... First Amendment injury or give it the prospective relief it seeks."). As the dissent recognized, Khalil sought "relief that courts cannot meaningfully provide alongside review of a final order of removal," making his claims "now-or-never claims."

## III. IMMIGRATION PROCEEDINGS CANNOT MEANINGFULLY ADJUDICATE FIRST AMENDMENT RETALIATION CLAIMS

The majority rationalized that requiring Khalil to await *habeas* review until he receives a final judgment on his immigration case does not "render[] meaningful

review hollow" because "our legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments." Maj. Op. 25. It drew an analogy to:

> an innocent defendant who was convicted of a serious crime and imprisoned because his trial lawyer was ineffective. His detention is wrongful …. But that does not entitle him to seek immediate release through habeas; first, he must exhaust his direct appeal.

*Id.* at 25–26. This is a false equivalence. First, the Supreme Court has repeatedly made an exception to the finality rule even in criminal cases when First Amendment rights are involved. *See, e.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 55–57 (1989) (holding Court had jurisdiction to review constitutionality of statute even though conviction and sentence were not final because "it would be intolerable to leave unanswered … an important question … under the First Amendment").

Second, the immigration context is critically different. The criminal defendant's case first goes through the state court system, which is comprised of independent tribunals in which defendants may raise constitutional arguments at trial and on direct appeal (often similar to those that serve as the basis for *habeas* review). Thus, the criminal defendant is not forced to wait months or years before seeking relief on constitutional grounds.

By contrast, immigration courts are housed within the Department of Justice (DOJ), which is part of the executive branch. Under the existing structure, IJs and

the Board of Immigration Appeals (BIA) are "delegates" of the AG. *See Sanchez v. Attorney General of the United States*, 997 F.3d 113, 117 (3d Cir. 2021); Review of Custody Determinations, 71 Fed. Reg. 57880 (Oct. 2, 2006) (codified at 8 C.F.R. pt. 1003) ("The immigration judges and the Board are delegates of the Attorney General in carrying out his authority under the INA.").

The AG has the power to remove IJs and overrule their decisions. *See Duenas v. Garland*, 78 F.4th 1069, 1072–74 (9th Cir. 2023); Sarah Pierce, *Obscure but Powerful: Shaping U.S. Immigration Policy through Attorney General Referral and Review*, MIGRATION POL'Y INST. (Jan. 2021). The practical reality is that IJs are tasked with determining the constitutionality of their bosses' behavior. For obvious reasons, that structure creates significant disincentives for IJs to find the Administration's conduct unconstitutional.

The commensurate harms are not merely hypothetical or speculative. In Petitioner's case, the immigration judge explicitly denied him the opportunity to bring constitutional challenges to his detention and potential removal from the United States. Dissent at 24–26 (citing JA 162). This further proves that the majority's determination flies in the face of the very reason *habeas* review exists and demonstrates why allowing that decision to stand poses a grave threat to the First Amendment free speech rights of all noncitizen residents.

**CONCLUSION**

"If there is any fixed star in our constitutional constellation, it is that no official… can prescribe what shall be orthodox in politics." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). The majority's decision flouts the Supreme Court's oft-cited words. The government has used immigration enforcement "to strike fear" into the hearts of noncitizens and their families, and to "curb[] lawful… speech" by imposing a chilling effect that extends far beyond a single case. *Am. Ass'n of Univ. Professors*, 802 F. Supp. 3d at 194. And the Third Circuit has enabled Defendants to continue that unlawful practice. Due to the widespread and severe implications of the panel's decision, the Court should vacate it and grant rehearing en banc.

Dated: April 2, 2026                 Respectfully submitted,

/s/ *Jenin Younes*
Jenin Younes
AMERICAN-ARAB ANTI-DISCRIMINATION
COMMITTEE
New York State Bar #5020847
910 17th Street Northwest, Suite 400
Washington, DC 20006
jyounes@adc.org

*Counsel of Record for Amici Curiae*

**CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH WORD-COUNT AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK**

I certify that I am a member in good standing of the Bar of this Court. Pursuant to Fed. R. App. P. 32(g), I certify that this Brief complies with the type-volume limitation, typeface requirements, and type style requirements of Fed. R. App. P. 32(a) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,583 words, has been prepared in a proportionally spaced typeface using Microsoft Word 2016 and using Times New Roman in 14 font size.

I certify that the text of the electronic brief is identical to the text of the paper copies being submitted to the court. I further certify that a virus detection program through McAfee Virus Detection was run on the electronic brief and no viruses were detected.

Dated: April 2, 2026

/s/ *Jenin Younes*
Jenin Younes
AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE
910 17th Street Northwest, Suite 400
Washington, DC 20006
jyounes@adc.org

*Counsel of Record for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2026, I electronically filed the foregoing document with the Clerk for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system, which will send notification of this filing to the attorney of record and all registered participants.

Dated: April 2, 2026

/s/ *Jenin Younes*
Jenin Younes