**Nos. 25-2162 & 25-2357**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

_____

MAHMOUD KHALIL,

Petitioner-Appellee,

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND
SECURITY;
SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY
GENERAL UNITED STATES OF AMERICA,

Respondents-Appellants.

_____

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

---

**BRIEF OF IMMIGRATION LAWYERS, LAW PROFESSORS, AND
SCHOLARS AS _AMICI CURIAE_ IN SUPPORT OF PETITIONER-
APPELLEE'S PETITION FOR REHEARING EN BANC**

_____

(_Counsel listed on next page_)

Ahilan Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee
Jerome L. Greene Clinical
 Professor  of Law
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com
(in her individual capacity)

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF AMICI ............................................. 1

ARGUMENT ........................................................................2

   I.    The Panel Ignored the Plain Text of 8 U.S.C. § 1252(b)(9). .......................2

   II.   The Panel Misapplied 8 U.S.C. § 1252(b)(9) by Ignoring Redressability......4

   III.  The Petition-for-Review Process Does Not Provide a Meaningful Record or Forum for Constitutional Claims. ................................................ 6

CONCLUSION ..................................................................... 12

ADDENDUM - LIST OF AMICI CURIAE ............................................14

CERTIFICATE OF COMPLIANCE.....................................................21

CERTIFICATE OF SERVICE .......................................................22

i

# TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

Abbott Laboratories v. Gardner, 387 U.S. 136 (1967)..............................................5

Alzaarir v. Att'y Gen. U.S., 639 F.3d 86 (3d Cir. 2011)........................................5

Chehazeh v. Att'y Gen., 666 F.3d 118 (3d Cir. 2012) ..........................................2

Deer v. Att'y Gen. U.S., 789 F. App'x 346 (3d Cir. 2019).....................................7

E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177 (3d Cir. 2020)...2, 4

INS v. St. Cyr, 533 U.S. 289 (2001) ................................................................. 4-5

Jennings v. Rodriguez, 583 U.S. 281 (2018) ..................................................... 2-3

Khalil v. President, United States, 164 F.4th 259 (3d Cir. 2026) ............................2

Kucana v. Holder, 558 U.S. 233 (2010)..............................................................5

Mahdawi v. Trump, 136 F.4th 443 (2d Cir. 2025).................................................3

McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479 (1991)...............................4, 7

Metro. Life Ins. Co. v. Price, 501 F.3d 271 (3d Cir. 2007).....................................6

Öztürk v. Hyde, 136 F.4th 382 (2d Cir. 2025) ......................................................3

Qatanani v. Att'y Gen. U.S., 144 F.4th 485 (3d Cir. 2025) ....................................7

Suri v. Trump, 2025 WL 1806692 (4th Cir. July 1, 2025)......................................3

United States v. Miller, 833 F.3d 274 (3d Cir. 2016) .............................................6

Wilson v. MVM, Inc., 475 F.3d 166 (3d Cir. 2007) ...............................................6

**Federal Statutes**

8 U.S.C. § 1252(b)(9)......................................................................................passim

**Federal Regulations**

8 C.F.R. § 1003.19(d).................................................................................................6

8 C.F.R. 1003.23(b)(1) ..............................................................................................5

8 C.F.R. 1003.23(b)(4) ..............................................................................................5

**Federal Rules**

Fed. R. App. P. 29(a)(4)(E) .......................................................................................1

**Miscellaneous**

Admin. Off. of the U.S. Cts., *Federal Court Management Statistics—U.S. Courts of Appeals—Profiles—During the 12-Month Periods Ending December 31, 2020 Through 2025* (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_appprofile1231.2025.pdf ......................................................................................................................11

Jason Cade, *Welcome to the Trump Administration's Board of Immigration Appeals. The Immigrant Always Loses.*, 135 YALE L.J.F. (forthcoming 2026), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6506380 ...............................9

Ingrid V. Eagly, Steven Shafer & Renee Moulton, *Access to Counsel in Immigration Court, Revisited*, 111 IOWA L. REV. 1, 2, 26, 28 (2025)....................11

Executive Office for Immigration Review, *Adjudication Statistics: All Appeals Filed, Completed, and Pending* (U.S. Dep't of Just.), https://www.justice.gov/eoir/page/file/1248501/dl?inline=...................................11

