Nos. 25-2162 & 25-2357

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MAHMOUD KHALIL,

Petitioner-Appellee,

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY
GENERAL UNITED STATES OF AMERICA,

Respondents-Appellants.

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

## APPELLANTS' OPPOSITION TO
## PETITION FOR REHEARING EN BANC

| | |
|---|---|
| BRETT A. SHUMATE<br>Assistant Attorney General | BENJAMIN HAYES<br>Senior Counsel to the Assistant<br>Attorney General |
| YAAKOV M. ROTH<br>Principal Deputy Assistant Attorney<br>General | ALANNA T. DUONG<br>Senior Litigation Counsel |
| DREW C. ENSIGN<br>Deputy Assistant Attorney General | ANIELLO DESIMONE<br>JOSHUA C. MCCROSKEY<br>Trial Attorneys |

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

STATEMENT OF THE CASE..............................................................................4

    A.   District Court Proceedings..................................................................5

    B.   Appellate Proceedings.........................................................................6

    C.   Removal Proceedings ..........................................................................7

ARGUMENT .........................................................................................................8

    I.   The Panel Decision Does Not Conflict with Any Decision of This Court or the Supreme Court. ...................................................................................................8

    II.   Petitioner's Disagreements with the Panel Do Not Justify En Banc Review. ...
..........................................................................................................................17

    III.   Petitioner's Forfeited and Meritless Suspension Clause Arguments Are Unworthy of En Banc Review. ..................................................................23

CONCLUSION ...................................................................................................30

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Alexandre v. U.S. Att'y Gen.*,
452 F.3d 1204 (11th Cir. 2006) ........................................................................ 24

*Boumediene v. Bush*,
553 U.S. 723 (2008) ........................................................................ 26

*Chehazeh v. U.S. Attorney General*,
666 F.3d 118 (3d Cir. 2012) ........................................................................ 8

*Demore v. Kim*,
538 U.S. 510 (2003) ........................................................................ 28

*DHS v. Regents of the University of California*,
591 U.S. 1 (2020) ........................................................................ 16

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) ........................................................................ 21, 26-27

*E.O.H.C. v. Sec'y U.S. DHS*,
950 F.3d 177 (3d Cir. 2020) ........................................................................ 3, 11-14, 22

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ........................................................................ 15

*In re Friedman's Inc.*,
738 F.3d 547 (3d Cir. 2013) ........................................................................ 13

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........................................................................ 3, 6, 9, 14, 16, 22

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) ........................................................................ 16

*Khouzam v. Att'y Gen. U.S.*,
549 F.3d 235 (3d Cir. 2008) ........................................................................ 3, 25-26

*Kolkevich v. Att'y Gen. U.S.*,
501 F.3d 323 (3d Cir. 2007) ........................................................................ 3, 24

*Lebanon Farms Disposal, Inc. v. Cnty. of Lebanon*,
538 F.3d 241 (3d Cir. 2008) ........................................................................ 10

*Luna v. Holder,*
  637 F.3d 85 (2d Cir. 2011) ................................................................ 27

*Marks v. United States,*
  430 U.S. 188 (1977) ......................................................................... 10

*Mohamed v. Gonzales,*
  477 F.3d 522 (8th Cir. 2007) ............................................................ 24

*Nielsen v. Preap,*
  586 U.S. 392 (2019) ............................................................... 10-11, 16

*Osorio-Martinez v. Att'y Gen. U.S.,*
  893 F.3d 153 (3d Cir. 2018) .......................................................... 26-27

*Ozturk v. Hyde,*
  136 F.4th 382 (2d Cir. 2025) ..................................................... 11, 23

*Ozturk v. Hyde,*
  155 F.4th 187 (2d Cir. 2025) ................................................... 14-15, 22

*Ramos v. Att'y Gen. U.S.,*
  No. 25-2946, 2025 WL 2950133 (3d Cir. Oct. 17, 2025) ......................... 27

*Reno v. American-Arab Anti-Discrimination Comm.,*
  525 U.S. 471 (1999) ............................................................ 3-4, 19, 29

*Royal Canin U.S.A., Inc. v. Wullschleger,*
  604 U.S. 22 (2025) ........................................................................... 16

*Ruiz–Martinez v. Mukasey,*
  516 F.3d 102 (2d Cir. 2008) ............................................................. 24

*Singh v. Mukasey,*
  533 F.3d 1103 (9th Cir. 2008) .......................................................... 24

*Skinner v. Switzer,*
  562 U.S. 521 (2011) ......................................................................... 21

*Suri v. Trump,*
  No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) ................... 11, 23

*Tazu v. Att'y Gen. U.S.,*
  975 F.3d 292 (3d Cir. 2020) .......................... 3, 14-15, 17-18, 24, 26-27

*Munaf v. Geren*,
    553 U.S. 674 (2008) ........................................................................ 21

*United States v. Vazquez*,
    271 F.3d 93 (3d Cir. 2001) .............................................................. 17

## STATUTES

8 U.S.C. §1226 .................................................................................... 17

8 U.S.C. §1226(c) ............................................................................... 11

8 U.S.C. §1227(a)(1)(A) .................................................................... 5

8 U.S.C. §1227(a)(1)(H) .................................................................... 7

8 U.S.C. §1227(a)(4)(C)(i) ................................................................ 5

8 U.S.C. §1227(a)(4)(C)(ii) ............................................................... 5

8 U.S.C. §1252(a)(4) ......................................................................... 25

8 U.S.C. §1252(a)(5) .............................................................. 20, 24, 25

8 U.S.C. §1252(b)(1) ........................................................................ 7-8

8 U.S.C. §1252(b)(2) ........................................................................ 7-8

8 U.S.C. §1252(b)(9) ....................................... 2-4, 6-20, 22-24, 26, 28

8 U.S.C. §1252(e)(2) ......................................................................... 26

8 U.S.C. §1252(g) .............................................................................. 19

28 U.S.C. §1361 ................................................................................. 19

28 U.S.C. §1651 ................................................................................. 19

28 U.S.C. §2241 ................................................................................. 19

## RULES

3d Cir. L.R. 35.4 ............................................................................ 8, 17

Fed. R. App. P. 26(a)(1)(C) ................................................................ 8

Fed. R. App. P. 40 .............................................................................. 8

Fed. R. App. P. 40(b)(1) .................................................................... 8

## INTRODUCTION

Petitioner's request for rehearing en banc is fundamentally miscast. While Petitioner contends that he is effectively being denied judicial review entirely, the panel's opinion is far more modest: simply resolving the threshold question of *which* federal court will hear Petitioner's claims and *when*. In resolving that issue, the panel faithfully applied Circuit and Supreme Court precedent to hold that Petitioner's interrelated challenges to his removal and detention pending removal be channeled to the court of appeals through the petition-for-review ("PFR") process under the explicit channeling provisions enacted by Congress. That resolution was particularly appropriate in light of Petitioner's *explicit* admission that his habeas petition would circumvent Congress's channeling provision and have a preclusive effect on those proceedings. Oral Arg. at 43:15-43:38, 44:30-45:00, 49:15-50:18.

