UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Nos. 25-2162 & 25-2357

MAHMOUD KHALIL

v.

PRESIDENT UNITED STATES OF AMERICA, et al.
Appellants

(D.N.J. No. 2:25-cv-01963)

_____

SUR PETITION FOR REHEARING
_____

Present: HARDIMAN, KRAUSE, RESTREPO, BIBAS, PORTER, MATEY, PHIPPS, FREEMAN, MONTGOMERY-REEVES, CHUNG, and MASCOTT, *Circuit Judges*.

The petition for rehearing filed by the Appellee in the above-entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service,[1] and no judge who fully concurred in the decision having asked for rehearing,[2] and a majority of the judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court en banc, is denied.

BY THE COURT,

s/ *Thomas M. Hardiman*
Circuit Judge

---

[1] Judges Krause, Restrepo, Freeman, Montgomery-Reeves and Chung vote for rehearing en banc. Judge Krause, joined by Judges Restrepo and Freeman, files the attached dissent sur denial of rehearing en banc.

[2] Judge Freeman filed a partial dissent as to subject matter jurisdiction but joined the remainder of the Court's opinion.

Dated: May 22, 2026
Tmm/cc: All Counsel of Record

KRAUSE, *Circuit Judge*, joined by RESTREPO and FREEMAN, *Circuit Judges*, dissenting sur denial of rehearing *en banc*.

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821). So, when the scope of a statute limiting our jurisdiction is unclear, we are duty-bound to follow "the general rule that the narrower construction of a jurisdiction-stripping provision is favored" and to apply a "strong presumption in favor of judicial review of administrative action." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020) (citation modified). And when reviewing a constitutional challenge to the detention of a person with significant ties to this country, we are required to secure the protections of the Suspension Clause. *See* U.S. Const. art. I, § 9, cl. 2. Here, by denying the petition for rehearing *en banc* and endorsing the panel majority's opinion, our Court has done the opposite, interpreting 8 U.S.C. § 1252(b)(9) in a way that contravenes the plain reading of the statute, ignores canons of statutory construction, strains precedent, vitiates the Great Writ, and imperils the civil liberties of Petitioner Mahmoud Khalil and similarly situated noncitizens.

Khalil's case is exceptional in many ways. As a lawful permanent resident, he is "entitled to broad constitutional protections," *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 174 (3d Cir. 2018) (citation modified), including "a right to due process" when "threatened with deportation," *Landon v.*

1

*Plasencia*, 459 U.S. 21, 32-33 (1982).  But, as pleaded in his habeas petition, Khalil was specifically targeted for detention and removal because he exercised his First Amendment right to speak on matters of public concern: advocating for Palestinian rights as a student leader at Columbia University. Five plainclothes officers from the United States Department of Homeland Security (DHS) arrested Khalil at his home in New York City—without a warrant—in front of his wife, who was eight months pregnant at the time.  By the next afternoon, DHS officers had transported Khalil across the country in shackles, after which he was subjected to more than 100 days of detention in Louisiana, "sleep[ing] in a bunker without a pillow or blanket" and unable to witness the birth of his first child.  App. 1044.

Confronted with compelling First and Fifth Amendment claims, the District Court properly exercised subject-matter jurisdiction over Khalil's habeas petition.  Nonetheless, the panel majority held that "§ 1252(b)(9) strips the District Court of jurisdiction, requiring Khalil to wait to raise his claims until he files a petition for review (PFR) of a final order of removal." *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026) (per curiam).  For the reasons set out in Judge Freeman's compelling dissent, that conclusion is mistaken.  Rather than disturbing settled precedent and abdicating our duty to meaningfully review Khalil's constitutional claims, we should be granting the petition for rehearing *en banc*.  Because our Court declines to do so, I respectfully dissent.

### A. The Panel Majority's Obstacle-Laden Path to Relinquishing Jurisdiction

In declining jurisdiction over Khalil's claims, the panel majority (1) circumvented the brightline rule of *Chehazeh v. Attorney General*, 666 F.3d 118 (3d Cir. 2012), (2) misinterpreted the holding of *E.O.H.C. v. Secretary, United States Department of Homeland Security*, 950 F.3d 177 (3d Cir. 2020), and (3) recast the nature of Khalil's detention-specific habeas claim.  Below, I discuss each error in turn.

