**Nos. 25-2162 & 25-2357**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

MAHMOUD KHALIL,

Petitioner-Appellee,

v.

PRESIDENT UNITED STATES OF AMERICA; DIRECTOR NEW YORK
FIELD OFFICE IMMIGRATION AND CUSTOMS ENFORCEMENT;
WARDEN ELIZABETH CONTRACT DETENTION FACILITY; DIRECTOR
UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT;
SECRETARY UNITED STATES DEPARTMENT OF HOMELAND SECURITY;
SECRETARY UNITED STATES DEPARTMENT OF STATE; ATTORNEY
GENERAL UNITED STATES OF AMERICA,

Respondents-Appellants.

On Appeal from the United States District Court
for the District of New Jersey, No. 25-1963 (MEF) (MAH)

### APPELLANTS' OPPOSITION TO
### APPELLEE'S MOTION TO STAY THE MANDATE

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
   General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

ALANNA T. DUONG
Senior Litigation Counsel

ANIELLO DESIMONE
JOSHUA C. MCCROSKEY
Trial Attorneys

**INTRODUCTION**

A panel of this Court held that the district court lacked subject-matter jurisdiction to adjudicate Petitioner Mahmoud Khalil's challenges to his detention and removal, and that Petitioner must litigate those claims in his immigration proceedings with ultimate review in the federal court of appeals though a petition for review ("PFR"). The full Court has now denied rehearing en banc. But despite this Court's determination that Petitioner has no business pursuing his claims in this Circuit, Petitioner asks this Court to stay issuance of the mandate and keep in place the district court's jurisdiction-less injunction against Petitioner's detention and removal as he seeks certiorari from the Supreme Court—a process that will invariably take many months. This Court should deny the motion in full.

Petitioner has failed to establish that this is one of the "exceptional cases" that justifies a stay of the mandate. *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007). Petitioner simply rehashes the same meritless arguments about the scope of 8 U.S.C. §1252(b)(9) and Supreme Court precedent that he raised in his petition for rehearing en banc and this Court already thoroughly considered and rejected. This Court's decision is fully consistent with Supreme Court precedent and does not raise any issue of "exceptional" importance. Petitioner complains of having to wait to bring his claims, but "the opportunity to raise a claim during the judicial review phase [is] sufficient," including for First Amendment claims. *Reno v. Am.-Arab Anti-Discrimination Comm. ("AADC")*, 525 U.S. 471, 495 (1999) (Ginsburg, J., concurring in part and concurring

1

in the judgment). Petitioner has not shown any reasonable prospect of securing review and reversal from the Supreme Court.

Nor has Petitioner identified the necessary "good cause" to justify a stay of the mandate. He says he will be irreparably harmed by detention and removal, but those concerns ring hollow given his deliberate decision to delay pursuing relief from the Fifth Circuit—the forum where this Court has said any relief lies. Not only did Petitioner wait until the very last day to petition for review from the Board of Immigration Appeals' decision, but he has not sought to expedite those proceedings, and even now he has not requested a stay of removal from the Fifth Circuit. Indeed, he has candidly acknowledged that he *will not* request a stay of removal from that court because he prefers to continue to seek relief from this Court. That is *precisely* the forum-shopping that this Court has held is impermissible in this very case, which this Court should not reward with a favorable exercise of discretion.

Petitioner cannot complain that he will be irreparably harmed if this Court's mandate issues while refusing to seek relief from those harms from the court of appeals with jurisdiction to provide any relief. Besides, the Supreme Court has made "plain that the burden of removal alone cannot constitute the requisite irreparable injury." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And Petitioner can avoid any detention by voluntarily leaving the United States and continuing to litigate his case in the Fifth Circuit from abroad. He thus "has the keys in his pocket." *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999).

## **BACKGROUND**

The facts and history of this case are well documented in this Court's January 15, 2026 decision, *see* Maj. Op. 3-9 (Dkt. 132), and the Government's opposition to the petition for rehearing en banc, *see* En Banc Pet. Opp. 4-8 (Dkt. 153). A panel of this Court held that Petitioner's detention and removal claims are subject to 8 U.S.C. §1252(b)(9) and so must be channeled through a PFR. Maj. Op. 20-29. Accordingly, the Court vacated the district court's decisions for lack of jurisdiction, including its order granting a preliminary injunction against Petitioner's detention and removal. Maj. Op. 38.