Anusha Mathur & Ximena Bustillo, *U.S. Has a Quarter Fewer Immigration Judges Than It Did a Year Ago. Here's Why*, NPR (Feb. 23, 2026), https://www.npr.org/2026/02/23/g-s1-110911/trump-immigration-judges-dismissals-numbers ..........................................................................................8

Mobile Pathways, Asylum Navigator Feb. 2026 data, https://www.mobilepathways.org/dashboards/asylum-navigator-dashboard ...........8

National Immigration Project, *The BIA and AG's Systemic Destruction of Noncitizens' Rights in Removal Proceedings*, (Feb. 19, 2026) https://nipnlg.org/work/resources/bia-and-ags-systemic-destruction-noncitizens-rights-removal-proceedings.........................................................................9

Margy O'Herron, *The Immigration Court System, Explained*, Brennan Ctr. for Just. (June 24, 2025), https://www.brennancenter.org/our-work/research-reports/immigration-court-system-explained .......................................11

Adriel D. Orozco, *DOJ Moves to End Administrative Immigration Appeals to Speed Up Mass Deportation*, American Immigration Council (Feb. 13, 2026), https://www.americanimmigrationcouncil.org/blog/justice-departments-end-immigration-appeals-deportations/..............................................9

Nate Raymond, *Trump Administration Names Immigration Judges with Enforcement Background Amid Deportation Push*, Reuters (Mar. 12, 2026), https://www.reuters.com/legal/government/trump-administration-names-42-immigration-judges-many-enforcement-backgrounds-2026-03-12/ ........................8

Emily Ryo & Ian Peacock, *A National Study of Immigration Detention in the United States*, 92 S. Cal. L. Rev. 1, 32 (2018) .......................................11

Altaf Saadi et al., *Duration in Immigration Detention and Health Harms*, JAMA Network Open 8(1) (2025), https://doi.org/10.1001/jamanetworkopen.2024.56164 ..........................11

S. Poverty L. Ctr., *No End in Sight: Why Migrants Give Up on Their U.S. Immigration Cases* 27, 30, 36 (Oct. 3, 2018), https://www.splcenter.org/resources/reports/no-end-sight/ ...................11

TRAC, *Immigration Court Asylum Grant Rates Cut in Half* (Nov. 18, 2025), https://tracreports.org/reports/766/ ...............................8

TRAC, *Immigration Court Backlog: Overall Down, Asylum Backlog Up* (Mar. 20, 2025), https://tracreports.org/whatsnew/email.250320.html...................10

TRAC, *Outcomes of Immigration Court Proceedings* (Feb. 2026),
https://tracreports.org/phptools/immigration/closure/ ................................................8

U.S. Gov't Accountability Off., GAO-25-106867, *Immigration Courts: Actions
Needed to Track and Report Noncitizens' Hearing Appearance* 22-23 (2024),
https://www.gao.gov/assets/gao-25-106867.pdf .......................................................11

# INTRODUCTION AND STATEMENT OF AMICI[1]

*Amici curiae* are more than one hundred leading lawyers, law professors, and scholars who practice, write about, research, and teach immigration law.[2] Collectively, *amici* have extensive experience representing noncitizens in removal proceedings and in federal court, and have firsthand knowledge of the limits of those proceedings. *Amici* submit this brief to emphasize that removal proceedings do not provide a meaningful forum for the adjudication of constitutional claims—particularly those requiring prompt judicial intervention like First Amendment claims and others that challenge unlawful detention. En banc review is warranted because the panel's decision departs from this Court's precedents and governing Supreme Court principles, and risks foreclosing any effective avenue for raising such claims. *Amici* have a strong interest in ensuring that federal courts retain their longstanding role in preventing unlawful executive detention, especially where the government seeks to detain immigrants based on protected political speech.

---

[1] Petitioner and Respondents consented to the filing of this brief. No party or its counsel had any role in authoring this brief. No person or entity—other than *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

[2] The Addendum sets forth a list of *amici*. The positions taken in this brief are those of *amici* alone and should not be attributed to any institution with which *amici* are or have been affiliated.