Petitioner will have his day in court, but it will be in the court of appeals through the PFR. In holding as much, the panel did not create any intra-circuit split and its channeling holding hardly raises issues of such paramount importance as to warrant rehearing en banc. Indeed, Petitioner's PFR is due *next week*, so at this point there is not even a timing advantage to proceeding in district court.

Petitioner filed a habeas petition in federal district court asserting constitutional challenges, including under the First Amendment, to the Government's decision to initiate removal proceedings and detain him pending the outcome of those proceedings. The panel held that the district court lacked jurisdiction to adjudicate Petitioner's habeas

1

petition because the INA channels "[j]udicial review of all questions of law … arising from any action taken or proceeding brought to remove an alien from the United States" into a single PFR filed with a federal court of appeals.  8 U.S.C. §1252(b)(9). The panel recognized that *certain* challenges to immigration detention (for example, challenges to the duration of detention) fall outside §1252(b)(9) because such claims cannot be reviewed on a PFR—they are "now or never" claims.  But it held that Petitioner's challenges to detention were not "now or never" claims; they were inextricably intertwined with his challenges to removal and must be channeled through the PFR process.

Indeed, Petitioner's challenges are about to be heard by the Fifth Circuit, where Petitioner's PFR is due in just seven days, on May 11.  Petitioner there will be able to raise all of the challenges he sought to advance (improperly) in the district court below. That includes a dispositive issue that his petition largely elides: that Petitioner defrauded the United States by omitting material information about his prior activities in his application for a green card.  And subsequently Petitioner served as a key figure in violent and anti-Semitic riots and protests that occurred at Columbia University during the spring and summer of 2024—for which, by Petitioner's own admission, he served as the lead negotiator between the groups employing violence and the University administration.  Petitioner's complaints about delay in securing a federal forum for his arguments are thus largely moot at this point given his ability to raise them in the forum

2

to which Congress channeled them imminently (and indeed could have filed his petition for review already if he desired).

The panel's holding broke no new ground; it faithfully applied the plain language of §1252(b)(9) and the precedents of this Court and the Supreme Court. The controlling opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018)—which has been repeatedly reaffirmed—makes clear that §1252(b)(9) applies to challenges (like Petitioner's) to *initial* detention, including challenges brought before a final order of removal has issued. And the panel correctly held that §1252(b)(9) and *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177 (3d Cir. 2020), requires challenges to initial detention to go through a PFR as long as the legal issues can be reviewed later—even if the alleged injury cannot be immediately remedied. Petitioner's efforts to evade these decisions depend on treating Supreme Court precedent as non-binding dicta and Circuit dicta as binding precedent.

Petitioner's sweeping Suspension Clause arguments do not justify *en banc* review, either. They are both forfeited and meritless. This Court has repeatedly held that a PFR is an adequate and effective substitute for habeas review. *See Kolkevich v. Att'y Gen. U.S.*, 501 F.3d 323 (3d Cir. 2007); *Khouzam v. Att'y Gen. U.S.*, 549 F.3d 235 (3d Cir. 2008); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292 (3d Cir. 2020). It makes no difference that Petitioner raises a First Amendment claim, because "the opportunity to raise a claim during the judicial review phase [is] sufficient." *Reno v. American-Arab Anti-Discrimination*

*Comm.*, 525 U.S. 471 (1999) (Ginsburg, J., concurring in part and concurring in the judgment).

Ultimately, the panel's decision correctly applied the plain language of §1252(b)(9) and controlling precedent from the Supreme Court and this Circuit. Petitioner is not entitled to bypass the channeling provisions Congress enacted into law because he would prefer that his claims proceed in a different venue at a different pace. This case does not warrant the extraordinary step of rehearing *en banc*.

## STATEMENT OF THE CASE

Petitioner, a native of Syria and citizen of Algeria, entered the United States on a student visa in December 2022 and enrolled at Columbia University. JA.421; JA.527; JA.429-32. While at Columbia, Petitioner was a primary organizer of protests related to the current Israel-Palestinian conflict. During those protests, Jewish students were the victims of repeated acts of violence and blocked from access to classroom and other campus facilities by pro-Hamas protestors. Petitioner was not an innocent bystander. By his own admission, he was the lead negotiator and facilitator between the protestors and groups participating in the protests, including Columbia University Apartheid Divest ("CUAD"), and the university administrators. JA.1104-05. Petitioner faced disciplinary charges from Columbia for his involvement in CUAD, as well as "sanctions for potentially helping to organize an 'unauthorized marching event' in which participants glorified Hamas' Oct. 7, 2023, attack [on Israel] and [for] playing a 'substantial role' in the circulation of social media posts criticizing Zionism, among

4

other acts of alleged discrimination."[1]

On March 8, 2025, DHS detained Petitioner pending removal proceedings. JA.421; JA.527. While being processed, Petitioner was served with a Notice to Appear charging him as removable under 8 U.S.C. §1227(a)(4)(C)(i)-(ii)—the "foreign-policy charge." JA.532. DHS subsequently added a second charge of removability under 8 U.S.C. §1227(a)(1)(A)—the "fraud charge." JA.591.

## A.    District Court Proceedings

Although DHS had initiated and was actively pursuing removal proceedings, Petitioner filed a petition for writ of habeas corpus in district court. JA.390-400. That petition, and the three amended petitions, asserted, *inter alia*, alleged that his detention and removal violate the First Amendment and the Fifth Amendment's Due Process Clause, and that the statute underlying the foreign-policy charge is unconstitutionally vague as applied. JA.448-51; JA.673-77; JA.1027-55. Count II of the third amended petition focused on his detention specifically, but alleged that it was unlawful based on the same grounds as his detention. Specifically, the petition alleged that Petitioner's "detention is punitive as it bears no 'reasonable relation' to any legitimate government purpose," because and "[t]he sole basis of his detention—the Foreign Policy Ground

---

[1]  Jake Offenhartz, *Immigration Agents arrest Palestinian Activists who helped lead Columbia University protests*, U.S. News, *available at* https://www.usnews.com/news/best-states/new-york/articles/2025-03-09/ice-arrests-palestinian-activist-who-helped-lead-columbia-university-protests-his-lawyer-says (Mar. 9, 2025).

and the Rubio Determination that underlay his removal—are unlawful." JA.1052.