### 1. Evading *Chehazeh*'s Requirement of a Final Order of Removal

In *Chehazeh*, we held unequivocally that § 1252(b)(9) "applies only with respect to review of [a final] order of removal"; it does not strip federal courts of jurisdiction where, as was true at the time of the panel majority's writing, there is no such order against the noncitizen.  666 F.3d at 133 (citation modified).  Other Courts of Appeals agreed,[1] even after the Supreme Court addressed the scope of § 1252(b)(9) in *Jennings v. Rodriguez*, 583 U.S. 281 (2018).[2]  The panel majority, however, declares that the Supreme Court's

---

[1] *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1075-76 (9th Cir. 2006); *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006).

[2] *See Öztürk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *8-9 (4th Cir. July 1, 2025).

3

"fractured" opinions interpreting § 1252(b)(9) in *Jennings* "abrogated" the *Chehazeh* rule. *Khalil*, 164 F.4th at 277.

That conclusion is in error. Where a "fragmented" Supreme Court does not agree on a single rationale for a decision, we engage in a *Marks* analysis and identify the opinion's holding "as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (citation modified). The panel majority asserts that Justice Alito's opinion for three-Justices represents the narrowest grounds for the result in *Jennings*. *Khalil*, 164 F.4th at 278. But "what [the panel] majority extrapolates from Justice Alito's opinion" cannot "constitute the *Marks* holding of the Court," because it is "incompatible with the views of the remaining five Justices who participated in *Jennings*." *Id.* at 284 (Freeman, J., dissenting). In addition, the panel majority misunderstands the opinion's "case-specific" reasoning. *Id.* at 283 (Freeman, J., dissenting). Justice Alito explained that the Court need not "attempt to provide a comprehensive interpretation" of § 1252(b)(9)'s scope because "it [was] enough to note that" the petitioners were not raising claims that might pose harder questions. *Jennings*, 583 U.S. at 294 (opinion of Alito, J.). The panel majority concedes that this case-specific reasoning did not expressly abrogate *Chehazeh*, yet it proceeds to declare that Justice Alito's suggestions about the circumstances in which "§ 1252(b)(9) *would* strip jurisdiction," in some future case, nevertheless had a broader impact and "necessarily rejected" the interpretation of § 1252(b)(9) we adopted in *Chehazeh*.

4

*Khalil*, 164 F.4th at 277-78. It is the panel majority's opinion that rejects our interpretation in *Chehazeh*, not *Jennings*.

Compounding that error, the panel majority describes its version of Justice Alito's rule—that "district courts [can] adjudicate some, but not all, habeas challenges arising from actions taken before entry of a final order of removal"—as narrower than the dissenting Justices' rule that "district courts [can] adjudicate all such challenges." *Id.* at 278. That framing has it backwards. The question before the Supreme Court in *Jennings* was whether, against the backdrop of a "strong presumption in favor of judicial review of administrative action" and a "general rule that the narrower construction of a jurisdiction-stripping provision is favored," Congress had stripped federal courts of jurisdiction under § 1252(b)(9). *Id.* at 285 (Freeman, J., dissenting) (citation modified). The dissenting Justices' narrower position, in other words, maintained the default presumption of judicial review by limiting the scope of § 1252(b)(9).[3] The panel majority, in contrast, jettisons that presumption and gives the jurisdiction-stripping provision its most expansive scope.

_____

[3] *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1288 (11th Cir. 2020) (en banc) (Martin, J., dissenting) (noting that "our job in interpreting the jurisdiction-stripping provisions of the INA is to determine the degree to which Congress clearly intended to remove this Court's ability to review executive action" and concluding that the "narrower reading of the statute (allowing more judicial review) resolves [such] ambiguity better than the broad interpretation (allowing much less judicial review)").

Our holding in *Chehazeh* that § 1252(b)(9) channels claims into a petition for review only when there is a final order of removal remains good law after *Jennings*. Under *Chehazeh*, because Khalil was not subject to a final order of removal at the time of his appeal, § 1252(b)(9) did not relieve our Court of its "virtually unflagging obligation" to hear each of Khalil's claims. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (citation modified).