Petitioner sought rehearing en banc, *see* Pet. for Rehearing En Banc (Dkt. 138), which this Court denied on May 22, 2026, *see* Order on Sur Pet. for Rehearing (Dkt. 155). That afternoon Petitioner filed a motion under Federal Rule of Appellate Procedure 41(d)(1) to stay the mandate pending the filing of a petition for writ of certiorari. *See* Mot. to Stay Issuance of Mandate (Dkt. 157) ("Mot."). Petitioner asked that this Court rule on his motion by the next business day, Tuesday, May 26, 2026, so that he may seek emergency relief from the Supreme Court, if necessary. Mot. 3. Alternatively, Petitioner requested a 30-day administrative stay of the mandate to allow him to seek a stay of the mandate from the Supreme Court. *Id.* at 2.

## ARGUMENT

**The Court should deny the motion to stay the mandate because Petitioner has failed to demonstrate that his proposed certiorari petition will present a substantial question or that good cause exists for a stay.**

Federal Rule of Appellate Procedure 41(d) permits parties to move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. "Relief is not, however, a matter of right," *United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993), and a party may secure a stay of the mandate only "[i]n exceptional cases." *Nara*, 494 F.3d at 1133 (citing Fed. R. App. P. 41(d)(2)(A)); *cf. Whalen v. Roe*, 423 U.S. 1313, 1316 (1975) ("A single Justice will grant a stay only in extraordinary circumstances.") (Marshall, J., in chambers).

To obtain a stay of the mandate, a movant "must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). The standard for presenting a "substantial question" is high. *See, e.g.*, *White v. Plappert*, 137 F.4th 579, 581 (6th Cir. 2025) (referring to the standard as "a daunting standard"); *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020) (referring to the standard as "high"). Specifically, the movant must demonstrate: "(1) a reasonable probability that the Supreme Court will grant *certiorari*; (2) a reasonable possibility that at least five Justices would vote to reverse this Court's judgment; and (3) a likelihood of irreparable injury absent a stay." *Nara*, 494 F.3d at 1133 (citing *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers)); *see also Bricklayers Local 21 v. Banner Restoration, Inc.,* 384 F.3d 911, 912 (7th Cir. 2004) (Ripple, J., in chambers); *Doe*

4

*v. Miller,* 418 F.3d 950, 951 (8th Cir. 2005); Fed. R. App. P. 41(d) advisory committee's note); *accord Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010).  "In a close case, the movant should [also] make a showing that, on balance, the interests of the parties and the public favor a stay."   *Nara*, 494 F.3d at 1133 (citing *Rostker*, 448 U.S. at 1308); *accord Hollingsworth*, 558 U.S. at 190.

Petitioner has not satisfied any of these requirements.  The panel decision faithfully applies precedent of the Supreme Court, *cf.* U.S. Sup. Ct. R. 10(c), does not "conflict with the decision of another United States court of appeals on the same important matter," and does not come close to "so far depart[ing] from the accepted and usual course of judicial proceedings … as to call for an exercise of [the Supreme] Court's supervisory power."  U.S. Sup. Ct. R. 10(a).

## A.    Petitioner fails to raise a substantial question warranting Supreme Court review.

1.    The panel decision does not conflict with any decision of the Supreme Court, as the Government thoroughly explained in its opposition to the petition for rehearing en banc.

Petitioner starts by recycling his argument from the en banc petition that "the Supreme Court has repeatedly rejected" reading §1252(b)(9) to cover challenges to detention.  Mot. 8.  The very cases he cites refute that characterization—both *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018), and *Nielsen v. Preap*, 586 U.S. 392, 402 (2019), recognize that §1252(b)(9) applies to challenges to "the decision to detain [] in the first

place." *See* En Banc Rehearing Opp. 9, 10-11; *see also id.* at 16 (addressing *DHS v. Regents of the University of California*, 591 U.S. 1 (2020), and *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021)).  This Court's faithful application of that Supreme Court precedent does not "deprive federal courts of habeas jurisdiction in a wide-array of cases," as Petitioner argues.  Mot. 8-9.  That accusation ignores this Court's explicit recognition that numerous challenges to Executive detention—for example, challenges to the duration or conditions of confinement—are *not* channeled by §1252(b)(9).  Maj. Op. 28.  That Petitioner's challenges to his detention are subject to §1252(b)(9) is a function of his decision to "repackage[] his challenges to his removal" as challenges to his detention.  Maj. Op. 28; *see* En Banc Rehearing Opp. 21-22.  Nothing in that outcome, however, conflicts with any precedent of the Supreme Court.