**ARGUMENT**

En banc review is warranted because the panel's decision departs from this Court's precedents and governing Supreme Court principles in a manner that is outcome-determinative and exceptionally important. First, the panel effectively overruled *Chehazeh v. Att'y Gen.*, 666 F.3d 118 (3d Cir. 2012), which limits 8 U.S.C. § 1252(b)(9) to cases involving a final order of removal. Second, the panel's decision departs from the now-or-never framework in *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177 (3d Cir. 2020), which focuses on providing a timely remedy. Third, rehearing is warranted because the petition-for-review process does not provide a meaningful record or forum for constitutional claims.

## I. The Panel Ignored the Plain Text of 8 U.S.C. § 1252(b)(9).

In quoting § 1252(b)(9), the majority omits critical prefatory language that governs all of § 1252(b). *See Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026). As the dissent explains, "§ 1252(b)(9) channels claims into a petition for review only when there is a final order of removal." *Id.* at 281 (Freeman, J., dissenting). This Court's precedent confirms that limitation. *See Chehazeh,* 666 F.3d at 131.

The panel's reliance on *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018), is misplaced. No majority of the Court resolved whether § 1252(b)(9) applies absent

a final order of removal. Justice Breyer's opinion—joined by two Justices—concluded that § 1252(b)(9) applies only "with respect to review of an order of removal." *Id*. at 355 (Breyer, J., dissenting on other grounds). Justice Alito's plurality opinion expressly declined to "provide a comprehensive interpretation," *id*. at 294, and did not foreclose the possibility that Justice Breyer's view could be correct. Justice Alito's opinion therefore cannot be combined with Justice Breyer's to establish there is no jurisdiction here, as Justice Breyer clearly would have found jurisdiction here, and Justice Alito did not opine on the issue. *Jennings* therefore does not displace *Chehazeh*.

The Third Circuit now stands alone in its interpretation of § 1252(b)(9). Other appellate courts addressing very similar claims—most recently the Second and Fourth Circuits—have recognized that § 1252(b)(9) does not bar jurisdiction absent a final order of removal. *See Öztürk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) (denying stay pending appeal); *Mahdawi v. Trump*, 136 F.4th 443, 451–53 (2d Cir. 2025) (same); *Suri v. Trump*, 2025 WL 1806692, at *9 (4th Cir. July 1, 2025) (same). Rümeysa Öztürk and Mohsen Mahdawi's cases illustrate the point: Under the panel's interpretation, they would have had no forum to challenge their detention because their removal proceedings were terminated without a final order of removal, leaving no opportunity to file a petition for review.

**II.    The Panel Misapplied 8 U.S.C. § 1252(b)(9) by Ignoring Redressability.**

Even if § 1252(b)(9) applies even absent a final removal order, the panel misapplies the statute. Section 1252(b)(9) does not turn on whether legal questions can be revisited in a petition for review. It turns on whether the court can remedy the injury at that stage. As this Court held in *E.O.H.C.*, § 1252(b)(9) "does not strip jurisdiction when [noncitizens] seek relief that courts cannot meaningfully provide alongside review of a final order of removal." 950 F.3d at 186. *E.O.H.C.* repeatedly refers to redressability as the critical factor, distinguishing cases where "constitutional harm . . . *could not be remedied* after a final order of removal" from situations where no "irreparable harm" would result if review were delayed. *Id.* at 187–88 (emphasis added).

A petition for review filed after a final order of removal may permit consideration of legal issues, but it cannot undo months of unlawful detention, cure ongoing First Amendment harms, or provide effective relief for constitutional violations that occur during removal proceedings. Because § 1252(b)(9) channels only claims that can be meaningfully addressed at the petition-for-review stage, it does not apply here. *See McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 484 (1991) (construing jurisdiction-stripping provisions to preserve review where "meaningful judicial review . . . would [otherwise] be foreclosed"); *INS v. St. Cyr*,

533 U.S. 289, 314 (2001) (counseling against precluding habeas review without "a clear, unambiguous, and express statement of congressional intent").

The panel's concern about "piecemeal litigation" also does not justify expanding § 1252(b)(9) beyond its text. Immigration adjudication is already characterized by multiple avenues of review. Noncitizens routinely seek judicial review of separate agency actions at different stages, including denials of motions to reopen or reconsider, each of which may be independently reviewed by the appellate court. *See Kucana v. Holder*, 558 U.S. 233, 242–53 (2010).