The district court entered a preliminary injunction. Relevant here, the district court held that Petitioner's claims could proceed in district court and were not subject to 8 U.S.C. §1252(b)(9), which channels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States" to the courts of appeals through a PFR. The court then held that Petitioner was likely to succeed on his as-applied vagueness claims, JA.209-309, and entered a preliminary injunction prohibiting Petitioner's detention or removal based on the foreign-policy charge, JA.8-21.

The Government appealed. JA.1-2; JA.4; JA.6.

## B.    Appellate Proceedings

On January 15, 2026, a panel of this Court vacated the district court's decision, holding that Petitioner's claims are subject to §1252(b)(9) and so cannot be brought in federal district court. As a threshold matter, the panel held that §1252(b)(9) applies even though a final order of removal has not issued. Maj. Op. 29-32. Although a prior decision of this Court had held that §1252(b)(9) applies only after a final order of removal has entered, the panel concluded that decision had been abrogated by *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

The panel then held that Petitioner's First and Fifth Amendment challenges to his detention are subject to §1252(b)(9) and must be asserted through a PFR. Maj. Op.

6

20-38. The panel recognized that certain claims are not subject to §1252(b)(9) if they cannot obtain meaningful review on a PFR—so called "now or never" claims—but held that "[a] now-or-never claim must raise legal or factual *questions* that a court of appeals will not later be able to review meaningfully on a PFR"; it is not enough that the alleged injury the petitioner claims cannot be remedied on a PFR. Maj. Op. 21-24. Applying this standard, the panel held that Petitioner's challenges to his detention and removal fall within §1252(b)(9), because the legal issues they raise can be effectively reviewed on a PFR.

## C.     Removal Proceedings

Petitioner's removal proceedings were advancing in parallel with his habeas case. On September 12, 2025, the IJ issued her merits decision regarding Petitioner's removability and his applications. *See* ECF 122, IJ Dec. at 1. In this final decision, the IJ incorporated by reference her prior decisions holding Petitioner removable and rejecting his applications for relief and protection from removal and further denied Petitioner's request for a Section 237(a)(1)(H) waiver. *See id.* at 4-7.

Petitioner timely appealed to the Board of Immigration Appeals ("BIA"). On April 9, 2026, the Board dismissed the appeal. *See* ECF 152. The Board affirmed the IJ's removability findings on both charges and all of her determinations regarding Petitioner's applications for relief and protection and for a Section 237(a)(1)(H) waiver. *See id.*

Petitioner's PFR is due to the Fifth Circuit on Monday, May 11, 2026. *See*

8 U.S.C. §§ 1252(b)(1) (30-day filing deadline), (b)(2) (venue); Fed. R. App. P. 26(a)(1)(C) (computing time).

## ARGUMENT

This Court's rules make clear that "en banc hearing or rehearing of appeals is not favored," and is warranted only in the rare case where "the case meets the rigorous requirements" of Federal Rule of Appellate Procedure ("FRAP") 40 and this Court's Rule 35.4. *See* 3d Cir. L.R. 35.4 ("en banc hearing or rehearing of appeals is not favored"). Under FRAP 40, en banc rehearing is warranted only if a panel decision "conflicts with a decision of [this Court]," "a decision of the United States Supreme Court," "an authoritative decision of another United States court of appeals," or "involves one or more questions of exceptional importance." Fed. R. App. P. 40(b)(1).

Petitioner has not satisfied any of the criteria justifying en banc review. The Court should deny the petition.

## I.    The Panel Decision Does Not Conflict with Any Decision of This Court or the Supreme Court.

The panel properly held that 8 U.S.C. §1252(b)(9) channels review of Petitioner's challenges to his detention and removal to the appropriate court of appeals through the PFR process. That decision faithfully applied the decisions of this Court and the Supreme Court.

**A.**    Petitioner first argues that the panel decision conflicts with *Chehazeh v. U.S. Attorney General*, 666 F.3d 118 (3d Cir. 2012), which held that §1252(b)(9) applies

8

only after a final order of removal has issued. *Id.* at 131-33. As the panel correctly recognized, however, "the Supreme Court has since abrogated that part of *Chehazeh*" through *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Maj. Op. 30.

*Jennings* involved a challenge by aliens to the duration of their detention under 8 U.S.C. §§1225 and 1226, where no final order of removal had been entered. 583 U.S. at 285-86, 289-92. Three dissenting Justices concluded that §1252(b)(9) applies only after a final order of removal had issued. *Id.* at 355 (Breyer, J., dissenting). A three-Justice plurality agreed that §1252(b)(9) did not apply—but not because of the absence of a final order of removal. *Id.* at 292-95 (Alito, J., joined by Roberts, C.J., and Kavanaugh, J.). Instead, those Justices concluded that §1252(b)(9) did not apply to the aliens' duration-of-detention claims because "the 'questions of law and fact' raised by the challengers were not linked closely enough to the government's efforts to remove them." Maj. Op. 30 (citing *Jennings*, 583 U.S. at 293). The aliens, the plurality explained, "are not asking for review of an order of removal; *they are not challenging the decision to detain them in the first place or to seek removal*; and they are not even challenging any part of the process by which their removability will be determined." 583 U.S. at 294 (emphasis added). Two other Justices would have gone further and held that even the claims in *Jennings* were also barred by §1252(b)(9). *Id.* at 314-23 (Thomas, J., concurring).

Both the plurality's and the Thomas concurrence's reasoning are incompatible with *Chehazeh*. As the panel recognized, "if §1252(b)(9) applied only *after* a final order of removal had been entered, it would not bar challenges to the decision to detain or

seek removal or the removability process—all actions that must precede a final order of removal." Maj. Op. 30. So "if *Chehazeh*'s logic had carried the day, the *Jennings* plurality would have had no reason to distinguish the aliens' case from challenges to 'the decision to detain them in the first place or to seek removal.'" Maj. Op. 32 (quoting *Jennings*, 582 U.S. at 294 (plurality opinion)).