### 2. Redefining *E.O.H.C.*'s Exception for Now-or-Never Claims

*E.O.H.C.* poses an independent obstacle to the panel majority's conclusion. In that case, we held that § 1252(b)(9) does not strip our jurisdiction to resolve "now-or-never claims." 950 F.3d at 185. We explained that petitioners raise "now-or-never claims" when "seek[ing] *relief* that courts cannot meaningfully provide *alongside review* of a final order of removal." *Id.* at 186 (emphasis added). Yet the panel majority's opinion states that *E.O.H.C.* "left open" the question of whether a claim "alleg[ing] an *injury* that cannot be *remedied* later through a PFR" constitutes a now-or-never claim. *Khalil*, 164 F.4th at 274. *E.O.H.C.* unambiguously answered that question in the affirmative. *See id.* at 288-90 (Freeman, J., dissenting) (explaining in detail the ways our precedent resolved this purportedly open question).

Khalil alleged such an injury: the loss of his First Amendment freedoms while detained. *See id.* at 286-88 (Freeman, J., dissenting). As was the case in *Jennings*, "[b]y

6

the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place," 583 U.S. at 293 (opinion of Alito, J.), so the District Court properly exercised its jurisdiction to grant "relief that courts [could not] meaningfully provide alongside review of a final order of removal," *E.O.H.C.*, 950 F.3d at 186; *see also Jennings*, 583 U.S. at 293 (opinion of Alito, J.) ("[C]ramming judicial review of [unlawful detention] into the review of final removal orders would be absurd.").[4]  Had the panel majority applied our precedent as written, § 1252(b)(9) would pose no obstacle to our review of Khalil's now-or-never claims.  But by instead sidestepping our holding in *E.O.H.C.*, the panel majority withdraws from our Court's obligation to provide an avenue for meaningful review and relief.

### 3.  Mischaracterizing Khalil's Detention-Specific Claim

Khalil brought a "detention-specific claim" that the Government "violated the Fifth Amendment's Due Process Clause by arresting and confining him to punish him." *Khalil*, 164 F.4th at 277.  So even after bypassing our holdings in *Chehazeh* and *E.O.H.C.*, the panel majority still had to confront Supreme Court precedent holding that § 1252(b)(9) does not bar review of detention-specific claims, such as

---

[4]  The relief granted by the District Court was only "fleetingly obtained" now that this Court's decision renders Khalil subject to re-detention. *Khalil v. President, United States*, 164 F.4th 259, 287 (3d Cir. 2026) (Freeman, J., dissenting).

challenges to the conditions or length of confinement. *Id.* at 277, 279 (citing *Jennings*, 583 U.S. at 293-94). The panel majority overcomes this final obstacle only by framing Khalil's claim as "just repackag[ing] his challenges to his removal," and attempting to "plead around § 1252(b)(9) by calling his challenge to removal a challenge to his detention." *Id.* at 277. But it is the panel majority that repackages the claim actually pleaded.

In the District Court, Khalil claimed, among other things, that the Government took him into custody and detained him, without legitimate justification, in violation of the Due Process Clause of the Fifth Amendment, and he sought to be released from that custody. Before the Immigration Judge, Khalil sought relief from removal, including by challenging the charges of removability under 8 U.S.C. § 1227(a)(1)(A) and (a)(4)(C), and seeking a waiver pursuant to 8 U.S.C. § 1227(a)(1)(H). Those detention arguments plainly stand independent of Khalil's claims for relief from removal. Yet the panel majority maintains that Khalil's due process claim "aris[es] from" the challenges to his removal. *Khalil*, 164 F.4th at 274. That blinks reality, and we should acknowledge as much.

Khalil's amended habeas petition seeks various forms of relief as to multiple claims, which is perfectly permissible. Pleading for "relief in the alternative or different types of relief," Fed. R. Civ. P. 8(a)(3), "is, of course, authorized by the Federal Rules of Civil Procedure," *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 256 (3d Cir.