Petitioner also repeats his objections that this Court's interpretation and application of §1252(b)(9) conflicts with Supreme Court precedent regarding the Suspension Clause and the First Amendment.  Mot. 9-11.  The Government has already thoroughly refuted those arguments.  *See* En Banc Rehearing Opp. 18-19 (First Amendment), 24-30 (Suspension Clause).  Indeed, this Court's precedents holding that §1252(b)(9) is an adequate and effective substitute for habeas date back nearly 20 years, and Petitioner has not identified a single court that has thought them to be inconsistent with Supreme Court precedent.  *See* En Banc Rehearing Opp. 24-25 & n.10.  Likewise, although Petitioner insists that this Court's opinion conflicts with Supreme Court precedent requiring "speedy review of First Amendment claims," Mot. 10, he cites no

decision of the Supreme Court (or any court of appeals) adopting a First-Amendment carve-out to §1252(b)(9). Indeed, of all the cases Petitioner cites (Mot. 10), only *AADC* addressed a First Amendment claim in the immigration context, and there even Justice Ginsburg rejected the argument that "the First Amendment necessitates immediate judicial consideration" of First Amendment claims. 525 U.S. at 492, 495 (Ginsburg, J., concurring in part and concurring in the judgment); *see* En Banc Rehearing Opp. 19, 29.

2.      The Court's decision does not conflict with other Circuit decisions, either. Petitioner asserts that this Court's application of §1252(b)(9) to detention claims conflicts with *Aguilar v. INS*, 510 F.3d 1 (1st Cir. 2007). Mot. 12.[1] That is wrong. *Aguilar* recognized that §1252(b)(9) does not reach "claims that are independent of, or wholly collateral to, the removal process," like "claims that cannot be effectively handled through the available administrative process." *Id.* at 11. The First Circuit and this Court employed the same analytical framework: they both assessed whether the claims raised were intertwined with, or collateral to, removal proceedings. *See id.* at 19. Examining those claims, the First Circuit found: (1) claims challenging the conditions of an alien's detention were independent of removal proceedings, *id.* at 12-13; (2) "claims based upon alleged deprivation of an alien's right to counsel in connection with removal proceedings, whether pending or imminent, arise from removal

---

[1] *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025), addressed a stay pending appeal and is not precedential even within the Second Circuit.

proceedings," *id.* at 13-14; and (3) claims relating to the right of parents to make decisions as to the care, custody, and control of their children were collateral to removal proceedings, as they were "completely irrelevant" to the issues litigated in removal proceedings and "have no bearing on the aliens' immigration status," *id.* at 19.  No part of those holdings conflicts with this Court's opinion.

Nor is there a circuit split over whether §1252(b)(9) applies "to claims arising prior to a final order of removal."  Mot. 12.  As the Court held, the Supreme Court in *Jennings* abrogated precedent of this Circuit—and, necessarily, any other Circuit— limiting §1252(b)(9) to the post-final-order removal context.  Maj. Op. 30-32; *see* En Banc Rehearing Opp. 9-10.  That is now the rule; there is no split for the Supreme Court to resolve.  And no Circuit has issued a precedential decision disagreeing with this Court's holding regarding the controlling effect of *Jennings* on the scope of §1252(b)(9).  Both *Ozturk* and *Suri v. Trump*, 2025 WL 1806692 (4th Cir. July 1, 2025), are non-precedential decisions adjudicating motions for stays pending appeal.  And *Casa de Md. v. DHS*, 924 F.3d 684, 691, 695 (4th Cir. 2019), dealt with various challenges to the Government's decision to rescind DACA (and related actions); none of the claims were even remotely related to removal proceedings.  *See id.* at 695, 697.  The remaining cases Petitioner cites—*Singh v. Gonzales*, 499 F.3d 969, 972 (9th Cir. 2007), and *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1367 (11th Cir. 2006)—pre-date *Jennings*.  *Accord* Maj. Op. 32-33.