Consider an asylum seeker who is denied relief and files a petition for review. Within thirty days of the BIA's decision, she also files a motion to reconsider. 8 C.F.R. 1003.23(b)(1). Months later, she files a motion to reopen based on ineffective assistance of counsel. *See, e.g.*, *Alzaarir v. Att'y Gen. U.S.*, 639 F.3d 86, 90 (3d Cir. 2011). A year later, after a political coup in her country, she files a second motion to reopen based on changed country conditions. 8 C.F.R. 1003.23(b)(4). Each of these motions may generate a separate petition for review.

Nor is § 1252(b)(9) the sole mechanism for promoting orderly adjudication. Traditional administrative law doctrines—including exhaustion, finality, and issue preservation—already serve that function without foreclosing timely review of claims that cannot be remedied later. *See, e.g.*, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149–50 (1967) (discussing the APA's "flexible" and "pragmatic"

finality requirement); *United States v. Miller*, 833 F.3d 274, 283 (3d Cir. 2016)

(adopting a "flexible, common-sense" approach to issue preservation); *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007) ("prudential exhaustion

provides flexible exceptions for 'waiver, estoppel, tolling or futility'") (quoting

*Wilson v. MVM, Inc.*, 475 F.3d 166, 174 (3d Cir. 2007)). Properly understood,

§ 1252(b)(9) channels claims that can be meaningfully addressed in a petition for

review, not those for which deferral would eliminate meaningful judicial review.

### III. The Petition-for-Review Process Does Not Provide a Meaningful Record or Forum for Constitutional Claims.

The panel's conclusion that constitutional claims can be adequately

developed during removal proceedings and reviewed through the petition-for-

review process does not reflect reality. The administrative process fails to provide

a meaningful mechanism for developing the factual record necessary to adjudicate

such claims.

First, detention-related issues are formally segregated from removal

proceedings. Custody proceedings are "separate and apart from" removal

proceedings and do not form part of the administrative record underlying a final

order of removal. 8 C.F.R. § 1003.19(d).

Second, immigration judges lack both the authority and the procedural tools

needed to adjudicate constitutional claims. The Supreme Court has long recognized

that immigration proceedings are ill-suited to resolving constitutional

6

challenges. *See, e.g.*, *McNary*, 498 U.S. at 496–97. Immigration judges frequently decline to entertain constitutional claims or permit discovery needed to develop them. That occurred here: The immigration judge told Mr. Khalil he was "in the wrong court" to develop his constitutional claims, JA 162, and the government itself previously acknowledged that the agency was "powerless" to address them. ECF 185 at 2 (D.N.J.).

EOIR's recent guidance asserting that immigration judges can and do adjudicate constitutional claims, Gov't 28(j) Ltr., Oct. 22, 2025, Ex. A at 6, is inconsistent with federal court precedents as well as actual practice. *See Qatanani v. Att'y Gen. U.S.,* 144 F.4th 485, 500 (3d Cir. 2025) ("the Board's lack of 'jurisdiction to adjudicate constitutional issues' rendered it incapable of addressing the due process claim presented here"). The government cites no authority for the proposition that administrative agency actors have authority to strike down provisions of the statutes which give them authority to act—like, for example, the provisions authorizing Mr. Khalil's detention here—and *amici* are aware of none. Moreover, removal proceedings are not even designed to support the type of fact development required for constitutional claims, as there is generally little, if any, discovery available. *See Deer v. Att'y Gen. U.S.*, 789 F. App'x 346, 350 (3d Cir. 2019) ("The Federal Rules of Civil Procedure do not apply in removal proceedings.").

Third, apart from these procedural limitations, immigration judges lack the structural independence necessary to serve as a meaningful forum for constitutional claims against the Executive branch. Immigration judges are employees of the Department of Justice who serve under the Attorney General. Recent developments further erode any assurance of neutral adjudication: Approximately one hundred immigration judges were removed from the bench in 2025, and a hundred more retired or resigned, "citing discomfort . . . about how they were supposed to adjudicate."[3] Asylum grant rates plunged from 38.2% in August 2024[4] to 2% or lower in February 2026.[5] With the Trump administration's newly appointed "deportation judges," these shockingly low grant rates are likely to continue.[6] The BIA has also been reduced in size, with the nine members

---

[3] Anusha Mathur & Ximena Bustillo, *U.S. Has a Quarter Fewer Immigration Judges Than It Did a Year Ago. Here's Why*, NPR (Feb. 23, 2026), https://www.npr.org/2026/02/23/g-s1-110911/trump-immigration-judges-dismissals-numbers.