Petitioner does not seriously dispute that the logic of the *Jennings* plurality is incompatible with *Chehazeh*. Instead, he argues that the panel "fail[ed] to establish" that the plurality is controlling under *Marks v. United States*, 430 U.S. 188 (1977). Pet. 9. Not true. The panel explained that "when considering whether an intervening plurality opinion of the Supreme Court has abrogated a panel precedent," the Court "must look at the Court's reasoning, not just its holding," and identify the "narrowest of the opinions and the common denominator of the Court's resulting decision." Maj. Op. 31, 32 (citing *Lebanon Farms Disposal, Inc. v. Cnty. of Lebanon*, 538 F.3d 241, 248 (3d Cir. 2008)). The panel then applied that framework to *Jennings*:

> The *Jennings* plurality would let district courts adjudicate some, but not all, habeas challenges arising from actions taken before entry of a final order of removal. The three partially concurring Justices would have let district courts adjudicate all such challenges. Under the *Marks* rule, the plurality's narrower reading defines the proper scope of §1252(b)(9).

Maj. Op. 31. Petitioner does not offer any argument contesting the panel's application of *Marks*.

The Supreme Court's subsequent discussions of §1252(b)(9) confirm that the *Jennings* plurality embodies the Court's holding on the scope of §1252(b)(9). In *Nielsen*

10

*v. Preap*, 586 U.S. 392 (2019), the Supreme Court addressed whether §1252(b)(9) barred claims brought by aliens challenging their mandatory detention under 8 U.S.C. §1226(c). *See* 586 U.S. at 395-96.  The same three Justices from the *Jennings* plurality applied the reasoning of that plurality opinion to hold that §1252(b)(9) did not preclude the aliens' challenge, including because they were not "challenging the decision to detain them in the first place or to seek removal." *Id.* at 402 (quoting *Jennings*, 583 U.S. at 402).  Justices Thomas and Gorsuch adhered to their view from *Jennings* that §1252(b)(9) bars all such challenges to detention.  *Id.* at 423-24 (Thomas, J., concurring in part and concurring in the judgment).  By definition, the three-Justice plurality in *Nielsen* is the narrowest opinion finding jurisdiction, so it controls under *Marks*, and its reasoning—like that of the *Jennings* plurality—is incompatible with *Chehazeh*.

Petitioner relies on a series of cases that adopted the same reading as *Chehazeh*. Pet. 8.  As the panel recognized, several of these cases pre-date *Jennings*.  Maj. Op. 32-33.  The decisions that post-date *Jennings*—*Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) and *Suri v. Trump*, No. 25-1560, 2025 WL 1806692 (4th Cir. July 1, 2025) (unpub.)— merely "denied stays" pending appeals and are not even binding in those circuits.

Accordingly, this Court's decision in *Chehazeh* has been abrogated by the Supreme Court.  The panel's faithful application of controlling Supreme Court precedent is not a basis for en banc review.

**B.** The panel's decision also does not conflict with this Court's precedent in *E.O.H.C. v. Sec'y U.S. DHS*, 950 F.3d 177 (3d Cir. 2020)—a decision written by one of

11

the authors of the per curiam panel decision—let alone being "clearly inconsistent with *E.O.H.C.*" as Petitioner remarkably contends. *Cf.* Pet. 14-23.

In *E.O.H.C.*, this Court considered whether aliens' challenges to the Government's decision to return them to Mexico pending their ongoing removal proceedings were encompassed by §1252(b)(9). 950 F.3d at 181, 184. Relying on the pluralities from *Jennings* and *Preap*, the Court held that §1252(b)(9) does not apply to "now or never" claims, which are "independent of, or wholly collateral to, the removal process." *Id.* at 186. And the Court determined that the aliens' claims challenging their "interim return to Mexico" were "now or never" claims because "[b]y the time there is a final order of removal …, it will be too late to review or remedy [the aliens'] return to Mexico in the meantime." *Id.* at 187.

Petitioner argues that the panel decision conflicts with *E.O.H.C.* on the theory that it held that the "now or never" principle applies to claims where the *injury* alleged cannot be *remedied* on a PFR (including any challenge to detention pending removal). Pet. 14-15. That is an expansion, not an interpretation, of *E.O.H.C.* As the panel explained, *E.O.H.C.* did not decide whether a "now or never" claim under §1252(b)(9) is one in which the alien asserts "an *injury* that cannot be *remedied* later" or whether it is one that "raise[s] *legal or factual questions* that cannot be *reviewed* via a PFR." Maj. Op. 22.

*E.O.H.C.* did not decide that question because it did not need to. In that case "a PFR could neither review their legal claims (challenging interim relocation) nor remedy their asserted injury (being forced to await a hearing in a dangerous city in Mexico)."

12

Maj. Op. 22. Thus, *E.O.H.C.* said explicitly that the aliens' claims fell within the "now or never" bar of §1252(b)(9) because "[b]y the time there is a final order of removal …, it will be too late to ***review or remedy*** [the aliens'] return to Mexico." 950 F.3d at 187; *see id.* at 186 (describing "now or never" claim as one in which "***review and relief*** may come too late" (emphasis added)). Thus, "the 'rule about redressability'" that Petitioner (and the dissent) "purports to locate in *E.O.H.C.* was not necessary to that opinion's holding at all." Maj. Op. 23 ("we never had to decide which was necessary or sufficient").

Petitioner insists that *E.O.H.C.* must have resolved that question because some language from the opinion refers to remedying injuries or providing relief. Pet. 16. But as the panel explained—and the dissent acknowledged, *see* Dissenting Op. 20 n.12— *E.O.H.C.*'s references to "relief" appeared "generally 'alongside' a discussion of 'review,'" and "[v]arious passages in *E.O.H.C.* emphasized the inability *both* to review a claim and to remedy injuries arising from that claim." Maj. Op. 23 (emphasis added). These references from *E.O.H.C.* were "not necessary to that opinion's holding at all," Maj. Op. 23, and "[i]f a determination by our Court is not necessary to our ultimate holding, it properly is classified as dictum," *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013) (quotation marks omitted).