8

2010), and "overlap, even substantial substantive overlap, does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other," *Öztürk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025).

Even if the merits of Khalil's detention-specific claim did "rise[] or fall[] with the others," *Khalil*, 164 F.4th at 277—which they do not—the panel majority's concern that an earlier review of that claim could have preclusive effect or trigger law-of-the-case doctrine in subsequent petition-for-review proceedings would not negate our duty to reach the merits of that claim now. To the contrary, we should recognize that "human rights do not cower before the speculative perils of duplicative litigation." *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *1 n.1 (4th Cir. July 1, 2025).[5] Yet even as it acknowledges that a claim challenging a detainee's excessively long detention or deprivation of "insulin, halal, or kosher food" would not 'arise from' the detainee's removal proceedings under § 1252(b)(9) and would therefore be reviewable, *Khalil*,

---

[5]  *See also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (Scalia, J.) ("[A] court . . . cannot limit a cause of action that Congress has created merely because 'prudence' dictates."); *Will v. Hallock*, 546 U.S. 345, 355 (2006) (explaining that preclusion concerns have "not been thought to protect values so great" as to warrant exceptions to jurisdictional rules); *Def. Distributed v. Att'y Gen. of N.J.*, 167 F.4th 65, 74 (3d Cir. 2026) (explaining that the law-of-the-case doctrine "is not an inexorable command" and "does not limit the tribunal's power" to decide a case (citation modified)).

164 F.4th at 279 (citing *E.O.H.C.*, 950 F.3d at 186), the panel majority elides Khalil's distinct challenge to his detention on Fifth Amendment grounds and his challenge to the propriety of his removal. To the extent the panel majority's attempt to distinguish Khalil's detention-specific claim relies on a belief that both the removal and detention challenges "depend[] on" a determination of whether 8 U.S.C. § 1227(a)(4)(C)'s foreign policy ground is "unconstitutionally vague," *id.* at 277, it fails to recognize that Khalil's Fifth Amendment claim stands independent of his challenge to § 1227(a)(4)(C). Khalil seeks relief from detention that he asserts "is punitive as it bears no reasonable relation to any legitimate government purpose." App. 1052 (citation modified); *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (indicating that civil detention violates due process if it is punitive in its intent or excessive in relation to any legitimate government interest in detention). That claim is detention-specific, notwithstanding any overlap between it and his claims that his removal is unconstitutional.[6]

---

[6]   *See Öztürk*, 136 F.4th at 399 (explaining that if "the government arrested and detained [a noncitizen] to prevent speech with which it disagrees," that act "would be a violation of the Constitution—quite separate from the removal procedures followed by the immigration courts"). If, as the panel majority contends, we lack jurisdiction to review Khalil's detention-specific claim, what principled reason would we have to review habeas claims alleging detention on account of race, religion, or other protected grounds, so long as the noncitizen is in removal proceedings? Under the panel majority's view, none.

Thus, setting aside the panel majority's mishandling of our precedent, under *Jennings* alone, we have an obligation to review Khalil's unquestionably detention-specific claim, which seeks release from detention "without affecting [his] pending removal proceedings." *Öztürk*, 136 F.4th at 399.

## B. The Deleterious Consequences of the Panel Majority's Decision

Only by straining precedent and conflating Khalil's distinct claims can the panel majority conclude that Congress, via § 1252(b)(9), has taken this case out of our hands. The consequences are profound.

The panel majority's reading of § 1252(b)(9) violates the Suspension Clause. Throughout our Nation's history, Congress has taken great care "to preserve the writ [of habeas corpus] and its function" by refraining from stripping our jurisdiction in ways that may violate the Suspension Clause. *Boumediene v. Bush*, 553 U.S. 723, 773 (2008); *see* U.S. Const., art. I, § 9, cl. 2. Here, the panel majority eschews the canon of constitutional avoidance and, instead, simply declares that "the availability of the PFR process satisfies the Suspension Clause." *Khalil*, 164 F.4th at 279. Challenging executive detention as unlawful and unconstitutional, however, is at the "core" of the habeas writ, *Dep't. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020), particularly where, as here, an individual is (1) detained "by executive order, rather than, say, after being tried and convicted in a court," *Boumediene*, 553 U.S. at 783, and (2) a lawful permanent

11

resident with close relationships to the United States and "broad constitutional protections," *Osorio-Martinez*, 893 F.3d at 174 (citation modified). The grave implications of the panel majority's treatment of the Suspension Clause warrant review by the full Court.