3.      There is no merit to Petitioner's remaining arguments that this is an "exceptional" case that has a reasonable probability of securing secure review and reversal from the Supreme Court.  He says that this Court's decision authorizes the Executive to "engage in retaliatory and punitive executive detention … with no recourse to federal review."  Mot. 7-8.  That is plainly false.  As this Court's decision makes clear, Petitioner *will* obtain federal court review of his claims—but he must do so through the procedures prescribed by Congress.  Maj. Op. 37; *see* En Banc Rehearing Opp. 18, 28.  There is nothing unusual, much less "exceptional," about that outcome.  "[O]ur legal system routinely forces petitioners—even though with meritorious claims—to wait to raise their arguments."  Maj. Op. 25.  Here, "Congress has the power to balance concerns about the orderly adjudication of claims with concerns about remedying harms from illegal detention," and "[t]he balance that Congress struck in §1252(b)(9) requires bringing legal questions later if they can be answered later."  Maj. Op. 26; *Tazu v. Att'y Gen.*, 975 F.3d 292, 296 (3d Cir. 2020) (recognizing that §1252(b)(9) and other provisions of the INA "aim[] to prevent removal proceedings from becoming fragmented, and hence prolonged'" (quoting *AADC*, 525 U.S. at 487).  Such "delay does not foreclose meaningful review.  It just streamlines the process for seeking it."  Maj. Op. 26; *see* En Banc Rehearing Opp. 18.  "[T]he opportunity to raise a claim during the judicial review phase [is] sufficient," including for First Amendment claims.  *AADC*, 525 U.S. at 495 (Ginsburg, J., concurring in part and concurring in the

judgment). And here, that federal court review is occurring for Petitioner *right now* in the Fifth Circuit.

Petitioner objects that his proceedings will move too slowly to secure meaningful review of his claims. Those objections are disingenuous. Although Petitioner's removal proceedings were completed in a little over a year, he has made no effort to expedite federal court review of the resulting order of removal. After the Board issued its order of removal on April 9, 2026, Petitioner took the full 30 days to file his petition for review with the Fifth Circuit. *See* Dkt. 152 (Petitioner's update regarding his removal proceedings); *Khalil v. Blanche*, No. 26-60344 (5th Cir.), Dkt. 1 ("IMMIGRATION CASE docketed. Petition for review filed by Petitioner Mr. Mahmoud Khalil. Date received in 5th Circuit: 05/10/2026."); *see* 8 U.S.C. §1252(b)(1) (providing that the PFR must be filed no later than 30 days after the date of the final order of removal). And while Petitioner complains that "there is still no briefing schedule for that appeal," Mot. 6 n.2, he has made no effort to expedite his Fifth Circuit appeal. *See* 5th Cir. R. 27.5. Rather, Petitioner appears to prefer that the Fifth Circuit proceedings "take many months or even more than a year," Mot. 6 n.2, to feed his narrative that this Court's decision will result in delayed federal court review.

\*      \*      \*

Accordingly, Petitioner has not met his heavy burden of demonstrating that this Court's decision conflicts with any decision of the Supreme Court or another Circuit, or that his case raises an issue of exceptional importance, such that there is a reasonable

probability of obtaining review and reversal from the Supreme Court. He has thus not presented a substantial question to warrant a stay of the mandate.

## B. Petitioner has failed to show good cause.

Petitioner also has failed to show "good cause" justifying a stay of the mandate. To show good cause, the movant must explain how he would suffer irreparable harm if the stay were denied. *Nara*, 494 F.3d at 1133. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009) (per curiam). Petitioner has failed to make this showing. And by continuing to pursue his claims before this Court, Petitioner continues to engage in the same forum-shopping and circumvention of the PFR process that the panel foreclosed.