[4] TRAC, *Immigration Court Asylum Grant Rates Cut in Half* (Nov. 18, 2025), https://tracreports.org/reports/766/.

[5] Mobile Pathways, Asylum Navigator Feb. 2026 data, https://www.mobilepathways.org/dashboards/asylum-navigator-dashboard (last visited Apr. 4, 2026); *see also* TRAC, *Outcomes of Immigration Court Proceedings* (Feb. 2026), https://tracreports.org/phptools/immigration/closure/ (showing that in February 2026, relief was granted in only 92 out of 14,774 of immigration court cases (0.6%)).

[6] Nate Raymond, *Trump Administration Names Immigration Judges with Enforcement Background Amid Deportation Push*, Reuters (Mar. 12, 2026), https://www.reuters.com/legal/government/trump-administration-names-42-immigration-judges-many-enforcement-backgrounds-2026-03-12/.

appointed under former President Biden all dismissed.[7] Out of nearly 90

precedential BIA decisions issued since January 2025, all but one ruled against the

immigrant.[8] Requiring immigrants to litigate constitutional claims against the

Executive branch in this system simply delays or denies review by a neutral

adjudicator.

Fourth, the panel's reliance on post hoc mechanisms for record development

at the petition-for-review stage—such as remand under the Hobbs Act or

appointment of a special master—does not cure these deficiencies. Those

mechanisms have almost never been invoked and their availability is uncertain. In

*Reno v. Am.-Arab Anti-Discrimination Comm.*, Justice Scalia observed "[i]t is not

at all clear" that the Hobbs Act authorizes remand to the agency or transfer to a

district court "when the agency's hearing has not addressed the particular point at

issue." 525 U.S. 471, 488 n.10 (1999). *See also* 8 U.S.C. § 1252(b)(4)(A)

---

[7] Adriel D. Orozco, *DOJ Moves to End Administrative Immigration Appeals to Speed Up Mass Deportation*, American Immigration Council (Feb. 13, 2026), https://www.americanimmigrationcouncil.org/blog/justice-departments-end-immigration-appeals-deportations/.

[8] Jason Cade, *Welcome to the Trump Administration's Board of Immigration Appeals. The Immigrant Always Loses.*, 135 YALE L.J.F. (forthcoming 2026), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=6506380; *see also* National Immigration Project, *The BIA and AG's Systemic Destruction of Noncitizens' Rights in Removal Proceedings*, (Feb. 19, 2026) https://nipnlg.org/work/resources/bia-and-ags-systemic-destruction-noncitizens-rights-removal-proceedings.

(requiring appellate courts to "decide the petition only on the administrative record on which the order of removal is based").

Even if this Court rules that the Hobbs Act permits fact finding in district court, that ruling would not be binding on the Fifth Circuit as it considers Khalil's petition for review. It is completely unknown whether the Fifth Circuit would authorize remand to the district court for fact finding. If it does, that would introduce more delay in a case where exceptionally important First Amendment issues should be quickly resolved in Khalil's favor.

Finally, the petition-for-review process is not a realistic forum for many noncitizens, particularly those who are detained and unrepresented. As of March 2025, asylum adjudications by immigration judges took an average of 636 days,[9] and only about ten percent of immigration judge decisions are appealed to the

---

[9] TRAC, *Immigration Court Backlog: Overall Down, Asylum Backlog Up* (Mar. 20, 2025), https://tracreports.org/whatsnew/email.250320.html.

BIA,[10] with just 15-20% of those reaching the courts of appeals.[11] This data shows that many noncitizens never reach the petition-for-review stage at all, much less in time to obtain meaningful relief. For thousands of people each year, detention lasts more than a year,[12] limiting access to counsel,[13] taking a significant toll on mental and physical health,[14] and leading many to abandon meritorious cases.[15]

---

[10] Margy O'Herron, *The Immigration Court System, Explained*, Brennan Ctr. for Just. (June 24, 2025), https://www.brennancenter.org/our-work/research-reports/immigration-court-system-explained. In FY 2023, immigration judges completed approximately 473,000 cases, while 43,039 appeals were filed with the BIA, an appeal rate of 9%. *See* Executive Office for Immigration Review, *Adjudication Statistics: All Appeals Filed, Completed, and Pending* (U.S. Dep't of Just.), https://www.justice.gov/eoir/page/file/1248501/dl?inline=; U.S. Gov't Accountability Off., GAO-25-106867, *Immigration Courts: Actions Needed to Track and Report Noncitizens' Hearing Appearance* 22-23 (2024), https://www.gao.gov/assets/gao-25-106867.pdf.