Petitioner tries to link his challenge to detention to the various hypothetical "now or never" claims referenced in *E.O.H.C.* that involved conditions-of-confinement or prolonged-detention claims. Pet. 17-19. But "Khalil's argument has nothing to do with

13

the conditions in which he was being held, but the mere fact of detention." Maj. Op. 33-34. This is not, as Petitioner says, a "distinction without a difference." Pet. 18. The *Jennings* plurality expressly distinguished challenges to prolonged detention—"now or never" claims that fall outside §1252(b)(9)—from "challenge[s] [to] the decision to *detain [aliens] in the first place*." 583 U.S. at 294 (emphasis added); *see also Ozturk v. Hyde*, 155 F.4th 187, 196 (2d Cir. 2025) (Menashi, J., concurring in the denial of rehearing en banc) ("[W]hen the petitioners are 'challenging the decision to detain them in the first place' because the removal proceedings are allegedly unlawful, that is a challenge to the removal proceedings that Congress has barred." (quoting *Jennings*, 583 U.S. at 294)). And in applying the "now or never" principle, *E.O.H.C.* followed *Jennings* and explained that the aliens' claim there—like a challenge to prolonged detention or conditions-of-confinement (like the deprivation of "halal or kosher food")—were "now or never" claims because they "do[] not challenge the Government's 'decision *to detain them in the first place* or to seek removal." 950 F.3d at 186 (emphasis added) (quoting *Jennings*, 583 U.S. at 294). *E.O.H.C.* thus recognized that claims like those Petitioner brings here (challenging the fact of detention) *are not* "now or never" claims excluded from §1252(b)(9). Petitioner's version of "now or never" claims cannot be squared with *E.O.H.C.* or *Jennings*.

This Court's later decision in *Tazu v. Attorney General United States*, 975 F.3d 292 (3d Cir. 2020) (Bibas, J.), confirms the panel's reading of *E.O.H.C.* In *Tazu*, an alien filed a habeas petition that challenged the execution of his removal order on

14

constitutional and statutory grounds, and separately challenged his detention, "arguing that the Government violated … due process by detaining him without notice, a revocation interview, and an orderly departure." *Id.* at 295-96. This Court reiterated that §1252(b)(9) does not channel "[c]hallenges to the length or conditions of an alien's confinement," but held that Tazu's due process challenge to the Executive's decision to detain him in the first place *was* channeled by §1252(b)(9) through the PFR process. *Id.* at 299 (citing *E.O.H.C.*, 950 F.3d at 186).[2] That was true, moreover, even though the "injury" arising from the alleged unlawful detention could not possibly be remedied on the PFR; at that point, Tazu would be removed and his allegedly unlawful detention over. Nonetheless, this Court applied §1252(b)(9) to that detention claim because "the *legal questions* [Tazu] raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus 'aris[e] from') an 'action taken' to remove him." *Id.* at 299; *see also Ozturk*, 155 F.4th at 194 (Menashi, J., concurring in the denial of rehearing en banc) ("The jurisdictional bar applies to the 'questions of law' the district courts have decided; it does not depend on a formal distinction between the discrete actions the government has taken to remove the aliens.").

---

[2] Petitioner cites a congressional report stating that §1252(b)(9) was not meant to "preclude" challenges to detention. Pet. 13. "[L]egislative history is not the law." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018). In any event, *Tazu* and other decisions of this Court make clear that numerous challenges to detention fall outside §1252(b)(9). That does not mean *all* must.

**C.**    The panel's decision does not conflict with Supreme Court precedent, either. *Cf.* Pet. 13-14.  Petitioner says that "the Supreme Court has repeatedly rejected an expansive reading of (b)(9)" that would include "detention claims." Pet. 13.  But the preceding discussion disproves that assertion—both *Jennings* and *Nielsen* recognize that "challeng[es] [to] the decision to detain [an alien] in the first place" fall within §1252(b)(9). *See Jennings*, 583 U.S. at 294; *Nielsen*, 586 U.S. at 402.[3]

Nor does the panel's decision conflict with *DHS v. Regents of the University of California*, 591 U.S. 1 (2020). *See* Pet. 13-14.  That decision involved an APA challenge to the Executive's rescission of the DACA program, not a challenge to detention or removal proceedings, and the Court applied *Jennings* to conclude that such claims are far afield of §1252(b)(9). *Regents*, 591 U.S. at 8-9, 19.  The fact that *Regents* did not "recite" (Pet. 14) the portion of *Jennings* that refers to detention in a case *having nothing to do with detention* in no way suggests that the Court—in an opinion written by one member of the *Jennings* plurality, no less—was trying to overrule the *Jennings* plurality's holding on the scope of §1252(b)(9) *sub silentio.*

---

[3] Petitioner cites *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021), but that case is just another application of the *Jennings* plurality.  The aliens there were not challenging the fact of their initial detention, but rather which detention statute applied. *Id.* at 532-33.  Even if that conflicted with the *Jennings* plurality (and it does not), *Johnson*'s one-sentence footnote on §1252(b)(9) is exactly the kind of "drive-by jurisdictional ruling[]" that "should be accorded no precedential effect." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 42 (2025) (quotation marks omitted).

## II.    Petitioner's Disagreements with the Panel Do Not Justify En Banc Review.

The panel decision is thus perfectly consistent with this Court's decisions in *E.O.H.C.* and *Chehazeh*, as well as Supreme Court precedent. Unable to identify a conflict, Petitioner resorts to attacking the panel's reasoning. Pet. 10-13, 19-23. Of course, arguments that a panel decision is merely incorrect do not justify en banc review, and Petitioner's objections can be disregarded for that reason alone. *See* 3d Cir. L.R. 35.4. In any event, Petitioner's arguments are meritless, contradict controlling Supreme Court precedent, and do not identify any "extraordinary circumstances" that warrant en banc review.

First, Petitioner makes the sweeping argument that *all* challenges to detention (rather than removal) are "now or never" claims that fall outside §1252(b)(9). Pet. 11-13. This is so, he says, because the INA addresses "detention and removability" in "separate … statutes" and "the one jurisdiction-stripping provision in the INA that does explicitly reference detention claims is situated in the detention statute [8 U.S.C. §1226]." Pet. 12. As an initial matter, this argument is forfeited, *see* Appellants' Reply Br. 16, and forfeited arguments are not fodder for en banc review, *see United States v. Vazquez*, 271 F.3d 93, 107 (3d Cir. 2001). It also defies *Jennings*, *Nielsen*, and *E.O.H.C.*—all of which recognize that *some* detention claims (claims challenging the initial decision to detain)—are channeled through §1252(b)(9). *Supra*, pp. 11-15. And

17

it also conflicts with this Court's subsequent precedent in *Tazu*, which expressly held that a "re-detention challenge" *was* subject to §1252(b)(9). 975 F.3d at 299.