Even if the petition-for-review process could remedy the First Amendment injuries Khalil alleges during his removal proceedings—which for the reasons described above, it cannot—it undoubtedly fails to satisfy the Suspension Clause regarding his detention-specific claim. As to that latter claim, "the question [is] whether the statutory review procedures for . . . detainees *seeking release from custody* provide[] an adequate substitute for a habeas petition *seeking release*," *Thuraissigiam*, 591 U.S. at 127, not whether the petition-for-review process provides an adequate substitute for a habeas petition seeking "vacatur of his removal order" or other relief that may fall outside the traditional scope of the common-law writ, *id.* at 117-18 (citation modified). And because "the allegedly excessive detention would have already taken place" when Khalil's "final order of removal was eventually entered," his detention-specific claim will be "effectively unreviewable" under the purported substitute for habeas review. *Jennings*, 583 U.S. at 293. Thus, the petition-for-review process is not an adequate substitute for Khalil's habeas petition seeking release.

In the wake of the panel majority's decision, Khalil's only ostensible opportunity for meaningful review depends on multiple contingencies beyond our Court's control: (1) that

12

when reviewing Khalil's petition for review,[7] the Fifth Circuit will apply the panel majority's novel reading of the Hobbs Act to "remand [the] case to a district court for a hearing with more factfinding," *Khalil*, 164 F.4th at 280 (citing 28 U.S.C. § 2347(b)(3)); and (2) that the Government will honor the assurances it made at oral argument to "not object to a district-court remand if Khalil sought one from the PFR court," *id.* These would be shaky foundations for meaningful review even if Khalil's due process and First Amendment claims were before our Court.[8]   But they are not.   By denying *en banc* rehearing, we have taken ourselves out of the picture entirely,

---

[7]   Khalil must bring his petition for review of the Board of Immigration Appeals' (BIA) removal decision in the United States Court of the Appeals for the Fifth Circuit because that is "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."   8 U.S.C. § 1252(b)(2).

[8]   The BIA's recent opinion entering a final order of removal against Khalil illustrates this point.   The panel majority discounted Judge Freeman's concern that the Fifth Circuit "may not obtain fact-finding, raising the prospect that Khalil will not be able to develop an adequate factual record for his constitutional claims" because, "given the Government's concessions," it deemed that circumstance "unlikely." *Khalil*, 164 F.4th at 281 (citation modified).   Yet the BIA paid no attention to the Government's concessions, instead declaring that it is "not bound by statements of Government counsel during the litigation of *Khalil* before the Third Circuit." *Matter of M- K-*, 29 I. & N. Dec. 556, 559 n.5 (BIA 2026).   Though it would be unfortunate, the Fifth Circuit could do the same.

13

closing our courthouse doors to Khalil without reckoning with the possibility that the doors will never be opened in a forum where he can develop a record pertinent to the constitutional claims at issue.

The panel majority is troubled that our hearing of Khalil's claim might allow "piecemeal litigation" over a noncitizen's removal and thus seeks to "ensure[] that petitioners get only one bite at the apple" when challenging their removal. *Id*. at 275. But that fear is not well-founded for the reasons Judge Freeman and I have explained. And far more troubling are the consequences of our decision today: Khalil may well have no bite at the apple.

*        *        *

The Judiciary "serves as an inseparable element of the constitutional system of checks and balances," *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850 (1986) (citation modified), protecting civil liberties and checking legislative and executive discretion. We cannot fulfill that role if we write ourselves out of relevance and leave the Executive Branch to check itself. Because the panel majority's decision "handcuffs the Judiciary's ability to perform its constitutional duty to safeguard individual liberty and dismantles a critical component of the separation of powers," *Thuraissigiam*, 591 U.S. at 159 (Sotomayor, J., dissenting), I respectfully dissent from the denial of rehearing *en banc*.

14