1. None of Petitioner's claimed harms justifies a stay of the mandate. Although he asserts that his detention will cause family separation, Congress contemplated such separation when it authorized detention "for the brief period necessary for … removal proceedings." *Demore v. Kim*, 538 U.S. 510, 513 (2003). That is especially true now that Petitioner has a final order of removal, under which his detention is presumptively constitutional for six months and remains constitutional thereafter unless Petitioner can show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) (interpreting 8 U.S.C. §1231).

11

Petitioner also argues that detention would "further silenc[e] his protected speech," but nothing prevents Petitioner from speaking from abroad. And the First Amendment supplies him no right to remain in the United States for the purpose of speaking where he otherwise has no lawful right to be (and previously possessed the right to be as a result of immigration fraud as found by an immigration judge and affirmed by the BIA). Besides, Petitioner could "end[] [any] detention immediately"—and avoid the harms from detention he postulates—by voluntarily departing the United States while continuing to pursue his petition for review from abroad. *Perryman*, 172 F.3d at 958. He "has the keys in his pocket." *Id.*

Nor would Petitioner suffer irreparable harm as a result of removal. The Supreme Court has made clear that "removal … is not categorically irreparable," because "[a]liens who are removed may continue to pursue their petitions for review [from abroad], and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the incidental effects of an alien's removal (including family separation) cannot be the basis for finding irreparable harm, and the burden of removal alone cannot constitute the requisite irreparable injury, either.

These purported harms ring particularly hollow here, as Petitioner has intentionally and strategically refused to take steps to redress those harms. He never sought a stay of removal from the Board, and although his petition for review has been

12

pending in the Fifth Circuit for several weeks, he still has not sought a stay of removal from that Court.  Indeed, Petitioner admits that he only intends to seek relief from the Fifth Circuit if this Court denies his motion for a stay of the mandate, because he would rather continue to pursue relief here despite this Court's holding that review is available only in the Fifth Circuit through the PFR process.  Such self-manufactured harm—which is the product of the same gamesmanship that this Court has already held unlawful—undermines any claim of irreparable harm.  *Cf. Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 572 U.S. 1301, 1301-02 (2014) (Roberts, C.J., in chambers) (denying a stay solely for lack of irreparable injury); *White*, 137 F.4th at 581 (same); *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 977 F.3d 1379, 1380 (Fed. Cir. 2020) (same).

**2.** This is not a "close case," but even if it were, Petitioner has failed to show that the interest of the parties and the public favor a stay.  *Nara*, 494 F.3d at 1133.  It is well settled that the public interest in the enforcement of the United States' immigration laws is significant.  *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435.  And there is always a public interest in the prompt execution of removal orders:  the continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings established and "permit[s] and prolong[s] a continuing violation of United States law."  *AADC*, 525 U.S. at 490; *see Nken*, 556 U.S. at 427 ("The parties and the public are generally entitled to the prompt execution of orders that the legislature has made final.") (cleaned up); *Stone v. INS*, 514 U.S. 386, 399 (1995) (recognizing Congress's objective "to abbreviate the process

of judicial review … in order to frustrate certain practices … whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts" (quoting *Foti v. INS*, 375 U.S. 217, 224 (1963))).  Here, staying the mandate would drag out proceedings in this Court (where it should not have been in the first place), undermining Congress's intent "to expedite both the initiation and the completion of the judicial review process" and "would be at odds with the congressional purpose." *Stone*, 514 U.S. at 400.

## CONCLUSION

The Court should deny the motion to stay the mandate.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

YAAKOV M. ROTH
Principal Deputy Assistant Attorney
General

DREW C. ENSIGN
Deputy Assistant Attorney General

BENJAMIN HAYES
Senior Counsel to the Assistant
Attorney General

Dated: May 26, 2026

*/s/ Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
PO Box 878, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-7040
alanna.duong@usdoj.gov

ANIELLO DESIMONE
JOSHUA C. MCCROSKEY
Trial Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system.  Counsel in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ *Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(2) and 32(g) because it was prepared using Garamond type, is double-spaced, has 10.5 or fewer characters per inch; and contains 3,512 words, excluding the parts exempted by Rule 32(f).

/s/ *Alanna T. Duong*
ALANNA T. DUONG
Senior Litigation Counsel
U.S. Department of Justice