[11] *See* O'Herron, *supra* note 6; *see also* Admin. Off. of the U.S. Cts., *Federal Court Management Statistics—U.S. Courts of Appeals—Profiles—During the 12-Month Periods Ending December 31, 2020 Through 2025* (Dec. 31, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_appprofile1231.2025.pdf (reporting agency appeals filed with circuit courts).

[12] Emily Ryo & Ian Peacock, *A National Study of Immigration Detention in the United States*, 92 S. Cal. L. Rev. 1, 32 (2018).

[13] *See* Ingrid V. Eagly, Steven Shafer & Renee Moulton, *Access to Counsel in Immigration Court, Revisited*, 111 Iowa L. Rev. 1, 2, 26, 28 (2025).

[14] Altaf Saadi et al., *Duration in Immigration Detention and Health Harms*, JAMA Network Open 8(1) (2025), https://doi.org/10.1001/jamanetworkopen.2024.56164.

[15] S. Poverty L. Ctr., *No End in Sight: Why Migrants Give Up on Their U.S. Immigration Cases* 27, 30, 36 (Oct. 3, 2018), https://www.splcenter.org/sites/default/files/leg_ijp_no_end_in_sight_2018_final_web.pdf.

The U.S. Constitution does not tolerate such a result in the First Amendment context. "[P]rior restraints on speech . . . are the most serious and the least tolerable infringement on First Amendment rights" because such a restraint "has an immediate and irreversible sanction" that "freezes" speech. *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Here "[d]elayed review" of the First Amendment issues "may mean no review at all." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 47 (2000) (Thomas, J., dissenting). Unlike petitions for review, habeas proceedings in district court provide the possibility of immediate relief from unlawful detention, permit factual development, and are accessible to pro se litigants. Channeling claims into the petition-for-review process therefore does not preserve judicial review—it effectively forecloses it.

## CONCLUSION

For the foregoing reasons, the Third Circuit should grant the petition for review en banc.

DATED: April 7, 2026     Respectfully submitted,

/s/  Fatma Marouf
Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

12

Elora Mukherjee
Jerome L. Greene Clinical Professor  of Law
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Ahilan Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com
(in her individual capacity)

# ADDENDUM
## LIST OF AMICI*
*All amici have signed on in an individual capacity, with institutional affiliation for identification purposes only.*

Susan Akram
Clinical Professor of Law
Director, International Human
 Rights Clinic
Boston University School of Law

Raquel Aldana
Martin Luther King Jr. Professor
 of Law
U.C. Davis School of Law

Cori Alonso-Yoder
Assistant Professor of Law
Immigration Clinic Director
University of Maryland
Francis King Carey School of Law

Nadia Anguiano
Associate Clinical Professor of Law
University of Minnesota Law School

Sabrineh Ardalan
Clinical Professor of Law
Harvard Law School

Paulina Arnold
Assistant Professor of Law
Michigan Law School

David Baluarte
Senior Associate Dean
Professor of Law
CUNY School of Law

Caitlin Barry
Professor of Law
Villanova University
Charles Widger School of Law

Jon Bauer
Clinical Professor of Law
Richard D. Tulisano '69 Scholar
 in Human Rights
University of Connecticut
School of Law

Lenni Benson
Distinguished Chaired Professor
New York Law School

Matthew Boaz
Assistant Professor of Law
University of Kentucky
J. David Rosenberg College of Law

Blaine Bookey
Legal Director, Visiting Assistant
Professor
Center for Gender & Refugee Studies
U.C. Law, San Francisco

Emily Brown
Assistant Clinical Professor of Law
The Ohio State University
Moritz College of Law

J. Anna Cabot
Assistant Dean of Clinical Programs
University of Houston Law Center

Jason Cade
J. Alton Hosch Professor of Law
University of Georgia School of Law

Stacy Caplow
Professor of Law
Brooklyn Law School

Daniel Caudillo
Director, Immigration Law Clinic
Texas Tech School of Law

Marie Celentino
Assistant Professor
Director, Immigration Clinic
University of Detroit Mercy
School of Law