Moreover, §1252(b)(9) applies even though Petitioner raises a "First Amendment challenge to detention." Pet. 22 (emphasis omitted). Section 1252(b)(9) makes crystal clear that its channeling applies to constitutional claims of any stripe: it applies to "all questions of law and fact, including interpretation *and application* of *constitutional* and statutory provisions." 8 U.S.C. §1252(b)(9) (emphasis added). There is no textual basis for a First Amendment carve-out from §1252(b)(9), and no decision of this Court or the Supreme Court has ever adopted one. Nor is the concern Petitioner advances about being "forced to sit in detention for months" unique to First Amendment claims. *See* Pet. 22. For example, "a detained alien [who] claimed that the INA section that made him removable was unconstitutionally vague," Maj. Op. 24, is required to bring that challenge through the PFR process. Pet. 22. An alien who alleges that his removal or initial detention is unlawful on *any* other ground is in the same boat.[4] Nonetheless, §1252(b)(9) channels those challenges through the PFR process to the court of appeals, and aliens "hav[e] no constitutional right to more review than that." *Tazu*, 975 F.3d at 300. That such review comes *later* is a feature of §1252(b)(9), but that does not mean review *never* comes.

---

[4] Petitioner is thus wrong to suggest that our legal system requires individuals to wait to assert their claims (including challenges to detention) only if they have "already [been] granted a criminal trial" or received "strict due process protections." Pet. 18 n.9.

*Reno v. American-Arab Anti-Discrimination Committee ("AADC")*, 525 U.S. 471 (1999), does Petitioner no good.  There, the Court held that 8 U.S.C. §1252(g)[5] precluded judicial review of aliens' claims that the Executive's efforts to remove them violated the First Amendment (and Fifth Amendment) and chilled their speech.  *Id.* at 474, 487-92.  Petitioner relies on Justice Ginsburg's concurring opinion to argue that "Mr. Khalil's First and Fifth Amendment *removal* claims" (not detention) are "now or never" claims excluded from §1252(b)(9).  Pet. 31-33.  But the concurring opinion *rejected* Petitioner's argument that "the First Amendment necessitates *immediate* judicial consideration" of their claims:

> Here, Congress has established an integrated scheme for deportation proceedings channeling judicial review to the final order, and deferring issues outside the agency's authority until that point.  Given Congress' strong interest in avoiding delay of deportation proceedings, I find the opportunity to raise a claim during the judicial review phase sufficient.

*Id.* at 492, 495 (Ginsburg, J., concurring in part and concurring in the judgment). Petitioner has not cited a single case from the Supreme Court or any other adopting a First Amendment exception to §1252(b)(9).

Second, Petitioner dismisses the panel's concern that his interpretation of §1252(b)(9) would empower aliens to use habeas proceedings to "use issue preclusion

---

[5] That provision states:  "Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

or law of the case in the later PFR, leaving th[e] court [of appeals] nothing to decide." Maj. Op. 24. He says this is "simply part of litigation" (Pet. 20), but §1252(b)(9) reflects Congress's decision to depart from the normal rules of litigation by channeling "[j]udicial review of all questions of law and fact" to the courts of appeals through the PFR process. 8 U.S.C. §1252(b)(9). As the panel correctly recognized, Petitioner's reading would "subvert th[e] channeling scheme," and "encourage the very 'piecemeal litigation' that §1252(b)(9) is designed to prevent." *Id.* at 25 (quoting *E.O.H.C.*, 950 F.3d at 184).

Petitioner's suggestion (Pet. 21) that habeas courts can solve this problem of fragmented proceedings by applying "prudential" rules of exhaustion makes no sense. The PFR process is not a form of administrative exhaustion that merely precedes district court review; it is "the *sole and exclusive* means for judicial review" of claims channeled through that process and produces a final and binding judgment by a federal court of appeals. *See* 8 U.S.C. §§1252(a)(5), (b)(9) (emphasis added). Nor is there merit to Petitioner's argument that fragmentation would not occur because "the ultimate issue of whether *detention* is unconstitutional is separate from the issue of whether *removal* is unconstitutional." Pet. 21. That is sometimes true, but not always. As the panel held, here, Petitioner's challenges to his removal are *identical* to his challenges to detention, and so even on his theory, the rules of preclusion would apply. Maj. Op. 26-28.[6]

---

[6] There is no merit to Petitioner's fanciful notion that the panel's interpretation of §1252(b)(9) "would eliminate federal courts' review over any claims (habeas or not)"—

20

Petitioner contests this last point, arguing that his "substantive due process challenge to detention" (Count II) is distinct from his other claims that challenge his removal and detention as "punitive or retaliatory," because it also challenges his detention as "simply unrelated and excessive to any legitimate government interest in detention." Pet. 24-25; *see* JA.1051-52 (Count II).[7] The panel rightly concluded that Count II "just repackages his challenges to his removal"—his substantive due process argument "argues that his detention is impermissible retaliation and unlawful *because it depends on the unconstitutionally vague foreign policy ground*." Maj. Op. 28 (emphasis added). His complaint confirms this: It alleges that his detention "is punitive and bears no 'reasonable relation' to any legitimate government purpose" *because* "[t]he sole basis of his detention—the Foreign Policy Ground and the Rubio Determination—are

---

including claims in a civil employment law suit or criminal proceedings—because those types of cases may involve issues, such as "alienage," that may also be relevant to a PFR proceeding. Pet. 21 n.11. The reason is obvious: legal issues in an employment lawsuit or criminal proceeding do not in any sense "aris[e] from any action taken or proceeding brought to removal an alien from the United States." 8 U.S.C. §1252(b)(9).

[7] Petitioner sought to collaterally attack his removal proceedings through his habeas proceedings, as shown by the extraordinary relief issued by the district court—the Government was enjoined from removing Petitioner from the United States based on the foreign-policy charge. JA.19-20. This is not a permissible use of habeas as recognized by the Supreme Court in *Department of Homeland Security v. Thuraissigiam*, where it explicitly held that "[c]laims so far outside the 'core' of habeas may not be pursued through habeas." 591 U.S. 103, 119 (2020) (citing *Skinner v. Switzer*, 562 U.S. 521, 535, n.13 (2011)). Like the habeas petitioners in *Thuraissigiam* and *Munaf v. Geren*, 553 U.S. 674 (2008), the Petitioner here "does not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States." *Id.*

21

unlawful." JA.1052. Petitioner's "'punitive detention' claim rises or falls with the others." Maj. Op. 28.[8]

Regardless, Petitioner's detention-only claim is precisely the kind of detention-related claim that both *Jennings* and *E.O.H.C.* recognized to be subject to §1252(b)(9)—a "challeng[e] [to] the decision to detain [him] in the first place." *Jennings*, 583 U.S. at 294; *E.O.H.C.*, 950 F.3d at 186; *see also Ozturk* ,155 F.4th at 197 (Menashi, J., concurring in the denial of rehearing en banc) ("But "detention is necessarily a part of this deportation procedure." (cleaned up)).