Jennifer M. Chacon
Bruce Tyson Mitchell Professor
 of Law
Stanford Law School

Angelica Chazaro
Charles I. Stone Professor of Law
University of Washington
School of Law

Gabriel Chin
Professor of Law
UC Davis School of Law

Marisa Cianciarulo
Dean and Professor of Law
Western State College of Law

Dree Collopy
Practitioner In Residence
American University Washington
College of Law

Jenny-Brooke Condon
Professor of Law
Associate Dean for Faculty Affairs
Seton Hall Law School

Rose Cuison-Villazor
Professor of Law
Rutgers Law School

Lauren DesRosiers
Assistant Professor of Law
Director, Immigration Law Clinic
Albany Law School

Ingrid Eagly
Professor of Law
UCLA School of Law

Shane Ellison
Clinical Professor of Law
Duke University School of Law

Richard Frankel
Professor of Law
Drexel University Thomas R. Kline
School of Law

Niels Frenzen
Sidney M. and Audrey M. Irmas
Endowed Clinical Professor of Law
USC Gould School of Law

Maryellen Fullerton
Suzanne J. and Norman Miles
Professor of Law
Brooklyn Law School

Denise Gilman
Clinical Professor of Law
Co-Director, Immigration Clinic
University of Texas School of Law

Jennifer  Gordon
Professor of Law
Fordham University School of Law

Joanne Gottesman
Clinical Professor of Law
Director, Immigrant Justice Clinic
Rutgers Law School

Anju Gupta
Professor of Law
Rutgers Law School

Susan Gzesh
Instructional Professor
University of Chicago

Nicole Hallett
Clinical Professor of Law
University of Chicago Law School

Lindsay M. Harris
Professor of Law
University of San Francisco
School of Law

Dina Francesca Haynes
Executive Director, Research Scholar,
Lecturer in Law
Yale Law School

Susan Hazeldean
Professor of Law
Brooklyn Law School

Emily Heger
Clinical Associate Professor
Director, Immigrant Rights Clinic
Texas A&M University
School of Law

Mackenzie Heinrichs
Associate Professor of Law
University of Utah, S.J. Quinney
College of Law

Laura Hernandez
Professor of Law
W. James Kronzer Professorship
  of Advocacy
Baylor Law School

Mary Holper
Clinical Professor
Boston College Law School

Lauren N. Hughes
Assistant Professor of Law
Director, Immigrant Rights Clinic
Washington & Lee University
School of Law

Alan Hyde
Distinguished Professor Emeritus
Rutgers Law School

Eisha Jain
Henry P. Brandis Distinguished
Professor of Law
University of North Carolina
School of Law

Kevin Johnson
Mabie-Apallas Distinguished
Professor of Law
Professor of Chicanx Studies
UC Davis School of Law

Elizabeth Jordan
Assistant Professor
Director, Immigration Law
 and Policy Clinic
University of Denver Sturm
College of Law

Elizabeth Keyes
Professor of Law
University of Baltimore
School of Law

Zainab Khan
Managing Attorney, Immigration
Detention Project
Texas A&M University
School of Law

Jennifer Lee Koh
Associate Professor of Law
Pepperdine Caruso School of Law

Lucas Guttentag
Professor of the Practice of the Law
Stanford Law School
Martin R Flug Lecturer in Law
 & Senior Research Scholar
Yale Law School

Jennifer Lee
Associate Professor of Law
Temple University
Beasley School of Law

Beth Lyon
Clinical Professor of Law
Cornell Law School

Aly Madan
Adjunct Professor of Law
New England Law | Boston

Lynn Marcus
Clinical Law Professor
Director, Immigration Law Clinic
University of Arizona
James E. Rogers College of Law

Peter Margulies
Professor of Law
Roger Williams University
School of Law

Fatma Marouf
Professor of Law
Texas A&M University
School of Law

Estelle McKee
Clinical Professor of Law
Cornell Law School

Michelle McKinley
Professor of Law
University of Oregon

Katie Meyer
Professor of Practice
Director, Immigration Law Clinic
Washington University School of
Law

Jennifer Moore
Regents' Professor of Law
University of New Mexico
School of Law

Andrew Moore
Professor of Law
University of Detroit Mercy
School of Law

Angela D. Morrison
Professor of Law
Texas A&M University
School of Law

Hiroshi Motomura
Susan Westerberg Prager
Distinguished Professor of Law
Faculty Co-Director, Center for
Immigration Law and Policy
UCLA School of Law