Petitioner concedes that his First Amendment challenge to detention and removal "overlap," but says they are still "distinct"—apparently on the theory that the Government "may" make distinct arguments in defending against those challenges. Pet. 25. Even if it were true,[9] it is the *complaint's* allegations and the elements of a cause of action that dictate what claim is asserted, not a defendant's (possible) arguments opposing liability. And the allegations underlying Petitioner's First Amendment challenges to his detention and removal are identical, as the panel recognized (Maj. Op. 28) and Petitioner does not dispute (Pet. 25); *see* JA.1050-51 (Count I).

---

[8] Petitioner also argues that his substantive due process challenge to detention could prevail on a theory that the detention was "excessive" in relation to "a legitimate government interest." Pet. 24. He did not plead such a theory in his complaint. JA.1052.

[9] The Government has consistently maintained that the burden-shifting framework Petitioner references does not govern his First Amendment claims. *See* Appellants' Reply Br. 24-26.

Petitioner also relies on recent out-of-circuit decisions to support his argument. *See, e.g.*, Pet. 20 (citing *Ozturk*, 136 F.4th 382, and *Suri*, 2025 WL 1806692). As the majority explained, "[n]one of them confronts how that approach would disrupt the zipper clause, 'circumventing the usual immigration process.'" Maj. Op. 33 (quoting *Suri*, 2025 WL 1806692, at *10 (Wilkinson, J., dissenting)). Those decisions, moreover, merely resolved stays pending appeal and are not even binding in those circuits.

Finally, en banc review is inappropriate here because Petitioner's challenges are about to be heard by the Fifth Circuit, where his PFR is due in just seven days, on May 11. Petitioner can no longer claim that his habeas claims will proceed faster than his removal proceedings, or that his habeas case will be necessary due to any threat of indefinite delay. Judicial review is ripe in the Fifth Circuit, and Petitioner cannot contest this fact. And there, Petitioner will be able to raise all of the challenges he sought to advance (improperly) in the district court below. His complaints about delay in securing a federal forum for his arguments are thus largely moot at this point given his ability to raise them in the forum to which Congress channeled them imminently. And Petitioner has been released from detention for nearly a year now, so he is currently suffering no detention-based injury for rehearing to remedy.

## III. Petitioner's Forfeited and Meritless Suspension Clause Arguments Are Unworthy of En Banc Review.

Alternatively, Petitioner mounts a sweeping challenge to the constitutionality of §1252(b)(9) and argues that the panel's application of §1252(b)(9) to his claims

23

challenging detention and removal violates the Suspension Clause.  Pet. 26-31, 33-37.

This argument is foreclosed many times over and does not justify en banc review.

**A.**    To begin, Petitioner's Suspension Clause arguments are forfeited.  *See* Appellants' Reply Br. 16.  Petitioner never pleaded the Suspension Clause as a separate claim or theory of relief in any of his habeas petitions. Nor did he raise it to the district court.  The only reference in the record to the Suspension Clause appears in the jurisdictional statement of his habeas petitions.  JA.392; JA.428; JA.655; JA.1032.  And the district court did not independently assess whether the Government's interpretation of §1252(b)(9) violates the Suspension Clause.  Forfeited arguments cannot justify en banc review.

**B.**    In any event, Petitioner's Suspension Clause arguments are meritless.  This Court "ha[s] already held that a petition for review is an adequate substitute for a petitioner's historic right to habeas corpus."  *Tazu*, 975 F.3d at 300.  In *Kolkevich v. Attorney General of U.S.*, 501 F.3d 323 (3d Cir. 2007), this Court considered a Suspension Clause challenge to the channeling provision in §1252(a)(5), added by the REAL ID Act of 2005, as applied to certain criminal aliens who had habeas petitions pending at the time the REAL ID Act became law.  *Id.* at 324-26, 329-30.  This Court held that "there is no question that the current regime, in which aliens may petition for review in a court of appeals but may not file habeas, is constitutional."  *Id.* at 323.[10]

---

[10] Other circuits agree.  *See, e.g.*, *Singh v. Mukasey*, 533 F.3d 1103, 1106-08 (9th Cir. 2008); *Ruiz–Martinez v. Mukasey*, 516 F.3d 102, 114 (2d Cir. 2008); *Mohamed v. Gonzales*,

24

The Court reaffirmed that holding in *Khouzam v. Attorney General of U.S.*, 549 F.3d 235 (3d Cir. 2008). There, an alien challenging his detention and removal argued that the neighboring provision in 8 U.S.C. §1252(a)(4)—substantively identical to §1252(a)(5), but applicable to claims under the Convention Against Torture ("CAT")[11]—was an unconstitutional suspension of the writ of habeas corpus. This Court rejected that argument because the alien could challenge his removal and detention through the PFR process: "We have held that there is no question that a petition for review with a court of appeals, under the current statutory regime, provides an alien an adequate substitute to habeas review." *Khouzam*, 549 F.3d at 246 (quotation marks omitted).

These precedents categorically foreclose Petitioner's argument that "[a] PFR … is not an adequate or effective alternative to habeas." Pet. 27. It makes no difference that Petitioner is challenging his detention, as well as his removal. Pet. 27-28. *Khouzam* involved a "challenge[] to the legality of [the alien's] detention and removal," but the Court nonetheless held "that 'there is no question' that a petition for review with a court of appeals … provides an alien an adequate substitute for habeas review." 549 F.3d at

---

477 F.3d 522, 526 (8th Cir. 2007); *Alexandre v. U.S. Att'y Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006).

[11] That provision states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under [CAT]," and expressly forecloses resort to "any … habeas corpus provision." 8 U.S.C. §1252(a)(4).

238, 246. *Tazu* also involved a distinct constitutional challenge to detention, and yet this Court reaffirmed that "a petition for review is an adequate substitute for a petitioner's historic right to habeas corpus."[12]　975 F.3d at 300.