Elora Mukherjee
Jerome L. Greene Clinical Professor
  of Law
Director, Immigrants' Rights Clinic
Columbia Law School

Karen Musalo
Professor of Law
UC Law, San Francisco

Mauricio Norona
Assistant Clinical Professor of Law
Touro University
Jacob D Fuchsberg Law Center

John Palmer
Associate Professor
Universitat Pompeu Fabra, Spain

Sarah Paoletti
Practice Professor of Law
University of Pennsylvania
Carey Law School

Huyen Pham
Professor of Law
Texas A&M University
School of Law

Jaya Ramji-Nogales
Professor of Law
Temple Law School

Jayesh Rathod
Professor of Law
American University Washington
College of Law

Abel Rodriguez
Assistant Professor of Law
Wake Forest University
School of Law

Carrie Rosenbaum
Associate Professor of Legal Writing
University of San Francisco
School of Law

Rachel Rosenbloom
Professor of Law
Northeastern University
School of Law

Faiza Sayed
Associate Professor of Law
Brooklyn Law School

Anne Schaufele
Assistant Professor
Co-Director, Immigration and Human
  Rights Clinic
University of the District of Columbia
David A. Clarke School of Law

Erica Schommer
Clinical Professor of Law
St. Mary's University

Philip Schrag
Delaney Professor of Public
  Interest Law
Georgetown University

Ragini Shah
Clinical Professor of Law
Suffolk University Law School

Bijal Shah
Professor and Provost Faculty Fellow
Boston College Law School

Sarah Sherman-Stokes
Clinical Associate Professor of Law
Boston University School of Law

Anita Sinha
Professor of Law
American University
Washington College of Law

Elissa Steglich
Clinical Professor
University of Texas School of Law

Mark E. Steiner
Professor of Law Emeritus
South Texas College of Law Houston

Juliet Stumpf
Edmund O. Belsheim Professor
  of Law
Lewis & Clark Law School

Maureen Sweeney
Law School Professor
Director, Chacón Center for
  Immigrant Justice
University of Maryland Carey
School of Law

David B. Thronson
Professor of Law
Michigan State University
College of Law

Veronica Thronson
Clinical Professor of Law
Michigan State University
College of Law

Tania N. Valdez
Associate Professor of Law
George Washington University
Law School

Sheila Velez Martinez
Jack and Lovell Olender Professor of
Asylum Refugee and Immigration
  Law
University of Pittsburgh
School of Law

Paulina Vera
Director, Immigration Clinic
Geoge Washington University
Law School

Leti Volpp
Robert D. and Leslie Kay Raven
Professor of Law
UC Berkeley School of Law

Jonathan Weinberg
Distinguished Professor
Wayne State University Law School

Deborah Weissman
Reef C. Ivey Distinguished Professor
  of Law
University of North Carolina
School of Law

Amelia Wilson
Assistant Professor of Law
Elisabeth Haub School of Law
Pace University

Michael Wishnie
William O. Douglas Clinical
Professor of Law
Yale Law School

Lauris Wren
Clinical Professor of Law
Director of Clinical Programming
Maurice A. Deane School of Law
Hofstra University

Mary Yanik
Associate Clinical Professor of Law
Tulane Law School

Sara Zampierin
Clinical Associate Professor
Texas A&M University
School of Law

# CERTIFICATE OF COMPLIANCE

I certify that I am a member in good standing of the Bar of this Court. Pursuant to Federal Rules of Appellate Procedure 29 and 32, I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 29(b) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2586 words. This document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Pursuant to 3d Cir. L.A.R. 31.1(c), I certify that the text of the electronic brief is identical to the text of the paper copies being submitted to the court. I further certify that a virus detection program (Jamf Protect, version 8.11.0.3) was run on the electronic brief and no viruses were detected.

Dated: April 7, 2026

By: /s/ Fatma Marouf
Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

*Counsel of Record for Amici Curiae*

21

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, an electronic copy of the brief of amici curiae Immigration Lawyers, Law Professors, and Scholars was filed with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. I also certify that all participants are registered CM/ECF users and will be served via the CM/ECF system.

DATED: April 7, 2026                    /s/  Fatma Marouf

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)