This Court's decision in *Osorio-Martinez v. Attorney General of U.S.*, 893 F.3d 153 (3d Cir. 2018), does not conflict with *Kolkevich*, *Khouzam*, or *Tazu*. That case did not involve a provision, like §1252(b)(9), that *channel* claims; rather, it addressed whether a "jurisdiction-stripping provision"—8 U.S.C. §1252(e)(2)—that *foreclosed*, rather than channeled, judicial review violates the Suspension Clause. *Id.* at 177. The Court held that it did because it prevented *any* court from "review[ing] … 'the erroneous application or interpretation of relevant law.'" *Id.* (quoting *Boumediene*, 553 U.S. at 779). Nothing about that holding disrupts this Court's pre-existing holding that "there is no question that a petition for review with a court of appeals, under the statutory regime, provides an alien an adequate substitute to habeas review." *Khouzam*, 549 F.3d at 246. And that difference is why the presumption in favor of judicial review of administrative action (Pet. 10) has little force in this context. Petitioner *will* receive judicial review of

---

[12] Petitioner frequently cites *Boumediene v. Bush*, 553 U.S. 723, 783 (2008), to argue that the PFR process is not an adequate substitute for habeas. Pet. 11, 27-29, 35. But "*Boumediene* is not about immigration at all." *Thuraissigiam*, 591 U.S. at 136. The suspected foreign terrorists in *Boumediene* "sought only to be released from Guantanamo, not to enter this country." *Id.* at 136-37. Nothing in *Boumediene* overrides the on-point precedent holding that "a petition for review with a court of appeals, under the current statutory regime, provides an alien an adequate substitute to habeas review." *Khouzam*, 549 F.3d at 246 (citing *Boumediene*, among other cases).

his claims through the PFR process; the review is "later" but not "never," and "later" does not violate the Suspension Clause. *See Tazu*, 975 F.3d at 300. Nor is it even "later" anymore; the PFR could have been filed at any time over the past few weeks and is due in just a few days.

In addition, "the Supreme Court's decision in [*Thuraissigiam*] abrogated the [Suspension Clause] analysis in *Osorio-Martinez*." *Ramos v. Att'y Gen.*, No. 25-2946, 2025 WL 2950133, at *5 (3d Cir. Oct. 17, 2025) (unpub.) (Bove, J., concurring in the denial of stay pending appeal). In *Osorio-Martinez*, the aliens sought "a writ of habeas corpus or injunction to prevent the Government from executing the expedited removal orders against them and to require their release from immigration detention pursuant to those orders." 893 F.3d at 160. And, indeed, this Court believed that it could "vacat[e] the expedited orders of removal." *Id.* at 161 n.6. But the Supreme Court in *Thuraissigiam* held that such aliens do "not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States." 591 U.S. at 119. That requested relief "falls outside the scope of the writ as it was understood when the Constitution was adopted." *Id.* at 118-20.

Nor does anything in *Luna v. Holder*, 637 F.3d 85 (2d Cir. 2011), help Petitioner. As Petitioner acknowledges, *Luna* held that the 30-day deadline for filing a PFR is not an unconstitutional suspension of the writ because "the statutory motion to reopen process is an adequate and effective substitute for habeas corpus." *Id.* at 95-96, 104.

That holding in no way conflicts with this Court's established precedent in *Kolkevich*, *Khouzam*, and *Tazu*.

Despite this Court's numerous precedents, Petitioner says that §1252(b)(9) fails to satisfy the Suspension Clause because an alien may be subjected to prolonged detention if required to channel his challenges to detention through the PFR process. Pet. 29, 30 (objecting that aliens will be detained for "months or years"). But the panel explicitly held that "length- and conditions-of-confinement claims" are *not* channeled through §1252(b)(9). Maj. Op. 28. To be sure, channeling through a PFR will delay adjudication, but "our legal system routinely forces petitioners—even those with meritorious claims—to wait to raise their arguments," and such "delay does not foreclose meaningful review"; "[i]t just streamlines the process for seeking it." Maj. Op. 25-26. And this Court has already held that the PFR process, in this precise context, is an adequate substitute for habeas. Moreover, such concerns of delay are mitigated as Executive Branch policy is to expedite the resolution of cases involving detained aliens. *See, e.g.*, EOIR, Case Priorities and Immigration Court Performance Measures at 2 (Sept. 12, 2025) ("Since its creation in 1983, EOIR has prioritized all cases involving individuals in detention or custody, regardless of the custodian."); *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) ("As we said more than a century ago, deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character.'") (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)).

28

And courts of appeals have authority to ensure that PFRs are resolved more expeditiously if the alien is detained.

Nor can Petitioner escape this Court's precedents foreclosing his Suspension Clause argument because he raises a First Amendment claim. Pet. 34. Notably, Justice Ginsburg's concurrence from *AADC*, on which Petitioner relies, concluded that the PFR process *was* "sufficient" even for review of First Amendment challenges to removal proceedings. *AADC*, 525 U.S. at 494-95 (Ginsburg, J., concurring in part and concurring in the judgment); *supra*, pp. 3-4, 19; *see also* Maj. Op. 34.

Petitioner says Justice Ginsburg got it wrong because the IJ cannot "develop an adequate factual record, consider constitutional claims, and lacks special expertise on constitutional claims," and so "cannot meaningfully review the constitutionality of the government's [removal] decision." Pet. 35; *see also id.* at 35-37. Of course, the panel considered and addressed this issue, "hold[ing]" that "a provision of the Hobbs Act lets the PFR court remand a case to a district court for a hearing with more factfinding" in the event "the administrative record is inadequate." Maj. Op. 35, 36. Petitioner objects that "nothing about the majority's interpretation of the INA and the Hobbs Act is guaranteed in the Fifth Circuit, where Mr. Khalil will litigate his PFR." Pet. 36. But "the INA does not preclude a court of appeals from obtaining additional fact-finding if the agency record is inadequate"—"either through the Hobbs Act's remand process, by appointing a special master, or through another 'appropriate mechanism' born out of 'constitutional necessity.'" Maj. Op. 36-37. At most, Petitioner can offer only

speculation about how the Fifth Circuit may rule in the future, but that is not a basis

for en banc review.  Maj. Op. 37-38.

## CONCLUSION

The Court should deny the petition for rehearing en banc.

Dated: May 4, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant Attorney
General

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

ANIELLO DESIMONE
JOSHUA C. MCCROSKEY
Trial Attorneys

30

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Alanna T. Duong
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40 and Third Circuit Rule 40.1, as modified by the Court's minute order of April 9, 2026, because it contains 7,742 words. This brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 32 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

/s/ Alanna T. Duong
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice